# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | |
|---|---|
| WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT,<br><br>Plaintiff,<br><br>v.<br><br>DELL TECHNOLOGIES INC., DELL INC., EMC CORPORATION, AND VMWARE, INC.,<br><br>Defendants. | <u>Case Numbers:</u><br>**6:20-cv-00473-ADA**[1]<br>6:20-cv-00474-ADA<br>6:20-cv-00475-ADA<br>6:20-cv-00476-ADA<br>6:20-cv-00477-ADA<br>6:20-cv-00478-ADA<br>6:20-cv-00479-ADA<br>6:20-cv-00480-ADA<br>6:20-cv-00481-ADA<br>6:20-cv-00482-ADA<br>6:20-cv-00485-ADA<br>6:20-cv-00486-ADA |
| WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT,<br><br>Plaintiff,<br><br>v.<br><br>ZTE CORPORATION,<br><br>Defendant. | <u>Case Numbers:</u><br>**6:20-cv-00487-ADA**<br>6:20-cv-00488-ADA<br>6:20-cv-00489-ADA<br>6:20-cv-00490-ADA<br>6:20-cv-00491-ADA<br>6:20-cv-00492-ADA<br>6:20-cv-00493-ADA<br>6:20-cv-00494-ADA<br>6:20-cv-00495-ADA<br>6:20-cv-00496-ADA<br>6:20-cv-00497-ADA |
| WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE, LLC,<br><br>Defendant. | <u>Case Numbers:</u><br>**6:20-cv-00571-ADA**<br>6:20-cv-00572-ADA<br>6:20-cv-00573-ADA<br>6:20-cv-00575-ADA<br>6:20-cv-00576-ADA<br>6:20-cv-00579-ADA<br>6:20-cv-00580-ADA<br>6:20-cv-00583-ADA<br>6:20-cv-00584-ADA<br>6:20-cv-00585-ADA |

---

[1] To avoid inundating the Court's docket with duplicative filings, this document is being e-filed *only* in the low-number proceedings, as indicated by the case numbers with bold typeface.

| | |
|---|---|
| WSOU INVESTMENTS, LLC D/B/A<br>BRAZOS LICENSING AND DEVELOPMENT,<br><br>Plaintiff,<br><br>v.<br><br>HEWLETT PACKARD ENTERPRISE<br>COMPANY,<br><br>Defendant. | <u>Case Numbers:</u><br>**6:20-cv-00725-ADA**<br>6:20-cv-00726-ADA<br>6:20-cv-00728-ADA<br>6:20-cv-00730-ADA<br>6:20-cv-00783-ADA |
| GOOGLE, LLC,<br><br>Petitioner,<br><br>v.<br><br>TERRIER SSC, LLC,<br><br>Respondent. | <u>Case Number:</u><br>**6:21-mc-01269-ADA** |
| GOOGLE, LLC,<br><br>Petitioner,<br><br>v.<br><br>BP FUNDING TRUST,<br><br>Respondent. | <u>Case Number:</u><br>**6:21-mc-01270-ADA** |
| GOOGLE, LLC,<br><br>Petitioner,<br><br>v.<br><br>AQUA LICENSING, LLC,<br><br>Respondent. | <u>Case Number:</u><br>**6:21-mc-01309-ADA** |

**DECLARATION OF MORGAN E. PIETZ
WITH <u>EXHIBITS 1 TO 17</u>**

2

I, Morgan E. Pietz, am over the age of 18, competent to testify, have personal knowledge as to those facts set forward below, and if called to do so, I hereby declare that I could and would testify in this action as follows:

1.  I am an attorney licensed to practice law in the State of California, and I am admitted to all the state and federal courts in California, including the U.S. District Court for the Central District of California.  I represent the "Requesting Non-Parties" BP Funding Trust, BasePoint Administrative, LLC, Terrier SSC, LLC, and Aqua Licensing, LLC.  I am admitted *pro hac vice* in the three miscellaneous proceedings before this Court involving some of those clients, case numbers: 6:21-mc-01269-ADA, 6:21-mc-01270-ADA, and 6:21-mc-01309-ADA. And my application for general purpose admission to the Western District of Texas was submitted in December and is currently in process.  Once admitted, I intend to appear in the four low-number cases identified in the captions above.

2.  Attached hereto as <u>Exhibit 1</u> is a true and correct copy of the subpoenas that Google served on BP Funding Trust, Terrier, and Aqua.  Through prior counsel, Aqua timely objected to the subpoena to it on August 17, 2021.

3.  Attached hereto as <u>Exhibit 2</u> is a true and correct copy of the subpoenas that ZTE served on BP Funding Trust, Terrier, and Aqua.  ZTE's subpoenas were ***identical*** to the Google subpoenas, apart from the  party names and certain definitions, but including the same typos.  All three subpoena recipients timely objected to the subpoenas from ZTE on November 8, 2021.

4.  Attached hereto as <u>Exhibit 3</u> is a true and correct copy of the subpoenas that Dell served on Aqua and BasePoint Administrative, LLC.  Aqua timely objected on September 10,

2021 and later served supplemental objections on November 9, 2021.  BasePoint Administrative, LLC objected on November 11, 2021, although the timeliness of the objections by BasePoint Administrative, LLC is apparently in dispute.

5.      Attached hereto as <u>Exhibit 4</u> is a true and correct copy of the subpoenas that HPE served on Aqua.  Aqua timely objected to these subpoenas on January 12, 2022.

6.      Attached hereto as <u>Exhibit 5</u> is a true and correct copy of an email chain with Google and with the Court, which I was forwarded and then responded to Google on, regarding the setting of the hearing on the Google Motions related to my clients.

7.      Attached hereto as <u>Exhibit 6</u> is a true and correct copy of a scheduling memorandum that my co-counsel, Dan MacLemore sent to the Court, copying me, on December 21, 2021.

8.      Attached hereto as <u>Exhibit 7</u> is the transmittal email chain related to Exhibit 6, on which the Court replied, cancelling the December 27, 2021 hearing.

9.      Attached hereto as <u>Exhibit 8</u> is a true and correct copy of my email to counsel for WSOU, Google, Dell, HPE and ZTE, which I sent on January 6, 2022.  My email had two attachments: the scheduling memorandum Mr. MacLemore had previously sent the Court on December 23 (Exhibit 6), and also my proposed order as to consolidation, which, as I explained, I was circulating to all counsel concerned in the cases proposed for consolidation (Exhibit 9).

10.     Attached hereto as <u>Exhibit 9</u> is a true and correct copy of the "[PROPOSED] ORDER GRANTING CONSOLIDATION AS TO CERTAIN NON-PARTY DISCOVERY" that I circulated to counsel for WSOU, Google, Dell, HPE, and ZTE on January 6, 2022.  Along with this motion and declaration, we are filing a revised proposed order, which deletes out the word "proposed," add the miscellaneous proceedings to the caption, and fills in the blank parts stating that

the defendants oppose, but, as to substance, this Exhibit 9 circulated on January 6, 2022, and the proposed order being filed as a proposed order along with the motion, are identical.

11.     Attached hereto as <u>Exhibit 10</u> is a true and correct copy of an email thread that represents the first of several exchanges I had with counsel for ZTE, Mr. Lavenue.  His messages to me on January 7, 2022, which was the day after I forwarded him my consolidation proposal, are where he insists on reserving ZTE's right to file motions to compel in Delaware.  See page 1.

12.     Attached hereto as <u>Exhibit 11</u> is a true and correct copy of the lengthy email chain I exchanged with counsel for all of the defendants, trying to get them to participate in a meet and confer phone call about this motion.  The chain ends today, January 21, with the final position of Dell.  Counsel for Google, ZTE, and HPE also participated in the back and forth.  To the extent I summarize any phone conversations in my emails, or quote anyone, my summaries and quotes are accurate to the best of my recollection.  As of 7:30 p.m. Central time today, the day ZTE knew this motion was being filed, ZTE never responded to my request on the 1/20 call that it reduce its position to writing.

13.     Attached hereto as <u>Exhibit 12</u> is a true and correct copy of an email chain I conducted with Google starting before the holidays and continuing until January 11, 2022.  It accurately memorializes my initial meet and confer call with Google, which Google asked that the other defendants not participate in.  With Google's permission, I forwarded this entire email to the other defendants on January 11, 2022 (see Exhibit 11 at p. 36).

14.     Attached hereto as <u>Exhibit 13</u> is a true and correct copy of an email I received from Jen Kash, counsel for Google, on January 20, 2022, about scheduling a deposition of Aqua.

15.     Attached hereto as <u>Exhibit 14</u> is a true and correct copy of an email I received from Michal Franzinger, counsel for Dell, on January 20, 2022, about scheduling the deposition of Aqua, and HPE's final position on this motion.

16.     Attached hereto as <u>Exhibit 15</u> is a true and correct copy of an email from Jen Kash to Rob Millimet, dated October 5, 2021, previously filed by Google in support of its motion to compel, wherein Ms. Kash outlines the terms of Google's oral agreement with BP Funding Trust.

17.     Attached hereto as <u>Exhibit 16</u> is a true and correct copy of a thread between Dell and counsel for BasePoint Administrative, LLC.  At pages 3-4, in an email dated October 8, 2021, Mr. Millimet explains to Mr. Shelton, counsel for Dell, the terms of the deal BP Funding Trust had recently reached with Google, and explores whether Dell might be interested in the same deal.  The numbered points in this email are identical to those in Exhibit 15.

18.     Attached hereto as <u>Exhibit 17</u> is a true and correct copy of my meet and confer letter to Dell, dated November 11, 2021, which was the transmittal for the more formal objections for BasePoint Administrative, LLC that my office served on Dell as of that date, in response to Mr. Shelton's email of November 3, 2021 (Exhibit 16 at p. 3).


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Executed on January 21, 2022 at Los Angeles, California by  ___ _____ _____

                                                            Morgan E. Pietz

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| WSOU INVESTMENTS, LLC d/b/a | § | 6:20-cv-571 |
| BRAZOS LICENSING AND | § | 6:20-cv-572 |
| DEVELOPMENT, | § | 6:20-cv-573 |
| | § | 6:20-cv-574 |
| Plaintiff, | § | 6:20-cv-575 |
| | § | 6:20-cv-576 |
| v. | § | 6:20-cv-577 |
| | § | 6:20-cv-578 |
| GOOGLE LLC, | § | 6:20-cv-579 |
| | § | 6:20-cv-580 |
| Defendant. | § | 6:20-cv-583 |
| | § | 6:20-cv-584 |
| | § | 6:20-cv-585 |

**<u>NOTICE OF SUBPOENA</u>**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

      PLEASE TAKE NOTICE that Defendant Google LLC will serve the attached subpoena

for deposition and the production of documents and things.

Date:  July 9, 2021                     Respectfully submitted,

                                                 Michael E. Jones (Texas Bar No. 10929400)
Patrick C. Clutter (Texas Bar No. 24036374)
**Potter Minton, P.C.**
110 North College, Suite 500
Tyler, Texas, 75702
+1 (903) 597-8311
+1 (903) 593-0846 facsimile
mikejones@potterminton.com
patrickclutter@potterminton.com

Matthew S. Warren (California Bar No. 230565)
Jennifer A. Kash (California Bar No. 203679)
*(pro hac vice)*
Erika Warren (California Bar No. 295570)
**Warren Lex LLP**

– 1 –

2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
20-585@cases.warrenlex.com

Tharan G. Lanier (California Bar No. 138784)
*(pro hac vice)*
**Jones Day**
1755 Embarcadero Road
Palo Alto, California, 94303
+1 (650) 739-3939
+1 (650) 739-3900 facsimile
tglanier@jonesday.com

*Attorneys for Defendant Google LLC*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on July 9, 2021, I served the foregoing Notice of Subpoena by electronic

mail to counsel of record.

*/s/ Ellie Silberhorn*
Ellie Silberhorn

AO 88A  (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Western District of Texas

| | |
|---|---|
| WSOU Investments LLC | ) |
| _Plaintiff_ | ) |
| v. | ) Civil Action No. |
| Google LLC | ) |
| _Defendant_ | ) |

6:20-cv-571
6:20-cv-572
6:20-cv-573
6:20-cv-574
6:20-cv-575
6:20-cv-576
6:20-cv-577
6:20-cv-578
6:20-cv-579
6:20-cv-580
6:20-cv-582
6:20-cv-584
6:20-cv-585

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:     Aqua Licensing LLC
        18709 Meter Street, 12th Floor, San Francisco, CA 94105

_(Name of person to whom this subpoena is directed)_

☑ _Testimony:_  **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place: | First Legal | Date and Time: |
|---|---|---|
| | 580 California Street | |
| | 12th & 16th Floors, San Francisco, CA 94104 | July 26, 2021 |

The deposition will be recorded by this method:     Stenographic, video and audio recording

☑ _Production:_  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

See Exhibit A

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:     July 9, 2021

_CLERK OF COURT_

OR

_____          _____
     _Signature of Clerk or Deputy Clerk_                _Attorney's signature_

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_
Google LLC                                                      , who issues or requests this subpoena, are:

Jennifer A. Kash, Warren Lex LLP, 2261 Market Street, San Francisco, CA 94114; jen@warrenlex.com; 415-895-2923

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❒ I served the subpoena by delivering a copy to the named individual as follows: _____

_____

_____ on *(date)* _____ ; or

❒ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2) *For Other Discovery.*** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2) *Command to Produce Materials or Permit Inspection.***
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3) *Quashing or Modifying a Subpoena.***
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2) *Claiming Privilege or Protection.***
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## EXHIBIT A

## DEFINITIONS

1.      The term "WSOU v. Google Litigations" means 6:20-cv-00571, 6:20-cv-00572, 6:20-cv-00573, 6:20-cv-00574, 6:20-cv-00575, 6:20-cv-00576, 6:20-cv-00577, 6:20-cv-00578, 6:20-cv-00579, 6:20-cv-00580, 6:20-cv-00583, 6:20-cv-00584, 6:20-cv-00585.

2.      The terms "WSOU," shall mean plaintiff WSOU Investments, LLC, WSOU Holdings, LLC, WSOU Investments II, LLC, WSOU Capital Partners, LLC, and their officers, directors, principals, current and former employees, counsel, agents, consultants, representatives, and any other persons acting on behalf of any of the foregoing; as well as its affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that are owned, controlled by, or under common control with it, and all predecessors and successors in interest to such entities.

3.      The term "Defendant" or "Google" shall mean Google LLC, and shall include, individually or collectively, any and all of its past and present officers, directors, partners, trustees, employees, corporate parents, subsidiaries, predecessors, affiliates, agents, representatives, and attorneys.

4.      The term "AQUA," "you," and "your" shall mean Aqua Licensing, LLC, its current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share

common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

5.     The term "asserted patent" shall mean any patent asserted in the WSOU v. Google litigations, including without limitation, U.S. Patent Nos. 7,620,967, 7,777,728, 7,817,858, 7,946,491, 8,041,806, 8,559,928, 8,595,283, 8,640,180, 8,737,961, 8,751,585, 8,803,697, 8,965,045, 9,335,825.

6.     The term "AST" shall mean Allied Security Trust, a Delaware statutory trust; and their trustees, managers, agents, representatives, employees, attorneys, or entities acting in conjunction, joint venture, or partnership with any of them.

7.     The term "affiliates" shall mean any entity, including parent companies and majority-owned subsidiaries, now or hereafter acquired or formed that is directly or indirectly controlled by a party, or is under common control with a party, or is an entity that controls a party, as well as all predecessors and successors of such entities. For this purpose "control" means direct or indirect ownership of, or the right to exercise, at least 50% of the voting power, or at least 50% of the ownership interest representing either the irrevocable right to name a majority of the members of the governing body of such entity, or the right to make binding decisions for the entity.

8.     The term "related application" shall mean any patent or application related to a patent, including any application or other filing from which the patent claims priority, any foreign counterpart patents or applications, whether by continuation, continuation-in-part, division, reexamination, correction or re-issue, and whether issued, pending, or abandoned.

9.      The term "related patent" shall mean any patent, including any foreign counterpart patent and any patent which may have been opposed, contested or subjected to any nullity proceedings, that is based in whole or in part on any related application.

10.     The term "named inventor" means any person or persons named as an inventor on the face of any asserted patent or related patent.

11.     The term "accused product" shall mean any item, device, or product that WSOU contends infringes one or more claims of any asserted patent.

12.     The term "asserted claim" shall mean any claim of any asserted patent that WSOU contends has been infringed by Google.

13.     The terms "including" or "that includes" mean including without limitation.

14.     The term "person" includes any individual, corporation, proprietorship, association, joint venture, company, partnership or other business or legal entity, including governmental bodies and agencies.

15.     The term "prior patent owner" shall mean any person that owned any interest in the patent-in-suit or any application leading to the patent-in-suit.

16.     The terms "concerning," "regarding," "relating to," or "related to" in regard to a particular subject shall mean, without limitation, concerning, constituting, contradicting, comprising, commenting on, containing, describing, discussing, embodying, evidencing, identifying, involving, mentioning, pertaining to, referring to, reflecting, regarding, relating to, responding to, stating, supporting, tending to support or refute, relating or referring (directly or indirectly) to or in any way, the particular subject matter identified, in whole or in part.

17.     The term "document," as used herein, has the same meaning it has under Rule 34 of the Federal Rule of Civil Procedure and includes all written, graphic or otherwise recorded material, including microfilms or other film records or impressions, electronically stored information regardless of the form of storage medium, tape recordings or computer cards, floppy disks or printouts, papers, photographs, films, recordings, memoranda, books, records, accounts, communications, letters, telegrams, correspondence, notes of meetings, notes of conversations, notes of telephone calls, inter-office memoranda or written communications, recordings of conversations either in writing on any mechanical or electronic recording device, including email, notes, papers, reports, analyses, invoices, canceled checks or check stubs, receipts, minutes of meetings, time sheets, diaries, desk calendars, ledgers, schedules, licenses, financial statements, telephone bills, logs, and any differing versions of any of the foregoing, whether so denominated, formal, informal or otherwise, as well as copies of the foregoing which differ in any way, including by the addition of handwritten notations or other written or printed matter, from the original, and further includes information stored in a computer database and capable of being generated in documentary form, such as electronic mail.

18.     "Communications" includes any transmission, conveyance or exchange of a word, statement, fact, thing, idea, document, instruction, information, demand or question by any medium, whether by written, oral or other means, including but not limited to, electronic communications and electronic mail.

19.     Use of the singular also includes the plural and vice-versa.

– 4 –

20.     The terms "or" and "and" shall be both conjunctive and disjunctive wherever they appear, and neither of these words shall be interpreted to limit the scope of these discovery requests.

21.     The words "any" and "each" shall be construed to encompass the word "all."

22.     A verb in any tense shall mean the verb in all other tenses.

23.     The term "Alcatel" shall mean Alcatel-Lucent International and all parents, subsidiaries, affiliates, predecessors, successors, including but not limited to Alcatel and Lucent Technologies.

24.     "Nokia" shall mean Nokia Corporation and all parents, subsidiaries, affiliates, predecessors, including but not limited to Nokia Technologies Oy and Nokia Solutions and Networks BV.

25.     "Other WSOU Defendants" shall mean any and all companies that WSOU haas sued in patent litigation matters, including but not limited to ZTE Corporation, ZTE (USA), Inc., ZTE (TX), Inc.; Microsoft Corporation; Dell Technologies, Inc., Dell Inc., EMC Corporation, VMWare, Inc.; Huawei Technologies Co.,Ltd., Huawei Technologies USA Inc., Huawei Device (Shenzen) Co., Ltd. (f/k/a Huawei Device Co., Ltd.), Huawei Device USA, Inc., Huawei Investment & Holding Co., Ltd.; Hewlett Packard Enterprise Company; Juniper Enterprise Networks, Inc.;Xilinx, Inc.; NEC Corporation; OnePlus Technology (Shenzen) Co., Ltd.; Canon, Inc.;TP-Link Technology Co., Ltd.; F5 Networks, Inc.; Arista Networks, Inc.; Salesforce.com; Cisco Systems, Inc.; Netgear, Inc..

## INSTRUCTIONS

1.     The singular form of a word should be interpreted in the plural as well. Any pronoun shall be construed to refer to the masculine, feminine or neutral gender as in such case is most appropriate.  The words "and" and "or" shall be construed conjunctively or disjunctively, whichever makes the request most inclusive.  The words "any" and "each" shall be construed to encompass the word "all."  The past tense shall be interpreted to include the present tense where the meaning is not distorted and the verb form of a noun or pronoun may be used, as appropriate in a particular context.

2.     In the event that you object to any document request on the ground that it is overbroad and/or unduly burdensome for any reason, respond to that document request as narrowed to the least extent necessary, in your judgment, to render it not overbroad/unduly burdensome and state specifically the extent to which you have narrowed that document request for purposes of your response.

3.     In the event that you object to any document request on the ground that it is vague and/or ambiguous, identify the particular words, terms or phrases that are asserted to make such request vague and/or ambiguous and specify the meaning actually attributed to you by such words for purposes of your response thereto.

4.     If possible, supply all annual data requested on a calendar basis. However, if fiscal year data is provided, please specify the month in which the fiscal year begins and terminates.  Where information is requested "for each year," include the requested information for all prior years and also the requested information available for the current year and specify what portion of the current year is covered by such information.

– 6 –

5.      If information requested is not readily available from your records in exactly the form requested, furnish the information in the form maintained by you or carefully prepared estimates, designated as such and attach explanations of any estimate used and how the estimate was prepared.

6.      If you do not answer any request, or part thereof, because of a claim of privilege or any other claim, set forth the privilege claimed, the facts upon which you rely to support the claim or privilege and furnish a list identifying each item of information for which privilege is claimed, containing at least the following information:

     a.   The date the document was created;

     b.   The names of the owner or author(s)/sender(s) of the document;

     c.   If the document is an email, the name of the recipient(s), including copy and blind copy recipients;

     d.   A brief description of the document and type of legal advice; and

     e.   The grounds for the claim or privilege (e.g., attorney work product, attorney-client communication).

The sender(s) and recipient(s) shall be identified by position and entity (corporation or firm, etc.) with which they are employed or associated. If the sender or recipient is an attorney or foreign patent agent, he or she should be so identified. In the case of a foreign patent agent, there should be a statement of whether the laws of the agent's country grant privileged status to a patent agent's communication. The type of privilege claimed must also be stated, together with certification that all elements of the claimed privilege have been met and not waived with respect to each document.

7.      Technical terms shall have their normal technical meaning. If you find the meaning of any term in these requests to be unclear, you must assume a reasonable meaning, state what the assumed meaning is, and answer on the basis of that assumed meaning. If you wish to clarify your interpretation of any particular term that it relied on in answering a request, you should do so in its answer.

8.      To the extent that any portion of an request requires the production of documents that were at one time within Aqua's possession, custody, or control, but which are now in the possession, custody, or control of another, Aqua is directed to identify such documents in a manner sufficient to describe such documents for the purpose of preparing and serving a proper subpoena and to give the name, telephone number, address, and e-mail address of the person last known by Aqua to have been in possession, custody, or control of such documents.

## REQUESTS FOR PRODUCTION

1.      All documents concerning each agreement, proposal, offer or other discussions by you or your predecessors in interest, including any prior patent owner, regarding actual or potential licensing or sale of any asserted patent, related patent, or related application, whether individually or in combination with any other patents or applications, including communications regarding such a proposal, draft agreements, and executed agreements.

2.      Documents sufficient to identify all attempts to license, sell, or assign: (1) any asserted patent, related patent, or related application, and/or (2) any rights to or interests in any asserted patent, related patent, or related application, and the people responsible for any attempts to license, sell, or assign any asserted patent.

3.      All documents concerning any decision to license, sell, or assign any asserted patent, related patent, or related application and/or any rights to or interests in any asserted patent, related patent, or related application.

4.      Documents sufficient to identify all entities which have participated in the licensing, assignment, or sale of any asserted patent, related patent, or related application.

5.      Documents sufficient to identify all entities of which you are aware that are currently, or were previously, licensed to any asserted patent, related patent, or related application including but not limited to those entities listed in the Telecommunications White List dated August 22, 2017.

6.      Documents sufficient to identify all products of which you are/were aware that practiced or currently practice any claim of any asserted patent, related patent, or related application and all allegations of which you are/were aware that products practiced or currently practice any claim of any asserted patent, related patent, or related application.

7.      All documents concerning any proposals to license, negotiations, discussions, offers to license, presentations, or any other communications, regarding any potential agreement concerning any asserted patent, related patent, or related application, including communications, draft agreements, and executed agreements concerning any potential license including any asserted patent, related patent, or related application.

8.      All documents concerning any current or former right, title, or interest in any asserted patent, related patent, or related application, including the chain of title, as well as all promises, transfers, liens, assignments, encumbrances, and agreements.

– 9 –

9.      All documents concerning the value of, any valuations of or attempts to value any asserted patent, related patent, or related application, whether individually or in combination with any other patents or applications, including of any portfolio containing any asserted patent or related patent.

10.     All documents concerning any ranking (in terms of strength, value, or otherwise) or rating of, or attempts to rank or rate any asserted patent, related patent, related application, whether individually or in combination with any other patents or applications, or any portfolio containing any asserted patent or related patent.

11.     All documents concerning any evaluation or analysis of any asserted patent, any related patent, or any related application, whether individually or in combination with any other patents or applications, including any evaluation or analysis of infringement, validity, or commercialization.

12.     All documents concerning each proposal, offer or other discussions by you or your predecessors in interest, regarding actual or potential agreements with Allied Security Trust, or WSOU regarding any asserted patent including communications regarding such a proposal, draft agreements, and executed agreements.

13.     All documents concerning any agreement with WSOU.

14.     All documents concerning each proposal, offer or other discussions by you or your predecessors in interest, regarding actual or potential agreements with WSOU or any subsidiary or affiliate of WSOU including communications regarding such a proposal, draft agreements, and executed agreements.

15.     All communications with Google regarding any asserted patents or related patents, including communications regarding your 2017 offer to Google to license a portfolio of former Nokia and Alcatel-Lucent Telecommunications patents.

16.     All documents regarding your 2017 offer to Google to license a portfolio of former Nokia and Alcatel-Lucent Telecommunications patents.

17.     All documents regarding any discussions or proposals with Google subsequent to 2017 regarding WSOU and/or a portfolio of former Nokia and Alcatel-Lucent Telecommunications.

18.     Any spreadsheet provided to Google by Mark McMillian at Aqua Licensing by email dated September 24, 2018.

19.     Any communications with Alcatel or Nokia regarding the asserted or related patents.

20.     Any communications with one or more of the Other WSOU Defendants concerning WSOU, the asserted patents, or the related patents.

## **TOPICS FOR DEPOSITION**

1.     The subject matter of all requests for production listed above.

2.     The authenticity of the documents produced in response to this subpoena.

3.     All attempts to license, sell, or assign: (1) any asserted patent, related patent, or related application, and/or (2) any rights to or interests in any asserted patent, related patent, or related application, and the people responsible for any attempts to license, sell, or assign any asserted patent.

4.      Any decision to license, sell, or assign any asserted patent, related patent, or related application and/or any rights to or interests in any asserted patent, related patent, or related application.

5.      The identity of all entities which have participated in the licensing, assignment, or sale of any asserted patent, related patent, or related application.

6.      The current or former right, title, or interest in any asserted patent, related patent, or related application, including the chain of title, as well as all promises, transfers, liens, assignments, encumbrances, and agreements.

7.      The value of, any valuations of or attempts to value any asserted patent, related patent, or related application, whether individually or in combination with any other patents or applications, including of any portfolio containing any asserted patent or related patent.

8.      Your current or former right, title, or interest in any asserted patent, related patent, or related application, including the chain of title, as well as all promises, transfers, liens, assignments, encumbrances, and agreements.

9.      The value of, any valuations of or attempts to value any asserted patent, related patent, or related application, whether individually or in combination with any other patents or applications, including of  or any portfolio containing any asserted patent or related patent.

10.      Your ranking (in terms of strength, value, or otherwise) or rating of, or attempts to rank or rate any asserted patent, related patent, related application, whether individually or in combination with any other patents or applications, or any portfolio containing any asserted patent or related patent.

11.     Your evaluation or analysis of any asserted patent, any related patent, or any related application, whether individually or in combination with any other patents or applications, including any evaluation or analysis of infringement, validity, or commercialization.

12.     Your proposals, offers or other discussions by you or your predecessors in interest, regarding actual or potential agreements with Allied Security Trust, or WSOU, LLC regarding any asserted patent including communications regarding such a proposal, draft agreements, and executed agreements.

13.     All agreements between you and WSOU.

14.     Proposals, offers or other discussions by you or your predecessors in interest, regarding actual or potential agreements with WSOU or any subsidiary or affiliate of WSOU including communications regarding such a proposal, draft agreements, and executed agreements.

15.     Your communications with Google regarding any asserted patents or related patents, including communications regarding your 2017 offer to Google to license a portfolio of former Nokia and Alcatel-Lucent Telecommunications patents.

16.     Your 2017 offer to Google to license a portfolio of former Nokia and Alcatel-Lucent Telecommunications patents.

17.     Any communications with Alcatel or Nokia regarding the asserted or related patents.

18.     Any communications with one of more of the Other WSOU Defendants concerning WSOU, the asserted patents, or the related patents.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| WSOU INVESTMENTS, LLC d/b/a | § | 6:20-cv-571 |
| BRAZOS LICENSING AND | § | 6:20-cv-572 |
| DEVELOPMENT, | § | 6:20-cv-573 |
| | § | 6:20-cv-574 |
| Plaintiff, | § | 6:20-cv-575 |
| | § | 6:20-cv-576 |
| v. | § | 6:20-cv-577 |
| | § | 6:20-cv-578 |
| GOOGLE LLC, | § | 6:20-cv-579 |
| | § | 6:20-cv-580 |
| Defendant. | § | 6:20-cv-583 |
| | § | 6:20-cv-584 |
| | § | 6:20-cv-585 |

**NOTICE OF SUBPOENA**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendant Google LLC will serve the attached subpoena

for deposition and the production of documents and things.

Date:  July 21, 2021                  Respectfully submitted,

Michael E. Jones (Texas Bar No. 10929400)
Patrick C. Clutter (Texas Bar No. 24036374)
**Potter Minton, P.C.**
110 North College, Suite 500
Tyler, Texas, 75702
+1 (903) 597-8311
+1 (903) 593-0846 facsimile
mikejones@potterminton.com
patrickclutter@potterminton.com

Matthew S. Warren (California Bar No. 230565)
Jennifer A. Kash (California Bar No. 203679)
*(pro hac vice)*
Erika Warren (California Bar No. 295570)
**Warren Lex LLP**

– 1 –

2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
20-585@cases.warrenlex.com

Tharan G. Lanier (California Bar No. 138784)
*(pro hac vice)*
**Jones Day**
1755 Embarcadero Road
Palo Alto, California, 94303
+1 (650) 739-3939
+1 (650) 739-3900 facsimile
tglanier@jonesday.com

*Attorneys for Defendant Google LLC*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on July 21, 2021, I served the foregoing Notice of Subpoena by

electronic mail to counsel of record.

Ellie Silberhorn

AO 88A  (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Western District of Texas

| | | | |
|---|---|---|---|
| WSOU Investments LLC | ) | | 6:20-cv-571 |
| | ) | | 6:20-cv-572 |
| *Plaintiff* | ) | | 6:20-cv-573 |
| | ) | | 6:20-cv-574 |
| v. | ) | Civil Action No. | 6:20-cv-575 |
| | ) | | 6:20-cv-576 |
| Google LLC | ) | | 6:20-cv-577 |
| | ) | | 6:20-cv-578 |
| *Defendant* | ) | | 6:20-cv-579 |

6:20-cv-571
6:20-cv-572
6:20-cv-573
6:20-cv-574
6:20-cv-575
6:20-cv-576
6:20-cv-577
6:20-cv-578
6:20-cv-579
6:20-cv-580
6:20-cv-582
6:20-cv-584
6:20-cv-585

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:   Aqua Licensing LLC
      9 E. Loockerman Street, Suite 311, Dover, Delaware 19901

*(Name of person to whom this subpoena is directed)*

☑ *Testimony:*  **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place:  1568 North Dupont Highway<br>Dover, Delaware 19901 | Date and Time:<br>August 4, 2021 |
|---|---|

The deposition will be recorded by this method:    Stenographic, video and audio recording

☑ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

See Exhibit A

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   July 21, 2021

| | | |
|---|---|---|
| *CLERK OF COURT* | OR | |
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*
Google LLC                                                      , who issues or requests this subpoena, are:

Jennifer A. Kash, Warren Lex LLP, 2261 Market Street, San Francisco, CA 94114; jen@warrenlex.com; 415-895-2923

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❒ I served the subpoena by delivering a copy to the named individual as follows: _____

_____

_____ on *(date)* _____ ; or

❒ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

# Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person

**(i)** is a party or a party's officer; or

**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:

**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## EXHIBIT A

## DEFINITIONS

1.      The term "WSOU v. Google Litigations" means 6:20-cv-00571, 6:20-cv-00572, 6:20-cv-00573, 6:20-cv-00574, 6:20-cv-00575, 6:20-cv-00576, 6:20-cv-00577, 6:20-cv-00578, 6:20-cv-00579, 6:20-cv-00580, 6:20-cv-00583, 6:20-cv-00584, 6:20-cv-00585.

2.      The terms "WSOU," shall mean plaintiff WSOU Investments, LLC, WSOU Holdings, LLC, WSOU Investments II, LLC, WSOU Capital Partners, LLC, and their officers, directors, principals, current and former employees, counsel, agents, consultants, representatives, and any other persons acting on behalf of any of the foregoing; as well as its affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that are owned, controlled by, or under common control with it, and all predecessors and successors in interest to such entities.

3.      The term "Defendant" or "Google" shall mean Google LLC, and shall include, individually or collectively, any and all of its past and present officers, directors, partners, trustees, employees, corporate parents, subsidiaries, predecessors, affiliates, agents, representatives, and attorneys.

4.      The term "AQUA," "you," and "your" shall mean Aqua Licensing, LLC, its current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share

common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

5.      The term "asserted patent" shall mean any patent asserted in the WSOU v. Google litigations, including without limitation, U.S. Patent Nos. 7,620,967, 7,777,728, 7,817,858, 7,946,491, 8,041,806, 8,559,928, 8,595,283, 8,640,180, 8,737,961, 8,751,585, 8,803,697, 8,965,045, 9,335,825.

6.      The term "AST" shall mean Allied Security Trust, a Delaware statutory trust; and their trustees, managers, agents, representatives, employees, attorneys, or entities acting in conjunction, joint venture, or partnership with any of them.

7.      The term "affiliates" shall mean any entity, including parent companies and majority-owned subsidiaries, now or hereafter acquired or formed that is directly or indirectly controlled by a party, or is under common control with a party, or is an entity that controls a party, as well as all predecessors and successors of such entities. For this purpose "control" means direct or indirect ownership of, or the right to exercise, at least 50% of the voting power, or at least 50% of the ownership interest representing either the irrevocable right to name a majority of the members of the governing body of such entity, or the right to make binding decisions for the entity.

8.      The term "related application" shall mean any patent or application related to a patent, including any application or other filing from which the patent claims priority, any foreign counterpart patents or applications, whether by continuation, continuation-in-part, division, reexamination, correction or re-issue, and whether issued, pending, or abandoned.

– 2 –

9.      The term "related patent" shall mean any patent, including any foreign counterpart patent and any patent which may have been opposed, contested or subjected to any nullity proceedings, that is based in whole or in part on any related application.

10.     The term "named inventor" means any person or persons named as an inventor on the face of any asserted patent or related patent.

11.     The term "accused product" shall mean any item, device, or product that WSOU contends infringes one or more claims of any asserted patent.

12.     The term "asserted claim" shall mean any claim of any asserted patent that WSOU contends has been infringed by Google.

13.     The terms "including" or "that includes" mean including without limitation.

14.     The term "person" includes any individual, corporation, proprietorship, association, joint venture, company, partnership or other business or legal entity, including governmental bodies and agencies.

15.     The term "prior patent owner" shall mean any person that owned any interest in the patent-in-suit or any application leading to the patent-in-suit.

16.     The terms "concerning," "regarding," "relating to," or "related to" in regard to a particular subject shall mean, without limitation, concerning, constituting, contradicting, comprising, commenting on, containing, describing, discussing, embodying, evidencing, identifying, involving, mentioning, pertaining to, referring to, reflecting, regarding, relating to, responding to, stating, supporting, tending to support or refute, relating or referring (directly or indirectly) to or in any way, the particular subject matter identified, in whole or in part.

17.     The term "document," as used herein, has the same meaning it has under Rule 34 of the Federal Rule of Civil Procedure and includes all written, graphic or otherwise recorded material, including microfilms or other film records or impressions, electronically stored information regardless of the form of storage medium, tape recordings or computer cards, floppy disks or printouts, papers, photographs, films, recordings, memoranda, books, records, accounts, communications, letters, telegrams, correspondence, notes of meetings, notes of conversations, notes of telephone calls, inter-office memoranda or written communications, recordings of conversations either in writing on any mechanical or electronic recording device, including email, notes, papers, reports, analyses, invoices, canceled checks or check stubs, receipts, minutes of meetings, time sheets, diaries, desk calendars, ledgers, schedules, licenses, financial statements, telephone bills, logs, and any differing versions of any of the foregoing, whether so denominated, formal, informal or otherwise, as well as copies of the foregoing which differ in any way, including by the addition of handwritten notations or other written or printed matter, from the original, and further includes information stored in a computer database and capable of being generated in documentary form, such as electronic mail.

18.     "Communications" includes any transmission, conveyance or exchange of a word, statement, fact, thing, idea, document, instruction, information, demand or question by any medium, whether by written, oral or other means, including but not limited to, electronic communications and electronic mail.

19.     Use of the singular also includes the plural and vice-versa.

– 4 –

20.     The terms "or" and "and" shall be both conjunctive and disjunctive wherever they appear, and neither of these words shall be interpreted to limit the scope of these discovery requests.

21.     The words "any" and "each" shall be construed to encompass the word "all."

22.     A verb in any tense shall mean the verb in all other tenses.

23.     The term "Alcatel" shall mean Alcatel-Lucent International and all parents, subsidiaries, affiliates, predecessors, successors, including but not limited to Alcatel and Lucent Technologies.

24.     "Nokia" shall mean Nokia Corporation and all parents, subsidiaries, affiliates, predecessors, including but not limited to Nokia Technologies Oy and Nokia Solutions and Networks BV.

25.     "Other WSOU Defendants" shall mean any and all companies that WSOU haas sued in patent litigation matters, including but not limited to ZTE Corporation, ZTE (USA), Inc., ZTE (TX), Inc.; Microsoft Corporation; Dell Technologies, Inc., Dell Inc., EMC Corporation, VMWare, Inc.; Huawei Technologies Co.,Ltd., Huawei Technologies USA Inc., Huawei Device (Shenzen) Co., Ltd. (f/k/a Huawei Device Co., Ltd.), Huawei Device USA, Inc., Huawei Investment & Holding Co., Ltd.; Hewlett Packard Enterprise Company; Juniper Enterprise Networks, Inc.;Xilinx, Inc.; NEC Corporation; OnePlus Technology (Shenzen) Co., Ltd.; Canon, Inc.;TP-Link Technology Co., Ltd.; F5 Networks, Inc.; Arista Networks, Inc.; Salesforce.com; Cisco Systems, Inc.; Netgear, Inc..

## INSTRUCTIONS

1.       The singular form of a word should be interpreted in the plural as well. Any pronoun shall be construed to refer to the masculine, feminine or neutral gender as in such case is most appropriate.  The words "and" and "or" shall be construed conjunctively or disjunctively, whichever makes the request most inclusive.  The words "any" and "each" shall be construed to encompass the word "all."  The past tense shall be interpreted to include the present tense where the meaning is not distorted and the verb form of a noun or pronoun may be used, as appropriate in a particular context.

2.       In the event that you object to any document request on the ground that it is overbroad and/or unduly burdensome for any reason, respond to that document request as narrowed to the least extent necessary, in your judgment, to render it not overbroad/unduly burdensome and state specifically the extent to which you have narrowed that document request for purposes of your response.

3.       In the event that you object to any document request on the ground that it is vague and/or ambiguous, identify the particular words, terms or phrases that are asserted to make such request vague and/or ambiguous and specify the meaning actually attributed to you by such words for purposes of your response thereto.

4.       If possible, supply all annual data requested on a calendar basis. However, if fiscal year data is provided, please specify the month in which the fiscal year begins and terminates.  Where information is requested "for each year," include the requested information for all prior years and also the requested information available for the current year and specify what portion of the current year is covered by such information.

– 6 –

5.      If information requested is not readily available from your records in exactly the form requested, furnish the information in the form maintained by you or carefully prepared estimates, designated as such and attach explanations of any estimate used and how the estimate was prepared.

6.      If you do not answer any request, or part thereof, because of a claim of privilege or any other claim, set forth the privilege claimed, the facts upon which you rely to support the claim or privilege and furnish a list identifying each item of information for which privilege is claimed, containing at least the following information:

     a.   The date the document was created;

     b.   The names of the owner or author(s)/sender(s) of the document;

     c.   If the document is an email, the name of the recipient(s), including copy and blind copy recipients;

     d.   A brief description of the document and type of legal advice; and

     e.   The grounds for the claim or privilege (e.g., attorney work product, attorney-client communication).

The sender(s) and recipient(s) shall be identified by position and entity (corporation or firm, etc.) with which they are employed or associated. If the sender or recipient is an attorney or foreign patent agent, he or she should be so identified. In the case of a foreign patent agent, there should be a statement of whether the laws of the agent's country grant privileged status to a patent agent's communication. The type of privilege claimed must also be stated, together with certification that all elements of the claimed privilege have been met and not waived with respect to each document.

7.      Technical terms shall have their normal technical meaning. If you find the meaning of any term in these requests to be unclear, you must assume a reasonable meaning, state what the assumed meaning is, and answer on the basis of that assumed meaning. If you wish to clarify your interpretation of any particular term that it relied on in answering a request, you should do so in its answer.

8.      To the extent that any portion of an request requires the production of documents that were at one time within Aqua's possession, custody, or control, but which are now in the possession, custody, or control of another, Aqua is directed to identify such documents in a manner sufficient to describe such documents for the purpose of preparing and serving a proper subpoena and to give the name, telephone number, address, and e-mail address of the person last known by Aqua to have been in possession, custody, or control of such documents.

## **REQUESTS FOR PRODUCTION**

1.      All documents concerning each agreement, proposal, offer or other discussions by you or your predecessors in interest, including any prior patent owner, regarding actual or potential licensing or sale of any asserted patent, related patent, or related application, whether individually or in combination with any other patents or applications, including communications regarding such a proposal, draft agreements, and executed agreements.

2.      Documents sufficient to identify all attempts to license, sell, or assign: (1) any asserted patent, related patent, or related application, and/or (2) any rights to or interests in any asserted patent, related patent, or related application, and the people responsible for any attempts to license, sell, or assign any asserted patent.

3.      All documents concerning any decision to license, sell, or assign any asserted patent, related patent, or related application and/or any rights to or interests in any asserted patent, related patent, or related application.

4.      Documents sufficient to identify all entities which have participated in the licensing, assignment, or sale of any asserted patent, related patent, or related application.

5.      Documents sufficient to identify all entities of which you are aware that are currently, or were previously, licensed to any asserted patent, related patent, or related application including but not limited to those entities listed in the Telecommunications White List dated August 22, 2017.

6.      Documents sufficient to identify all products of which you are/were aware that practiced or currently practice any claim of any asserted patent, related patent, or related application and all allegations of which you are/were aware that products practiced or currently practice any claim of any asserted patent, related patent, or related application.

7.      All documents concerning any proposals to license, negotiations, discussions, offers to license, presentations, or any other communications, regarding any potential agreement concerning any asserted patent, related patent, or related application, including communications, draft agreements, and executed agreements concerning any potential license including any asserted patent, related patent, or related application.

8.      All documents concerning any current or former right, title, or interest in any asserted patent, related patent, or related application, including the chain of title, as well as all promises, transfers, liens, assignments, encumbrances, and agreements.

9.      All documents concerning the value of, any valuations of or attempts to value any asserted patent, related patent, or related application, whether individually or in combination with any other patents or applications, including of any portfolio containing any asserted patent or related patent.

10.     All documents concerning any ranking (in terms of strength, value, or otherwise) or rating of, or attempts to rank or rate any asserted patent, related patent, related application, whether individually or in combination with any other patents or applications, or any portfolio containing any asserted patent or related patent.

11.     All documents concerning any evaluation or analysis of any asserted patent, any related patent, or any related application, whether individually or in combination with any other patents or applications, including any evaluation or analysis of infringement, validity, or commercialization.

12.     All documents concerning each proposal, offer or other discussions by you or your predecessors in interest, regarding actual or potential agreements with Allied Security Trust, or WSOU regarding any asserted patent including communications regarding such a proposal, draft agreements, and executed agreements.

13.     All documents concerning any agreement with WSOU.

14.     All documents concerning each proposal, offer or other discussions by you or your predecessors in interest, regarding actual or potential agreements with WSOU or any subsidiary or affiliate of WSOU including communications regarding such a proposal, draft agreements, and executed agreements.

15.     All communications with Google regarding any asserted patents or related patents, including communications regarding your 2017 offer to Google to license a portfolio of former Nokia and Alcatel-Lucent Telecommunications patents.

16.     All documents regarding your 2017 offer to Google to license a portfolio of former Nokia and Alcatel-Lucent Telecommunications patents.

17.     All documents regarding any discussions or proposals with Google subsequent to 2017 regarding WSOU and/or a portfolio of former Nokia and Alcatel-Lucent Telecommunications.

18.     Any spreadsheet provided to Google by Mark McMillian at Aqua Licensing by email dated September 24, 2018.

19.     Any communications with Alcatel or Nokia regarding the asserted or related patents.

20.     Any communications with one or more of the Other WSOU Defendants concerning WSOU, the asserted patents, or the related patents.

**TOPICS FOR DEPOSITION**

1.     The subject matter of all requests for production listed above.

2.     The authenticity of the documents produced in response to this subpoena.

3.     All attempts to license, sell, or assign: (1) any asserted patent, related patent, or related application, and/or (2) any rights to or interests in any asserted patent, related patent, or related application, and the people responsible for any attempts to license, sell, or assign any asserted patent.

4.　　　Any decision to license, sell, or assign any asserted patent, related patent, or related application and/or any rights to or interests in any asserted patent, related patent, or related application.

5.　　　The identity of all entities which have participated in the licensing, assignment, or sale of any asserted patent, related patent, or related application.

6.　　　The current or former right, title, or interest in any asserted patent, related patent, or related application, including the chain of title, as well as all promises, transfers, liens, assignments, encumbrances, and agreements.

7.　　　The value of, any valuations of or attempts to value any asserted patent, related patent, or related application, whether individually or in combination with any other patents or applications, including of any portfolio containing any asserted patent or related patent.

8.　　　Your current or former right, title, or interest in any asserted patent, related patent, or related application, including the chain of title, as well as all promises, transfers, liens, assignments, encumbrances, and agreements.

9.　　　The value of, any valuations of or attempts to value any asserted patent, related patent, or related application, whether individually or in combination with any other patents or applications, including of  or any portfolio containing any asserted patent or related patent.

10.　　　Your ranking (in terms of strength, value, or otherwise) or rating of, or attempts to rank or rate any asserted patent, related patent, related application, whether individually or in combination with any other patents or applications, or any portfolio containing any asserted patent or related patent.

11.     Your evaluation or analysis of any asserted patent, any related patent, or any related application, whether individually or in combination with any other patents or applications, including any evaluation or analysis of infringement, validity, or commercialization.

12.     Your proposals, offers or other discussions by you or your predecessors in interest, regarding actual or potential agreements with Allied Security Trust, or WSOU, LLC regarding any asserted patent including communications regarding such a proposal, draft agreements, and executed agreements.

13.     All agreements between you and WSOU.

14.     Proposals, offers or other discussions by you or your predecessors in interest, regarding actual or potential agreements with WSOU or any subsidiary or affiliate of WSOU including communications regarding such a proposal, draft agreements, and executed agreements.

15.     Your communications with Google regarding any asserted patents or related patents, including communications regarding your 2017 offer to Google to license a portfolio of former Nokia and Alcatel-Lucent Telecommunications patents.

16.     Your 2017 offer to Google to license a portfolio of former Nokia and Alcatel-Lucent Telecommunications patents.

17.     Any communications with Alcatel or Nokia regarding the asserted or related patents.

18.     Any communications with one of more of the Other WSOU Defendants concerning WSOU, the asserted patents, or the related patents.

AO 88B  (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Western District of Texas

| | | |
|---|---|---|
| WSOU Investments LLC | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| Google LLC | ) | |
| *Defendant* | ) | |

20-571
20-572
20-573
20-575
20-576
20-579
20-580
20-583
20-584
20-585

(If the action is pending in another district, state where: _____ )

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:    BP Funding Trust
c/o Wilmington Savings Fund Society, FSB, 500 Delaware Avenue, 11th Floor, Wilmington, Delaware 19801

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

See Exhibit A

| Place: <br> Basye Santiago Reporting <br> 1201 N. Orange Street, Suite 7013, Wilmington, Delaware 19801 | Date and Time: <br> September 22, 2021 |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:    September 7, 2021

*CLERK OF COURT*

OR

_____          _____
*Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*  _____

Google LLC                                                                    , who issues or requests this subpoena, are:

Jennifer A. Kash, Warren Lex LLP, 2261 Market Street, San Francisco, CA 94114; jen@warrenlex.com; 415-895-2923

AO 88B  (Rev.  06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❒ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❒ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____0.00_____ .

I declare under penalty of perjury that this information is true.

Date: _____          _____
                                                *Server's signature*

                               _____
                                                *Printed name and title*

                               _____
                                                *Server's address*

Additional information regarding attempted service, etc:

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*

 **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

 **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

 **(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

 **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*

 **(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

 **(i)** fails to allow a reasonable time to comply;

 **(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

 **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

 **(iv)** subjects a person to undue burden.

 **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

 **(i)** disclosing a trade secret or other confidential research, development, or commercial information;

 **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

 **(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

 **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

 **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

 **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

 **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

 **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

 **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

 **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*

 **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

 **(i)** expressly make the claim; and

 **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

 **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

**EXHIBIT A**

**DEFINITIONS**

1.      The term "WSOU v. Google Litigations" means 6:20-cv-00571, 6:20-cv-00572, 6:20-cv-00573, 6:20-cv-00575, 6:20-cv-00576, 6:20-cv-00579, 6:20-cv-00580, 6:20-cv-00583, 6:20-cv-00584, 6:20-cv-00585.

2.      The terms "WSOU," shall mean plaintiff WSOU Investments, LLC, WSOU Holdings, LLC, WSOU Investments II, LLC, WSOU Capital Partners, LLC, and their officers, directors, principals, current and former employees, counsel, agents, consultants, representatives, and any other persons acting on behalf of any of the foregoing; as well as its affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that are owned, controlled by, or under common control with it, and all predecessors and successors in interest to such entities.

3.      The term "Defendant" or "Google" shall mean Google LLC, and shall include, individually or collectively, any and all of its past and present officers, directors, partners, trustees, employees, corporate parents, subsidiaries, predecessors, affiliates, agents, representatives, and attorneys.

4.      The term  "BP Funding Trust" or "you" or "your" means Basepoint Administrative LLC and BP Funding Trust, a Delaware statutory trust; BP Funding Trust, Series SPL-VI, a statutory series of BP Funding Trust; and their trustees, managers, agents, representatives, employees, attorneys, or entities acting in conjunction, joint venture, or partnership with any of them including but not limited to Basepoint Capital LLC, Basepoint Tax Funding Trust, Venture 4th Basepoint 1, LLC, Basepoint Administrative LLC, Basepoint Asset Recovery LLC, or any other "Basepoint" entity or related entity thereto.

– 1 –

5.      The term "Orange" and "Orange Holdings" shall mean Orange Holdings, its current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

6.      The term "WCFT Cayman" means WCFT Cayman, its current and former officers, directors, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

7.      The term "Wade and Company" means Wade and Company or Wade & Company, its current and former officers, directors, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

8.      The term "Omega Credit Opportunities Master Fund" means Omega Advisors, Inc.; Omega Credit Opportunities Master Fund, LP; OCO Opportunities Master Fund, L.P. (f/k/a Credit Opportunities Master Fund, LP), and their trustees, managers, agents, representatives,

employees, attorneys, or entities acting in conjunction, joint venture, or partnership with any of them.

9.      The term "Nokia" means Nokia of America Corporation, Nokia Corporation, Nokia Networks, Nokia Abp, Nokia Solutions and Networks Holdings USA Inc., Nokia USA Inc., Nokia Oyj, Nokia Technologies Oyj, Nokia Solutions and Networks B.V., Nokia Solutions and Networks Oyj, their current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing (including Alcatel Lucent, Alcatel Lucent Enterprises, Alcatel-Lucent International, Alcatel and Lucent Technologies), as well as predecessors and successors in interest to such entities.

10.      The term "AQUA" shall mean Aqua Licensing, LLC, its current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

11.      The term "Houlihan" shall mean Houlihan Lokey, Inc., its current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that

own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

12.     The term "Terrier" shall mean Terrier SSC, LLC, OT WSOU Terrier Holdings, LLC, its current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

13.     The term "Credit Suisse" means Credit Suisse AG, Credit Suisse Group AG, its current and former officers, directors, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

14.     The term "Juniper Capital Partners" shall mean Juniper Capital Partners, LLC, its current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

15.     The term "Coast Asset Management" shall mean Coast Asset Management, LLC, its current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

16.     The term "asserted patent" or "asserted patents" shall mean one or more of any patent asserted in the WSOU v. Google litigations, including without limitation, U.S. Patent Nos. 7,620,967, 7,777,728, 7,817,858, 7,946,491, 8,041,806, 8,559,928, 8,595,283, 8,640,180, 8,737,961, 8,803,697.

17.     The term "affiliates" shall mean any entity, including parent companies and majority-owned subsidiaries, now or hereafter acquired or formed that is directly or indirectly controlled by a party, or is under common control with a party, or is an entity that controls a party, as well as all predecessors and successors of such entities. For this purpose "control" means direct or indirect ownership of, or the right to exercise, at least 50% of the voting power, or at least 50% of the ownership interest representing either the irrevocable right to name a majority of the members of the governing body of such entity, or the right to make binding decisions for the entity.

18.     The term "related application" shall mean any patent or application related to a patent, including any application or other filing from which the patent claims priority, any foreign counterpart patents or applications, whether by continuation, continuation-in-part, division, reexamination, correction or re-issue, and whether issued, pending, or abandoned.

19.     The term "related patent" shall mean any patent, including any foreign counterpart patent and any patent which may have been opposed, contested or subjected to any nullity proceedings, that is based in whole or in part on any related application.

20.     The term "named inventor" means any person or persons named as an inventor on the face of any asserted patent or related patent.

21.     The term "accused product" shall mean any item, device, or product that WSOU contends infringes one or more claims of any asserted patent.

22.     The term "asserted claim" shall mean any claim of any asserted patent that WSOU contends has been infringed by Google.

23.     The terms "including" or "that includes" mean including without limitation.

24.     The term "person" includes any individual, corporation, proprietorship, association, joint venture, company, partnership or other business or legal entity, including governmental bodies and agencies.

25.     The term "prior patent owner" shall mean any person that owned any interest in the patent-in-suit or any application leading to the patent-in-suit.

26.     The terms "concerning," "regarding," "relating to," or "related to" in regard to a particular subject shall mean, without limitation, concerning, constituting, contradicting, comprising, commenting on, containing, describing, discussing, embodying, evidencing, identifying, involving, mentioning, pertaining to, referring to, reflecting, regarding, relating to, responding to, stating, supporting, tending to support or refute, relating or referring (directly or indirectly) to or in any way, the particular subject matter identified, in whole or in part.

27.     The term "document," as used herein, has the same meaning it has under Rule 34 of the Federal Rule of Civil Procedure and includes all written, graphic or otherwise recorded

material, including microfilms or other film records or impressions, electronically stored information regardless of the form of storage medium, tape recordings or computer cards, floppy disks or printouts, papers, photographs, films, recordings, memoranda, books, records, accounts, communications, letters, telegrams, correspondence, notes of meetings, notes of conversations, notes of telephone calls, inter-office memoranda or written communications, recordings of conversations either in writing on any mechanical or electronic recording device, including email, notes, papers, reports, analyses, invoices, canceled checks or check stubs, receipts, minutes of meetings, time sheets, diaries, desk calendars, ledgers, schedules, licenses, financial statements, telephone bills, logs, and any differing versions of any of the foregoing, whether so denominated, formal, informal or otherwise, as well as copies of the foregoing which differ in any way, including by the addition of handwritten notations or other written or printed matter, from the original, and further includes information stored in a computer database and capable of being generated in documentary form, such as electronic mail.

28.     "Communications" includes any transmission, conveyance or exchange of a word, statement, fact, thing, idea, document, instruction, information, demand or question by any medium, whether by written, oral or other means, including but not limited to, electronic communications and electronic mail.

29.     Use of the singular also includes the plural and vice-versa.

30.     The terms "or" and "and" shall be both conjunctive and disjunctive wherever they appear, and neither of these words shall be interpreted to limit the scope of these discovery requests.

31.     The words "any" and "each" shall be construed to encompass the word "all."

32.     A verb in any tense shall mean the verb in all other tenses.

33.     "Other WSOU Defendants" shall mean any and all companies that WSOU has

sued in patent litigation matters, including but not limited to ZTE Corporation, ZTE (USA), Inc.,

ZTE (TX), Inc.; Microsoft Corporation; Dell Technologies, Inc., Dell Inc., EMC Corporation,

VMWare, Inc.; Huawei Technologies Co., Ltd., Huawei Technologies USA Inc., Huawei Device

(Shenzen) Co., Ltd. (f/k/a Huawei Device Co., Ltd.), Huawei Device USA, Inc., Huawei

Investment & Holding Co., Ltd.; Hewlett Packard Enterprise Company; Juniper Enterprise

Networks, Inc.; Xilinx, Inc.; NEC Corporation; OnePlus Technology (Shenzen) Co., Ltd.;

Canon, Inc.; TP-Link Technology Co., Ltd.; F5 Networks, Inc.; Arista Networks, Inc.;

Salesforce.com; Cisco Systems, Inc.; Netgear, Inc.

## **INSTRUCTIONS**

1.     The singular form of a word should be interpreted in the plural as well. Any

pronoun shall be construed to refer to the masculine, feminine or neutral gender as in such case is

most appropriate.  The words "and" and "or" shall be construed conjunctively or disjunctively,

whichever makes the request most inclusive.  The words "any" and "each" shall be construed to

encompass the word "all."  The past tense shall be interpreted to include the present tense where

the meaning is not distorted and the verb form of a noun or pronoun may be used, as appropriate

in a particular context.

2.     In the event that you object to any document request on the ground that it is

overbroad and/or unduly burdensome for any reason, respond to that document request as

narrowed to the least extent necessary, in your judgment, to render it not overbroad/unduly

burdensome and state specifically the extent to which you have narrowed that document request

for purposes of your response.

3.      In the event that you object to any document request on the ground that it is vague and/or ambiguous, identify the particular words, terms or phrases that are asserted to make such request vague and/or ambiguous and specify the meaning actually attributed to you by such words for purposes of your response thereto.

4.      If possible, supply all annual data requested on a calendar basis. However, if fiscal year data is provided, please specify the month in which the fiscal year begins and terminates.  Where information is requested "for each year," include the requested information for all prior years and also the requested information available for the current year and specify what portion of the current year is covered by such information.

5.      If information requested is not readily available from your records in exactly the form requested, furnish the information in the form maintained by you or carefully prepared estimates, designated as such and attach explanations of any estimate used and how the estimate was prepared.

6.      If you do not answer any request, or part thereof, because of a claim of privilege or any other claim, set forth the privilege claimed, the facts upon which you rely to support the claim or privilege and furnish a list identifying each item of information for which privilege is claimed, containing at least the following information:

    a.  The date the document was created;

    b.  The names of the owner or author(s)/sender(s) of the document;

    c.  If the document is an email, the name of the recipient(s), including copy and blind copy recipients;

    d.  A brief description of the document and type of legal advice; and

e.   The grounds for the claim or privilege (e.g., attorney work product,

attorney-client communication).

The sender(s) and recipient(s) shall be identified by position and entity (corporation or

firm, etc.) with which they are employed or associated. If the sender or recipient is an attorney or

foreign patent agent, he or she should be so identified. In the case of a foreign patent agent, there

should be a statement of whether the laws of the agent's country grant privileged status to a

patent agent's communication. The type of privilege claimed must also be stated, together with

certification that all elements of the claimed privilege have been met and not waived with respect

to each document.

7.     Technical terms shall have their normal technical meaning. If you find the

meaning of any term in these requests to be unclear, you must assume a reasonable meaning,

state what the assumed meaning is, and answer on the basis of that assumed meaning. If you

wish to clarify your interpretation of any particular term that it relied on in answering a request,

you should do so in its answer.

8.     To the extent that any portion of a request requires the production of documents

that were at one time within your possession, custody, or control, but which are now in the

possession, custody, or control of another, you are directed to identify such documents in a

manner sufficient to describe such documents for the purpose of preparing and serving a proper

subpoena and to give the name, telephone number, address, and e-mail address of the person last

known by you to have been in possession, custody, or control of such documents.

## <u>REQUESTS FOR PRODUCTION</u>

1.     Documents concerning the formation of BP Funding Trust.

2.     Documents concerning your relationship to NextPoint Acquisition Corp.

– 10 –

3.      Documents concerning your corporate structure.

4.      Documents concerning your investments or interests in the asserted patents, including assignment, licensing, acquisition, financial interest, security interest, lien, sale, transfer of rights (in whole or in part) and any other disposition of or any offers to buy, sell, obtain rights to, or licenses any of the asserted patents.

5.      Documents concerning discussions with NextPoint Acquisition Corp. regarding any asserted patent, a portfolio including an asserted patent, assignment of any interest in any asserted patent or a portfolio including an asserted patent, or the acquisition or potential acquisition of any portfolio that might have included an asserted patent.

6.      Documents concerning discussions with Terrier regarding any asserted patent, a portfolio including an asserted patent, assignment of any interest in any asserted patent or a portfolio including an asserted patent, or the acquisition or potential acquisition of any portfolio that might have included an asserted patent.

7.      Agreements with Terrier concerning any potential or actual transaction regarding any asserted patent, a portfolio including an asserted patent, or the acquisition or potential acquisition of any portfolio that might have included an asserted patent.

8.      Agreements with the named inventor(s) of any of the asserted patents, including assignment agreements, consulting agreements, employment agreements and any agreements pertaining to litigation involving the asserted patents or any related patents.

9.      Compensation, cost-sharing, or profit sharing agreements with any of the named inventor(s) of the asserted patent(s).

10.     Documents regarding the assignment, licensing, acquisition, financial interest, security interest, lien, sale, transfer of rights (in whole or in part) and any other disposition of or any offers to buy, sell, obtain rights to, or licenses any of the asserted patents.

11.     Documents concerning the nature and scope of any rights you had in the past or currently have in each of the asserted patents, related applications or related patents from the time each alleged invention was conceived through the present, including the right to control any portion of litigation, future royalties, payment for licenses, contingent rights, or payments depending on the outcome of litigation.

12.     Documents regarding agreements relating to each of the asserted patents (or any portfolio including any of the asserted patents), including assurances, covenants not to sue and understandings not to assert any of the asserted patents against potential licensees.

13.     Documents regarding agreements between you and WSOU, Allied Security Trust, AQUA Licensing, LLC, RPX Corporation, Fortress Credit Co., LLC, Houlihan, Orange Holdings, Wade and Company, Omega Credit Opportunities Master Fund, Terrier, Juniper Capital Partners, Coast Asset Management, or WCFT Cayman, regarding any asserted patent, a portfolio including an asserted patent, or the acquisition or potential acquisition of any portfolio that might have included an asserted patent, including any amendment, modification, supplementation, abrogation, or termination of any such agreements.

14.     Documents regarding agreements with Nokia or other WSOU Defendants regarding an asserted patent or a portfolio including an asserted patent.

15.     Communications with Nokia, Allied Security Trust, AQUA, RPX Corporation, Fortress Credit Co., LLC, Houlihan, WSOU, Orange Holdings, Wade and Company, Omega Credit Opportunities Master Fund, Terrier, Juniper Capital Partners, Coast Asset Management, or

WCFT Cayman regarding an asserted patent, a portfolio including an asserted patent, or actual or potential litigation relating to an asserted patent.

16.     Documents concerning communications with any of the named inventors regarding any of the asserted patents, this litigation or Google.

17.     Communications with WSOU regarding the asserted patent, related patents, this litigation or Google.

18.     Documents concerning communications between you and any other entity relating to the possibility of patent litigation regarding the asserted patent and related patents, including any actual or potential patent litigation against Google and the WSOU v. Google Litigations.

19.     Documents concerning any contemplated acquisition of patents or rights in patents from Nokia.

20.     Documents sufficient to show any interests (current or prior) in WSOU.

21.     Documents sufficient to show any actual, contingent, or potential (1) right to license or sublicense any asserted patent, (2) right to control the licensing of any asserted patent, or (3) right to control or be involved in the resolution of any litigation involving any asserted patent.

22.     Documents sufficient to show your relationship with Stuart A. Shanus, Eric Schneider, Andrew Neuberger, Marc Wade, or Craig Etchegoyen, Orange Holdings, WSOU, Uniloc USA, Inc., WCFT Cayman, Omega Credit Opportunities Master Fund, Wade and Company, and Terrier, or any entity associated with the foregoing.

23.     Documents concerning communications with Omega Credit Opportunities Master Fund.

24.     Documents concerning the "Patent Security Agreement" recorded at USPTO Reel 09235 Frame 0068, signed May 16, 2019, the circumstances of this agreement, and any related agreements.

25.     Documents concerning the value of, any valuations of or attempts to value any asserted patent, related patent, or related application, whether individually or in combination with any other patents or applications, including any portfolio containing any asserted patent or related patent.

26.     Documents concerning any evaluation or analysis of any asserted patent, any related patent, or any related application, whether individually or in combination with any other patents or applications, including any evaluation or analysis of infringement, validity, or commercialization.

27.     Documents produced in response to a subpoena served by any other WSOU Defendant.

AO 88A  (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Western District of Texas

| | | | |
|---|---|---|---|
| WSOU Investments LLC | ) | | 20-571 |
| _Plaintiff_ | ) | | 20-572 |
| v. | ) | Civil Action No. | 20-573 |
| | ) | | 20-575 |
| Google LLC | ) | | 20-576 |
| _Defendant_ | ) | | 20-579 |

20-571
20-572
20-573
20-575
20-576
20-579
20-580
20-583
20-584
20-585

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:   BP Funding Trust
c/o Wilmington Savings Fund Society, FSB, 500 Delaware Avenue, 11th Floor, Wilmington, Delaware 19801

_(Name of person to whom this subpoena is directed)_

☑ _Testimony:_ **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

See Exhibit A

| Place: Basye Santiago Reporting 1201 N. Orange Street, Suite 7013, Wilmington, Delaware 19801 | Date and Time: September 22, 2021 |
|---|---|

The deposition will be recorded by this method:   Stenographic, video and audio recording

❒ _Production:_  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   September 7, 2021

_CLERK OF COURT_

OR

_____          _____
_Signature of Clerk or Deputy Clerk_               _Attorney's signature_

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_ _____
Google LLC , who issues or requests this subpoena, are:

Jennifer A. Kash, Warren Lex LLP, 2261 Market Street, San Francisco, CA 94114; jen@warrenlex.com; 415-895-2923

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named individual as follows: _____

_____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***

  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**EXHIBIT A**

**DEFINITIONS**

1.      The term "WSOU v. Google Litigations" means 6:20-cv-00571, 6:20-cv-00572, 6:20-cv-00573, 6:20-cv-00575, 6:20-cv-00576, 6:20-cv-00579, 6:20-cv-00580, 6:20-cv-00583, 6:20-cv-00584, 6:20-cv-00585.

2.      The terms "WSOU," shall mean plaintiff WSOU Investments, LLC, WSOU Holdings, LLC, WSOU Investments II, LLC, WSOU Capital Partners, LLC, and their officers, directors, principals, current and former employees, counsel, agents, consultants, representatives, and any other persons acting on behalf of any of the foregoing; as well as its affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that are owned, controlled by, or under common control with it, and all predecessors and successors in interest to such entities.

3.      The term "Defendant" or "Google" shall mean Google LLC, and shall include, individually or collectively, any and all of its past and present officers, directors, partners, trustees, employees, corporate parents, subsidiaries, predecessors, affiliates, agents, representatives, and attorneys.

4.      The term  "BP Funding Trust" or "you" or "your" means Basepoint Administrative LLC and BP Funding Trust, a Delaware statutory trust; BP Funding Trust, Series SPL-VI, a statutory series of BP Funding Trust; and their trustees, managers, agents, representatives, employees, attorneys, or entities acting in conjunction, joint venture, or partnership with any of them including but not limited to Basepoint Capital LLC, Basepoint Tax Funding Trust, Venture 4th Basepoint 1, LLC, Basepoint Administrative LLC, Basepoint Asset Recovery LLC, or any other "Basepoint" entity or related entity thereto.

5.     The term "Orange" and "Orange Holdings" shall mean Orange Holdings, its current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

6.     The term "WCFT Cayman" means WCFT Cayman, its current and former officers, directors, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

7.     The term "Wade and Company" means Wade and Company or Wade & Company, its current and former officers, directors, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

8.     The term "Omega Credit Opportunities Master Fund" means Omega Advisors, Inc.; Omega Credit Opportunities Master Fund, LP; OCO Opportunities Master Fund, L.P. (f/k/a Credit Opportunities Master Fund, LP), and their trustees, managers, agents, representatives,

employees, attorneys, or entities acting in conjunction, joint venture, or partnership with any of them.

9.      The term "Nokia" means Nokia of America Corporation, Nokia Corporation, Nokia Networks, Nokia Abp, Nokia Solutions and Networks Holdings USA Inc., Nokia USA Inc., Nokia Oyj, Nokia Technologies Oyj, Nokia Solutions and Networks B.V., Nokia Solutions and Networks Oyj, their current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing (including Alcatel Lucent, Alcatel Lucent Enterprises, Alcatel-Lucent International, Alcatel and Lucent Technologies), as well as predecessors and successors in interest to such entities.

10.     The term "AQUA" shall mean Aqua Licensing, LLC, its current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

11.     The term "Houlihan" shall mean Houlihan Lokey, Inc., its current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that

own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

12.     The term "Terrier" shall mean Terrier SSC, LLC, OT WSOU Terrier Holdings, LLC, its current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

13.     The term "Credit Suisse" means Credit Suisse AG, Credit Suisse Group AG, its current and former officers, directors, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

14.     The term "Juniper Capital Partners" shall mean Juniper Capital Partners, LLC, its current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

15.     The term "Coast Asset Management" shall mean Coast Asset Management, LLC, its current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

16.     The term "asserted patent" or "asserted patents" shall mean one or more of any patent asserted in the WSOU v. Google litigations, including without limitation, U.S. Patent Nos. 7,620,967, 7,777,728, 7,817,858, 7,946,491, 8,041,806, 8,559,928, 8,595,283, 8,640,180, 8,737,961, 8,803,697.

17.     The term "affiliates" shall mean any entity, including parent companies and majority-owned subsidiaries, now or hereafter acquired or formed that is directly or indirectly controlled by a party, or is under common control with a party, or is an entity that controls a party, as well as all predecessors and successors of such entities. For this purpose "control" means direct or indirect ownership of, or the right to exercise, at least 50% of the voting power, or at least 50% of the ownership interest representing either the irrevocable right to name a majority of the members of the governing body of such entity, or the right to make binding decisions for the entity.

18.     The term "related application" shall mean any patent or application related to a patent, including any application or other filing from which the patent claims priority, any foreign counterpart patents or applications, whether by continuation, continuation-in-part, division, reexamination, correction or re-issue, and whether issued, pending, or abandoned.

– 5 –

19.     The term "related patent" shall mean any patent, including any foreign counterpart patent and any patent which may have been opposed, contested or subjected to any nullity proceedings, that is based in whole or in part on any related application.

20.     The term "named inventor" means any person or persons named as an inventor on the face of any asserted patent or related patent.

21.     The term "accused product" shall mean any item, device, or product that WSOU contends infringes one or more claims of any asserted patent.

22.     The term "asserted claim" shall mean any claim of any asserted patent that WSOU contends has been infringed by Google.

23.     The terms "including" or "that includes" mean including without limitation.

24.     The term "person" includes any individual, corporation, proprietorship, association, joint venture, company, partnership or other business or legal entity, including governmental bodies and agencies.

25.     The term "prior patent owner" shall mean any person that owned any interest in the patent-in-suit or any application leading to the patent-in-suit.

26.     The terms "concerning," "regarding," "relating to," or "related to" in regard to a particular subject shall mean, without limitation, concerning, constituting, contradicting, comprising, commenting on, containing, describing, discussing, embodying, evidencing, identifying, involving, mentioning, pertaining to, referring to, reflecting, regarding, relating to, responding to, stating, supporting, tending to support or refute, relating or referring (directly or indirectly) to or in any way, the particular subject matter identified, in whole or in part.

27.     The term "document," as used herein, has the same meaning it has under Rule 34 of the Federal Rule of Civil Procedure and includes all written, graphic or otherwise recorded

material, including microfilms or other film records or impressions, electronically stored information regardless of the form of storage medium, tape recordings or computer cards, floppy disks or printouts, papers, photographs, films, recordings, memoranda, books, records, accounts, communications, letters, telegrams, correspondence, notes of meetings, notes of conversations, notes of telephone calls, inter-office memoranda or written communications, recordings of conversations either in writing on any mechanical or electronic recording device, including email, notes, papers, reports, analyses, invoices, canceled checks or check stubs, receipts, minutes of meetings, time sheets, diaries, desk calendars, ledgers, schedules, licenses, financial statements, telephone bills, logs, and any differing versions of any of the foregoing, whether so denominated, formal, informal or otherwise, as well as copies of the foregoing which differ in any way, including by the addition of handwritten notations or other written or printed matter, from the original, and further includes information stored in a computer database and capable of being generated in documentary form, such as electronic mail.

28.    "Communications" includes any transmission, conveyance or exchange of a word, statement, fact, thing, idea, document, instruction, information, demand or question by any medium, whether by written, oral or other means, including but not limited to, electronic communications and electronic mail.

29.    Use of the singular also includes the plural and vice-versa.

30.    The terms "or" and "and" shall be both conjunctive and disjunctive wherever they appear, and neither of these words shall be interpreted to limit the scope of these discovery requests.

31.    The words "any" and "each" shall be construed to encompass the word "all."

32.    A verb in any tense shall mean the verb in all other tenses.

33.     "Other WSOU Defendants" shall mean any and all companies that WSOU has sued in patent litigation matters, including but not limited to ZTE Corporation, ZTE (USA), Inc., ZTE (TX), Inc.; Microsoft Corporation; Dell Technologies, Inc., Dell Inc., EMC Corporation, VMWare, Inc.; Huawei Technologies Co., Ltd., Huawei Technologies USA Inc., Huawei Device (Shenzen) Co., Ltd. (f/k/a Huawei Device Co., Ltd.), Huawei Device USA, Inc., Huawei Investment & Holding Co., Ltd.; Hewlett Packard Enterprise Company; Juniper Enterprise Networks, Inc.; Xilinx, Inc.; NEC Corporation; OnePlus Technology (Shenzen) Co., Ltd.; Canon, Inc.; TP-Link Technology Co., Ltd.; F5 Networks, Inc.; Arista Networks, Inc.; Salesforce.com; Cisco Systems, Inc.; Netgear, Inc.

## INSTRUCTIONS

1.      The singular form of a word should be interpreted in the plural as well. Any pronoun shall be construed to refer to the masculine, feminine or neutral gender as in such case is most appropriate.  The words "and" and "or" shall be construed conjunctively or disjunctively, whichever makes the request most inclusive.  The words "any" and "each" shall be construed to encompass the word "all."  The past tense shall be interpreted to include the present tense where the meaning is not distorted and the verb form of a noun or pronoun may be used, as appropriate in a particular context.

2.      In the event that you object to any document request on the ground that it is overbroad and/or unduly burdensome for any reason, respond to that document request as narrowed to the least extent necessary, in your judgment, to render it not overbroad/unduly burdensome and state specifically the extent to which you have narrowed that document request for purposes of your response.

3.      In the event that you object to any document request on the ground that it is vague and/or ambiguous, identify the particular words, terms or phrases that are asserted to make such request vague and/or ambiguous and specify the meaning actually attributed to you by such words for purposes of your response thereto.

4.      If possible, supply all annual data requested on a calendar basis. However, if fiscal year data is provided, please specify the month in which the fiscal year begins and terminates.  Where information is requested "for each year," include the requested information for all prior years and also the requested information available for the current year and specify what portion of the current year is covered by such information.

5.      If information requested is not readily available from your records in exactly the form requested, furnish the information in the form maintained by you or carefully prepared estimates, designated as such and attach explanations of any estimate used and how the estimate was prepared.

6.      If you do not answer any request, or part thereof, because of a claim of privilege or any other claim, set forth the privilege claimed, the facts upon which you rely to support the claim or privilege and furnish a list identifying each item of information for which privilege is claimed, containing at least the following information:

    a.   The date the document was created;

    b.   The names of the owner or author(s)/sender(s) of the document;

    c.   If the document is an email, the name of the recipient(s), including copy and blind copy recipients;

    d.   A brief description of the document and type of legal advice; and

– 9 –

e.   The grounds for the claim or privilege (e.g., attorney work product, attorney-client communication).

The sender(s) and recipient(s) shall be identified by position and entity (corporation or firm, etc.) with which they are employed or associated. If the sender or recipient is an attorney or foreign patent agent, he or she should be so identified. In the case of a foreign patent agent, there should be a statement of whether the laws of the agent's country grant privileged status to a patent agent's communication. The type of privilege claimed must also be stated, together with certification that all elements of the claimed privilege have been met and not waived with respect to each document.

7.     Technical terms shall have their normal technical meaning. If you find the meaning of any term in these requests to be unclear, you must assume a reasonable meaning, state what the assumed meaning is, and answer on the basis of that assumed meaning. If you wish to clarify your interpretation of any particular term that it relied on in answering a request, you should do so in its answer.

8.     To the extent that any portion of a request requires the production of documents that were at one time within your possession, custody, or control, but which are now in the possession, custody, or control of another, you are directed to identify such documents in a manner sufficient to describe such documents for the purpose of preparing and serving a proper subpoena and to give the name, telephone number, address, and e-mail address of the person last known by you to have been in possession, custody, or control of such documents.

## TOPICS FOR DEPOSITION

1.     The subject matter of all requests for production in the concurrently served document subpoena.

– 10 –

2.      The authenticity of the documents produced in response to the concurrently served document subpoena.

3.      The formation of BP Funding Trust.

4.      Your relationship to NextPoint Acquisition Corp.

5.      Your corporate structure.

6.      Your investments or interests in the asserted patents, including assignment, licensing, acquisition, financial interest, security interest, lien, sale, transfer of rights (in whole or in part) and any other disposition of or any offers to buy, sell, obtain rights to, or licenses any of the asserted patents.

7.      Discussions with NextPoint Acquisition Corp. regarding any asserted patent, a portfolio including an asserted patent, assignment of any interest in any asserted patent or a portfolio including an asserted patent, or the acquisition or potential acquisition of any portfolio that might have included an asserted patent.

8.      Discussions with Terrier regarding any asserted patent, a portfolio including an asserted patent, assignment of any interest in any asserted patent or a portfolio including an asserted patent, or the acquisition or potential acquisition of any portfolio that might have included an asserted patent.

9.      Agreements with Terrier concerning any potential or actual transaction regarding any asserted patent, a portfolio including an asserted patent, or the acquisition or potential acquisition of any portfolio that might have included an asserted patent.

10.      Agreements with the named inventor(s) of any of the asserted patents, including assignment agreements, consulting agreements, employment agreements and any agreements pertaining to litigation involving the asserted patents or any related patents.

11.     Compensation, cost-sharing, or profit sharing agreements with any of the named inventor(s) of the asserted patent(s).

12.     The assignment, licensing, acquisition, financial interest, security interest, lien, sale, transfer of rights (in whole or in part) and any other disposition of or any offers to buy, sell, obtain rights to, or licenses any of the asserted patents.

13.     The nature and scope of any rights you had in the past or currently have in each of the asserted patents, related applications or related patents from the time each alleged invention was conceived through the present, including the right to control any portion of litigation, future royalties, payment for licenses, contingent rights, or payments depending on the outcome of litigation.

14.     Agreements relating to each of the asserted patents (or any portfolio including any of the asserted patents), including assurances, covenants not to sue and understandings not to assert any of the asserted patents against potential licensees.

15.     Agreements between you and WSOU, Allied Security Trust,  AQUA Licensing, LLC, RPX Corporation, Fortress Credit Co., LLC, Houlihan, Orange Holdings, Wade and Company, Omega Credit Opportunities Master Fund, Terrier, Juniper Capital Partners, Coast Asset Management, or WCFT Cayman, regarding any asserted patent, a portfolio including an asserted patent, or the acquisition or potential acquisition of any portfolio that might have included an asserted patent, including any amendment, modification, supplementation, abrogation, or termination of any such agreements.

16.     Agreements with Nokia or other WSOU Defendants regarding an asserted patent or a portfolio including an asserted patent.

17.     Communications with Nokia, Allied Security Trust, AQUA, RPX Corporation, Fortress Credit Co., LLC, Houlihan, WSOU, Orange Holdings, Wade and Company, Omega Credit Opportunities Master Fund, Terrier, Juniper Capital Partners, Coast Asset Management, or WCFT Cayman regarding an asserted patent, a portfolio including an asserted patent, or actual or potential litigation relating to an asserted patent.

18.     Communications with any of the named inventors regarding any of the asserted patents, this litigation or Google.

19.     Communications with WSOU regarding the asserted patent, related patents, this litigation or Google.

20.     Communications between you and any other entity relating to the possibility of patent litigation regarding the asserted patent and related patents, including any actual or potential patent litigation against Google and the WSOU v. Google Litigations.

21.     Any contemplated acquisition of patents or rights in patents from Nokia.

22.     Any interests (current or prior) in WSOU.

23.     Any actual, contingent, or potential (1) right to license or sublicense any asserted patent, (2) right to control the licensing of any asserted patent, or (3) right to control or be involved in the resolution of any litigation involving any asserted patent.

24.     Your relationship with Stuart A. Shanus, Eric Schneider, Andrew Neuberger, Marc Wade, or Craig Etchegoyen, Orange Holdings, WSOU, Uniloc USA, Inc., WCFT Cayman, Omega Credit Opportunities Master Fund, Wade and Company, and Terrier, or or any entity associated with the foregoing.

25.     Communications with Omega Credit Opportunities Master Fund.

– 13 –

26.     The "Patent Security Agreement" recorded at USPTO Reel 09235 Frame 0068, signed May 16, 2019, the circumstances of this agreement, and any related agreements.

27.     The value of, any valuations of or attempts to value any asserted patent, related patent, or related application, whether individually or in combination with any other patents or applications, including of any portfolio containing any asserted patent or related patent.

28.     Any evaluation or analysis of any asserted patent, any related patent, or any related application, whether individually or in combination with any other patents or applications, including any evaluation or analysis of infringement, validity, or commercialization.

29.     Responses to subpoenas served by any other WSOU Defendant.

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Western District of Texas

| | | 20-571 |
| | | 20-572 |
| | | 20-573 |
| | | 20-575 |
| | | 20-576 |
| | | 20-579 |

| | | |
|---|---|---|
| WSOU Investments LLC | ) | 20-580 |
| *Plaintiff* | ) | 20-583 |
| v. | ) | Civil Action No.  20-584 |
| | ) | 20-585 |
| Google LLC | ) | (If the action is pending in another district, state where: |
| *Defendant* | ) | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:  Terrier SSC LLC
c/o VCORP Services, LLC, 1013 Centre Road, Suite 403-B, Wilmington, Delaware 19805

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

See Exhibit A

| Place: Basye Santiago Reporting 1201 N. Orange Street, Suite 7013, Wilmington, Delaware 19801 | Date and Time: September 22, 2021 |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:  September 7, 2021

*CLERK OF COURT*

OR

_____
*Signature of Clerk or Deputy Clerk*

_____
*Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*
Google LLC , who issues or requests this subpoena, are:

Jennifer A. Kash, Warren Lex LLP, 2261 Market Street, San Francisco, CA 94114; jen@warrenlex.com; 415-895-2923

AO 88B (Rev 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

    ❒ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

    ❒ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___ .

I declare under penalty of perjury that this information is true.

Date: _____

                                          _____
                                                 *Server's signature*

                                          _____
                                             *Printed name and title*

                                          _____
                                               *Server's address*

Additional information regarding attempted service, etc:

AO 88B  (Rev.  06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

**(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information;

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

**(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

## EXHIBIT A

## DEFINITIONS

1.    The term "WSOU v. Google Litigations" means 6:20-cv-00571, 6:20-cv-00572, 6:20-cv-00573, 6:20-cv-00575, 6:20-cv-00576, 6:20-cv-00579, 6:20-cv-00580, 6:20-cv-00583, 6:20-cv-00584, 6:20-cv-00585.

2.    The terms "WSOU," shall mean plaintiff WSOU Investments, LLC, WSOU Holdings, LLC, WSOU Investments II, LLC, WSOU Capital Partners, LLC, and their officers, directors, principals, current and former employees, counsel, agents, consultants, representatives, and any other persons acting on behalf of any of the foregoing; as well as its affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that are owned, controlled by, or under common control with it, and all predecessors and successors in interest to such entities.

3.    The term "Defendant" or "Google" shall mean Google LLC, and shall include, individually or collectively, any and all of its past and present officers, directors, partners, trustees, employees, corporate parents, subsidiaries, predecessors, affiliates, agents, representatives, and attorneys.

4.    The term "Terrier" or "you" or "your" shall mean Terrier SSC, LLC, OT WSOU Terrier Holdings, LLC; its current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

– 1 –

5.     The term "Orange" and "Orange Holdings" shall mean Orange Holdings, its

current and former officers, directors, principals, employees, counsel, agents, consultants,

representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns,

predecessors and successors in interest, any other persons acting on behalf of any of the

foregoing, and any other entities that own or control or are owned or controlled by or share

common ownership or control with any of the foregoing, as well as predecessors and successors

in interest to such entities.

6.     The term "WCFT Cayman" means WCFT Cayman, its current and former

officers, directors, employees, counsel, agents, consultants, representatives, affiliates, parents,

divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest,

any other persons acting on behalf of any of the foregoing, and any other entities that own or

control or are owned or controlled by or share common ownership or control with any of the

foregoing, as well as predecessors and successors in interest to such entities.

7.     The term "Wade and Company" means Wade and Company or Wade & Company,

its current and former officers, directors, employees, counsel, agents, consultants,

representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns,

predecessors and successors in interest, any other persons acting on behalf of any of the

foregoing, and any other entities that own or control or are owned or controlled by or share

common ownership or control with any of the foregoing, as well as predecessors and successors

in interest to such entities.

8.     The term "Omega Credit Opportunities Master Fund" means Omega Advisors,

Inc.; Omega Credit Opportunities Master Fund, LP; OCO Opportunities Master Fund, L.P. (f/k/a

Credit Opportunities Master Fund, LP), and their trustees, managers, agents, representatives,

– 2 –

employees, attorneys, or entities acting in conjunction, joint venture, or partnership with any of them.

9.     The term "Nokia" means Nokia of America Corporation, Nokia Corporation, Nokia Networks, Nokia Abp, Nokia Solutions and Networks Holdings USA Inc., Nokia USA Inc., Nokia Oyj, Nokia Technologies Oyj, Nokia Solutions and Networks B.V., Nokia Solutions and Networks Oyj, their current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing (including Alcatel Lucent, Alcatel Lucent Enterprises, Alcatel-Lucent International, Alcatel and Lucent Technologies), as well as predecessors and successors in interest to such entities.

10.    The term "AQUA" shall mean Aqua Licensing, LLC, its current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

11.    The term "Houlihan" shall mean Houlihan Lokey, Inc., its current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that

– 3 –

own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

12.    The term "BP Funding Trust" means Basepoint Administrative LLC and BP Funding Trust, a Delaware statutory trust; BP Funding Trust, Series SPL-VI, a statutory series of BP Funding Trust; and their trustees, managers, agents, representatives, employees, attorneys, or entities acting in conjunction, joint venture, or partnership with any of them including but not limited to Basepoint Capital LLC, Basepoint Tax Funding Trust, Venture 4th Basepoint 1, LLC, Basepoint Administrative LLC, Basepoint Asset Recovery LLC, or any other "Basepoint" entity or related entity thereto.

13.    The term "Credit Suisse" means Credit Suisse AG, Credit Suisse Group AG, its current and former officers, directors, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

14.    The term "Juniper Capital Partners" shall mean Juniper Capital Partners, LLC, its current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

– 4 –

15.     The term "Coast Asset Management" shall mean Coast Asset Management, LLC,
its current and former officers, directors, principals, employees, counsel, agents, consultants,
representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns,
predecessors and successors in interest, any other persons acting on behalf of any of the
foregoing, and any other entities that own or control or are owned or controlled by or share
common ownership or control with any of the foregoing, as well as predecessors and successors
in interest to such entities.

16.     The term "asserted patent" or "asserted patents" shall mean one or more of any
patent asserted in the WSOU v. Google litigations, including without limitation, U.S. Patent Nos.
7,620,967, 7,777,728, 7,817,858, 7,946,491, 8,041,806, 8,559,928, 8,595,283, 8,640,180,
8,737,961, 8,803,697.

17.     The term "affiliates" shall mean any entity, including parent companies and
majority-owned subsidiaries, now or hereafter acquired or formed that is directly or indirectly
controlled by a party, or is under common control with a party, or is an entity that controls a
party, as well as all predecessors and successors of such entities. For this purpose "control"
means direct or indirect ownership of, or the right to exercise, at least 50% of the voting power,
or at least 50% of the ownership interest representing either the irrevocable right to name a
majority of the members of the governing body of such entity, or the right to make binding
decisions for the entity.

18.     The term "related application" shall mean any patent or application related to a
patent, including any application or other filing from which the patent claims priority, any
foreign counterpart patents or applications, whether by continuation, continuation-in-part,
division, reexamination, correction or re-issue, and whether issued, pending, or abandoned.

– 5 –

19.     The term "related patent" shall mean any patent, including any foreign counterpart patent and any patent which may have been opposed, contested or subjected to any nullity proceedings, that is based in whole or in part on any related application.

20.     The term "named inventor" means any person or persons named as an inventor on the face of any asserted patent or related patent.

21.     The term "accused product" shall mean any item, device, or product that WSOU contends infringes one or more claims of any asserted patent.

22.     The term "asserted claim" shall mean any claim of any asserted patent that WSOU contends has been infringed by Google.

23.     The terms "including" or "that includes" mean including without limitation.

24.     The term "person" includes any individual, corporation, proprietorship, association, joint venture, company, partnership or other business or legal entity, including governmental bodies and agencies.

25.     The term "prior patent owner" shall mean any person that owned any interest in the patent-in-suit or any application leading to the patent-in-suit.

26.     The terms "concerning," "regarding," "relating to," or "related to" in regard to a particular subject shall mean, without limitation, concerning, constituting, contradicting, comprising, commenting on, containing, describing, discussing, embodying, evidencing, identifying, involving, mentioning, pertaining to, referring to, reflecting, regarding, relating to, responding to, stating, supporting, tending to support or refute, relating or referring (directly or indirectly) to or in any way, the particular subject matter identified, in whole or in part.

27.     The term "document," as used herein, has the same meaning it has under Rule 34 of the Federal Rule of Civil Procedure and includes all written, graphic or otherwise recorded

– 6 –

material, including microfilms or other film records or impressions, electronically stored information regardless of the form of storage medium, tape recordings or computer cards, floppy disks or printouts, papers, photographs, films, recordings, memoranda, books, records, accounts, communications, letters, telegrams, correspondence, notes of meetings, notes of conversations, notes of telephone calls, inter-office memoranda or written communications, recordings of conversations either in writing on any mechanical or electronic recording device, including email, notes, papers, reports, analyses, invoices, canceled checks or check stubs, receipts, minutes of meetings, time sheets, diaries, desk calendars, ledgers, schedules, licenses, financial statements, telephone bills, logs, and any differing versions of any of the foregoing, whether so denominated, formal, informal or otherwise, as well as copies of the foregoing which differ in any way, including by the addition of handwritten notations or other written or printed matter, from the original, and further includes information stored in a computer database and capable of being generated in documentary form, such as electronic mail.

28. "Communications" includes any transmission, conveyance or exchange of a word, statement, fact, thing, idea, document, instruction, information, demand or question by any medium, whether by written, oral or other means, including but not limited to, electronic communications and electronic mail.

29. Use of the singular also includes the plural and vice-versa.

30. The terms "or" and "and" shall be both conjunctive and disjunctive wherever they appear, and neither of these words shall be interpreted to limit the scope of these discovery requests.

31. The words "any" and "each" shall be construed to encompass the word "all."

32. A verb in any tense shall mean the verb in all other tenses.

33.     "Other WSOU Defendants" shall mean any and all companies that WSOU has

sued in patent litigation matters, including but not limited to ZTE Corporation, ZTE (USA), Inc.,

ZTE (TX), Inc.; Microsoft Corporation; Dell Technologies, Inc., Dell Inc., EMC Corporation,

VMWare, Inc.; Huawei Technologies Co., Ltd., Huawei Technologies USA Inc., Huawei Device

(Shenzen) Co., Ltd. (f/k/a Huawei Device Co., Ltd.), Huawei Device USA, Inc., Huawei

Investment & Holding Co., Ltd.; Hewlett Packard Enterprise Company; Juniper Enterprise

Networks, Inc.; Xilinx, Inc.; NEC Corporation; OnePlus Technology (Shenzen) Co., Ltd.;

Canon, Inc.; TP-Link Technology Co., Ltd.; F5 Networks, Inc.; Arista Networks, Inc.;

Salesforce.com; Cisco Systems, Inc.; Netgear, Inc.

## INSTRUCTIONS

1.     The singular form of a word should be interpreted in the plural as well. Any

pronoun shall be construed to refer to the masculine, feminine or neutral gender as in such case is

most appropriate. The words "and" and "or" shall be construed conjunctively or disjunctively,

whichever makes the request most inclusive. The words "any" and "each" shall be construed to

encompass the word "all." The past tense shall be interpreted to include the present tense where

the meaning is not distorted and the verb form of a noun or pronoun may be used, as appropriate

in a particular context.

2.     In the event that you object to any document request on the ground that it is

overbroad and/or unduly burdensome for any reason, respond to that document request as

narrowed to the least extent necessary, in your judgment, to render it not overbroad/unduly

burdensome and state specifically the extent to which you have narrowed that document request

for purposes of your response.

– 8 –

3.     In the event that you object to any document request on the ground that it is vague and/or ambiguous, identify the particular words, terms or phrases that are asserted to make such request vague and/or ambiguous and specify the meaning actually attributed to you by such words for purposes of your response thereto.

4.     If possible, supply all annual data requested on a calendar basis. However, if fiscal year data is provided, please specify the month in which the fiscal year begins and terminates. Where information is requested "for each year," include the requested information for all prior years and also the requested information available for the current year and specify what portion of the current year is covered by such information.

5.     If information requested is not readily available from your records in exactly the form requested, furnish the information in the form maintained by you or carefully prepared estimates, designated as such and attach explanations of any estimate used and how the estimate was prepared.

6.     If you do not answer any request, or part thereof, because of a claim of privilege or any other claim, set forth the privilege claimed, the facts upon which you rely to support the claim or privilege and furnish a list identifying each item of information for which privilege is claimed, containing at least the following information:

   a.  The date the document was created;

   b.  The names of the owner or author(s)/sender(s) of the document;

   c.  If the document is an email, the name of the recipient(s), including copy and blind copy recipients;

   d.  A brief description of the document and type of legal advice; and

– 9 –

      c. The grounds for the claim or privilege (e.g., attorney work product,

        attorney-client communication).

The sender(s) and recipient(s) shall be identified by position and entity (corporation or firm, etc.) with which they are employed or associated. If the sender or recipient is an attorney or foreign patent agent, he or she should be so identified. In the case of a foreign patent agent, there should be a statement of whether the laws of the agent's country grant privileged status to a patent agent's communication. The type of privilege claimed must also be stated, together with certification that all elements of the claimed privilege have been met and not waived with respect to each document.

7.     Technical terms shall have their normal technical meaning. If you find the meaning of any term in these requests to be unclear, you must assume a reasonable meaning, state what the assumed meaning is, and answer on the basis of that assumed meaning. If you wish to clarify your interpretation of any particular term that it relied on in answering a request, you should do so in its answer.

8.     To the extent that any portion of a request requires the production of documents that were at one time within your possession, custody, or control, but which are now in the possession, custody, or control of another, you are directed to identify such documents in a manner sufficient to describe such documents for the purpose of preparing and serving a proper subpoena and to give the name, telephone number, address, and e-mail address of the person last known by you to have been in possession, custody, or control of such documents.

## REQUESTS FOR PRODUCTION

1.     Documents concerning the formation of Terrier.

2.     Documents concerning the formation of OT WSOU Terrier Holdings, LLC.

3.     Documents concerning your corporate structure.

4.     Documents concerning your investments or interests in the asserted patents, including assignment, licensing, acquisition, financial interest, security interest, lien, sale, transfer of rights (in whole or in part) and any other disposition of or any offers to buy, sell, obtain rights to, or licenses any of the asserted patents.

5.     Documents concerning discussions with BP Funding Trust regarding any asserted patent, a portfolio including an asserted patent, assignment of any interest in any asserted patent or a portfolio including an asserted patent, or the acquisition or potential acquisition of any portfolio that might have included an asserted patent.

6.     Agreements with BP Funding Trust concerning any potential or actual transaction regarding any asserted patent, a portfolio including an asserted patent, or the acquisition or potential acquisition of any portfolio that might have included an asserted patent.

7.     Agreements with the named inventor(s) of any of the asserted patents, including assignment agreements, consulting agreements, employment agreements and any agreements pertaining to litigation involving the asserted patents or any related patents.

8.     Compensation, cost-sharing, or profit sharing agreements with any of the named inventor(s) of the asserted patent(s).

9.     Documents regarding the assignment, licensing, acquisition, financial interest, security interest, lien, sale, transfer of rights (in whole or in part) and any other disposition of or any offers to buy, sell, obtain rights to, or licenses any of the asserted patents.

10.     Documents concerning the nature and scope of any rights you had in the past or currently have in each of the asserted patents, related applications or related patents from the time each alleged invention was conceived through the present, including the right to control any

– 11 –

portion of litigation, future royalties, payment for licenses, contingent rights, or payments depending on the outcome of litigation.

11.     Documents regarding agreements relating to each of the asserted patents (or any portfolio including any of the asserted patents), including assurances, covenants not to sue and understandings not to assert any of the asserted patents against potential licensees.

12.     Documents regarding agreements between you and WSOU, Allied Security Trust, AQUA Licensing, LLC, RPX Corporation, Fortress Credit Co., LLC, Houlihan, Orange Holdings, Wade and Company, Omega Credit Opportunities Master Fund, BP Funding Trust, Juniper Capital Partners, Coast Asset Management, or WCFT Cayman, regarding any asserted patent, a portfolio including an asserted patent, or the acquisition or potential acquisition of any portfolio that might have included an asserted patent, including any amendment, modification, supplementation, abrogation, or termination of any such agreements.

13.     Documents regarding agreements with Nokia or other WSOU Defendants regarding an asserted patent or a portfolio including an asserted patent.

14.     Communications with Nokia, Allied Security Trust, AQUA, RPX Corporation, Fortress Credit Co., LLC, Houlihan, WSOU, Orange Holdings, Wade and Company, Omega Credit Opportunities Master Fund, BP Funding Trust, Juniper Capital Partners, Coast Asset Management, or WCFT Cayman regarding an asserted patent, a portfolio including an asserted patent, or actual or potential litigation relating to an asserted patent.

15.     Documents concerning communications with any of the named inventors regarding any of the asserted patents, this litigation or Google.

16.     Communications with WSOU regarding the asserted patent, related patents, this litigation or Google.

– 12 –

17.     Documents concerning communications between you and any other entity relating to the possibility of patent litigation regarding the asserted patent and related patents, including any actual or potential patent litigation against Google and the WSOU v. Google Litigations.

18.     Documents concerning the formation of WSOU.

19.     Documents concerning any contemplated acquisition of patents or rights in patents from Nokia.

20.     Documents sufficient to show any interests (current or prior) in WSOU.

21.     Documents sufficient to show any actual, contingent, or potential (1) right to license or sublicense any asserted patent, (2) right to control the licensing of any asserted patent, or (3) right to control or be involved in the resolution of any litigation involving any asserted patent.

22.     Documents sufficient to show your relationship with Stuart A. Shanus, Eric Schneider, Andrew Neuberger, Marc Wade, or Craig Etchegoyen, Orange Holdings, WSOU, Uniloc USA, Inc., WCFT Cayman, Omega Credit Opportunities Master Fund, Wade and Company, and BP Funding Trust, or any entity associated with the foregoing.

23.     Documents concerning the "Patent Security Agreement" recorded at USPTO Reel 09235 Frame 0068, signed May 16, 2019, the circumstances of this agreement, and any related agreements.

24.     Documents concerning the May 16, 2019 "Patent Security Agreement" and any related agreements, including the circumstances surrounding the recorded release of your security interest regarding the "Patent Security Agreement."

– 13 –

25.   Documents concerning the release of your security interest, recorded June 3,

2021, at USPTO Reel 056526 Frame 0093, the circumstances of this agreement, and any related

agreements.

26.   Documents concerning the value of, any valuations of or attempts to value any

asserted patent, related patent, or related application, whether individually or in combination

with any other patents or applications, including any portfolio containing any asserted patent or

related patent.

27.   Documents concerning any evaluation or analysis of any asserted patent, any

related patent, or any related application, whether individually or in combination with any other

patents or applications, including any evaluation or analysis of infringement, validity, or

commercialization.

28.   Documents produced in response to a subpoena served by any other WSOU

Defendant.

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Western District of Texas

| | | | |
|---|---|---|---|
| WSOU Investments LLC | ) | | 20-571 |
| _Plaintiff_ | ) | | 20-572 |
| | ) | | 20-573 |
| v. | ) | Civil Action No. | 20-575 |
| | ) | | 20-576 |
| | ) | | 20-579 |
| Google LLC | ) | | 20-580 |
| _Defendant_ | ) | | 20-583 |
| | | | 20-584 |
| | | | 20-585 |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:   Terrier SSC LLC
      c/o VCORP Services, LLC, 1013 Centre Road, Suite 403-B, Wilmington, Delaware 19805

_(Name of person to whom this subpoena is directed)_

☑ _Testimony:_ **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

See Exhibit A

| Place: Basye Santiago Reporting 1201 N. Orange Street, Suite 7013, Wilmington, Delaware 19801 | Date and Time: September 22, 2021 |
|---|---|

The deposition will be recorded by this method:   stenographic, video and audio recording

☐ _Production:_ You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   September 7, 2021

   _CLERK OF COURT_

                                          OR

   _____                _____
   _Signature of Clerk or Deputy Clerk_                  _Attorney's signature_

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_ _____
_____ Google LLC _____, who issues or requests this subpoena, are:

Jennifer A. Kash, Warren Lex LLP, 2261 Market Street, San Francisco, CA 94114; jen@warrenlex.com; 415-895-2923

## Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)*

on *(date)*

    ❑ I served the subpoena by delivering a copy to the named individual as follows:

                                                          on *(date)*         ; or

    ❑ I returned the subpoena unexecuted because:

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

    $

My fees are $              for travel and $           for services, for a total of $    0.00

I declare under penalty of perjury that this information is true.

Date:

                                          *Server's signature*

                                          *Printed name and title*

                                          *Server's address*

Additional information regarding attempted service, etc.:

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
      (i) is a party or a party's officer; or
      (ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:
   (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   (B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*
   (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*
   (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      (i) fails to allow a reasonable time to comply;
      (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
      (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      (iv) subjects a person to undue burden.
   (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

      (i) disclosing a trade secret or other confidential research, development, or commercial information; or
      (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*
   (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      (i) expressly make the claim; and
      (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## EXHIBIT A

## DEFINITIONS

1.     The term "WSOU v. Google Litigations" means 6:20-cv-00571, 6:20-cv-00572, 6:20-cv-00573, 6:20-cv-00575, 6:20-cv-00576, 6:20-cv-00579, 6:20-cv-00580, 6:20-cv-00583, 6:20-cv-00584, 6:20-cv-00585.

2.     The terms "WSOU," shall mean plaintiff WSOU Investments, LLC, WSOU Holdings, LLC, WSOU Investments II, LLC, WSOU Capital Partners, LLC, and their officers, directors, principals, current and former employees, counsel, agents, consultants, representatives, and any other persons acting on behalf of any of the foregoing; as well as its affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that are owned, controlled by, or under common control with it, and all predecessors and successors in interest to such entities.

3.     The term "Defendant" or "Google" shall mean Google LLC, and shall include, individually or collectively, any and all of its past and present officers, directors, partners, trustees, employees, corporate parents, subsidiaries, predecessors, affiliates, agents, representatives, and attorneys.

4.     The term "Terrier" or "you" or "your" shall mean Terrier SSC, LLC, OT WSOU Terrier Holdings, LLC; its current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

– 1 –

5. The term "Orange" and "Orange Holdings" shall mean Orange Holdings, its current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

6. The term "WCFT Cayman" means WCFT Cayman, its current and former officers, directors, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

7. The term "Wade and Company" means Wade and Company or Wade & Company, its current and former officers, directors, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

8. The term "Omega Credit Opportunities Master Fund" means Omega Advisors, Inc.; Omega Credit Opportunities Master Fund, LP; OCO Opportunities Master Fund, L.P. (f/k/a Credit Opportunities Master Fund, LP), and their trustees, managers, agents, representatives,

– 2 –

employees, attorneys, or entities acting in conjunction, joint venture, or partnership with any of them.

9.      The term "Nokia" means Nokia of America Corporation, Nokia Corporation, Nokia Networks, Nokia Abp, Nokia Solutions and Networks Holdings USA Inc., Nokia USA Inc., Nokia Oyj, Nokia Technologies Oyj, Nokia Solutions and Networks B.V., Nokia Solutions and Networks Oyj, their current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing (including Alcatel Lucent, Alcatel Lucent Enterprises, Alcatel-Lucent International, Alcatel and Lucent Technologies), as well as predecessors and successors in interest to such entities.

10.     The term "AQUA" shall mean Aqua Licensing, LLC, its current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

11.     The term "Houlihan" shall mean Houlihan Lokey, Inc., its current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that

– 3 –

own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

12.     The term "BP Funding Trust" means Basepoint Administrative LLC and BP Funding Trust, a Delaware statutory trust; BP Funding Trust, Series SPL-VI, a statutory series of BP Funding Trust; and their trustees, managers, agents, representatives, employees, attorneys, or entities acting in conjunction, joint venture, or partnership with any of them including but not limited to Basepoint Capital LLC, Basepoint Tax Funding Trust, Venture 4th Basepoint 1, LLC, Basepoint Administrative LLC, Basepoint Asset Recovery LLC, or any other "Basepoint" entity or related entity thereto.

13.     The term "Credit Suisse" means Credit Suisse AG, Credit Suisse Group AG, its current and former officers, directors, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

14.     The term "Juniper Capital Partners" shall mean Juniper Capital Partners, LLC, its current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

– 4 –

15.     The term "Coast Asset Management" shall mean Coast Asset Management, LLC,
its current and former officers, directors, principals, employees, counsel, agents, consultants,
representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns,
predecessors and successors in interest, any other persons acting on behalf of any of the
foregoing, and any other entities that own or control or are owned or controlled by or share
common ownership or control with any of the foregoing, as well as predecessors and successors
in interest to such entities.

16.     The term "asserted patent" or "asserted patents" shall mean one or more of any
patent asserted in the WSOU v. Google litigations, including without limitation, U.S. Patent Nos.
7,620,967, 7,777,728, 7,817,858, 7,946,491, 8,041,806, 8,559,928, 8,595,283, 8,640,180,
8,737,961, 8,803,697.

17.     The term "affiliates" shall mean any entity, including parent companies and
majority-owned subsidiaries, now or hereafter acquired or formed that is directly or indirectly
controlled by a party, or is under common control with a party, or is an entity that controls a
party, as well as all predecessors and successors of such entities. For this purpose "control"
means direct or indirect ownership of, or the right to exercise, at least 50% of the voting power,
or at least 50% of the ownership interest representing either the irrevocable right to name a
majority of the members of the governing body of such entity, or the right to make binding
decisions for the entity.

18.     The term "related application" shall mean any patent or application related to a
patent, including any application or other filing from which the patent claims priority, any
foreign counterpart patents or applications, whether by continuation, continuation-in-part,
division, reexamination, correction or re-issue, and whether issued, pending, or abandoned.

-- 5 --

19.     The term "related patent" shall mean any patent, including any foreign counterpart patent and any patent which may have been opposed, contested or subjected to any nullity proceedings, that is based in whole or in part on any related application.

20.     The term "named inventor" means any person or persons named as an inventor on the face of any asserted patent or related patent.

21.     The term "accused product" shall mean any item, device, or product that WSOU contends infringes one or more claims of any asserted patent.

22.     The term "asserted claim" shall mean any claim of any asserted patent that WSOU contends has been infringed by Google.

23.     The terms "including" or "that includes" mean including without limitation.

24.     The term "person" includes any individual, corporation, proprietorship, association, joint venture, company, partnership or other business or legal entity, including governmental bodies and agencies.

25.     The term "prior patent owner" shall mean any person that owned any interest in the patent-in-suit or any application leading to the patent-in-suit.

26.     The terms "concerning," "regarding," "relating to," or "related to" in regard to a particular subject shall mean, without limitation, concerning, constituting, contradicting, comprising, commenting on, containing, describing, discussing, embodying, evidencing, identifying, involving, mentioning, pertaining to, referring to, reflecting, regarding, relating to, responding to, stating, supporting, tending to support or refute, relating or referring (directly or indirectly) to or in any way, the particular subject matter identified, in whole or in part.

27.     The term "document," as used herein, has the same meaning it has under Rule 34 of the Federal Rule of Civil Procedure and includes all written, graphic or otherwise recorded

– 6 –

material, including microfilms or other film records or impressions, electronically stored information regardless of the form of storage medium, tape recordings or computer cards, floppy disks or printouts, papers, photographs, films, recordings, memoranda, books, records, accounts, communications, letters, telegrams, correspondence, notes of meetings, notes of conversations, notes of telephone calls, inter-office memoranda or written communications, recordings of conversations either in writing on any mechanical or electronic recording device, including email, notes, papers, reports, analyses, invoices, canceled checks or check stubs, receipts, minutes of meetings, time sheets, diaries, desk calendars, ledgers, schedules, licenses, financial statements, telephone bills, logs, and any differing versions of any of the foregoing, whether so denominated, formal, informal or otherwise, as well as copies of the foregoing which differ in any way, including by the addition of handwritten notations or other written or printed matter, from the original, and further includes information stored in a computer database and capable of being generated in documentary form, such as electronic mail.

28.     "Communications" includes any transmission, conveyance or exchange of a word, statement, fact, thing, idea, document, instruction, information, demand or question by any medium, whether by written, oral or other means, including but not limited to, electronic communications and electronic mail.

29.     Use of the singular also includes the plural and vice-versa.

30.     The terms "or" and "and" shall be both conjunctive and disjunctive wherever they appear, and neither of these words shall be interpreted to limit the scope of these discovery requests.

31.     The words "any" and "each" shall be construed to encompass the word "all."

32.     A verb in any tense shall mean the verb in all other tenses.

– 7 –

33.    "Other WSOU Defendants" shall mean any and all companies that WSOU has sued in patent litigation matters, including but not limited to ZTE Corporation, ZTE (USA), Inc., ZTE (TX), Inc.; Microsoft Corporation; Dell Technologies, Inc., Dell Inc., EMC Corporation, VMWare, Inc.; Huawei Technologies Co., Ltd., Huawei Technologies USA Inc., Huawei Device (Shenzen) Co., Ltd. (f/k/a Huawei Device Co., Ltd.), Huawei Device USA, Inc., Huawei Investment & Holding Co., Ltd.; Hewlett Packard Enterprise Company; Juniper Enterprise Networks, Inc.; Xilinx, Inc.; NEC Corporation; OnePlus Technology (Shenzen) Co., Ltd.; Canon, Inc.; TP-Link Technology Co., Ltd.; F5 Networks, Inc.; Arista Networks, Inc.; Salesforce.com; Cisco Systems, Inc.; Netgear, Inc.

## INSTRUCTIONS

1.    The singular form of a word should be interpreted in the plural as well. Any pronoun shall be construed to refer to the masculine, feminine or neutral gender as in such case is most appropriate. The words "and" and "or" shall be construed conjunctively or disjunctively, whichever makes the request most inclusive. The words "any" and "each" shall be construed to encompass the word "all." The past tense shall be interpreted to include the present tense where the meaning is not distorted and the verb form of a noun or pronoun may be used, as appropriate in a particular context.

2.    In the event that you object to any document request on the ground that it is overbroad and/or unduly burdensome for any reason, respond to that document request as narrowed to the least extent necessary, in your judgment, to render it not overbroad/unduly burdensome and state specifically the extent to which you have narrowed that document request for purposes of your response.

– 8 –

3.    In the event that you object to any document request on the ground that it is vague and/or ambiguous, identify the particular words, terms or phrases that are asserted to make such request vague and/or ambiguous and specify the meaning actually attributed to you by such words for purposes of your response thereto.

4.    If possible, supply all annual data requested on a calendar basis. However, if fiscal year data is provided, please specify the month in which the fiscal year begins and terminates. Where information is requested "for each year," include the requested information for all prior years and also the requested information available for the current year and specify what portion of the current year is covered by such information.

5.    If information requested is not readily available from your records in exactly the form requested, furnish the information in the form maintained by you or carefully prepared estimates, designated as such and attach explanations of any estimate used and how the estimate was prepared.

6.    If you do not answer any request, or part thereof, because of a claim of privilege or any other claim, set forth the privilege claimed, the facts upon which you rely to support the claim or privilege and furnish a list identifying each item of information for which privilege is claimed, containing at least the following information:

   a.  The date the document was created;

   b.  The names of the owner or author(s)/sender(s) of the document;

   c.  If the document is an email, the name of the recipient(s), including copy and blind copy recipients;

   d.  A brief description of the document and type of legal advice; and

– 9 –

      e.  The grounds for the claim or privilege (e.g., attorney work product,

         attorney-client communication).

The sender(s) and recipient(s) shall be identified by position and entity (corporation or firm, etc.) with which they are employed or associated. If the sender or recipient is an attorney or foreign patent agent, he or she should be so identified. In the case of a foreign patent agent, there should be a statement of whether the laws of the agent's country grant privileged status to a patent agent's communication. The type of privilege claimed must also be stated, together with certification that all elements of the claimed privilege have been met and not waived with respect to each document.

7.  Technical terms shall have their normal technical meaning. If you find the meaning of any term in these requests to be unclear, you must assume a reasonable meaning, state what the assumed meaning is, and answer on the basis of that assumed meaning. If you wish to clarify your interpretation of any particular term that it relied on in answering a request, you should do so in its answer.

8.  To the extent that any portion of a request requires the production of documents that were at one time within your possession, custody, or control, but which are now in the possession, custody, or control of another, you are directed to identify such documents in a manner sufficient to describe such documents for the purpose of preparing and serving a proper subpoena and to give the name, telephone number, address, and e-mail address of the person last known by you to have been in possession, custody, or control of such documents.

## TOPICS FOR DEPOSITION

1.  The subject matter of all requests for production in the concurrently served document subpoena.

2.      The authenticity of the documents produced in response to the concurrently served document subpoena.

3.      The formation of Terrier.

4.      The formation of OT WSOU Terrier Holdings, LLC.

5.      Your corporate structure.

6.      Your investments or interests in the asserted patents, including assignment, licensing, acquisition, financial interest, security interest, lien, sale, transfer of rights (in whole or in part) and any other disposition of or any offers to buy, sell, obtain rights to, or licenses any of the asserted patents.

7.      Discussions with BP Funding Trust regarding any asserted patent, a portfolio including an asserted patent, assignment of any interest in any asserted patent or a portfolio including an asserted patent, or the acquisition or potential acquisition of any portfolio that might have included an asserted patent.

8.      Agreements with BP Funding Trust concerning any potential or actual transaction regarding any asserted patent, a portfolio including an asserted patent, or the acquisition or potential acquisition of any portfolio that might have included an asserted patent.

9.      Agreements with the named inventor(s) of any of the asserted patents, including assignment agreements, consulting agreements, employment agreements and any agreements pertaining to litigation involving the asserted patents or any related patents.

10.     Compensation, cost-sharing, or profit sharing agreements with any of the named inventor(s) of the asserted patent(s).

11.     The assignment, licensing, acquisition, financial interest, security interest, lien, sale, transfer of rights (in whole or in part) and any other disposition of or any offers to buy, sell, obtain rights to, or licenses any of the asserted patents.

12.     The nature and scope of any rights you had in the past or currently have in each of the asserted patents, related applications or related patents from the time each alleged invention was conceived through the present, including the right to control any portion of litigation, future royalties, payment for licenses, contingent rights, or payments depending on the outcome of litigation.

13.     Agreements relating to each of the asserted patents (or any portfolio including any of the asserted patents), including assurances, covenants not to sue and understandings not to assert any of the asserted patents against potential licensees.

14.     Agreements between you and WSOU, Allied Security Trust, AQUA Licensing, LLC, RPX Corporation, Fortress Credit Co., LLC, Houlihan, Orange Holdings, Wade and Company, Omega Credit Opportunities Master Fund, BP Funding Trust, Juniper Capital Partners, Coast Asset Management, or WCFT Cayman, regarding any asserted patent, a portfolio including an asserted patent, or the acquisition or potential acquisition of any portfolio that might have included an asserted patent, including any amendment, modification, supplementation, abrogation, or termination of any such agreements.

15.     Agreements with Nokia or other WSOU Defendants regarding an asserted patent or a portfolio including an asserted patent.

16.     Communications with Nokia, Allied Security Trust, AQUA, RPX Corporation, Fortress Credit Co., LLC, Houlihan, WSOU, Orange Holdings, Wade and Company, Omega Credit Opportunities Master Fund, BP Funding Trust, Juniper Capital Partners, Coast Asset

– 12 –

Management, or WCFT Cayman regarding an asserted patent, a portfolio including an asserted patent, or actual or potential litigation relating to an asserted patent.

17.     Communications with any of the named inventors regarding any of the asserted patents, this litigation or Google.

18.     Communications with WSOU regarding the asserted patent, related patents, this litigation or Google.

19.     Communications between you and any other entity relating to the possibility of patent litigation regarding the asserted patent and related patents, including any actual or potential patent litigation against Google and the WSOU v. Google Litigations.

20.     The formation of WSOU.

21.     Any contemplated acquisition of patents or rights in patents from Nokia.

22.     Any interests (current or prior) in WSOU.

23.     Any actual, contingent, or potential (1) right to license or sublicense any asserted patent, (2) right to control the licensing of any asserted patent, or (3) right to control the resolution of any litigation involving any asserted patent.

24.     Your relationship with Stuart A. Shanus, Eric Schneider, Andrew Neuberger, Marc Wade, Craig Etchegoyen, Orange Holdings, WSOU, Uniloc USA, Inc., WCFT Cayman, Omega Credit Opportunities Master Fund, Wade and Company, and BP Funding Trust, or any other entity associated with the foregoing.

25.     The "Patent Security Agreement" recorded at USPTO Reel 09235 Frame 0068, signed May 16, 2019, and any related agreements.

26.     Communications regarding the May 16, 2019 "Patent Security Agreement" and
any related agreements, including the circumstances surrounding the recorded release of your
security interest regarding the "Patent Security Agreement."

27.     The release of your security interest, dated June 3, 2021, recorded at USPTO Reel
056526 Frame 0093, the circumstances of this agreement, and any related agreements.

28.     The value of, any valuations of or attempts to value any asserted patent, related
patent, or related application, whether individually or in combination with any other patents or
applications, including any portfolio containing any asserted patent or related patent.

29.     Any evaluation or analysis of any asserted patent, any related patent, or any
related application, whether individually or in combination with any other patents or
applications, including any evaluation or analysis of infringement, validity, or
commercialization.

30.     Responses to any subpoena served by any other WSOU Defendant.

# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **WSOU INVESTMENTS LLC D/B/A** | § | |
| **BRAZOS LICENSING AND** | § | **C.A. NO. 6:20-cv-00487-ADA** |
| **DEVELOPMENT,** | § | **C.A. NO. 6:20-cv-00488-ADA** |
| | § | **C.A. NO. 6:20-cv-00489-ADA** |
| *Plaintiff,* | § | **C.A. NO. 6:20-cv-00490-ADA** |
| | § | **C.A. NO. 6:20-cv-00491-ADA** |
| **v.** | § | **C.A. NO. 6:20-cv-00492-ADA** |
| | § | **C.A. NO. 6:20-cv-00493-ADA** |
| **ZTE CORPORATION** | § | **C.A. NO. 6:20-cv-00494-ADA** |
| | § | **C.A. NO. 6:20-cv-00495-ADA** |
| *Defendant.* | § | **C.A. NO. 6:20-cv-00496-ADA** |
| | § | **C.A. NO. 6:20-cv-00497-ADA** |
| | § | |

<u>**NOTICE OF SUBPOENA**</u>

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendant ZTE Corporation will serve the attached subpoena for deposition and the production of documents and things.

Date: October 25, 2021

/s/ Lionel M. Lavenue
Lionel M. Lavenue
Virginia Bar No. 49,005
lionel.lavenue@finnegan.com
Bradford C. Schulz
Virginia Bar No. 91,057
Bradford.schulz@finnegan.com
**FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP**
1875 Explorer Street, Suite 800
Reston, VA 20190
  Phone:  (571) 203-2700
  Fax:     (202) 408-4400

Attorneys for Defendant,
ZTE Corporation

1

### CERTIFICATE OF SERVICE

I hereby certify that all counsel of record, who are deemed to have consented to electronic service, are being served on October 25, 2021 with a copy of this document via email.

*/s/Lionel M. Lavenue*
Lionel M. Lavenue

AO 88A  (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Western District of Texas

| | |
|---|---|
| WSOU INVESTMENTS, LLC d/b/a BRAZOS LICEN | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.   6:20-CV-(487 through 497)-ADA |
| ZTE CORPORATION | ) |
| *Defendant* | ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:                              AQUA Licensing, LLC,
          18709 Meter Street, 12th Floor, San Francisco, California, 94105
*(Name of person to whom this subpoena is directed)*

☑ *Testimony:*  **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:
See Attached Attachment A

| Place: Finnegan, Henderson, Farabow, Garrett & Dunner, LLP | Date and Time: |
|---|---|
| 3300 Hillview Avenue | |
| Palo Alto, CA 94304-1203 | 11/24/2021 11:00 am |

          The deposition will be recorded by this method: _____

☑ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material: See Attached Attachment A

          The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

                    *CLERK OF COURT*
                                                        OR
                                                             /s/Bradford Schulz
          _____              _____
          *Signature of Clerk or Deputy Clerk*                *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Defendant, ZTE Corporation
_____, who issues or requests this subpoena, are:
Finnegan, Henderson LLP by Bradford Schulz, 1875 Explorer Street, Suite 800, Reston, VA 20190-6023

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.   6:20-CV-(487 through 497)-ADA

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2) *For Other Discovery.*** A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2) *Command to Produce Materials or Permit Inspection.***
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3) *Quashing or Modifying a Subpoena.***
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2) *Claiming Privilege or Protection.***
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## ATTACHMENT A

Pursuant to Rules 30, 34, and 45 of the Federal Rules of Civil Procedure, Defendant ZTE Corporation requests that Aqua Licensing, LLC produce testimony as requested below.

## DEFINITIONS

The following definitions are applicable herein, regardless of whether upper or lower case letters are used:

1.      "Defendant" and "ZTE" refer collectively to ZTE Corporation ("ZTE").

2.      The term "AQUA," "you," and "your" shall mean Aqua Licensing, LLC, its current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

3.      "Plaintiff" and "WSOU" refer collectively to WSOU Investments, LLC d/b/a Brazos Licensing and Development ("WSOU"), its predecessors-in-interest, parents, subsidiaries, joint ventures, affiliates, and other legal entities that are wholly or partially owned or controlled by WSOU, either directly or indirectly, and the principals, directors, officers, owners, members, representatives, employees, agents, consultants, accountants, and attorneys of these same entities.

4.      References to this "lawsuit," "case," or "action" mean the above-captioned actions.

5.      The "'505 patent" means U.S. Patent No. 7,203,505.

6.      The "'071 patent" means U.S. Patent No. 8,147,071.

7.      The "'905 patent" means U.S. Patent No. 8,730,905.

8.      The "'960 patent" means U.S. Patent No. 8,179,960.

9.      The "'240 patent" means U.S. Patent No. 7,487,240.

10.     The "'929 patent" means U.S. Patent No. 7,489,929.

11.     The "'839 patent" means U.S. Patent No. 8,451,839.

12.     The "'232 patent" means U.S. Patent No. 9,258,232.

13.     The "'036 patent" means U.S. Patent No. 9,185,036.

14.     The "'060 patent" means U.S. Patent No. 9,294,060.

15.     The "'534 patent" means U.S. Patent No. 7,742,534.

16.     The term "WSOU Asserted Patent(s)" means the '505 patent, '071 patent, '905 patent, '960 patent, '240 patent, '929 patent, '839 patent, '232 patent, '036 patent, '060 patent, '534 patent, collectively, any other patent that may be added to this litigation by Plaintiff, and the applications that led to the issuance of any of the foregoing patents.

17.     "Related Patents and Patent Applications" means any issued patent or patent application having a relation by continuation application, continuation-in-part application, and/or divisional application, as defined by the Manual of Patent Examining Procedure (Ninth Edition, Revision 07.2015) §§ 201.06–08, with respect to the Patents-in-Suit. "Related Patent Application" includes any international application and/or foreign counterpart of the Patents-in-Suit. "Related Patent Application" also includes any patent application or issued patent within a chain of copendency with respect to any of the Patents-in-Suit.

18.     The term "named inventor" means any person or persons named as an inventor on the face of any asserted patent or related patent.

19.     The term "accused product" shall mean any item, device, or product that WSOU contends infringes one or more claims of any asserted patent.

20.     The term "asserted claim" shall mean any claim of any asserted patent that WSOU contends has been infringed by ZTE.

21.     The term "Prior Art" is used in these Requests in the same sense that it is used in 35 U.S.C. §§ 102 or 103 and includes without limitation, any patent, publication, physical device, prototype, knowledge, use, sale, offer for sale, any documents or other items evidencing any of the foregoing, and/or any other act or event defined in 35 U.S.C. § 102, taken singly or in combination, and having or occurring at a date such as to be potentially relevant under any subsection of 35 U.S.C. §§ 102 or 103.

22.     The term "AST" shall mean Allied Security Trust, a Delaware statutory trust; and their trustees, managers, agents, representatives, employees, attorneys, or entities acting in conjunction, joint venture, or partnership with any of them.

23.     The term "Alcatel" shall mean Alcatel-Lucent International and all parents, subsidiaries, affiliates, predecessors, successors, including but not limited to Alcatel and Lucent Technologies.

24.     The term "Nokia" shall mean Nokia Corporation and all parents, subsidiaries, affiliates, predecessors, including but not limited to Nokia Technologies Oy and Nokia Solutions and Networks BV.

25.     The term "Orange" and "Orange Holdings" shall mean Orange Holdings, its current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

26.     The term "WCFT Cayman" means WCFT Cayman, its current and former officers, directors, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

27.     The term "Wade and Company" means Wade and Company or Wade & Company, its current and former officers, directors, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

28.     The term "Omega Credit Opportunities Master Fund" means Omega Advisors, Inc.; Omega Credit Opportunities Master Fund, LP; OCO Opportunities Master Fund, L.P. (f/k/a Credit Opportunities Master Fund, LP), and their trustees, managers, agents, representatives, employees, attorneys, or entities acting in conjunction, joint venture, or partnership with any of them.

29.     The term "Terrier," shall mean Terrier SSC, LLC, OT WSOU Terrier Holdings, LLC, its current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

30.     The term "Houlihan" shall mean Houlihan Lokey, Inc., its current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

31.     The term "BP Funding Trust" means Basepoint Administrative LLC and BP Funding Trust, a Delaware statutory trust; BP Funding Trust, Series SPL-VI, a statutory series of BP Funding Trust; and their trustees, managers, agents, representatives, employees, attorneys, or entities acting in conjunction, joint venture, or partnership with any of them including but not limited to Basepoint Capital LLC, Basepoint Tax Funding Trust, Venture 4th Basepoint 1, LLC, Basepoint Administrative LLC, Basepoint Asset Recovery LLC, or any other "Basepoint" entity or related entity thereto.

32.     The term "Credit Suisse" means Credit Suisse AG, Credit Suisse Group AG, its current and former officers, directors, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

33.     The term "Juniper Capital Partners" shall mean Juniper Capital Partners, LLC, its current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing,

and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

34.     The term "Coast Asset Management" shall mean Coast Asset Management, LLC, its current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

35.     "Other WSOU Defendants" shall mean any and all companies that WSOU has sued in patent litigation matters, including but not limited to Google LLC,; Microsoft Corporation; Dell Technologies, Inc., Dell Inc., EMC Corporation, VMWare, Inc.; Huawei Technologies Co.,Ltd., Huawei Technologies USA Inc., Huawei Device (Shenzen) Co., Ltd. (f/k/a Huawei Device Co., Ltd.), Huawei Device USA, Inc., Huawei Investment & Holding Co., Ltd.; Hewlett Packard Enterprise Company; Juniper Enterprise Networks, Inc.;Xilinx, Inc.; NEC Corporation; OnePlus Technology (Shenzen) Co., Ltd.; Canon, Inc.;TP-Link Technology Co., Ltd.; F5 Networks, Inc.; Arista Networks, Inc.; Salesforce.com; Cisco Systems, Inc.; Netgear, Inc..

## Instructions

1.     The singular form of a word should be interpreted in the plural as well. Any pronoun shall be construed to refer to the masculine, feminine or neutral gender as in such case is most appropriate. The words "and" and "or" shall be construed conjunctively or disjunctively, whichever makes the request most inclusive. The words "any" and "each" shall be construed to

encompass the word "all." The past tense shall be interpreted to include the present tense where the meaning is not distorted and the verb form of a noun or pronoun may be used, as appropriate in a particular context.

2.    In the event that you object to any document request on the ground that it is overbroad and/or unduly burdensome for any reason, respond to that document request as narrowed to the least extent necessary, in your judgment, to render it not overbroad/unduly burdensome and state specifically the extent to which you have narrowed that document request for purposes of your response.

3.    In the event that you object to any document request on the ground that it is vague and/or ambiguous, identify the particular words, terms or phrases that are asserted to make such request vague and/or ambiguous and specify the meaning actually attributed to you by such words for purposes of your response thereto.

4.    If possible, supply all annual data requested on a calendar basis. However, if fiscal year data is provided, please specify the month in which the fiscal year begins and terminates. Where information is requested "for each year," include the requested information for all prior years and also the requested information available for the current year and specify what portion of the current year is covered by such information.

5.    If information requested is not readily available from your records in exactly the form requested, furnish the information in the form maintained by you or carefully prepared estimates, designated as such and attach explanations of any estimate used and how the estimate was prepared.

6.    If you do not answer any request, or part thereof, because of a claim of privilege or any other claim, set forth the privilege claimed, the facts upon which you rely to support the

claim or privilege and furnish a list identifying each item of information for which privilege is claimed, containing at least the following information:

      a.   The date the document was created;

      b.   The names of the owner or author(s)/sender(s) of the document;

      c.   If the document is an email, the name of the recipient(s), including copy and blind copy recipients;

      d.   A brief description of the document and type of legal advice; and

      e.   The grounds for the claim or privilege (e.g., attorney work product, attorney-client communication).

The sender(s) and recipient(s) shall be identified by position and entity (corporation or firm, etc.) with which they are employed or associated. If the sender or recipient is an attorney or foreign patent agent, he or she should be so identified. In the case of a foreign patent agent, there should be a statement of whether the laws of the agent's country grant privileged status to a patent agent's communication. The type of privilege claimed must also be stated, together with certification that all elements of the claimed privilege have been met and not waived with respect to each document.

7.      Technical terms shall have their normal technical meaning. If you find the meaning of any term in these requests to be unclear, you must assume a reasonable meaning, state what the assumed meaning is, and answer on the basis of that assumed meaning. If you wish to clarify your interpretation of any particular term that it relied on in answering a request, you should do so in its answer.

8.      To the extent that any portion of an request requires the production of documents that were at one time within Aqua's possession, custody, or control, but which are now in the

possession, custody, or control of another, Aqua is directed to identify such documents in a manner sufficient to describe such documents for the purpose of preparing and serving a proper subpoena and to give the name, telephone number, address, and e-mail address of the person last known by Aqua to have been in possession, custody, or control of such documents.

## Requests for Production

1.      All documents concerning each agreement, proposal, offer or other discussions by you or your predecessors in interest, including any prior patent owner, regarding actual or potential licensing or sale of any asserted patent, related patent, or related application, whether individually or in combination with any other patents or applications, including communications regarding such a proposal, draft agreements, and executed agreements.

2.      Documents sufficient to identify all attempts to license, sell, or assign: (1) any asserted patent, related patent, or related application, and/or (2) any rights to or interests in any asserted patent, related patent, or related application, and the people responsible for any attempts to license, sell, or assign any asserted patent.

3.      All documents concerning any decision to license, sell, or assign any asserted patent, related patent, or related application and/or any rights to or interests in any asserted patent, related patent, or related application.

4.      Documents sufficient to identify all entities which have participated in the licensing, assignment, or sale of any asserted patent, related patent, or related application.

5.      Documents sufficient to identify all entities of which you are aware that are currently, or were previously, licensed to any asserted patent, related patent, or related application

including but not limited to those entities listed in the Telecommunications White List dated August 22, 2017.

6.      Documents sufficient to identify all products of which you are/were aware that practiced or currently practice any claim of any asserted patent, related patent, or related application and all allegations of which you are/were aware that products practiced or currently practice any claim of any asserted patent, related patent, or related application.

7.      All documents concerning any proposals to license, negotiations, discussions, offers to license, presentations, or any other communications, regarding any potential agreement concerning any asserted patent, related patent, or related application, including communications, draft agreements, and executed agreements concerning any potential license including any asserted patent, related patent, or related application.

8.      All documents concerning any current or former right, title, or interest in any asserted patent, related patent, or related application, including the chain of title, as well as all promises, transfers, liens, assignments, encumbrances, and agreements.

9.      All documents concerning the value of, any valuations of or attempts to value any asserted patent, related patent, or related application, whether individually or in combination with any other patents or applications, including of any portfolio containing any asserted patent or related patent.

10.     All documents concerning any ranking (in terms of strength, value, or otherwise) or rating of, or attempts to rank or rate any asserted patent, related patent, related application,

whether individually or in combination with any other patents or applications, or any portfolio containing any asserted patent or related patent.

11.     All documents concerning any evaluation or analysis of any asserted patent, any related patent, or any related application, whether individually or in combination with any other patents or applications, including any evaluation or analysis of infringement, validity, or commercialization.

12.     All documents concerning each proposal, offer or other discussions by you or your predecessors in interest, regarding actual or potential agreements with Allied Security Trust, or WSOU regarding any asserted patent including communications regarding such a proposal, draft agreements, and executed agreements.

13.     All documents concerning any agreement with WSOU.

14.     All documents concerning each proposal, offer or other discussions by you or your predecessors in interest, regarding actual or potential agreements with WSOU or any subsidiary or affiliate of WSOU including communications regarding such a proposal, draft agreements, and executed agreements.

15.     All communications with Google regarding any asserted patents or related patents, including communications regarding your 2017 offer to Google to license a portfolio of former Nokia and Alcatel-Lucent Telecommunications patents.

16.     All documents regarding your 2017 offer to Google to license a portfolio of former Nokia and Alcatel-Lucent Telecommunications patents.

17.     All documents regarding any discussions or proposals with Google subsequent to 2017 regarding WSOU and/or a portfolio of former Nokia and Alcatel-Lucent Telecommunications.

18.     Any spreadsheet provided to Google by Mark McMillian at Aqua Licensing by email dated September 24, 2018.

19.     Any communications with Alcatel or Nokia regarding the asserted or related patents.

20.     Any communications with one or more of the Other WSOU Defendants concerning WSOU, the asserted patents, or the related patents.

## **TOPICS FOR DEPOSITION**

1.     The subject matter of all requests for production listed above.

2.     The authenticity of the documents produced in response to this subpoena.

3.     All attempts to license, sell, or assign: (1) any asserted patent, related patent, or related application, and/or (2) any rights to or interests in any asserted patent, related patent, or related application, and the people responsible for any attempts to license, sell, or assign any asserted patent.

4.     Any decision to license, sell, or assign any asserted patent, related patent, or related application and/or any rights to or interests in any asserted patent, related patent, or related application.

5.      The identity of all entities which have participated in the licensing, assignment, or sale of any asserted patent, related patent, or related application.

6.      The current or former right, title, or interest in any asserted patent, related patent, or related application, including the chain of title, as well as all promises, transfers, liens, assignments, encumbrances, and agreements.

7.      The value of, any valuations of or attempts to value any asserted patent, related patent, or related application, whether individually or in combination with any other patents or applications, including of any portfolio containing any asserted patent or related patent.

8.      Your current or former right, title, or interest in any asserted patent, related patent, or related application, including the chain of title, as well as all promises, transfers, liens, assignments, encumbrances, and agreements.

9.      The value of, any valuations of or attempts to value any asserted patent, related patent, or related application, whether individually or in combination with any other patents or applications, including of or any portfolio containing any asserted patent or related patent.

10.      Your ranking (in terms of strength, value, or otherwise) or rating of, or attempts to rank or rate any asserted patent, related patent, related application, whether individually or in combination with any other patents or applications, or any portfolio containing any asserted patent or related patent.

11.      Your evaluation or analysis of any asserted patent, any related patent, or any related application, whether individually or in combination with any other patents or applications, including any evaluation or analysis of infringement, validity, or commercialization.

12.     Your proposals, offers or other discussions by you or your predecessors in interest, regarding actual or potential agreements with Allied Security Trust, or WSOU, LLC regarding any asserted patent including communications regarding such a proposal, draft agreements, and executed agreements.

13.     All agreements between you and WSOU.

14.     Proposals, offers or other discussions by you or your predecessors in interest, regarding actual or potential agreements with WSOU or any subsidiary or affiliate of WSOU including communications regarding such a proposal, draft agreements, and executed agreements.

15.     Your communications with Google regarding any asserted patents or related patents, including communications regarding your 2017 offer to Google to license a portfolio of former Nokia and Alcatel-Lucent Telecommunications patents.

16.     Your 2017 offer to Google to license a portfolio of former Nokia and Alcatel-Lucent Telecommunications patents.

17.     Any communications with Alcatel or Nokia regarding the asserted or related patents.

18.     Any communications with one of more of the Other WSOU Defendants concerning WSOU, the asserted patents, or the related patents.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | | |
|---|---|---|
| WSOU INVESTMENTS, LLC D/B/A | § | CIVIL ACTION 6:20-CV-00487-ADA |
| BRAZOS LICENSING AND | § | CIVIL ACTION 6:20-CV-00488-ADA |
| DEVELOPMENT, | § | CIVIL ACTION 6:20-CV-00489-ADA |
| | § | CIVIL ACTION 6:20-CV-00490-ADA |
| Plaintiff, | § | CIVIL ACTION 6:20-CV-00491-ADA |
| | § | CIVIL ACTION 6:20-CV-00492-ADA |
| v. | § | CIVIL ACTION 6:20-CV-00493-ADA |
| | § | CIVIL ACTION 6:20-CV-00494-ADA |
| ZTE CORPORATION ET AL, | § | CIVIL ACTION 6:20-CV-00495-ADA |
| | § | CIVIL ACTION 6:20-CV-00496-ADA |
| Defendant. | § | CIVIL ACTION 6:20-CV-00497-ADA |
| | § | |
| | § | PATENT CASE |
| | § | |
| | § | |
| | § | JURY TRIAL DEMANDED |

## PROTECTIVE ORDER

WHEREAS, Plaintiff and Defendants, hereafter referred to as "the Parties," believe that certain information that is or will be encompassed by discovery demands by the Parties involves the production or disclosure of trade secrets, confidential business information, or other proprietary information in this Action[1];

WHEREAS, the Parties seek a protective order limiting disclosure thereof in accordance with Federal Rule of Civil Procedure 26(c):

THEREFORE, it is hereby stipulated among the Parties and ORDERED that:

1.    Each Party may designate as confidential for protection under this Order, in whole or in part, any document, information, or material that constitutes or includes, in whole or in part, confidential or proprietary information or trade secrets of the Party or a Third Party to whom the Party reasonably believes it owes an obligation of confidentiality with respect to such

---

[1] Action means the Case Nos. 6:20-cv-0487 through 6:20-cv-00497.

1

document, information, or material ("Protected Material"). Protected Material shall be designated by the Party producing it by affixing a legend or stamp on such document, information, or material as follows: "CONFIDENTIAL," "CONFIDENTIAL - ATTORNEYS' EYES ONLY," "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY," or "CONFIDENTIAL - SOURCE CODE" ("DESIGNATED MATERIAL").[2] The appropriate designation shall be placed clearly on each page of the Protected Material (except deposition and hearing transcripts) for which such protection is sought. For deposition and hearing transcripts, the appropriate designation shall be placed on the cover page of the transcript (if not already present on the cover page of the transcript when received from the court reporter) by each attorney receiving a copy of the transcript after that attorney receives notice of the designation of some or all of that transcript is designated as containing Protected Material.

2.      Any document produced before issuance of this Order, including pursuant to the Court's Order Governing Proceedings - Patent Case, with the designation "Confidential" or the like shall receive the same treatment as if designated "CONFIDENTIAL" under this order and any such documents produced with the designation "Confidential - Outside Attorneys' Eyes Only," or the like shall receive the same treatment as if designated "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY" under this Order, unless and until such document is re-designated to have a different classification under this Order.

3.      With respect to documents, information, or DESIGNATED MATERIAL (*i.e.*

---

[2] The term DESIGNATED MATERIAL is used throughout this Protective Order to refer to the class of materials designated as "CONFIDENTIAL," "CONFIDENTIAL - ATTORNEYS' EYES ONLY," "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY," or "CONFIDENTIAL - SOURCE CODE," both individually and collectively.

"CONFIDENTIAL," "CONFIDENTIAL - ATTORNEYS' EYES ONLY," "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY," or "CONFIDENTIAL - SOURCE CODE") subject to the provisions herein and unless otherwise stated, this Order governs, without limitation: (a) all documents, electronically stored information, and/or things as defined by the Federal Rules of Civil Procedure; (b) all pretrial, hearing or deposition testimony, or documents marked as exhibits or for identification in depositions and hearings; (c) pretrial pleadings, exhibits to pleadings and other court filings; (d) affidavits; and (e) stipulations. All copies, reproductions, extracts, digests, and complete or partial summaries prepared from any DESIGNATED MATERIALS shall also be considered DESIGNATED MATERIAL and treated as such under this Order.

4.      A designation of Protected Material (DESIGNATED MATERIAL such as "CONFIDENTIAL," "CONFIDENTIAL -ATTORNEYS' EYES ONLY," "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY," or "CONFIDENTIAL - SOURCE CODE") may be made at any time. Inadvertent or unintentional production of documents, information, or material that has not been designated as DESIGNATED MATERIAL shall not be deemed a waiver in whole or in part of a claim for confidential treatment. Any Party that inadvertently or unintentionally produces Protected Material without designating it as DESIGNATED MATERIAL may request destruction of that Protected Material by notifying the recipient(s) as soon as reasonably possible after the producing Party becomes aware of the inadvertent or unintentional disclosure, and providing replacement Protected Material that is properly designated. The recipient(s) shall then destroy all copies of the inadvertently or unintentionally produced Protected Materials and any documents, information, or material derived from or based thereon.

3

5.  "CONFIDENTIAL" documents, information, and material may be disclosed only to the following persons, except upon receipt of the prior written consent of the designating Party, upon order of the Court, or as set forth in paragraph 13 herein:

(a)  Outside counsel of record in this Action for the Parties.

(b)  Employees of such counsel assigned to and reasonably necessary to assist such counsel in the litigation of this Action.

(c)  In-house counsel for the Parties who either have responsibility for making decisions dealing directly with the litigation of this Action, or who are assisting outside counsel in the litigation of this Action.

(d)  Up to and including three (3) designated representatives of each of the Parties to the extent reasonably necessary for the litigation of this Action, except that any Party may in good faith request the other Party's consent to designate one or more additional representatives, the other Party shall not unreasonably withhold such consent, and the requesting Party may seek leave of Court to designate such additional representative(s) if the requesting Party believes the other Party has unreasonably withheld such consent.

(e)  Outside consultants or experts retained for the purpose of this litigation, provided that: (1) such consultants or experts are not presently employed by the Parties or of an affiliate of a Party hereto for purposes other than this Action; (2) before access is given, the consultant or expert has completed the Undertaking attached as Appendix A hereto and the same is served upon the producing Party with a current curriculum vitae of the consultant or expert at least ten (10) days before access to the Protected Material is to be given to that consultant or expert to object to and notify the receiving Party in writing that it objects to disclosure of Protected Material to the consultant or expert. The Parties agree to promptly confer and use good faith to resolve any such objection. If the Parties are unable to resolve any objection, the objecting Party may file a motion with the Court within fifteen (15) days of receipt of the notice, or within such other time as the Parties may agree, seeking a protective order with respect to the proposed disclosure. The objecting Party shall have the burden of proving the need for a protective order. No disclosure shall occur until all such objections are resolved by agreement or Court order.

(f)  Independent litigation support services, including persons working for or as court reporters, graphics or design services, jury or trial consulting services, and photocopy, document imaging, and database services retained by counsel and reasonably necessary to assist counsel with the litigation of this Action.

(g)  The Court and its personnel.

6. A Party shall designate documents, information, or material as "CONFIDENTIAL" only upon a good faith belief that the documents, information, or material contains confidential or proprietary information or trade secrets of the Party or a Third Party to whom the Party reasonably believes it owes an obligation of confidentiality with respect to such documents, information, or material.

7. Documents, information, or material produced pursuant to any discovery request in this Action, including but not limited to Protected Material designated as DESIGNATED MATERIAL, shall be used by the Parties only in the litigation of this Action and shall not be used for any other purpose. Any person or entity who obtains access to DESIGNATED MATERIAL or the contents thereof pursuant to this Order shall not make any copies, duplicates, extracts, summaries, or descriptions of such DESIGNATED MATERIAL or any portion thereof except as may be reasonably necessary in the litigation of this Action. Any such copies, duplicates, extracts, summaries, or descriptions shall be classified DESIGNATED MATERIALS and subject to all of the terms and conditions of this Order.

8. To the extent a producing Party believes that certain Protected Material qualifying to be designated CONFIDENTIAL is so sensitive that its dissemination deserves even further limitation, the producing Party may designate such Protected Material "CONFIDENTIAL - ATTORNEYS' EYES ONLY," or to the extent such Protected Material includes computer source code and/or live data (that is, data as it exists residing in a database or databases) ("Source Code Material"), the producing Party may designate such Protected Material as "CONFIDENTIAL - SOURCE CODE."

9. For Protected Material designated CONFIDENTIAL - ATTORNEYS' EYES ONLY, access to, and disclosure of, such Protected Material shall be limited to individuals listed

in paragraphs 5(a–c) and (e–g); provided, however, that access by in-house counsel pursuant to paragraph 5(c) be limited to in-house counsel who exercise no competitive decision-making authority on behalf of the client.

10. For Protected Material designated CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY, access to, and disclosure of, such Protected Material shall be limited to individuals listed in paragraphs 5(a–b) and (e–g); provided, however, that the designating Party shall accommodate reasonable requests to provide summary information to in-house counsel designated pursuant to paragraph 5(c) who exercise no competitive decision-making authority on behalf of the client and reasonably require access to such information.

11. For Protected Material designated "CONFIDENTIAL - SOURCE CODE" (e.g., "Source Code Material"), the following additional restrictions apply:

(a) Access to a Party's Source Code Material shall be provided only on "stand-alone" computer(s) (that is, the computer may not be linked to any network, including a local area network ("LAN"), an intranet or the Internet). The stand-alone computer(s) may be connected to (i) a printer, or (ii) a device capable of temporarily storing electronic copies solely for the limited purposes permitted pursuant to paragraphs 11(h and k) below. Additionally, except as provided in paragraph 11(k) below, the stand-alone computer(s) may only be located at the offices of the producing Party's outside counsel or its vendors.

(b) The receiving Party shall make reasonable efforts to restrict its requests for such access to the stand-alone computer(s) to normal business hours, which for purposes of this paragraph shall be 8:00 a.m. through 6:00 p.m. However, upon reasonable notice from the receiving Party, the producing Party shall make reasonable efforts to accommodate the receiving Party's request for access to the stand-alone computer(s) outside of normal business hours. The Parties agree to cooperate in good faith such that maintaining the producing Party's Source Code Material at the offices of its outside counsel or its vendors shall not unreasonably hinder the receiving Party's ability to efficiently and effectively conduct the prosecution or defense of this Action.

(c) The producing Party shall provide the receiving Party with information explaining how to start, log on to, and operate the stand-alone computer(s) in order to access the produced Source Code Material on the stand-alone computer(s).

(d)      The producing Party will produce Source Code Material in computer searchable format on the stand-alone computer(s) as described above.

(e)      Access to Source Code Material shall be limited to outside counsel and up to three (3) outside consultants or experts[3] (*i.e.*, not existing employees or affiliates of a Party or an affiliate of a Party or competitor identified by the Producing Party with reasonable specificity) retained for the purpose of this litigation and approved to access such Protected Materials pursuant to paragraph 5(e) above. A receiving Party may include excerpts of Source Code Material in an exhibit to a pleading, expert report, or deposition transcript (collectively, "Source Code Exhibits"), provided that the Source Code Exhibits are appropriately marked under this Order, restricted to those who are entitled to have access to them as specified herein, and, if filed with the Court, filed under seal in accordance with the Court's rules, procedures, and orders.

(f)      To the extent portions of Source Code Material are quoted in a Source Code Exhibit, either (1) the entire Source Code Exhibit will be stamped and treated as CONFIDENTIAL - SOURCE CODE or (2) those pages containing quoted Source Code Material will be separately stamped and treated as CONFIDENTIAL - SOURCE CODE.

(g)      Except as set forth in paragraph 11(k) below, no electronic copies of Source Code Material shall be made without prior written consent of the producing Party, except as necessary to create documents that, pursuant to the Court's rules, procedures, and order, must be filed or served electronically.

(h)      The receiving Party shall be permitted to make a reasonable number of printouts and photocopies of Source Code Material, which shall presumptively be a total of ten (10), all of which shall be designated and clearly labeled "CONFIDENTIAL - SOURCE CODE," and the receiving Party shall maintain a log of all such files that are printed or photocopied.

(i)      Should such printouts or photocopies be permissibly transferred back to electronic media, such media shall be labeled "CONFIDENTIAL - SOURCE CODE" and shall continue to be treated as such.

(j)      If the receiving Party's outside counsel, consultants, or experts obtain printouts or photocopies of Source Code Material, the receiving Party shall ensure that such outside counsel, consultants, or experts keep the printouts or photocopies in a

---

[3] For the purposes of this paragraph, an outside consultant or expert is defined to include the outside consultant's or expert's direct reports and other support personnel, such that the disclosure to a consultant or expert who employs others within his or her firm to help in his or her analysis shall count as a disclosure to a single consultant or expert, provided that such personnel helping in the analysis of Source Code Material shall be disclosed pursuant to Paragraph 5(e).

secured locked area in the offices of such outside counsel, consultants, or expert. The receiving Party may also temporarily keep the printouts or photocopies at: (i) the Court for any proceedings(s) relating to the Source Code Material, for the dates associated with the proceeding(s); (ii) the sites where any deposition(s) relating to the Source Code Material are taken, for the dates associated with the deposition(s); and (iii) any intermediate location reasonably necessary to transport the printouts or photocopies (*e.g.*, a hotel prior to a Court proceeding or deposition).

(k)     A producing Party's Source Code Material may only be transported by the receiving Party at the direction of a person authorized under paragraph 11(e) above to another person authorized under paragraph 11(e) above, on paper or removable electronic media (*e.g.*, a DVD, CD-ROM, or flash memory "stick") via hand carry, Federal Express, or other similarly reliable courier.   Source Code Material may not be transported or transmitted electronically over a network of any kind, including a LAN, an intranet, or the Internet. Source Code Material may only be transported electronically for the purpose of Court proceeding(s) or deposition(s) as set forth in paragraph 11(j) above and is at all times subject to the transport restrictions set forth herein. But, for those purposes only, the Source Code Materials may be loaded onto a stand-alone computer.

12.     Any attorney representing a Party, whether in-house or outside counsel, and any person associated with a Party and permitted to receive the other Party's Protected Material that is designated CONFIDENTIAL - ATTORNEYS' EYES ONLY, CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY, and/or CONFIDENTIAL - SOURCE CODE (collectively "HIGHLY SENSITIVE MATERIAL"), who obtains, receives, has access to, or otherwise learns, in whole or in part, the other Party's HIGHLY SENSITIVE MATERIAL under this Order shall not prepare, prosecute, supervise, or assist in the preparation or prosecution of any patent application pertaining to the field of the invention of the patents-in-suit during the pendency of this Action and for one year after its conclusion, including any appeals.   To ensure compliance with the purpose of this provision, each Party shall create an "Ethical Wall" between those persons with access to HIGHLY SENSITIVE MATERIAL and any individuals who prepare, prosecute, supervise or assist in the preparation or prosecution of any patent application pertaining to the field of invention of

the patent-in-suit.  Nothing in this Order shall prevent a person with access to HIGHLY SENSITIVE MATERIAL from participating in a PTO proceeding, *e.g.*, IPR or PGR, except for that person shall not participate—directly or indirectly—in the amendment of any claim(s).

13.  Nothing in this Order shall require production of documents, information, or other material that a Party contends is protected from disclosure by the attorney-client privilege, the work product doctrine, or other privilege, doctrine, or immunity.  If documents, information, or other material subject to a claim of attorney-client privilege, work product doctrine, or other privilege, doctrine, or immunity is inadvertently or unintentionally produced, such production shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any such privilege, doctrine, or immunity.   Any Party that inadvertently or unintentionally produces documents, information, or other material it reasonably believes are protected under the attorney-client privilege, work product doctrine, or other privilege, doctrine, or immunity may obtain the return of such documents, information, or other material by promptly notifying the recipient(s) and providing a privilege log for the inadvertently or unintentionally produced documents, information, or other material.    The recipient(s) shall gather and return all copies of such documents, information, or other material to the producing Party, except for any pages containing privileged or otherwise protected markings by the recipient(s), which pages shall instead be destroyed and certified as such to the producing Party.

14.  There shall be no disclosure of any DESIGNATED MATERIAL by any person authorized to have access thereto to any person who is not authorized for such access under this Order. The Parties are hereby ORDERED to safeguard all such documents, information, and

material to protect against disclosure to any unauthorized persons or entities.

15. Nothing contained herein shall be construed to prejudice any Party's right to use any DESIGNATED MATERIAL in taking testimony at any deposition or hearing provided that the DESIGNATED MATERIAL is only disclosed to a person(s) who is: (i) eligible to have access to the DESIGNATED MATERIAL by virtue of his or her employment with the designating Party; (ii) identified in the DESIGNATED MATERIAL as an author, addressee, or copy recipient of such information; (iii) although not identified as an author, addressee, or copy recipient of such DESIGNATED MATERIAL, has, in the ordinary course of business, seen such DESIGNATED MATERIAL; (iv) a current or former officer, director or employee of the producing Party or a current or former officer, director, or employee of a company affiliated with the producing Party; (v) counsel for a Party, including outside counsel and in-house counsel (subject to paragraph 9 of this Order); (vi) an independent contractor, consultant, and/or expert retained for the purpose of this litigation; (vii) court reporters and videographers; (viii) the Court; or (ix) other persons entitled hereunder to access to DESIGNATED MATERIAL. DESIGNATED MATERIAL shall not be disclosed to any other persons unless prior authorization is obtained from counsel representing the producing Party or from the Court.

16. Parties may, at the deposition or hearing or within thirty (30) days after receipt of a deposition or hearing transcript, designate the deposition or hearing transcript or any portion thereof as "CONFIDENTIAL," "CONFIDENTIAL - ATTORNEYS' EYES ONLY," "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY," or "CONFIDENTIAL - SOURCE CODE" pursuant to this Order. Access to the deposition or hearing transcript so designated shall be limited in accordance with the terms of this Order. Until expiration of

the 30-day period, the entire deposition or hearing transcript shall be treated as CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY.

17.    Any DESIGNATED MATERIAL that is filed with the Court shall be filed under seal and shall remain under seal until further order of the Court.   The filing Party shall be responsible for informing the Clerk of the Court that the filing should be sealed and for placing the legend "FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER" above the caption and conspicuously on each page of the filing.    Exhibits to a filing shall conform to the labeling requirements set forth in this Order.  If a pretrial pleading filed with the Court, or an exhibit thereto, discloses or relies on DESIGNATED MATERIAL, such confidential portions shall be redacted to the extent necessary and the pleading or exhibit filed publicly with the Court.

18.    The Order applies to pretrial discovery.  Nothing in this Order shall be deemed to prevent the Parties from introducing any DESIGNATED MATERIAL into evidence at the trial of this Action, or from using any information contained in DESIGNATED MATERIAL at the trial of this Action, subject to any pretrial order issued by this Court.

19.    A Party may request in writing to the other Party that the designation given to any DESIGNATED MATERIAL be modified or withdrawn.    If the designating Party does not agree to re-designation within ten (10) days of receipt of the written request, the requesting Party may apply to the Court for relief.   Upon any such application to the Court, the burden shall be on the designating Party to show why its classification is proper.   Such application shall be treated procedurally as a motion to compel pursuant to Federal Rule of Civil Procedure 37, subject to the Rule's provisions relating to sanctions.   In making such application, the requirements of the Federal Rules of Civil Procedure and the Local

11

Rules of the Court shall be met. Pending the Court's determination of the application, the designation of the designating Party shall be maintained.

20. Each outside consultant or expert to whom DESIGNATED MATERIAL is disclosed in accordance with the terms of this Order shall be advised by counsel of the terms of this Order, shall be informed that they are subject to the terms and conditions of this Order, and shall sign an acknowledgment that they have received a copy of, have read, and have agreed to be bound by this Order. A copy of the acknowledgment form is attached as Appendix A.

21. To the extent that any discovery is taken of persons who are not Parties to this Action ("Third Parties") and in the event that such Third Parties contend the discovery sought involves trade secrets, confidential business information, or other proprietary information, then such Third Parties may agree to be bound by this Order.

22. To the extent that discovery or testimony is taken of Third Parties, the Third Parties may designate as "CONFIDENTIAL," "CONFIDENTIAL - ATTORNEYS' EYES ONLY," or "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY," and/or "CONFIDENTIAL - SOURCE CODE" any documents, information, or other material, in whole or in part, produced by such Third Parties. The Third Parties shall have ten (10) days after production of such documents, information, or other materials to make such a designation. Until that time period lapses or until such a designation has been made, whichever occurs sooner, all documents, information, or other material so produced or given shall be treated as "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY" in accordance with this Order.

23. Within thirty (30) days of final termination of this Action, including any appeals, all

DESIGNATED MATERIAL, including all copies, duplicates, abstracts, indexes, summaries, descriptions, and excerpts or extracts thereof (excluding excerpts or extracts incorporated into any privileged memoranda of the Parties), shall at the producing Party's election either be returned to the producing Party or be destroyed. The receiving Party shall verify the return or destruction by affidavit furnished to the producing Party, upon the producing Party's request.

24. The failure to designate documents, information, or material in accordance with this Order and the failure to object to a designation at a given time shall not preclude the filing of a motion at a later date seeking to impose such designation or challenging the propriety thereof. The entry of this Order and/or the production of documents, information, or material hereunder shall in no way constitute a waiver of any objection to the furnishing thereof, all such objections being hereby preserved.

25. Any Party knowing or believing that any other Party is in violation of or intends to violate this Order and has raised the question of violation or potential violation with the opposing Party and has been unable to resolve the matter by agreement may move the Court for such relief as may be appropriate in the circumstances. Pending disposition of the motion by the Court, the Party alleged to be in violation of or intending to violate this Order shall discontinue the performance of and/or shall not undertake the further performance of any action alleged to constitute a violation of this Order.

26. Production of DESIGNATED MATERIAL by any Party shall not be deemed a publication of the documents, information, or material (or the contents thereof) produced so as to void or make voidable whatever claim the Parties may have as to the proprietary and confidential nature of the documents, information, or other material or its contents.

27.    Nothing in this Order shall be construed to effect an abrogation, waiver, or limitation of any kind on the rights of each of the Parties to assert any applicable discovery or trial privilege.

28.    Each of the Parties shall also retain the right to file a motion with the Court (a) to modify this Order to allow disclosure of DESIGNATED MATERIAL to additional persons or entities if reasonably necessary to prepare and present this Action; and (b) to apply for additional protection of DESIGNATED MATERIAL.

Signed on June 1st, 2021.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE

14

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| WSOU INVESTMENTS, LLC D/B/A | § | CIVIL ACTION 6:20-CV-00487-ADA |
| BRAZOS LICENSING AND | § | CIVIL ACTION 6:20-CV-00488-ADA |
| DEVELOPMENT, | § | CIVIL ACTION 6:20-CV-00489-ADA |
| | § | CIVIL ACTION 6:20-CV-00490-ADA |
| Plaintiff, | § | CIVIL ACTION 6:20-CV-00491-ADA |
| | § | CIVIL ACTION 6:20-CV-00492-ADA |
| v. | § | CIVIL ACTION 6:20-CV-00493-ADA |
| | § | CIVIL ACTION 6:20-CV-00494-ADA |
| ZTE CORPORATION ET AL, | § | CIVIL ACTION 6:20-CV-00495-ADA |
| | § | CIVIL ACTION 6:20-CV-00496-ADA |
| Defendant. | § | CIVIL ACTION 6:20-CV-00497-ADA |
| | § | |
| | § | PATENT CASE |
| | § | |
| | § | |
| | § | JURY TRIAL DEMANDED |

**APPENDIX A**
**UNDERTAKING OF EXPERTS OR CONSULTANTS REGARDING**
**PROTECTIVE ORDER**

I, _____, declare that:

1.    My address is _____.

       My current employer is _____.

       My current occupation is _____.

2.    I have received a copy of the Protective Order in this action.  I have carefully read and

       understand the provisions of the Protective Order.

3.    I will comply with all of the provisions of the Protective Order.  I will hold in confidence,

       will not disclose to anyone not qualified under the Protective Order, and will use only for

       purposes of this action any information designated as "CONFIDENTIAL,"

       "CONFIDENTIAL - ATTORNEYS' EYES ONLY," "CONFIDENTIAL - OUTSIDE

       ATTORNEYS' EYES ONLY," or "CONFIDENTIAL - SOURCE CODE" that is

disclosed to me.

4.      Promptly upon termination of these actions, I will return all documents and things designated as "CONFIDENTIAL," "CONFIDENTIAL - ATTORNEYS' EYES ONLY," "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY," or "CONFIDENTIAL - SOURCE CODE" that came into my possession, and all documents and things that I have prepared relating thereto, to the outside counsel for the Party by whom I am employed.

5.      I hereby submit to the jurisdiction of this Court for the purpose of enforcement of the Protective Order in this action.

I declare under penalty of perjury that the foregoing is true and correct.

Signature _____

Date _____

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **WSOU INVESTMENTS LLC D/B/A** | § | |
| **BRAZOS LICENSING AND** | § | **C.A. NO. 6:20-cv-00487-ADA** |
| **DEVELOPMENT,** | § | **C.A. NO. 6:20-cv-00488-ADA** |
| | § | **C.A. NO. 6:20-cv-00489-ADA** |
| *Plaintiff,* | § | **C.A. NO. 6:20-cv-00490-ADA** |
| | § | **C.A. NO. 6:20-cv-00491-ADA** |
| **v.** | § | **C.A. NO. 6:20-cv-00492-ADA** |
| | § | **C.A. NO. 6:20-cv-00493-ADA** |
| **ZTE CORPORATION** | § | **C.A. NO. 6:20-cv-00494-ADA** |
| | § | **C.A. NO. 6:20-cv-00495-ADA** |
| *Defendant.* | § | **C.A. NO. 6:20-cv-00496-ADA** |
| | § | **C.A. NO. 6:20-cv-00497-ADA** |
| | § | |

### <u>NOTICE OF SUBPOENA</u>

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendant ZTE Corporation will serve the attached subpoena for deposition and the production of documents and things.

Date: October 25, 2021

/s/ Lionel M. Lavenue
Lionel M. Lavenue
Virginia Bar No. 49,005
lionel.lavenue@finnegan.com
Bradford C. Schulz
Virginia Bar No. 91,057
Bradford.schulz@finnegan.com
**FINNEGAN, HENDERSON, FARABOW,**
**GARRETT & DUNNER, LLP**
1875 Explorer Street, Suite 800
Reston, VA 20190
  Phone:  (571) 203-2700
  Fax:     (202) 408-4400

  Attorneys for Defendant,
  ZTE Corporation

1

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that all counsel of record, who are deemed to have consented to electronic service, are being served on October 25, 2021 with a copy of this document via email.

<u>/s/Lionel M. Lavenue</u>
Lionel M. Lavenue

AO 88A  (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Western District of Texas

| | |
|---|---|
| WSOU INVESTMENTS, LLC d/b/a BRAZOS LICEN | ) |
| *Plaintiff* | ) |
| v. | ) |
| ZTE CORPORATION | ) |
| | ) |
| *Defendant* | ) |

Civil Action No.   6:20-CV-(487 through 497)-ADA

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:                                         BP Funding Trust
c/o Wilmington Savings Fund Society, FSB, 500 Delaware Avenue, 11th Floor, Wilmington, Delaware 19801
*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:
See Attached Attachment A

| Place: Finnegan, Henderson, Farabow, Garrett & Dunner, LLP | Date and Time: |
|---|---|
| 1875 Explorer Street, Suite 800 | |
| Reston, VA 20190-6023 | 11/24/2021 11:00 am |

The deposition will be recorded by this method: _____

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material: See Attached Attachment A

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

| *CLERK OF COURT* | |
|---|---|
| | OR |
| | /s/Bradford Schulz |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Defendant,
ZTE Corporation _____, who issues or requests this subpoena, are:
Finnegan, Henderson LLP by Bradford Schulz, 1875 Explorer Street, Suite 800, Reston, VA 20190-6023

## Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.   6:20-CV-(487 through 497)-ADA

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***

  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## ATTACHMENT A

Pursuant to Rules 30, 34, and 45 of the Federal Rules of Civil Procedure, Defendant ZTE Corporation requests that BP Funding Trust produce testimony as requested below.

## DEFINITIONS

The following definitions are applicable herein, regardless of whether upper or lower case letters are used:

1.      "Defendant" and "ZTE" refer collectively to ZTE Corporation ("ZTE").

2.      The term "BP Funding Trust," "you," and "your" shall mean Basepoint Administrative LLC and BP Funding Trust, a Delaware statutory trust; BP Funding Trust, Series SPL-VI, a statutory series of BP Funding Trust; and their trustees, managers, agents, representatives, employees, attorneys, or entities acting in conjunction, joint venture, or partnership with any of them including but not limited to Basepoint Capital LLC, Basepoint Tax Funding Trust, Venture 4th Basepoint 1, LLC, Basepoint Administrative LLC, Basepoint Asset Recovery LLC, or any other "Basepoint" entity or related entity thereto.

3.      "Plaintiff" and "WSOU" refer collectively to WSOU Investments, LLC d/b/a Brazos Licensing and Development ("WSOU"), its predecessors-in-interest, parents, subsidiaries, joint ventures, affiliates, and other legal entities that are wholly or partially owned or controlled by WSOU, either directly or indirectly, and the principals, directors, officers, owners, members, representatives, employees, agents, consultants, accountants, and attorneys of these same entities.

4.      References to this "lawsuit," "case," "action," or "ZTE Litigations" mean the above-captioned actions.

5.      The "'505 patent" means U.S. Patent No. 7,203,505.

6.      The "'071 patent" means U.S. Patent No. 8,147,071.

7.      The "'905 patent" means U.S. Patent No. 8,730,905.

8.      The "'960 patent" means U.S. Patent No. 8,179,960.

9.      The "'240 patent" means U.S. Patent No. 7,487,240.

10.     The "'929 patent" means U.S. Patent No. 7,489,929.

11.     The "'839 patent" means U.S. Patent No. 8,451,839.

12.     The "'232 patent" means U.S. Patent No. 9,258,232.

13.     The "'036 patent" means U.S. Patent No. 9,185,036.

14.     The "'060 patent" means U.S. Patent No. 9,294,060.

15.     The "'534 patent" means U.S. Patent No. 7,742,534.

16.     The term "WSOU Asserted Patent(s)" means the '505 patent, '071 patent, '905 patent, '960 patent, '240 patent, '929 patent, '839 patent, '232 patent, '036 patent, '060 patent, '534 patent, collectively, any other patent that may be added to this litigation by Plaintiff, and the applications that led to the issuance of any of the foregoing patents.

17.     "Related Patents and Patent Applications" means any issued patent or patent application having a relation by continuation application, continuation-in-part application, and/or divisional application, as defined by the Manual of Patent Examining Procedure (Ninth Edition, Revision 07.2015) §§ 201.06–08, with respect to the Patents-in-Suit.  "Related Patent Application" includes any international application and/or foreign counterpart of the Patents-in-Suit.  "Related Patent Application" also includes any patent application or issued patent within a chain of copendency with respect to any of the Patents-in-Suit.

18.     The term "named inventor" means any person or persons named as an inventor on the face of any asserted patent or related patent.

19.     The term "accused product" shall mean any item, device, or product that WSOU contends infringes one or more claims of any asserted patent.

20.     The term "asserted claim" shall mean any claim of any asserted patent that WSOU contends has been infringed by ZTE.

21.     The term "Prior Art" is used in these Requests in the same sense that it is used in 35 U.S.C. §§ 102 or 103 and includes without limitation, any patent, publication, physical device, prototype, knowledge, use, sale, offer for sale, any documents or other items evidencing any of the foregoing, and/or any other act or event defined in 35 U.S.C. § 102, taken singly or in combination, and having or occurring at a date such as to be potentially relevant under any subsection of 35 U.S.C. §§ 102 or 103.

22.     The term "AST" shall mean Allied Security Trust, a Delaware statutory trust; and their trustees, managers, agents, representatives, employees, attorneys, or entities acting in conjunction, joint venture, or partnership with any of them.

23.     The term "Alcatel" shall mean Alcatel-Lucent International and all parents, subsidiaries, affiliates, predecessors, successors, including but not limited to Alcatel and Lucent Technologies.

24.     The term "Nokia" shall mean Nokia Corporation and all parents, subsidiaries, affiliates, predecessors, including but not limited to Nokia Technologies Oy and Nokia Solutions and Networks BV.

25.     The term "Orange" and "Orange Holdings" shall mean Orange Holdings, its current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other

entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

26.     The term "WCFT Cayman" means WCFT Cayman, its current and former officers, directors, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

27.     The term "Wade and Company" means Wade and Company or Wade & Company, its current and former officers, directors, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

28.     The term "Omega Credit Opportunities Master Fund" means Omega Advisors, Inc.; Omega Credit Opportunities Master Fund, LP; OCO Opportunities Master Fund, L.P. (f/k/a Credit Opportunities Master Fund, LP), and their trustees, managers, agents, representatives, employees, attorneys, or entities acting in conjunction, joint venture, or partnership with any of them.

29.     The term "AQUA" shall mean Aqua Licensing, LLC, its current and form officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or

control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

30.      The term "Houlihan" shall mean Houlihan Lokey, Inc., its current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

31.      The term "Terrier," shall mean Terrier SSC, LLC, OT WSOU Terrier Holdings, LLC, its current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

32.      The term "Credit Suisse" means Credit Suisse AG, Credit Suisse Group AG, its current and former officers, directors, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

33.      The term "Juniper Capital Partners" shall mean Juniper Capital Partners, LLC, its current and former officers, directors, principals, employees, counsel, agents, consultants,

representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

34.     The term "Coast Asset Management" shall mean Coast Asset Management, LLC, its current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

35.     "Other WSOU Defendants" shall mean any and all companies that WSOU has sued in patent litigation matters, including but not limited to Google LLC,; Microsoft Corporation; Dell Technologies, Inc., Dell Inc., EMC Corporation, VMWare, Inc.; Huawei Technologies Co.,Ltd., Huawei Technologies USA Inc., Huawei Device (Shenzen) Co., Ltd. (f/k/a Huawei Device Co., Ltd.), Huawei Device USA, Inc., Huawei Investment & Holding Co., Ltd.; Hewlett Packard Enterprise Company; Juniper Enterprise Networks, Inc.;Xilinx, Inc.; NEC Corporation; OnePlus Technology (Shenzen) Co., Ltd.; Canon, Inc.;TP-Link Technology Co., Ltd.; F5 Networks, Inc.; Arista Networks, Inc.; Salesforce.com; Cisco Systems, Inc.; Netgear, Inc..

36.     The term "affiliates" shall mean any entity, including parent companies and majority-owned subsidiaries, now or hereafter acquired or formed that is directly or indirectly controlled by a party, or is under common control with a party, or is an entity that controls a party,

as well as all predecessors and successors of such entities. For this purpose "control" means direct or indirect ownership of, or the right to exercise, at least 50% of the voting power, or at least 50% of the ownership interest representing either the irrevocable right to name a majority of the members of the governing body of such entity, or the right to make binding decisions for the entity.

37.     The terms "Person" and "Individual" mean any natural person.

38.     The term "Document" is synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Rule 34(a)(l)(A) of the Federal Rules of Civil Procedure. A draft or non-identical copy is a separate document within the meaning of this term. By way of illustration, and without limitation, documents include at least the following: originals, drafts, and all non-identical copies of memoranda, reports, notes, graphs, laboratory notebooks, correspondence, interoffice communications, letters, diaries, calendars, photographs, motion pictures, sketches, drawings, promotional material, technical papers, printed publications, patents, records, reports, and all other writings, as well as all non-paper information storage means such as sound reproductions, computer inputs and outputs, tape, film and computer memory devices, as well as tangible things such as models, modules, prototypes, and commercially saleable products.

39.     The term "Thing" means any tangible item, including without limitation, models, prototypes and samples of any device or apparatus or product.

40.     The term "Communication" means every manner or method of the disclosure, transfer, or exchange of information, whether orally, electronically, or by Document, and whether face to face or by telephone, mail, facsimile, E-mail, video, instant message, internet Communication, or otherwise.

41.     Definitions or usages of words or phrases in these Topics are not intended to be, and shall not be, construed as admissions as to the meaning of words or phrases at issue in the action, and shall have no binding effect on Defendant in this or in any other proceeding.

## Instructions

1.     The singular form of a word should be interpreted in the plural as well. Any pronoun shall be construed to refer to the masculine, feminine or neutral gender as in such case is most appropriate. The words "and" and "or" shall be construed conjunctively or disjunctively, whichever makes the request most inclusive. The words "any" and "each" shall be construed to encompass the word "all." The past tense shall be interpreted to include the present tense where the meaning is not distorted and the verb form of a noun or pronoun may be used, as appropriate in a particular context.

2.     In the event that you object to any document request on the ground that it is overbroad and/or unduly burdensome for any reason, respond to that document request as narrowed to the least extent necessary, in your judgment, to render it not overbroad/unduly burdensome and state specifically the extent to which you have narrowed that document request for purposes of your response.

3.     In the event that you object to any document request on the ground that it is vague and/or ambiguous, identify the particular words, terms or phrases that are asserted to make such request vague and/or ambiguous and specify the meaning actually attributed to you by such words for purposes of your response thereto.

4.     If possible, supply all annual data requested on a calendar basis. However, if fiscal year data is provided, please specify the month in which the fiscal year begins and terminates. Where information is requested "for each year," include the requested information

for all prior years and also the requested information available for the current year and specify what portion of the current year is covered by such information.

5.      If information requested is not readily available from your records in exactly the form requested, furnish the information in the form maintained by you or carefully prepared estimates, designated as such and attach explanations of any estimate used and how the estimate was prepared.

6.      If you do not answer any request, or part thereof, because of a claim of privilege or any other claim, set forth the privilege claimed, the facts upon which you rely to support the claim or privilege and furnish a list identifying each item of information for which privilege is claimed, containing at least the following information:

     a.   The date the document was created;

     b.   The names of the owner or author(s)/sender(s) of the document;

     c.   If the document is an email, the name of the recipient(s), including copy and blind copy recipients;

     d.   A brief description of the document and type of legal advice; and

     e.   The grounds for the claim or privilege (e.g., attorney work product, attorney-client communication).

The sender(s) and recipient(s) shall be identified by position and entity (corporation or firm, etc.) with which they are employed or associated. If the sender or recipient is an attorney or foreign patent agent, he or she should be so identified. In the case of a foreign patent agent, there should be a statement of whether the laws of the agent's country grant privileged status to a patent agent's communication. The type of privilege claimed must also be stated, together with

certification that all elements of the claimed privilege have been met and not waived with respect to each document.

7.      Technical terms shall have their normal technical meaning. If you find the meaning of any term in these requests to be unclear, you must assume a reasonable meaning, state what the assumed meaning is, and answer on the basis of that assumed meaning. If you wish to clarify your interpretation of any particular term that it relied on in answering a request, you should do so in its answer.

8.      To the extent that any portion of an request requires the production of documents that were at one time within Aqua's possession, custody, or control, but which are now in the possession, custody, or control of another, Aqua is directed to identify such documents in a manner sufficient to describe such documents for the purpose of preparing and serving a proper subpoena and to give the name, telephone number, address, and e-mail address of the person last known by Aqua to have been in possession, custody, or control of such documents.

### Requests for Production

1.      Documents concerning the formation of BP Funding Trust.

2.      Documents concerning your relationship to NextPoint Acquisition Corp.

3.      Documents concerning your corporate structure.

4.      Documents concerning your investments or interests in the asserted patents, including assignment, licensing, acquisition, financial interest, security interest, lien, sale, transfer of rights (in whole or in part) and any other disposition of or any offers to buy, sell, obtain rights to, or licenses any of the asserted patents.

5.      Documents concerning discussions with NextPoint Acquisition Corp. regarding any asserted patent, a portfolio including an asserted patent, assignment of any interest in any

asserted patent or a portfolio including an asserted patent, or the acquisition or potential acquisition of any portfolio that might have included an asserted patent.

6.      Documents concerning discussions with Terrier regarding any asserted patent, a portfolio including an asserted patent, assignment of any interest in any asserted patent or a portfolio including an asserted patent, or the acquisition or potential acquisition of any portfolio that might have included an asserted patent.

7.      Agreements with Terrier concerning any potential or actual transaction regarding any asserted patent, a portfolio including an asserted patent, or the acquisition or potential acquisition of any portfolio that might have included an asserted patent.

8.      Agreements with the named inventor(s) of any of the asserted patents, including assignment agreements, consulting agreements, employment agreements and any agreements pertaining to litigation involving the asserted patents or any related patents.

9.      Compensation, cost-sharing, or profit sharing agreements with any of the named inventor(s) of the asserted patent(s).

10.     Documents regarding the assignment, licensing, acquisition, financial interest, security interest, lien, sale, transfer of rights (in whole or in part) and any other disposition of or any offers to buy, sell, obtain rights to, or licenses any of the asserted patents.

11.     Documents concerning the nature and scope of any rights you had in the past or currently have in each of the asserted patents, related applications or related patents from the time each alleged invention was conceived through the present, including the right to control any portion of litigation, future royalties, payment for licenses, contingent rights, or payments depending on the outcome of litigation.

12.     Documents regarding agreements relating to each of the asserted patents (or any portfolio including any of the asserted patents), including assurances, covenants not to sue and understandings not to assert any of the asserted patents against potential licensees.

13.     Documents regarding agreements between you and WSOU, Allied Security Trust, AQUA Licensing, LLC, RPX Corporation, Fortress Credit Co., LLC, Houlihan, Orange Holdings, Wade and Company, Omega Credit Opportunities Master Fund, Terrier, Juniper Capital Partners, Coast Asset Management, or WCFT Cayman, regarding any asserted patent, a portfolio including an asserted patent, or the acquisition or potential acquisition of any portfolio that might have included an asserted patent, including any amendment, modification, supplementation, abrogation, or termination of any such agreements.

14.     Documents regarding agreements with Nokia or other WSOU Defendants regarding an asserted patent or a portfolio including an asserted patent.

15.     Communications with Nokia, Allied Security Trust, AQUA, RPX Corporation, Fortress Credit Co., LLC, Houlihan, WSOU, Orange Holdings, Wade and Company, Omega Credit Opportunities Master Fund, Terrier, Juniper Capital Partners, Coast Asset Management, or WCFT Cayman regarding an asserted patent, a portfolio including an asserted patent, or actual or potential litigation relating to an asserted patent.

16.     Documents concerning communications with any of the named inventors regarding any of the asserted patents, this litigation or ZTE

17.     Communications with WSOU regarding the asserted patent, related patents, this litigation or ZTE.

18.     Documents concerning communications between you and any other entity relating to the possibility of patent litigation regarding the asserted patent and related patents, including any actual or potential patent litigation against ZTE and the WSOU v. ZTE Litigations.

19.     Documents concerning any contemplated acquisition of patents or rights in patents from Nokia.

20.     Documents sufficient to show any interests (current or prior) in WSOU.

21.     Documents sufficient to show any actual, contingent, or potential (1) right to license or sublicense any asserted patent, (2) right to control the licensing of any asserted patent, or (3) right to control or be involved in the resolution of any litigation involving any asserted patent.

22.     Documents sufficient to show your relationship with Stuart A. Shanus, Eric Schneider, Andrew Neuberger, Marc Wade, or Craig Etchegoyen, Orange Holdings, WSOU, Uniloc USA, Inc., WCFT Cayman, Omega Credit Opportunities Master Fund, Wade and Company, and Terrier, or any entity associated with the foregoing.

23.     Documents concerning communications with Omega Credit Opportunities Master Fund.

24.     Documents concerning the "Patent Security Agreement" recorded at USPTO Reel 09235 Frame 0068, signed May 16, 2019, the circumstances of this agreement, and any related agreements.

25.     Documents concerning the value of, any valuations of or attempts to value any asserted patent, related patent, or related application, whether individually or in combination with any other patents or applications, including any portfolio containing any asserted patent or related patent.

26.     Documents concerning any evaluation or analysis of any asserted patent, any related patent, or any related application, whether individually or in combination with any other patents or applications, including any evaluation or analysis of infringement, validity, or commercialization.

27.     Documents produced in response to a subpoena served by any other WSOU Defendant.

## TOPICS FOR DEPOSITION

1.     The subject matter of all requests for production in the concurrently served document subpoena.

2.     The authenticity of the documents produced in response to the concurrently served document subpoena.

3.     The formation of BP Funding Trust.

4.     Your relationship to NextPoint Acquisition Corp.

5.     Your corporate structure.

6.     Your investments or interests in the asserted patents, including assignment, licensing, acquisition, financial interest, security interest, lien, sale, transfer of rights (in whole or in part) and any other disposition of or any offers to buy, sell, obtain rights to, or licenses any of the asserted patents.

7.     Discussions with NextPoint Acquisition Corp. regarding any asserted patent, a portfolio including an asserted patent, assignment of any interest in any asserted patent or a portfolio including an asserted patent, or the acquisition or potential acquisition of any portfolio that might have included an asserted patent.

8.      Discussions with Terrier regarding any asserted patent, a portfolio including an asserted patent, assignment of any interest in any asserted patent or a portfolio including an asserted patent, or the acquisition or potential acquisition of any portfolio that might have included an asserted patent.

9.      Agreements with Terrier concerning any potential or actual transaction regarding any asserted patent, a portfolio including an asserted patent, or the acquisition or potential acquisition of any portfolio that might have included an asserted patent.

10.     Agreements with the named inventor(s) of any of the asserted patents, including assignment agreements, consulting agreements, employment agreements and any agreements pertaining to litigation involving the asserted patents or any related patents.

11.     Compensation, cost-sharing, or profit sharing agreements with any of the named inventor(s) of the asserted patent(s).

12.     The assignment, licensing, acquisition, financial interest, security interest, lien, sale, transfer of rights (in whole or in part) and any other disposition of or any offers to buy, sell, obtain rights to, or licenses any of the asserted patents.

13.     The nature and scope of any rights you had in the past or currently have in each of the asserted patents, related applications or related patents from the time each alleged invention was conceived through the present, including the right to control any portion of litigation, future royalties, payment for licenses, contingent rights, or payments depending on the outcome of litigation.

14.     Agreements relating to each of the asserted patents (or any portfolio including any of the asserted patents), including assurances, covenants not to sue and understandings not to assert any of the asserted patents against potential licensees.

15.     Agreements between you and WSOU, Allied Security Trust, AQUA Licensing, LLC, RPX Corporation, Fortress Credit Co., LLC, Houlihan, Orange Holdings, Wade and Company, Omega Credit Opportunities Master Fund, Terrier, Juniper Capital Partners, Coast Asset Management, or WCFT Cayman, regarding any asserted patent, a portfolio including an asserted patent, or the acquisition or potential acquisition of any portfolio that might have included an asserted patent, including any amendment, modification, supplementation, abrogation, or termination of any such agreements.

16.     Agreements with Nokia or other WSOU Defendants regarding an asserted patent or a portfolio including an asserted patent.

17.     Communications with Nokia, Allied Security Trust, AQUA, RPX Corporation, Fortress Credit Co., LLC, Houlihan, WSOU, Orange Holdings, Wade and Company, Omega Credit Opportunities Master Fund, Terrier, Juniper Capital Partners, Coast Asset Management, or WCFT Cayman regarding an asserted patent, a portfolio including an asserted patent, or actual or potential litigation relating to an asserted patent.

18.     Communications with any of the named inventors regarding any of the asserted patents, this litigation or ZTE.

19.     Communications with WSOU regarding the asserted patent, related patents, this litigation or ZTE.

20.     Communications between you and any other entity relating to the possibility of patent litigation regarding the asserted patent and related patents, including any actual or potential patent litigation against ZTE and the WSOU v. ZTE Litigations.

21.     Any contemplated acquisition of patents or rights in patents from Nokia.

22.     Any interests (current or prior) in WSOU.

23.     Any actual, contingent, or potential (1) right to license or sublicense any asserted patent, (2) right to control the licensing of any asserted patent, or (3) right to control or be involved in the resolution of any litigation involving any asserted patent.

24.     Your relationship with Stuart A. Shanus, Eric Schneider, Andrew Neuberger, Marc Wade, or Craig Etchegoyen, Orange Holdings, WSOU, Uniloc USA, Inc., WCFT Cayman, Omega Credit Opportunities Master Fund, Wade and Company, and Terrier, or or any entity associated with the foregoing.

25.     Communications with Omega Credit Opportunities Master Fund.

26.     The "Patent Security Agreement" recorded at USPTO Reel 09235 Frame 0068, signed May 16, 2019, the circumstances of this agreement, and any related agreements.

27.     The value of, any valuations of or attempts to value any asserted patent, related patent, or related application, whether individually or in combination with any other patents or applications, including of any portfolio containing any asserted patent or related patent.

28.     Any evaluation or analysis of any asserted patent, any related patent, or any related application, whether individually or in combination with any other patents or applications, including any evaluation or analysis of infringement, validity, or commercialization.

29.     Responses to subpoenas served by any other WSOU Defendant.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | | |
|---|---|---|
| WSOU INVESTMENTS, LLC D/B/A | § | CIVIL ACTION 6:20-CV-00487-ADA |
| BRAZOS LICENSING AND | § | CIVIL ACTION 6:20-CV-00488-ADA |
| DEVELOPMENT, | § | CIVIL ACTION 6:20-CV-00489-ADA |
| | § | CIVIL ACTION 6:20-CV-00490-ADA |
| Plaintiff, | § | CIVIL ACTION 6:20-CV-00491-ADA |
| | § | CIVIL ACTION 6:20-CV-00492-ADA |
| v. | § | CIVIL ACTION 6:20-CV-00493-ADA |
| | § | CIVIL ACTION 6:20-CV-00494-ADA |
| ZTE CORPORATION ET AL, | § | CIVIL ACTION 6:20-CV-00495-ADA |
| | § | CIVIL ACTION 6:20-CV-00496-ADA |
| Defendant. | § | CIVIL ACTION 6:20-CV-00497-ADA |
| | § | |
| | § | PATENT CASE |
| | § | |
| | § | |
| | § | JURY TRIAL DEMANDED |

## PROTECTIVE ORDER

WHEREAS, Plaintiff and Defendants, hereafter referred to as "the Parties," believe that certain information that is or will be encompassed by discovery demands by the Parties involves the production or disclosure of trade secrets, confidential business information, or other proprietary information in this Action[1];

WHEREAS, the Parties seek a protective order limiting disclosure thereof in accordance with Federal Rule of Civil Procedure 26(c):

THEREFORE, it is hereby stipulated among the Parties and ORDERED that:

1.  Each Party may designate as confidential for protection under this Order, in whole or in part, any document, information, or material that constitutes or includes, in whole or in part, confidential or proprietary information or trade secrets of the Party or a Third Party to whom the Party reasonably believes it owes an obligation of confidentiality with respect to such

---

[1] Action means the Case Nos. 6:20-cv-0487 through 6:20-cv-00497.

1

document, information, or material ("Protected Material"). Protected Material shall be designated by the Party producing it by affixing a legend or stamp on such document, information, or material as follows: "CONFIDENTIAL," "CONFIDENTIAL - ATTORNEYS' EYES ONLY," "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY," or "CONFIDENTIAL - SOURCE CODE" ("DESIGNATED MATERIAL").[2] The appropriate designation shall be placed clearly on each page of the Protected Material (except deposition and hearing transcripts) for which such protection is sought. For deposition and hearing transcripts, the appropriate designation shall be placed on the cover page of the transcript (if not already present on the cover page of the transcript when received from the court reporter) by each attorney receiving a copy of the transcript after that attorney receives notice of the designation of some or all of that transcript is designated as containing Protected Material.

2.     Any document produced before issuance of this Order, including pursuant to the Court's Order Governing Proceedings - Patent Case, with the designation "Confidential" or the like shall receive the same treatment as if designated "CONFIDENTIAL" under this order and any such documents produced with the designation "Confidential - Outside Attorneys' Eyes Only," or the like shall receive the same treatment as if designated "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY" under this Order, unless and until such document is re-designated to have a different classification under this Order.

3.     With respect to documents, information, or DESIGNATED MATERIAL (*i.e.*

---

[2] The term DESIGNATED MATERIAL is used throughout this Protective Order to refer to the class of materials designated as "CONFIDENTIAL," "CONFIDENTIAL - ATTORNEYS' EYES ONLY," "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY," or "CONFIDENTIAL - SOURCE CODE," both individually and collectively.

"CONFIDENTIAL," "CONFIDENTIAL - ATTORNEYS' EYES ONLY," "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY," or "CONFIDENTIAL - SOURCE CODE") subject to the provisions herein and unless otherwise stated, this Order governs, without limitation: (a) all documents, electronically stored information, and/or things as defined by the Federal Rules of Civil Procedure; (b) all pretrial, hearing or deposition testimony, or documents marked as exhibits or for identification in depositions and hearings; (c) pretrial pleadings, exhibits to pleadings and other court filings; (d) affidavits; and (e) stipulations. All copies, reproductions, extracts, digests, and complete or partial summaries prepared from any DESIGNATED MATERIALS shall also be considered DESIGNATED MATERIAL and treated as such under this Order.

4. A designation of Protected Material (DESIGNATED MATERIAL such as "CONFIDENTIAL," "CONFIDENTIAL -ATTORNEYS' EYES ONLY," "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY," or "CONFIDENTIAL - SOURCE CODE") may be made at any time. Inadvertent or unintentional production of documents, information, or material that has not been designated as DESIGNATED MATERIAL shall not be deemed a waiver in whole or in part of a claim for confidential treatment. Any Party that inadvertently or unintentionally produces Protected Material without designating it as DESIGNATED MATERIAL may request destruction of that Protected Material by notifying the recipient(s) as soon as reasonably possible after the producing Party becomes aware of the inadvertent or unintentional disclosure, and providing replacement Protected Material that is properly designated. The recipient(s) shall then destroy all copies of the inadvertently or unintentionally produced Protected Materials and any documents, information, or material derived from or based thereon.

3

5.  "CONFIDENTIAL" documents, information, and material may be disclosed only to the following persons, except upon receipt of the prior written consent of the designating Party, upon order of the Court, or as set forth in paragraph 13 herein:

(a)  Outside counsel of record in this Action for the Parties.

(b)  Employees of such counsel assigned to and reasonably necessary to assist such counsel in the litigation of this Action.

(c)  In-house counsel for the Parties who either have responsibility for making decisions dealing directly with the litigation of this Action, or who are assisting outside counsel in the litigation of this Action.

(d)  Up to and including three (3) designated representatives of each of the Parties to the extent reasonably necessary for the litigation of this Action, except that any Party may in good faith request the other Party's consent to designate one or more additional representatives, the other Party shall not unreasonably withhold such consent, and the requesting Party may seek leave of Court to designate such additional representative(s) if the requesting Party believes the other Party has unreasonably withheld such consent.

(e)  Outside consultants or experts retained for the purpose of this litigation, provided that: (1) such consultants or experts are not presently employed by the Parties or of an affiliate of a Party hereto for purposes other than this Action; (2) before access is given, the consultant or expert has completed the Undertaking attached as Appendix A hereto and the same is served upon the producing Party with a current curriculum vitae of the consultant or expert at least ten (10) days before access to the Protected Material is to be given to that consultant or expert to object to and notify the receiving Party in writing that it objects to disclosure of Protected Material to the consultant or expert. The Parties agree to promptly confer and use good faith to resolve any such objection. If the Parties are unable to resolve any objection, the objecting Party may file a motion with the Court within fifteen (15) days of receipt of the notice, or within such other time as the Parties may agree, seeking a protective order with respect to the proposed disclosure. The objecting Party shall have the burden of proving the need for a protective order. No disclosure shall occur until all such objections are resolved by agreement or Court order.

(f)  Independent litigation support services, including persons working for or as court reporters, graphics or design services, jury or trial consulting services, and photocopy, document imaging, and database services retained by counsel and reasonably necessary to assist counsel with the litigation of this Action.

(g)  The Court and its personnel.

6.    A Party shall designate documents, information, or material as "CONFIDENTIAL" only upon a good faith belief that the documents, information, or material contains confidential or proprietary information or trade secrets of the Party or a Third Party to whom the Party reasonably believes it owes an obligation of confidentiality with respect to such documents, information, or material.

7.    Documents, information, or material produced pursuant to any discovery request in this Action, including but not limited to Protected Material designated as DESIGNATED MATERIAL, shall be used by the Parties only in the litigation of this Action and shall not be used for any other purpose.   Any person or entity who obtains access to DESIGNATED MATERIAL or the contents thereof pursuant to this Order shall not make any copies, duplicates, extracts, summaries, or descriptions of such DESIGNATED MATERIAL or any portion thereof except as may be reasonably necessary in the litigation of this Action.   Any such copies, duplicates, extracts, summaries, or descriptions shall be classified DESIGNATED MATERIALS and subject to all of the terms and conditions of this Order.

8.    To the extent a producing Party believes that certain Protected Material qualifying to be designated CONFIDENTIAL is so sensitive that its dissemination deserves even further limitation, the producing Party may designate such Protected Material "CONFIDENTIAL - ATTORNEYS' EYES ONLY," or to the extent such Protected Material includes computer source code and/or live data (that is, data as it exists residing in a database or databases) ("Source Code Material"), the producing Party may designate such Protected Material as "CONFIDENTIAL - SOURCE CODE."

9.    For Protected Material designated CONFIDENTIAL - ATTORNEYS' EYES ONLY, access to, and disclosure of, such Protected Material shall be limited to individuals listed

in paragraphs 5(a–c) and (e–g); provided, however, that access by in-house counsel pursuant to paragraph 5(c) be limited to in-house counsel who exercise no competitive decision-making authority on behalf of the client.

10.     For Protected Material designated CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY, access to, and disclosure of, such Protected Material shall be limited to individuals listed in paragraphs 5(a–b) and (e–g); provided, however, that the designating Party shall accommodate reasonable requests to provide summary information to in-house counsel designated pursuant to paragraph 5(c) who exercise no competitive decision-making authority on behalf of the client and reasonably require access to such information.

11.     For Protected Material designated "CONFIDENTIAL - SOURCE CODE" (e.g., "Source Code Material"), the following additional restrictions apply:

(a)     Access to a Party's Source Code Material shall be provided only on "stand-alone" computer(s) (that is, the computer may not be linked to any network, including a local area network ("LAN"), an intranet or the Internet). The stand-alone computer(s) may be connected to (i) a printer, or (ii) a device capable of temporarily storing electronic copies solely for the limited purposes permitted pursuant to paragraphs 11(h and k) below. Additionally, except as provided in paragraph 11(k) below, the stand-alone computer(s) may only be located at the offices of the producing Party's outside counsel or its vendors.

(b)     The receiving Party shall make reasonable efforts to restrict its requests for such access to the stand-alone computer(s) to normal business hours, which for purposes of this paragraph shall be 8:00 a.m. through 6:00 p.m. However, upon reasonable notice from the receiving Party, the producing Party shall make reasonable efforts to accommodate the receiving Party's request for access to the stand-alone computer(s) outside of normal business hours. The Parties agree to cooperate in good faith such that maintaining the producing Party's Source Code Material at the offices of its outside counsel or its vendors shall not unreasonably hinder the receiving Party's ability to efficiently and effectively conduct the prosecution or defense of this Action.

(c)     The producing Party shall provide the receiving Party with information explaining how to start, log on to, and operate the stand-alone computer(s) in order to access the produced Source Code Material on the stand-alone computer(s).

6

(d)     The producing Party will produce Source Code Material in computer searchable format on the stand-alone computer(s) as described above.

(e)     Access to Source Code Material shall be limited to outside counsel and up to three (3) outside consultants or experts[3] (*i.e.*, not existing employees or affiliates of a Party or an affiliate of a Party or competitor identified by the Producing Party with reasonable specificity) retained for the purpose of this litigation and approved to access such Protected Materials pursuant to paragraph 5(e) above.   A receiving Party may include excerpts of Source Code Material in an exhibit to a pleading, expert report, or deposition transcript (collectively, "Source Code Exhibits"), provided that the Source Code Exhibits are appropriately marked under this Order, restricted to those who are entitled to have access to them as specified herein, and, if filed with the Court, filed under seal in accordance with the Court's rules, procedures, and orders.

(f)     To the extent portions of Source Code Material are quoted in a Source Code Exhibit, either (1) the entire Source Code Exhibit will be stamped and treated as CONFIDENTIAL - SOURCE CODE or (2) those pages containing quoted Source Code Material will be separately stamped and treated as CONFIDENTIAL - SOURCE CODE.

(g)     Except as set forth in paragraph 11(k) below, no electronic copies of Source Code Material shall be made without prior written consent of the producing Party, except as necessary to create documents that, pursuant to the Court's rules, procedures, and order, must be filed or served electronically.

(h)     The receiving Party shall be permitted to make a reasonable number of printouts and photocopies of Source Code Material, which shall presumptively be a total of ten (10), all of which shall be designated and clearly labeled "CONFIDENTIAL - SOURCE CODE," and the receiving Party shall maintain a log of all such files that are printed or photocopied.

(i)     Should such printouts or photocopies be permissibly transferred back to electronic media, such media shall be labeled "CONFIDENTIAL - SOURCE CODE" and shall continue to be treated as such.

(j)     If the receiving Party's outside counsel, consultants, or experts obtain printouts or photocopies of Source Code Material, the receiving Party shall ensure that such outside counsel, consultants, or experts keep the printouts or photocopies in a

---

[3] For the purposes of this paragraph, an outside consultant or expert is defined to include the outside consultant's or expert's direct reports and other support personnel, such that the disclosure to a consultant or expert who employs others within his or her firm to help in his or her analysis shall count as a disclosure to a single consultant or expert, provided that such personnel helping in the analysis of Source Code Material shall be disclosed pursuant to Paragraph 5(e).

secured locked area in the offices of such outside counsel, consultants, or expert. The receiving Party may also temporarily keep the printouts or photocopies at: (i) the Court for any proceedings(s) relating to the Source Code Material, for the dates associated with the proceeding(s); (ii) the sites where any deposition(s) relating to the Source Code Material are taken, for the dates associated with the deposition(s); and (iii) any intermediate location reasonably necessary to transport the printouts or photocopies (*e.g.*, a hotel prior to a Court proceeding or deposition).

(k)     A producing Party's Source Code Material may only be transported by the receiving Party at the direction of a person authorized under paragraph 11(e) above to another person authorized under paragraph 11(e) above, on paper or removable electronic media (*e.g.*, a DVD, CD-ROM, or flash memory "stick") via hand carry, Federal Express, or other similarly reliable courier.   Source Code Material may not be transported or transmitted electronically over a network of any kind, including a LAN, an intranet, or the Internet. Source Code Material may only be transported electronically for the purpose of Court proceeding(s) or deposition(s) as set forth in paragraph 11(j) above and is at all times subject to the transport restrictions set forth herein. But, for those purposes only, the Source Code Materials may be loaded onto a stand-alone computer.

12.     Any attorney representing a Party, whether in-house or outside counsel, and any person associated with a Party and permitted to receive the other Party's Protected Material that is designated CONFIDENTIAL - ATTORNEYS' EYES ONLY, CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY, and/or CONFIDENTIAL - SOURCE CODE (collectively "HIGHLY SENSITIVE MATERIAL"), who obtains, receives, has access to, or otherwise learns, in whole or in part, the other Party's HIGHLY SENSITIVE MATERIAL under this Order shall not prepare, prosecute, supervise, or assist in the preparation or prosecution of any patent application pertaining to the field of the invention of the patents-in-suit during the pendency of this Action and for one year after its conclusion, including any appeals.   To ensure compliance with the purpose of this provision, each Party shall create an "Ethical Wall" between those persons with access to HIGHLY SENSITIVE MATERIAL and any individuals who prepare, prosecute, supervise or assist in the preparation or prosecution of any patent application pertaining to the field of invention of

the patent-in-suit. Nothing in this Order shall prevent a person with access to HIGHLY SENSITIVE MATERIAL from participating in a PTO proceeding, *e.g.*, IPR or PGR, except for that person shall not participate—directly or indirectly—in the amendment of any claim(s).

13. Nothing in this Order shall require production of documents, information, or other material that a Party contends is protected from disclosure by the attorney-client privilege, the work product doctrine, or other privilege, doctrine, or immunity. If documents, information, or other material subject to a claim of attorney-client privilege, work product doctrine, or other privilege, doctrine, or immunity is inadvertently or unintentionally produced, such production shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any such privilege, doctrine, or immunity. Any Party that inadvertently or unintentionally produces documents, information, or other material it reasonably believes are protected under the attorney-client privilege, work product doctrine, or other privilege, doctrine, or immunity may obtain the return of such documents, information, or other material by promptly notifying the recipient(s) and providing a privilege log for the inadvertently or unintentionally produced documents, information, or other material. The recipient(s) shall gather and return all copies of such documents, information, or other material to the producing Party, except for any pages containing privileged or otherwise protected markings by the recipient(s), which pages shall instead be destroyed and certified as such to the producing Party.

14. There shall be no disclosure of any DESIGNATED MATERIAL by any person authorized to have access thereto to any person who is not authorized for such access under this Order. The Parties are hereby ORDERED to safeguard all such documents, information, and

9

material to protect against disclosure to any unauthorized persons or entities.

15.     Nothing contained herein shall be construed to prejudice any Party's right to use any DESIGNATED MATERIAL in taking testimony at any deposition or hearing provided that the DESIGNATED MATERIAL is only disclosed to a person(s) who is: (i) eligible to have access to the DESIGNATED MATERIAL by virtue of his or her employment with the designating Party; (ii) identified in the DESIGNATED MATERIAL as an author, addressee, or copy recipient of such information; (iii) although not identified as an author, addressee, or copy recipient of such DESIGNATED MATERIAL, has, in the ordinary course of business, seen such DESIGNATED MATERIAL; (iv) a current or former officer, director or employee of the producing Party or a current or former officer, director, or employee of a company affiliated with the producing Party; (v) counsel for a Party, including outside counsel and in-house counsel (subject to paragraph 9 of this Order); (vi) an independent contractor, consultant, and/or expert retained for the purpose of this litigation; (vii) court reporters and videographers; (viii) the Court; or (ix) other persons entitled hereunder to access to DESIGNATED MATERIAL.     DESIGNATED MATERIAL shall not be disclosed to any other persons unless prior authorization is obtained from counsel representing the producing Party or from the Court.

16.     Parties may, at the deposition or hearing or within thirty (30) days after receipt of a deposition or hearing transcript, designate the deposition or hearing transcript or any portion thereof as "CONFIDENTIAL," "CONFIDENTIAL - ATTORNEYS' EYES ONLY," "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY," or "CONFIDENTIAL - SOURCE CODE" pursuant to this Order.   Access to the deposition or hearing transcript so designated shall be limited in accordance with the terms of this Order.   Until expiration of

the 30-day period, the entire deposition or hearing transcript shall be treated as CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY.

17. Any DESIGNATED MATERIAL that is filed with the Court shall be filed under seal and shall remain under seal until further order of the Court. The filing Party shall be responsible for informing the Clerk of the Court that the filing should be sealed and for placing the legend "FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER" above the caption and conspicuously on each page of the filing. Exhibits to a filing shall conform to the labeling requirements set forth in this Order. If a pretrial pleading filed with the Court, or an exhibit thereto, discloses or relies on DESIGNATED MATERIAL, such confidential portions shall be redacted to the extent necessary and the pleading or exhibit filed publicly with the Court.

18. The Order applies to pretrial discovery. Nothing in this Order shall be deemed to prevent the Parties from introducing any DESIGNATED MATERIAL into evidence at the trial of this Action, or from using any information contained in DESIGNATED MATERIAL at the trial of this Action, subject to any pretrial order issued by this Court.

19. A Party may request in writing to the other Party that the designation given to any DESIGNATED MATERIAL be modified or withdrawn. If the designating Party does not agree to re-designation within ten (10) days of receipt of the written request, the requesting Party may apply to the Court for relief. Upon any such application to the Court, the burden shall be on the designating Party to show why its classification is proper. Such application shall be treated procedurally as a motion to compel pursuant to Federal Rule of Civil Procedure 37, subject to the Rule's provisions relating to sanctions. In making such application, the requirements of the Federal Rules of Civil Procedure and the Local

Rules of the Court shall be met. Pending the Court's determination of the application, the designation of the designating Party shall be maintained.

20. Each outside consultant or expert to whom DESIGNATED MATERIAL is disclosed in accordance with the terms of this Order shall be advised by counsel of the terms of this Order, shall be informed that they are subject to the terms and conditions of this Order, and shall sign an acknowledgment that they have received a copy of, have read, and have agreed to be bound by this Order. A copy of the acknowledgment form is attached as Appendix A.

21. To the extent that any discovery is taken of persons who are not Parties to this Action ("Third Parties") and in the event that such Third Parties contend the discovery sought involves trade secrets, confidential business information, or other proprietary information, then such Third Parties may agree to be bound by this Order.

22. To the extent that discovery or testimony is taken of Third Parties, the Third Parties may designate as "CONFIDENTIAL," "CONFIDENTIAL - ATTORNEYS' EYES ONLY," or "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY," and/or "CONFIDENTIAL - SOURCE CODE" any documents, information, or other material, in whole or in part, produced by such Third Parties. The Third Parties shall have ten (10) days after production of such documents, information, or other materials to make such a designation. Until that time period lapses or until such a designation has been made, whichever occurs sooner, all documents, information, or other material so produced or given shall be treated as "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY" in accordance with this Order.

23. Within thirty (30) days of final termination of this Action, including any appeals, all

DESIGNATED MATERIAL, including all copies, duplicates, abstracts, indexes, summaries, descriptions, and excerpts or extracts thereof (excluding excerpts or extracts incorporated into any privileged memoranda of the Parties), shall at the producing Party's election either be returned to the producing Party or be destroyed. The receiving Party shall verify the return or destruction by affidavit furnished to the producing Party, upon the producing Party's request.

24. The failure to designate documents, information, or material in accordance with this Order and the failure to object to a designation at a given time shall not preclude the filing of a motion at a later date seeking to impose such designation or challenging the propriety thereof. The entry of this Order and/or the production of documents, information, or material hereunder shall in no way constitute a waiver of any objection to the furnishing thereof, all such objections being hereby preserved.

25. Any Party knowing or believing that any other Party is in violation of or intends to violate this Order and has raised the question of violation or potential violation with the opposing Party and has been unable to resolve the matter by agreement may move the Court for such relief as may be appropriate in the circumstances. Pending disposition of the motion by the Court, the Party alleged to be in violation of or intending to violate this Order shall discontinue the performance of and/or shall not undertake the further performance of any action alleged to constitute a violation of this Order.

26. Production of DESIGNATED MATERIAL by any Party shall not be deemed a publication of the documents, information, or material (or the contents thereof) produced so as to void or make voidable whatever claim the Parties may have as to the proprietary and confidential nature of the documents, information, or other material or its contents.

27.     Nothing in this Order shall be construed to effect an abrogation, waiver, or limitation of any kind on the rights of each of the Parties to assert any applicable discovery or trial privilege.

28.     Each of the Parties shall also retain the right to file a motion with the Court (a) to modify this Order to allow disclosure of DESIGNATED MATERIAL to additional persons or entities if reasonably necessary to prepare and present this Action; and (b) to apply for additional protection of DESIGNATED MATERIAL.

Signed on June 1st, 2021.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| WSOU INVESTMENTS, LLC D/B/A | § | CIVIL ACTION 6:20-CV-00487-ADA |
| BRAZOS LICENSING AND | § | CIVIL ACTION 6:20-CV-00488-ADA |
| DEVELOPMENT, | § | CIVIL ACTION 6:20-CV-00489-ADA |
| | § | CIVIL ACTION 6:20-CV-00490-ADA |
| Plaintiff, | § | CIVIL ACTION 6:20-CV-00491-ADA |
| | § | CIVIL ACTION 6:20-CV-00492-ADA |
| v. | § | CIVIL ACTION 6:20-CV-00493-ADA |
| | § | CIVIL ACTION 6:20-CV-00494-ADA |
| ZTE CORPORATION ET AL, | § | CIVIL ACTION 6:20-CV-00495-ADA |
| | § | CIVIL ACTION 6:20-CV-00496-ADA |
| Defendant. | § | CIVIL ACTION 6:20-CV-00497-ADA |
| | § | |
| | § | PATENT CASE |
| | § | |
| | § | |
| | § | JURY TRIAL DEMANDED |

**APPENDIX A**
**UNDERTAKING OF EXPERTS OR CONSULTANTS REGARDING**
**PROTECTIVE ORDER**

I, _____, declare that:

1.     My address is _____.

   My current employer is _____.

   My current occupation is _____.

2.     I have received a copy of the Protective Order in this action.  I have carefully read and

   understand the provisions of the Protective Order.

3.     I will comply with all of the provisions of the Protective Order.  I will hold in confidence,

   will not disclose to anyone not qualified under the Protective Order, and will use only for

   purposes of this action any information designated as "CONFIDENTIAL,"

   "CONFIDENTIAL - ATTORNEYS' EYES ONLY," "CONFIDENTIAL - OUTSIDE

   ATTORNEYS' EYES ONLY," or "CONFIDENTIAL - SOURCE CODE" that is

disclosed to me.

4.      Promptly upon termination of these actions, I will return all documents and things designated as "CONFIDENTIAL," "CONFIDENTIAL - ATTORNEYS' EYES ONLY," "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY," or "CONFIDENTIAL - SOURCE CODE" that came into my possession, and all documents and things that I have prepared relating thereto, to the outside counsel for the Party by whom I am employed.

5.      I hereby submit to the jurisdiction of this Court for the purpose of enforcement of the Protective Order in this action.

I declare under penalty of perjury that the foregoing is true and correct.

Signature _____

Date _____

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **WSOU INVESTMENTS LLC D/B/A** | § | |
| **BRAZOS LICENSING AND** | § | **C.A. NO. 6:20-cv-00487-ADA** |
| **DEVELOPMENT,** | § | **C.A. NO. 6:20-cv-00488-ADA** |
| | § | **C.A. NO. 6:20-cv-00489-ADA** |
| *Plaintiff,* | § | **C.A. NO. 6:20-cv-00490-ADA** |
| | § | **C.A. NO. 6:20-cv-00491-ADA** |
| **v.** | § | **C.A. NO. 6:20-cv-00492-ADA** |
| | § | **C.A. NO. 6:20-cv-00493-ADA** |
| **ZTE CORPORATION** | § | **C.A. NO. 6:20-cv-00494-ADA** |
| | § | **C.A. NO. 6:20-cv-00495-ADA** |
| *Defendant.* | § | **C.A. NO. 6:20-cv-00496-ADA** |
| | § | **C.A. NO. 6:20-cv-00497-ADA** |
| | § | |

**<u>NOTICE OF SUBPOENA</u>**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

        PLEASE TAKE NOTICE that Defendant ZTE Corporation will serve the attached subpoena for deposition and the production of documents and things.

Date: October 25, 2021

                                        */s/ Lionel M. Lavenue*
                                        Lionel M. Lavenue
                                        Virginia Bar No. 49,005
                                        lionel.lavenue@finnegan.com
                                        Bradford C. Schulz
                                        Virginia Bar No. 91,057
                                        Bradford.schulz@finnegan.com
                                        **FINNEGAN, HENDERSON, FARABOW,**
                                        **GARRETT & DUNNER, LLP**
                                        1875 Explorer Street, Suite 800
                                        Reston, VA 20190
                                          Phone:  (571) 203-2700
                                          Fax:      (202) 408-4400

                                        Attorneys for Defendant,
                                        ZTE Corporation

1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record, who are deemed to have consented to electronic service, are being served on October 25, 2021 with a copy of this document via email.

*/s/Lionel M. Lavenue*
Lionel M. Lavenue

AO 88A  (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Western District of Texas

| | |
|---|---|
| WSOU INVESTMENTS, LLC d/b/a BRAZOS LICEN | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.   6:20-CV-(487 through 497)-ADA |
| ZTE CORPORATION | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:          Terrier SSC LLC
          c/o VCORP Services, LLC, 1013 Centre Road, Suite 403-B, Wilmington, Delaware 19805
          *(Name of person to whom this subpoena is directed)*

☑ *Testimony:*  **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:
See Attached Attachment A

| Place: Finnegan, Henderson, Farabow, Garrett & Dunner, LLP | Date and Time: |
|---|---|
| 1875 Explorer Street, Suite 800 Reston, VA 20190-6023 | 11/24/2021 11:00 am |

          The deposition will be recorded by this method: _____

☑ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:  See Attached Attachment A

          The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

          *CLERK OF COURT*
                                        OR
                                              /s/Bradford Schulz
          _____                    _____
          *Signature of Clerk or Deputy Clerk*              *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   Defendant,
ZTE Corporation
_____ , who issues or requests this subpoena, are:
Finnegan, Henderson LLP by Bradford Schulz, 1875 Explorer Street, Suite 800, Reston, VA 20190-6023

## Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.   6:20-CV-(487 through 497)-ADA

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❒ I served the subpoena by delivering a copy to the named individual as follows: _____

_____     on *(date)* _____ ; or

❒ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## ATTACHMENT A

Pursuant to Rules 30, 34, and 45 of the Federal Rules of Civil Procedure, Defendant ZTE

Corporation requests that Terrier SSC, LLC produce testimony as requested below.

## DEFINITIONS

The following definitions are applicable herein, regardless of whether upper or lower case

letters are used:

1.  "Defendant" and "ZTE" refer collectively to ZTE Corporation ("ZTE").

2.  The term "Terrier," "you," and "your" shall mean Terrier SSC, LLC, OT WSOU

Terrier Holdings, LLC, its current and former officers, directors, principals, employees, counsel,

agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees,

franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of

any of the foregoing, and any other entities that own or control or are owned or controlled by or

share common ownership or control with any of the foregoing, as well as predecessors and

successors in interest to such entities.

3.  "Plaintiff" and "WSOU" refer collectively to WSOU Investments, LLC d/b/a

Brazos Licensing and Development ("WSOU"), its predecessors-in-interest, parents, subsidiaries,

joint ventures, affiliates, and other legal entities that are wholly or partially owned or controlled

by WSOU, either directly or indirectly, and the principals, directors, officers, owners, members,

representatives, employees, agents, consultants, accountants, and attorneys of these same entities.

4.  References to this "lawsuit," "case," "action," or "ZTE Litigations" mean the

above-captioned actions.

5.  The "'505 patent" means U.S. Patent No. 7,203,505.

6.  The "'071 patent" means U.S. Patent No. 8,147,071.

1

7.      The "'905 patent" means U.S. Patent No. 8,730,905.

8.      The "'960 patent" means U.S. Patent No. 8,179,960.

9.      The "'240 patent" means U.S. Patent No. 7,487,240.

10.     The "'929 patent" means U.S. Patent No. 7,489,929.

11.     The "'839 patent" means U.S. Patent No. 8,451,839.

12.     The "'232 patent" means U.S. Patent No. 9,258,232.

13.     The "'036 patent" means U.S. Patent No. 9,185,036.

14.     The "'060 patent" means U.S. Patent No. 9,294,060.

15.     The "'534 patent" means U.S. Patent No. 7,742,534.

16.     The term "WSOU Asserted Patent(s)" means the '505 patent, '071 patent, '905 patent, '960 patent, '240 patent, '929 patent, '839 patent, '232 patent, '036 patent, '060 patent, '534 patent, collectively, any other patent that may be added to this litigation by Plaintiff, and the applications that led to the issuance of any of the foregoing patents.

17.     "Related Patents and Patent Applications" means any issued patent or patent application having a relation by continuation application, continuation-in-part application, and/or divisional application, as defined by the Manual of Patent Examining Procedure (Ninth Edition, Revision 07.2015) §§ 201.06–08, with respect to the Patents-in-Suit. "Related Patent Application" includes any international application and/or foreign counterpart of the Patents-in-Suit. "Related Patent Application" also includes any patent application or issued patent within a chain of copendency with respect to any of the Patents-in-Suit.

18.     The term "named inventor" means any person or persons named as an inventor on the face of any asserted patent or related patent.

19.    The term "accused product" shall mean any item, device, or product that WSOU contends infringes one or more claims of any asserted patent.

20.    The term "asserted claim" shall mean any claim of any asserted patent that WSOU contends has been infringed by ZTE.

21.    The term "Prior Art" is used in these Requests in the same sense that it is used in 35 U.S.C. §§ 102 or 103 and includes without limitation, any patent, publication, physical device, prototype, knowledge, use, sale, offer for sale, any documents or other items evidencing any of the foregoing, and/or any other act or event defined in 35 U.S.C. § 102, taken singly or in combination, and having or occurring at a date such as to be potentially relevant under any subsection of 35 U.S.C. §§ 102 or 103.

22.    The term "AST" shall mean Allied Security Trust, a Delaware statutory trust; and their trustees, managers, agents, representatives, employees, attorneys, or entities acting in conjunction, joint venture, or partnership with any of them.

23.    The term "Alcatel" shall mean Alcatel-Lucent International and all parents, subsidiaries, affiliates, predecessors, successors, including but not limited to Alcatel and Lucent Technologies.

24.    The term "Nokia" shall mean Nokia Corporation and all parents, subsidiaries, affiliates, predecessors, including but not limited to Nokia Technologies Oy and Nokia Solutions and Networks BV.

25.    The term "Orange" and "Orange Holdings" shall mean Orange Holdings, its current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other

entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

26.     The term "WCFT Cayman" means WCFT Cayman, its current and former officers, directors, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

27.     The term "Wade and Company" means Wade and Company or Wade & Company, its current and former officers, directors, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

28.     The term "Omega Credit Opportunities Master Fund" means Omega Advisors, Inc.; Omega Credit Opportunities Master Fund, LP; OCO Opportunities Master Fund, L.P. (f/k/a Credit Opportunities Master Fund, LP), and their trustees, managers, agents, representatives, employees, attorneys, or entities acting in conjunction, joint venture, or partnership with any of them.

29.     The term "AQUA" shall mean Aqua Licensing, LLC, its current and form officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or

control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

30.     The term "Houlihan" shall mean Houlihan Lokey, Inc., its current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

31.     The term "BP Funding Trust" means Basepoint Administrative LLC and BP Funding Trust, a Delaware statutory trust; BP Funding Trust, Series SPL-VI, a statutory series of BP Funding Trust; and their trustees, managers, agents, representatives, employees, attorneys, or entities acting in conjunction, joint venture, or partnership with any of them including but not limited to Basepoint Capital LLC, Basepoint Tax Funding Trust, Venture 4th Basepoint 1, LLC, Basepoint Administrative LLC, Basepoint Asset Recovery LLC, or any other "Basepoint" entity or related entity thereto.

32.     The term "Credit Suisse" means Credit Suisse AG, Credit Suisse Group AG, its current and former officers, directors, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

33.     The term "Juniper Capital Partners" shall mean Juniper Capital Partners, LLC, its current and former officers, directors, principals, employees, counsel, agents, consultants,

representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

34.    The term "Coast Asset Management" shall mean Coast Asset Management, LLC, its current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

35.    "Other WSOU Defendants" shall mean any and all companies that WSOU has sued in patent litigation matters, including but not limited to Google LLC,; Microsoft Corporation; Dell Technologies, Inc., Dell Inc., EMC Corporation, VMWare, Inc.; Huawei Technologies Co.,Ltd., Huawei Technologies USA Inc., Huawei Device (Shenzen) Co., Ltd. (f/k/a Huawei Device Co., Ltd.), Huawei Device USA, Inc., Huawei Investment & Holding Co., Ltd.; Hewlett Packard Enterprise Company; Juniper Enterprise Networks, Inc.;Xilinx, Inc.; NEC Corporation; OnePlus Technology (Shenzen) Co., Ltd.; Canon, Inc.;TP-Link Technology Co., Ltd.; F5 Networks, Inc.; Arista Networks, Inc.; Salesforce.com; Cisco Systems, Inc.; Netgear, Inc..

36.    The term "affiliates" shall mean any entity, including parent companies and majority-owned subsidiaries, now or hereafter acquired or formed that is directly or indirectly controlled by a party, or is under common control with a party, or is an entity that controls a party,

as well as all predecessors and successors of such entities. For this purpose "control" means direct or indirect ownership of, or the right to exercise, at least 50% of the voting power, or at least 50% of the ownership interest representing either the irrevocable right to name a majority of the members of the governing body of such entity, or the right to make binding decisions for the entity.

37.     The terms "Person" and "Individual" mean any natural person.

38.     The term "Document" is synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Rule 34(a)(l)(A) of the Federal Rules of Civil Procedure. A draft or non-identical copy is a separate document within the meaning of this term. By way of illustration, and without limitation, documents include at least the following: originals, drafts, and all non-identical copies of memoranda, reports, notes, graphs, laboratory notebooks, correspondence, interoffice communications, letters, diaries, calendars, photographs, motion pictures, sketches, drawings, promotional material, technical papers, printed publications, patents, records, reports, and all other writings, as well as all non-paper information storage means such as sound reproductions, computer inputs and outputs, tape, film and computer memory devices, as well as tangible things such as models, modules, prototypes, and commercially saleable products.

39.     The term "Thing" means any tangible item, including without limitation, models, prototypes and samples of any device or apparatus or product.

40.     The term "Communication" means every manner or method of the disclosure, transfer, or exchange of information, whether orally, electronically, or by Document, and whether face to face or by telephone, mail, facsimile, E-mail, video, instant message, internet Communication, or otherwise.

41.     Definitions or usages of words or phrases in these Topics are not intended to be, and shall not be, construed as admissions as to the meaning of words or phrases at issue in the action, and shall have no binding effect on Defendant in this or in any other proceeding.

## Instructions

1.     The singular form of a word should be interpreted in the plural as well. Any pronoun shall be construed to refer to the masculine, feminine or neutral gender as in such case is most appropriate. The words "and" and "or" shall be construed conjunctively or disjunctively, whichever makes the request most inclusive. The words "any" and "each" shall be construed to encompass the word "all." The past tense shall be interpreted to include the present tense where the meaning is not distorted and the verb form of a noun or pronoun may be used, as appropriate in a particular context.

2.     In the event that you object to any document request on the ground that it is overbroad and/or unduly burdensome for any reason, respond to that document request as narrowed to the least extent necessary, in your judgment, to render it not overbroad/unduly burdensome and state specifically the extent to which you have narrowed that document request for purposes of your response.

3.     In the event that you object to any document request on the ground that it is vague and/or ambiguous, identify the particular words, terms or phrases that are asserted to make such request vague and/or ambiguous and specify the meaning actually attributed to you by such words for purposes of your response thereto.

4.     If possible, supply all annual data requested on a calendar basis. However, if fiscal year data is provided, please specify the month in which the fiscal year begins and terminates. Where information is requested "for each year," include the requested information

for all prior years and also the requested information available for the current year and specify what portion of the current year is covered by such information.

5.     If information requested is not readily available from your records in exactly the form requested, furnish the information in the form maintained by you or carefully prepared estimates, designated as such and attach explanations of any estimate used and how the estimate was prepared.

6.     If you do not answer any request, or part thereof, because of a claim of privilege or any other claim, set forth the privilege claimed, the facts upon which you rely to support the claim or privilege and furnish a list identifying each item of information for which privilege is claimed, containing at least the following information:

     a.   The date the document was created;

     b.   The names of the owner or author(s)/sender(s) of the document;

     c.   If the document is an email, the name of the recipient(s), including copy and blind copy recipients;

     d.   A brief description of the document and type of legal advice; and

     e.   The grounds for the claim or privilege (e.g., attorney work product, attorney-client communication).

The sender(s) and recipient(s) shall be identified by position and entity (corporation or firm, etc.) with which they are employed or associated. If the sender or recipient is an attorney or foreign patent agent, he or she should be so identified. In the case of a foreign patent agent, there should be a statement of whether the laws of the agent's country grant privileged status to a patent agent's communication. The type of privilege claimed must also be stated, together with

certification that all elements of the claimed privilege have been met and not waived with respect to each document.

7.      Technical terms shall have their normal technical meaning. If you find the meaning of any term in these requests to be unclear, you must assume a reasonable meaning, state what the assumed meaning is, and answer on the basis of that assumed meaning. If you wish to clarify your interpretation of any particular term that it relied on in answering a request, you should do so in its answer.

8.      To the extent that any portion of an request requires the production of documents that were at one time within Aqua's possession, custody, or control, but which are now in the possession, custody, or control of another, Aqua is directed to identify such documents in a manner sufficient to describe such documents for the purpose of preparing and serving a proper subpoena and to give the name, telephone number, address, and e-mail address of the person last known by Aqua to have been in possession, custody, or control of such documents.

### Requests for Production

1.      Documents concerning the formation of Terrier.

2.      Documents concerning the formation of OT WSOU Terrier Holdings, LLC.

3.      Documents concerning your corporate structure.

4.      Documents concerning your investments or interests in the asserted patents, including assignment, licensing, acquisition, financial interest, security interest, lien, sale, transfer of rights (in whole or in part) and any other disposition of or any offers to buy, sell, obtain rights to, or licenses any of the asserted patents.

5.      Documents concerning discussions with BP Funding Trust regarding any asserted patent, a portfolio including an asserted patent, assignment of any interest in any asserted patent

or a portfolio including an asserted patent, or the acquisition or potential acquisition of any portfolio that might have included an asserted patent.

6.      Agreements with BP Funding Trust concerning any potential or actual transaction regarding any asserted patent, a portfolio including an asserted patent, or the acquisition or potential acquisition of any portfolio that might have included an asserted patent.

7.      Agreements with the named inventor(s) of any of the asserted patents, including assignment agreements, consulting agreements, employment agreements and any agreements pertaining to litigation involving the asserted patents or any related patents.

8.      Compensation, cost-sharing, or profit sharing agreements with any of the named inventor(s) of the asserted patent(s).

9.      Documents regarding the assignment, licensing, acquisition, financial interest, security interest, lien, sale, transfer of rights (in whole or in part) and any other disposition of or any offers to buy, sell, obtain rights to, or licenses any of the asserted patents.

10.     Documents concerning the nature and scope of any rights you had in the past or currently have in each of the asserted patents, related applications or related patents from the time each alleged invention was conceived through the present, including the right to control any portion of litigation, future royalties, payment for licenses, contingent rights, or payments depending on the outcome of litigation.

11.     Documents regarding agreements relating to each of the asserted patents (or any portfolio including any of the asserted patents), including assurances, covenants not to sue and understandings not to assert any of the asserted patents against potential licensees.

12.     Documents regarding agreements between you and WSOU, Allied Security Trust, AQUA Licensing, LLC, RPX Corporation, Fortress Credit Co., LLC, Houlihan, Orange Holdings,

Wade and Company, Omega Credit Opportunities Master Fund, Terrier, Juniper Capital Partners, Coast Asset Management, or WCFT Cayman, regarding any asserted patent, a portfolio including an asserted patent, or the acquisition or potential acquisition of any portfolio that might have included an asserted patent, including any amendment, modification, supplementation, abrogation, or termination of any such agreements.

13.     Documents regarding agreements with Nokia or other WSOU Defendants regarding an asserted patent or a portfolio including an asserted patent.

14.     Communications with Nokia, Allied Security Trust, AQUA, RPX Corporation, Fortress Credit Co., LLC, Houlihan, WSOU, Orange Holdings, Wade and Company, Omega Credit Opportunities Master Fund, Terrier, Juniper Capital Partners, Coast Asset Management, or WCFT Cayman regarding an asserted patent, a portfolio including an asserted patent, or actual or potential litigation relating to an asserted patent.

15.     Documents concerning communications with any of the named inventors regarding any of the asserted patents, this litigation or ZTE.

16.     Communications with WSOU regarding the asserted patent, related patents, this litigation or ZTE.

17.     Documents concerning communications between you and any other entity relating to the possibility of patent litigation regarding the asserted patent and related patents, including any actual or potential patent litigation against ZTE and the WSOU v. ZTE Litigations.

18.     Documents concerning the formation of WSOU.

19.     Documents concerning any contemplated acquisition of patents or rights in patents from Nokia.

20.     Documents sufficient to show any interests (current or prior) in WSOU.

21.     Documents sufficient to show any actual, contingent, or potential (1) right to license or sublicense any asserted patent, (2) right to control the licensing of any asserted patent, or (3) right to control or be involved in the resolution of any litigation involving any asserted patent.

22.     Documents sufficient to show your relationship with Stuart A. Shanus, Eric Schneider, Andrew Neuberger, Marc Wade, or Craig Etchegoyen, Orange Holdings, WSOU, Uniloc USA, Inc., WCFT Cayman, Omega Credit Opportunities Master Fund, Wade and Company, and Terrier, or any entity associated with the foregoing.

23.     Documents concerning the "Patent Security Agreement" recorded at USPTO Reel 09235 Frame 0068, signed May 16, 2019, the circumstances of this agreement, and any related agreements.

24.     Documents concerning the May 16, 2019 "Patent Security Agreement" and any related agreements, including the circumstances surrounding the recorded release of your security interest regarding the "Patent Security Agreement."

25.     Documents concerning the release of your security interest, recorded June 3, 2021, at USPTO Reel 056526 Frame 0093, the circumstances of this agreement, and any related agreements.

26.     Documents concerning the value of, any valuations of or attempts to value any asserted patent, related patent, or related application, whether individually or in combination with any other patents or applications, including any portfolio containing any asserted patent or related patent.

27.     Documents concerning any evaluation or analysis of any asserted patent, any related patent, or any related application, whether individually or in combination with any other

patents or applications, including any evaluation or analysis of infringement, validity, or commercialization.

28.     Documents produced in response to a subpoena served by any other WSOU Defendant.

## **TOPICS FOR DEPOSITION**

1.     The subject matter of all requests for production in the concurrently served document subpoena.

2.     The authenticity of the documents produced in response to the concurrently served document subpoena.

3.     The formation of Terrier.

4.     The formation of OT WSOU Terrier Holdings, LLC.

5.     Your corporate structure.

6.     Your investments or interests in the asserted patents, including assignment, licensing, acquisition, financial interest, security interest, lien, sale, transfer of rights (in whole or in part) and any other disposition of or any offers to buy, sell, obtain rights to, or licenses any of the asserted patents.

7.     Discussions with BP Funding Trust regarding any asserted patent, a portfolio including an asserted patent, assignment of any interest in any asserted patent or a portfolio including an asserted patent, or the acquisition or potential acquisition of any portfolio that might have included an asserted patent.

8.     Agreements with BP Funding Trust concerning any potential or actual transaction regarding any asserted patent, a portfolio including an asserted patent, or the acquisition or potential acquisition of any portfolio that might have included an asserted patent.

9.      Agreements with the named inventor(s) of any of the asserted patents, including assignment agreements, consulting agreements, employment agreements and any agreements pertaining to litigation involving the asserted patents or any related patents.

10.     Compensation, cost-sharing, or profit sharing agreements with any of the named inventor(s) of the asserted patent(s).

11.     The assignment, licensing, acquisition, financial interest, security interest, lien, sale, transfer of rights (in whole or in part) and any other disposition of or any offers to buy, sell, obtain rights to, or licenses any of the asserted patents.

12.     The nature and scope of any rights you had in the past or currently have in each of the asserted patents, related applications or related patents from the time each alleged invention was conceived through the present, including the right to control any portion of litigation, future royalties, payment for licenses, contingent rights, or payments depending on the outcome of litigation.

13.     Agreements relating to each of the asserted patents (or any portfolio including any of the asserted patents), including assurances, covenants not to sue and understandings not to assert any of the asserted patents against potential licensees.

14.     Agreements between you and WSOU, Allied Security Trust, AQUA Licensing, LLC, RPX Corporation, Fortress Credit Co., LLC, Houlihan, Orange Holdings, Wade and Company, Omega Credit Opportunities Master Fund, Terrier, Juniper Capital Partners, Coast Asset Management, or WCFT Cayman, regarding any asserted patent, a portfolio including an asserted patent, or the acquisition or potential acquisition of any portfolio that might have included an asserted patent, including any amendment, modification, supplementation, abrogation, or termination of any such agreements.

15.     Agreements with Nokia or other WSOU Defendants regarding an asserted patent or a portfolio including an asserted patent.

16.     Communications with Nokia, Allied Security Trust, AQUA, RPX Corporation, Fortress Credit Co., LLC, Houlihan, WSOU, Orange Holdings, Wade and Company, Omega Credit Opportunities Master Fund, Terrier, Juniper Capital Partners, Coast Asset Management, or WCFT Cayman regarding an asserted patent, a portfolio including an asserted patent, or actual or potential litigation relating to an asserted patent.

17.     Communications with any of the named inventors regarding any of the asserted patents, this litigation or ZTE.

18.     Communications with WSOU regarding the asserted patent, related patents, this litigation or ZTE.

19.     Communications between you and any other entity relating to the possibility of patent litigation regarding the asserted patent and related patents, including any actual or potential patent litigation against ZTE and the WSOU v. ZTE Litigations.

20.     The formation of WSOU.

21.     Any contemplated acquisition of patents or rights in patents from Nokia.

22.     Any interests (current or prior) in WSOU.

23.     Any actual, contingent, or potential (1) right to license or sublicense any asserted patent, (2) right to control the licensing of any asserted patent, or (3) right to control or be involved in the resolution of any litigation involving any asserted patent.

24.     Your relationship with Stuart A. Shanus, Eric Schneider, Andrew Neuberger, Marc Wade, or Craig Etchegoyen, Orange Holdings, WSOU, Uniloc USA, Inc., WCFT Cayman, Omega

16

Credit Opportunities Master Fund, Wade and Company, and Terrier, or or any entity associated with the foregoing.

25.     The "Patent Security Agreement" recorded at USPTO Reel 09235 Frame 0068, signed May 16, 2019, the circumstances of this agreement, and any related agreements.

26.     Communications regarding the May 16, 2019 "Patent Security Agreement" and any related agreements, including the circumstances surrounding the recorded release of your security interest regarding the "Patent Security Agreement."

27.     The release of your security interest, dated June 3, 2021, recorded at USPTO Reel 056526 Frame 0093, the circumstances of this agreement, and any related agreements.

28.     The value of, any valuations of or attempts to value any asserted patent, related patent, or related application, whether individually or in combination with any other patents or applications, including of any portfolio containing any asserted patent or related patent.

29.     Any evaluation or analysis of any asserted patent, any related patent, or any related application, whether individually or in combination with any other patents or applications, including any evaluation or analysis of infringement, validity, or commercialization.

30.     Responses to subpoenas served by any other WSOU Defendant.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | | |
|---|---|---|
| WSOU INVESTMENTS, LLC D/B/A | § | CIVIL ACTION 6:20-CV-00487-ADA |
| BRAZOS LICENSING AND | § | CIVIL ACTION 6:20-CV-00488-ADA |
| DEVELOPMENT, | § | CIVIL ACTION 6:20-CV-00489-ADA |
| | § | CIVIL ACTION 6:20-CV-00490-ADA |
| Plaintiff, | § | CIVIL ACTION 6:20-CV-00491-ADA |
| | § | CIVIL ACTION 6:20-CV-00492-ADA |
| v. | § | CIVIL ACTION 6:20-CV-00493-ADA |
| | § | CIVIL ACTION 6:20-CV-00494-ADA |
| ZTE CORPORATION ET AL, | § | CIVIL ACTION 6:20-CV-00495-ADA |
| | § | CIVIL ACTION 6:20-CV-00496-ADA |
| Defendant. | § | CIVIL ACTION 6:20-CV-00497-ADA |
| | § | |
| | § | PATENT CASE |
| | § | |
| | § | |
| | § | JURY TRIAL DEMANDED |

## PROTECTIVE ORDER

WHEREAS, Plaintiff and Defendants, hereafter referred to as "the Parties," believe that certain information that is or will be encompassed by discovery demands by the Parties involves the production or disclosure of trade secrets, confidential business information, or other proprietary information in this Action[1];

WHEREAS, the Parties seek a protective order limiting disclosure thereof in accordance with Federal Rule of Civil Procedure 26(c):

THEREFORE, it is hereby stipulated among the Parties and ORDERED that:

1.  Each Party may designate as confidential for protection under this Order, in whole or in part, any document, information, or material that constitutes or includes, in whole or in part, confidential or proprietary information or trade secrets of the Party or a Third Party to whom the Party reasonably believes it owes an obligation of confidentiality with respect to such

---

[1] Action means the Case Nos. 6:20-cv-0487 through 6:20-cv-00497.

1

document, information, or material ("Protected Material"). Protected Material shall be designated by the Party producing it by affixing a legend or stamp on such document, information, or material as follows: "CONFIDENTIAL," "CONFIDENTIAL - ATTORNEYS' EYES ONLY," "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY," or "CONFIDENTIAL - SOURCE CODE" ("DESIGNATED MATERIAL").[2] The appropriate designation shall be placed clearly on each page of the Protected Material (except deposition and hearing transcripts) for which such protection is sought. For deposition and hearing transcripts, the appropriate designation shall be placed on the cover page of the transcript (if not already present on the cover page of the transcript when received from the court reporter) by each attorney receiving a copy of the transcript after that attorney receives notice of the designation of some or all of that transcript is designated as containing Protected Material.

2.  Any document produced before issuance of this Order, including pursuant to the Court's Order Governing Proceedings - Patent Case, with the designation "Confidential" or the like shall receive the same treatment as if designated "CONFIDENTIAL" under this order and any such documents produced with the designation "Confidential - Outside Attorneys' Eyes Only," or the like shall receive the same treatment as if designated "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY" under this Order, unless and until such document is re-designated to have a different classification under this Order.

3.  With respect to documents, information, or DESIGNATED MATERIAL (*i.e.*

---

[2] The term DESIGNATED MATERIAL is used throughout this Protective Order to refer to the class of materials designated as "CONFIDENTIAL," "CONFIDENTIAL - ATTORNEYS' EYES ONLY," "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY," or "CONFIDENTIAL - SOURCE CODE," both individually and collectively.

"CONFIDENTIAL," "CONFIDENTIAL - ATTORNEYS' EYES ONLY," "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY," or "CONFIDENTIAL - SOURCE CODE") subject to the provisions herein and unless otherwise stated, this Order governs, without limitation: (a) all documents, electronically stored information, and/or things as defined by the Federal Rules of Civil Procedure; (b) all pretrial, hearing or deposition testimony, or documents marked as exhibits or for identification in depositions and hearings; (c) pretrial pleadings, exhibits to pleadings and other court filings; (d) affidavits; and (e) stipulations. All copies, reproductions, extracts, digests, and complete or partial summaries prepared from any DESIGNATED MATERIALS shall also be considered DESIGNATED MATERIAL and treated as such under this Order.

4.   A designation of Protected Material (DESIGNATED MATERIAL such as "CONFIDENTIAL," "CONFIDENTIAL -ATTORNEYS' EYES ONLY," "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY," or "CONFIDENTIAL - SOURCE CODE") may be made at any time. Inadvertent or unintentional production of documents, information, or material that has not been designated as DESIGNATED MATERIAL shall not be deemed a waiver in whole or in part of a claim for confidential treatment. Any Party that inadvertently or unintentionally produces Protected Material without designating it as DESIGNATED MATERIAL may request destruction of that Protected Material by notifying the recipient(s) as soon as reasonably possible after the producing Party becomes aware of the inadvertent or unintentional disclosure, and providing replacement Protected Material that is properly designated. The recipient(s) shall then destroy all copies of the inadvertently or unintentionally produced Protected Materials and any documents, information, or material derived from or based thereon.

5.    "CONFIDENTIAL" documents, information, and material may be disclosed only to the following persons, except upon receipt of the prior written consent of the designating Party, upon order of the Court, or as set forth in paragraph 13 herein:

(a)    Outside counsel of record in this Action for the Parties.

(b)    Employees of such counsel assigned to and reasonably necessary to assist such counsel in the litigation of this Action.

(c)    In-house counsel for the Parties who either have responsibility for making decisions dealing directly with the litigation of this Action, or who are assisting outside counsel in the litigation of this Action.

(d)    Up to and including three (3) designated representatives of each of the Parties to the extent reasonably necessary for the litigation of this Action, except that any Party may in good faith request the other Party's consent to designate one or more additional representatives, the other Party shall not unreasonably withhold such consent, and the requesting Party may seek leave of Court to designate such additional representative(s) if the requesting Party believes the other Party has unreasonably withheld such consent.

(e)    Outside consultants or experts retained for the purpose of this litigation, provided that: (1) such consultants or experts are not presently employed by the Parties or of an affiliate of a Party hereto for purposes other than this Action; (2) before access is given, the consultant or expert has completed the Undertaking attached as Appendix A hereto and the same is served upon the producing Party with a current curriculum vitae of the consultant or expert at least ten (10) days before access to the Protected Material is to be given to that consultant or expert to object to and notify the receiving Party in writing that it objects to disclosure of Protected Material to the consultant or expert. The Parties agree to promptly confer and use good faith to resolve any such objection. If the Parties are unable to resolve any objection, the objecting Party may file a motion with the Court within fifteen (15) days of receipt of the notice, or within such other time as the Parties may agree, seeking a protective order with respect to the proposed disclosure. The objecting Party shall have the burden of proving the need for a protective order. No disclosure shall occur until all such objections are resolved by agreement or Court order.

(f)    Independent litigation support services, including persons working for or as court reporters, graphics or design services, jury or trial consulting services, and photocopy, document imaging, and database services retained by counsel and reasonably necessary to assist counsel with the litigation of this Action.

(g)    The Court and its personnel.

6.      A Party shall designate documents, information, or material as "CONFIDENTIAL" only upon a good faith belief that the documents, information, or material contains confidential or proprietary information or trade secrets of the Party or a Third Party to whom the Party reasonably believes it owes an obligation of confidentiality with respect to such documents, information, or material.

7.      Documents, information, or material produced pursuant to any discovery request in this Action, including but not limited to Protected Material designated as DESIGNATED MATERIAL, shall be used by the Parties only in the litigation of this Action and shall not be used for any other purpose.   Any person or entity who obtains access to DESIGNATED MATERIAL or the contents thereof pursuant to this Order shall not make any copies, duplicates, extracts, summaries, or descriptions of such DESIGNATED MATERIAL or any portion thereof except as may be reasonably necessary in the litigation of this Action.   Any such copies, duplicates, extracts, summaries, or descriptions shall be classified DESIGNATED MATERIALS and subject to all of the terms and conditions of this Order.

8.      To the extent a producing Party believes that certain Protected Material qualifying to be designated CONFIDENTIAL is so sensitive that its dissemination deserves even further limitation, the producing Party may designate such Protected Material "CONFIDENTIAL - ATTORNEYS' EYES ONLY," or to the extent such Protected Material includes computer source code and/or live data (that is, data as it exists residing in a database or databases) ("Source Code Material"), the producing Party may designate such Protected Material as "CONFIDENTIAL - SOURCE CODE."

9.      For Protected Material designated CONFIDENTIAL - ATTORNEYS' EYES ONLY, access to, and disclosure of, such Protected Material shall be limited to individuals listed

in paragraphs 5(a–c) and (e–g); provided, however, that access by in-house counsel pursuant to paragraph 5(c) be limited to in-house counsel who exercise no competitive decision-making authority on behalf of the client.

10.    For Protected Material designated CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY, access to, and disclosure of, such Protected Material shall be limited to individuals listed in paragraphs 5(a–b) and (e–g); provided, however, that the designating Party shall accommodate reasonable requests to provide summary information to in-house counsel designated pursuant to paragraph 5(c) who exercise no competitive decision-making authority on behalf of the client and reasonably require access to such information.

11.    For Protected Material designated "CONFIDENTIAL - SOURCE CODE" (e.g., "Source Code Material"), the following additional restrictions apply:

(a)    Access to a Party's Source Code Material shall be provided only on "stand-alone" computer(s) (that is, the computer may not be linked to any network, including a local area network ("LAN"), an intranet or the Internet). The stand-alone computer(s) may be connected to (i) a printer, or (ii) a device capable of temporarily storing electronic copies solely for the limited purposes permitted pursuant to paragraphs 11(h and k) below. Additionally, except as provided in paragraph 11(k) below, the stand-alone computer(s) may only be located at the offices of the producing Party's outside counsel or its vendors.

(b)    The receiving Party shall make reasonable efforts to restrict its requests for such access to the stand-alone computer(s) to normal business hours, which for purposes of this paragraph shall be 8:00 a.m. through 6:00 p.m. However, upon reasonable notice from the receiving Party, the producing Party shall make reasonable efforts to accommodate the receiving Party's request for access to the stand-alone computer(s) outside of normal business hours. The Parties agree to cooperate in good faith such that maintaining the producing Party's Source Code Material at the offices of its outside counsel or its vendors shall not unreasonably hinder the receiving Party's ability to efficiently and effectively conduct the prosecution or defense of this Action.

(c)    The producing Party shall provide the receiving Party with information explaining how to start, log on to, and operate the stand-alone computer(s) in order to access the produced Source Code Material on the stand-alone computer(s).

(d)     The producing Party will produce Source Code Material in computer searchable format on the stand-alone computer(s) as described above.

(e)     Access to Source Code Material shall be limited to outside counsel and up to three (3) outside consultants or experts[3] (*i.e.*, not existing employees or affiliates of a Party or an affiliate of a Party or competitor identified by the Producing Party with reasonable specificity) retained for the purpose of this litigation and approved to access such Protected Materials pursuant to paragraph 5(e) above.   A receiving Party may include excerpts of Source Code Material in an exhibit to a pleading, expert report, or deposition transcript (collectively, "Source Code Exhibits"), provided that the Source Code Exhibits are appropriately marked under this Order, restricted to those who are entitled to have access to them as specified herein, and, if filed with the Court, filed under seal in accordance with the Court's rules, procedures, and orders.

(f)     To the extent portions of Source Code Material are quoted in a Source Code Exhibit, either (1) the entire Source Code Exhibit will be stamped and treated as CONFIDENTIAL - SOURCE CODE or (2) those pages containing quoted Source Code Material will be separately stamped and treated as CONFIDENTIAL - SOURCE CODE.

(g)     Except as set forth in paragraph 11(k) below, no electronic copies of Source Code Material shall be made without prior written consent of the producing Party, except as necessary to create documents that, pursuant to the Court's rules, procedures, and order, must be filed or served electronically.

(h)     The receiving Party shall be permitted to make a reasonable number of printouts and photocopies of Source Code Material, which shall presumptively be a total of ten (10), all of which shall be designated and clearly labeled "CONFIDENTIAL - SOURCE CODE," and the receiving Party shall maintain a log of all such files that are printed or photocopied.

(i)     Should such printouts or photocopies be permissibly transferred back to electronic media, such media shall be labeled "CONFIDENTIAL - SOURCE CODE" and shall continue to be treated as such.

(j)     If the receiving Party's outside counsel, consultants, or experts obtain printouts or photocopies of Source Code Material, the receiving Party shall ensure that such outside counsel, consultants, or experts keep the printouts or photocopies in a

---

[3] For the purposes of this paragraph, an outside consultant or expert is defined to include the outside consultant's or expert's direct reports and other support personnel, such that the disclosure to a consultant or expert who employs others within his or her firm to help in his or her analysis shall count as a disclosure to a single consultant or expert, provided that such personnel helping in the analysis of Source Code Material shall be disclosed pursuant to Paragraph 5(e).

secured locked area in the offices of such outside counsel, consultants, or expert. The receiving Party may also temporarily keep the printouts or photocopies at: (i) the Court for any proceedings(s) relating to the Source Code Material, for the dates associated with the proceeding(s); (ii) the sites where any deposition(s) relating to the Source Code Material are taken, for the dates associated with the deposition(s); and (iii) any intermediate location reasonably necessary to transport the printouts or photocopies (*e.g.*, a hotel prior to a Court proceeding or deposition).

(k)     A producing Party's Source Code Material may only be transported by the receiving Party at the direction of a person authorized under paragraph 11(e) above to another person authorized under paragraph 11(e) above, on paper or removable electronic media (*e.g.*, a DVD, CD-ROM, or flash memory "stick") via hand carry, Federal Express, or other similarly reliable courier.   Source Code Material may not be transported or transmitted electronically over a network of any kind, including a LAN, an intranet, or the Internet. Source Code Material may only be transported electronically for the purpose of Court proceeding(s) or deposition(s) as set forth in paragraph 11(j) above and is at all times subject to the transport restrictions set forth herein. But, for those purposes only, the Source Code Materials may be loaded onto a stand-alone computer.

12.     Any attorney representing a Party, whether in-house or outside counsel, and any person associated with a Party and permitted to receive the other Party's Protected Material that is designated CONFIDENTIAL - ATTORNEYS' EYES ONLY, CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY, and/or CONFIDENTIAL - SOURCE CODE (collectively "HIGHLY SENSITIVE MATERIAL"), who obtains, receives, has access to, or otherwise learns, in whole or in part, the other Party's HIGHLY SENSITIVE MATERIAL under this Order shall not prepare, prosecute, supervise, or assist in the preparation or prosecution of any patent application pertaining to the field of the invention of the patents-in-suit during the pendency of this Action and for one year after its conclusion, including any appeals.   To ensure compliance with the purpose of this provision, each Party shall create an "Ethical Wall" between those persons with access to HIGHLY SENSITIVE MATERIAL and any individuals who prepare, prosecute, supervise or assist in the preparation or prosecution of any patent application pertaining to the field of invention of

the patent-in-suit. Nothing in this Order shall prevent a person with access to HIGHLY SENSITIVE MATERIAL from participating in a PTO proceeding, *e.g.*, IPR or PGR, except for that person shall not participate—directly or indirectly—in the amendment of any claim(s).

13. Nothing in this Order shall require production of documents, information, or other material that a Party contends is protected from disclosure by the attorney-client privilege, the work product doctrine, or other privilege, doctrine, or immunity. If documents, information, or other material subject to a claim of attorney-client privilege, work product doctrine, or other privilege, doctrine, or immunity is inadvertently or unintentionally produced, such production shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any such privilege, doctrine, or immunity. Any Party that inadvertently or unintentionally produces documents, information, or other material it reasonably believes are protected under the attorney-client privilege, work product doctrine, or other privilege, doctrine, or immunity may obtain the return of such documents, information, or other material by promptly notifying the recipient(s) and providing a privilege log for the inadvertently or unintentionally produced documents, information, or other material. The recipient(s) shall gather and return all copies of such documents, information, or other material to the producing Party, except for any pages containing privileged or otherwise protected markings by the recipient(s), which pages shall instead be destroyed and certified as such to the producing Party.

14. There shall be no disclosure of any DESIGNATED MATERIAL by any person authorized to have access thereto to any person who is not authorized for such access under this Order. The Parties are hereby ORDERED to safeguard all such documents, information, and

material to protect against disclosure to any unauthorized persons or entities.

15.     Nothing contained herein shall be construed to prejudice any Party's right to use any DESIGNATED MATERIAL in taking testimony at any deposition or hearing provided that the DESIGNATED MATERIAL is only disclosed to a person(s) who is: (i) eligible to have access to the DESIGNATED MATERIAL by virtue of his or her employment with the designating Party; (ii) identified in the DESIGNATED MATERIAL as an author, addressee, or copy recipient of such information; (iii) although not identified as an author, addressee, or copy recipient of such DESIGNATED MATERIAL, has, in the ordinary course of business, seen such DESIGNATED MATERIAL; (iv) a current or former officer, director or employee of the producing Party or a current or former officer, director, or employee of a company affiliated with the producing Party; (v) counsel for a Party, including outside counsel and in-house counsel (subject to paragraph 9 of this Order); (vi) an independent contractor, consultant, and/or expert retained for the purpose of this litigation; (vii) court reporters and videographers; (viii) the Court; or (ix) other persons entitled hereunder to access to DESIGNATED MATERIAL.    DESIGNATED MATERIAL shall not be disclosed to any other persons unless prior authorization is obtained from counsel representing the producing Party or from the Court.

16.     Parties may, at the deposition or hearing or within thirty (30) days after receipt of a deposition or hearing transcript, designate the deposition or hearing transcript or any portion thereof as "CONFIDENTIAL," "CONFIDENTIAL - ATTORNEYS' EYES ONLY," "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY," or "CONFIDENTIAL - SOURCE CODE" pursuant to this Order.   Access to the deposition or hearing transcript so designated shall be limited in accordance with the terms of this Order.   Until expiration of

the 30-day period, the entire deposition or hearing transcript shall be treated as CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY.

17. Any DESIGNATED MATERIAL that is filed with the Court shall be filed under seal and shall remain under seal until further order of the Court. The filing Party shall be responsible for informing the Clerk of the Court that the filing should be sealed and for placing the legend "FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER" above the caption and conspicuously on each page of the filing. Exhibits to a filing shall conform to the labeling requirements set forth in this Order. If a pretrial pleading filed with the Court, or an exhibit thereto, discloses or relies on DESIGNATED MATERIAL, such confidential portions shall be redacted to the extent necessary and the pleading or exhibit filed publicly with the Court.

18. The Order applies to pretrial discovery. Nothing in this Order shall be deemed to prevent the Parties from introducing any DESIGNATED MATERIAL into evidence at the trial of this Action, or from using any information contained in DESIGNATED MATERIAL at the trial of this Action, subject to any pretrial order issued by this Court.

19. A Party may request in writing to the other Party that the designation given to any DESIGNATED MATERIAL be modified or withdrawn. If the designating Party does not agree to re-designation within ten (10) days of receipt of the written request, the requesting Party may apply to the Court for relief. Upon any such application to the Court, the burden shall be on the designating Party to show why its classification is proper. Such application shall be treated procedurally as a motion to compel pursuant to Federal Rule of Civil Procedure 37, subject to the Rule's provisions relating to sanctions. In making such application, the requirements of the Federal Rules of Civil Procedure and the Local

11

Rules of the Court shall be met. Pending the Court's determination of the application, the designation of the designating Party shall be maintained.

20. Each outside consultant or expert to whom DESIGNATED MATERIAL is disclosed in accordance with the terms of this Order shall be advised by counsel of the terms of this Order, shall be informed that they are subject to the terms and conditions of this Order, and shall sign an acknowledgment that they have received a copy of, have read, and have agreed to be bound by this Order. A copy of the acknowledgment form is attached as Appendix A.

21. To the extent that any discovery is taken of persons who are not Parties to this Action ("Third Parties") and in the event that such Third Parties contend the discovery sought involves trade secrets, confidential business information, or other proprietary information, then such Third Parties may agree to be bound by this Order.

22. To the extent that discovery or testimony is taken of Third Parties, the Third Parties may designate as "CONFIDENTIAL," "CONFIDENTIAL - ATTORNEYS' EYES ONLY," or "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY," and/or "CONFIDENTIAL - SOURCE CODE" any documents, information, or other material, in whole or in part, produced by such Third Parties. The Third Parties shall have ten (10) days after production of such documents, information, or other materials to make such a designation. Until that time period lapses or until such a designation has been made, whichever occurs sooner, all documents, information, or other material so produced or given shall be treated as "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY" in accordance with this Order.

23. Within thirty (30) days of final termination of this Action, including any appeals, all

DESIGNATED MATERIAL, including all copies, duplicates, abstracts, indexes, summaries, descriptions, and excerpts or extracts thereof (excluding excerpts or extracts incorporated into any privileged memoranda of the Parties), shall at the producing Party's election either be returned to the producing Party or be destroyed. The receiving Party shall verify the return or destruction by affidavit furnished to the producing Party, upon the producing Party's request.

24.     The failure to designate documents, information, or material in accordance with this Order and the failure to object to a designation at a given time shall not preclude the filing of a motion at a later date seeking to impose such designation or challenging the propriety thereof. The entry of this Order and/or the production of documents, information, or material hereunder shall in no way constitute a waiver of any objection to the furnishing thereof, all such objections being hereby preserved.

25.     Any Party knowing or believing that any other Party is in violation of or intends to violate this Order and has raised the question of violation or potential violation with the opposing Party and has been unable to resolve the matter by agreement may move the Court for such relief as may be appropriate in the circumstances. Pending disposition of the motion by the Court, the Party alleged to be in violation of or intending to violate this Order shall discontinue the performance of and/or shall not undertake the further performance of any action alleged to constitute a violation of this Order.

26.     Production of DESIGNATED MATERIAL by any Party shall not be deemed a publication of the documents, information, or material (or the contents thereof) produced so as to void or make voidable whatever claim the Parties may have as to the proprietary and confidential nature of the documents, information, or other material or its contents.

27. Nothing in this Order shall be construed to effect an abrogation, waiver, or limitation of any kind on the rights of each of the Parties to assert any applicable discovery or trial privilege.

28. Each of the Parties shall also retain the right to file a motion with the Court (a) to modify this Order to allow disclosure of DESIGNATED MATERIAL to additional persons or entities if reasonably necessary to prepare and present this Action; and (b) to apply for additional protection of DESIGNATED MATERIAL.

Signed on June 1st, 2021.


ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| WSOU INVESTMENTS, LLC D/B/A | § | CIVIL ACTION 6:20-CV-00487-ADA |
| BRAZOS LICENSING AND | § | CIVIL ACTION 6:20-CV-00488-ADA |
| DEVELOPMENT, | § | CIVIL ACTION 6:20-CV-00489-ADA |
| | § | CIVIL ACTION 6:20-CV-00490-ADA |
| Plaintiff, | § | CIVIL ACTION 6:20-CV-00491-ADA |
| | § | CIVIL ACTION 6:20-CV-00492-ADA |
| v. | § | CIVIL ACTION 6:20-CV-00493-ADA |
| | § | CIVIL ACTION 6:20-CV-00494-ADA |
| ZTE CORPORATION ET AL, | § | CIVIL ACTION 6:20-CV-00495-ADA |
| | § | CIVIL ACTION 6:20-CV-00496-ADA |
| Defendant. | § | CIVIL ACTION 6:20-CV-00497-ADA |
| | § | |
| | § | PATENT CASE |
| | § | |
| | § | |
| | § | JURY TRIAL DEMANDED |

**APPENDIX A**
**UNDERTAKING OF EXPERTS OR CONSULTANTS REGARDING**
**PROTECTIVE ORDER**

I, _____, declare that:

1.     My address is _____.

        My current employer is _____.

        My current occupation is _____.

2.     I have received a copy of the Protective Order in this action.  I have carefully read and

        understand the provisions of the Protective Order.

3.     I will comply with all of the provisions of the Protective Order.  I will hold in confidence,

        will not disclose to anyone not qualified under the Protective Order, and will use only for

        purposes of this action any information designated as "CONFIDENTIAL,"

        "CONFIDENTIAL - ATTORNEYS' EYES ONLY," "CONFIDENTIAL - OUTSIDE

        ATTORNEYS' EYES ONLY," or "CONFIDENTIAL - SOURCE CODE" that is

disclosed to me.

4.  Promptly upon termination of these actions, I will return all documents and things designated as "CONFIDENTIAL," "CONFIDENTIAL - ATTORNEYS' EYES ONLY," "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY," or "CONFIDENTIAL - SOURCE CODE" that came into my possession, and all documents and things that I have prepared relating thereto, to the outside counsel for the Party by whom I am employed.

5.  I hereby submit to the jurisdiction of this Court for the purpose of enforcement of the Protective Order in this action.

I declare under penalty of perjury that the foregoing is true and correct.

Signature _____

Date _____

# EXHIBIT 3

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT | ) ) ) | |
| Plaintiff, | ) ) | Case No. 6:20-cv-480-ADA |
| v. | ) ) | Case No. 6:20-cv-481-ADA Case No. 6:20-cv-485-ADA |
| DELL TECHNOLOGIES INC., DELL INC., EMC CORPORATION, AND VMWARE, INC., | ) ) ) | Case No. 6:20-cv-486-ADA |
| Defendants. | | |

<u>**NOTICE OF SUBPOENA DIRECTED TO THIRD-PARTY AQUA LICENSING, LLC**</u>

PLEASE TAKE NOTICE that, pursuant to Rule 45 of the Federal Rules of Civil Procedure, Defendants intend to serve the attached subpoena on Aqua Licensing, LLC on or after August 20, 2021. The subpoena requests that Aqua Licensing, LLC produce all documents and things requested in Appendix A to the attached subpoena. The documents and things are to be produced on or before 5:00 p.m. on September 10, 2021, or on another mutually agreeable date, at the offices of Shelton Coburn LLP, 311 Ranch Road 620 S, Suite 205, Austin, Texas 78734-4775 USA, or at another mutually agreeable location. The deposition shall be upon oral examination before an officer authorized to administer oaths and shall be recorded by audio, videographic, and/or stenographic means. The deposition will take place on one day. Defendants will take up to 7 hours of deposition testimony.

Dated:  August 20, 2021                    By:   _/s/ Barry K. Shelton_

Barry K. Shelton
Texas State Bar No. 24055029
bshelton@sheltoncoburn.com
**SHELTON COBURN LLP**
311 RR 620, Suite 205
Austin, TX 78734-4775
Telephone:  512.263.2165
Facsimile: 512.263.2166

*Attorney for Defendants*

# UNITED STATES DISTRICT COURT

### for the

### Western District of Texas

| | | |
|---|---|---|
| WSOU Investments, LLC d/b/a Brazos Licensing & | ) | 6:20-cv-00480 |
| *Plaintiff*          Development | ) | 6:20-cv-00481 |
| v. | ) | 6:20-cv-00485 |
| Dell Technologies Inc., Dell Inc., EMC Corporation, | ) | 6:20-cv-00486 |
| and VMware, Inc. | ) | |
| *Defendant* | ) | |

Civil Action No.

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:                                                    Aqua Licensing, LLC

*(Name of person to whom this subpoena is directed)*

☑ Testimony:  YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:  See Appendix A, attached hereto.

| Place:  Shelton Coburn LLP<br>311 Ranch Road 620 S, Suite 205<br>Austin, Texas 78734-4775 | Date and Time:<br>09/17/2021 9:00 am |
|---|---|

The deposition will be recorded by this method:     Stenographic and videotape

☑ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material: See Appendix A, attached hereto.  Please produce documents on or before September 10, 2021 to Barry Shelton, Shelton Coburn LLP, 311 Ranch Road 620 S, Suite 205, Austin, Texas 78734-4775.

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:

Case 6:13-mc-01210-ADA   Document 33-1   Filed 01/21/22   Page 227 of 599

*CLERK OF COURT*

OR

_____                    /s/ Barry Shelton
*Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*  Dell Technologies Inc., Dell Inc., and EMC Corporation
_____, who issues or requests this subpoena, are:

Barry Shelton | Shelton Coburn LLP, 311 Ranch Rd 620 S, Ste 205, Austin, Texas 78734-4775 |  (512) 263-2165
bshelton@sheltoncoburn.com

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No.   6:20-cv-00480
                   6:20-cv-00481
                   6:20-cv-00485
                   6:20-cv-00486

**PROOF OF SERVICE**

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named individual as follows: _____

_____  on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

# Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2) *For Other Discovery.*** A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2) *Command to Produce Materials or Permit Inspection.***
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3) *Quashing or Modifying a Subpoena.***
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2) *Claiming Privilege or Protection.***
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# **<u>APPENDIX A</u>**

# **<u>EXHIBIT 1</u>**

## **DOCUMENTS REQUESTED**

Defendants Dell Technologies Inc., Dell Inc., EMC Corporation, and VMware Inc. (collectively, "Defendants") request the production of the documents described below.

## **DEFINITIONS**

The following definitions are applicable to terms employed in responding to this request:

1.    "Accused Product" or "Accused Products" shall refer to any device, product, or other thing that Plaintiff is permitted to accuse of infringing the Asserted Patent in this Action.  A copy of the Complaint in case numbers 6:20-cv-00480-ADA, 6:20-cv-00481-ADA, 6:20-cv-00485-ADA, 6:20-cv-00486-ADA is attached as Exhibit 3. In referring to any device, product, or other thing as an "Accused Product," Defendants in no way communicate their agreement that it infringes the Asserted Patent.

2.    "Action" shall refer to the above-captioned proceeding in the United States District Court for the Western District of Texas, with case numbers 6:20-cv-00480-ADA, 6:20-cv-00481-ADA, 6:20-cv-00485-ADA, 6:20-cv-00486-ADA.

3.    "Alcatel" shall mean Alcatel-Lucent International and all parents, subsidiaries, affiliates, predecessors, successors, including but not limited to Alcatel and Lucent Technologies.

4.    "Asserted Claim" shall refer to each claim of the Asserted Patent that Plaintiff contends Defendants infringe.

5.    "Asserted Patent(s)" shall refer to U.S. Patent Nos. 7,539,133; 9,164,800; 7,636,309; 7,092,360 and any patent applications related thereto.

6.    "Communication" shall mean, without limitation, any written, oral, or other transmission of information, including but not limited to emails.

7.    "Complaint" shall refer to the Complaint (including exhibits) that Plaintiff filed on June 2, 2020 as docket number 1 in this Action, the Amended Complaint filed on October 19, 2020, and any other amended complaints thereafter.

8.    "Concerning," "refer(s) to," "related to," "reflecting," "regarding," and "relating to" shall mean directly or indirectly relating to, referring to, regarding, mentioning, reflecting, pertaining to, evidencing, illustrating, involving, describing, discussing, commenting on, embodying, responding to, supporting, contradicting, or constituting (in whole or in part), as the context makes appropriate.

9.    "Defendants" or "Defendant" shall refer to Dell Technologies Inc., Dell Inc., and EMC Corporation, and VMware Inc. and any and all of their then-current or prior subsidiaries, parents, affiliates, divisions, successors, predecessors, agents, employees, representatives, directors, officers, trustees, and attorneys, or any other person or entity acting in whole or in part in concert with any of the foregoing, directly or indirectly.

10.    "Document" shall include, without limitation, all documents, electronically stored information, and tangible things within the scope of the Federal Rules of Civil Procedure, including Rule 34.   Federal Rules of Civil Procedure 34 permits discovery of:   "(A) documents or electronically stored information—including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form; or (B) any designated tangible things."

11.    "Employee" shall refer to any officer, director, partner, employee, representative, or agent.

12.     "Licensee(s)" shall refer to any entity having a license, assignment, covenant not to sue, or other understanding, written, oral or implied, that the entity has any rights to the Asserted Patent, any Related Patents, or any Related Applications, may practice one or more claims of the Asserted Patent and/or that Plaintiff will not file suit or otherwise enforce against that entity one or more claims of the Asserted Patent or any Related Patent or Related Application.

13.     "Nokia" shall mean Nokia Corporation and all parents, subsidiaries, affiliates, predecessors, including but not limited to Nokia Technologies Oy and Nokia Solutions and Networks BV.

14.     "Other Action Defendants" shall refer to any of the entities that Plaintiff has accused of patent infringement (including but not limited to, Huawei, ZTE, Microsoft, Google, HP, Juniper, F5, Xilinx, NEC, Oneplus, Canon, TP-Link, Arista Networks, Salesforce, Cisco, and NetGear).

15.     "Other Action Patents" shall refer to any patent that was asserted against any of the Other Action Defendants.

16.     "Person" shall refer to any natural person, firm, association, partnership, government agency, corporation, proprietorship, or other entity and its officers, directors, partners, employee, representatives, and agents.

17.     The terms "Plaintiff," and/or "WSOU" shall refer to the responding Plaintiff WSOU Investments, LLC d/b/a Brazos Licensing and Development, and any and all of its then-current or prior subsidiaries, parents, affiliates, divisions, successors, predecessors, agents, employees, representatives, directors, officers, trustees, and attorneys, or any other person

or entity acting in whole or in part in concert with any of the foregoing, directly or indirectly.

18. "Prior Art" encompasses, without limitation, the subject matter described in each and every subdivision of 35 U.S.C. §§ 102 and 103, and includes, but is not limited to, memoranda, notes, manuals, interviews, testing data, disclosures, prototypes, correspondence, drawings, papers, articles, patents, printed publications, public uses, demonstrations, offers for sale or license, and sales.

19. "Product(s)" means a machine, manufacture, apparatus, device, instrument, mechanism, appliance, software, service, process, or an assemblage of components/parts (either individually or collectively) that are designed to function together electronically, mechanically, or otherwise, including any offered for sale or under development.

20. "Related Application(s)" means any and all applications related to the Asserted Patent, including any provisional or non-provisional applications, continuations, continuations- in-part, divisions, interferences, reexaminations, re-issues, parents, foreign counterpart applications, and any other applications disclosing, describing or claiming any invention disclosed, described or claimed in the Asserted Patent, or claiming the benefit of the filing date of any application whose benefit is claimed in the Asserted Patent, whether or not abandoned and whether or not issued.

21. "Related Patent(s)" means any and all U.S. or foreign patents based upon or related to any Related Application(s) or Asserted Patent, including any patents or applications that may have been opposed, reexamined, re-issued or subjected to any validity or nullity proceeding.

22. "Third Party" shall refer to any person other than Plaintiff or Defendants.

23.     "You," "Your," "Yours" shall refer to Aqua Licensing, LLC, and any and all of its then-current or prior subsidiaries, parents, affiliates, divisions, successors, predecessors, agents, employees, representatives, directors, officers, trustees, and attorneys, or any other person or entity acting in whole or in part in concert with any of the foregoing, directly or indirectly.

24.     Any pronouns shall be construed to refer to the masculine, feminine, or neutral gender, in singular or plural, as in each case is most appropriate.

25.     The singular form of any word shall be construed to also include the plural, and vice-versa.

26.     The word "each" shall be construed to mean "each and every."

27.     The words "and" and "or" shall be construed conjunctively or disjunctively, whichever makes the request more inclusive.

28.     The words "any" and "all" shall be construed to mean "any and all."

## INSTRUCTIONS

1.     This request seeks disclosure to the full extent of the Federal Rules of Civil Procedure and shall be interpreted as inclusive rather than exclusive.

2.     In responding to the Document requests set forth below, please furnish all responsive and non-privileged information that is available to You.

3.     Please produce the requested Documents as they are kept in the ordinary course of business.

4.     If production of any responsive Documents are being withheld on the ground of the attorney-client privilege, attorney work product, or any other privilege, immunity, or protection, please provide a privilege log with the following information for each such Document:  (a) the name of the Document; (b) the name of the person(s) who prepared the Document; (c) the name of the person(s) to whom the Document was directed or circulated; (d) the date(s) on which the Document was prepared or transmitted; (e) the name of the

person(s) now in possession of the Document; (f) a description of the subject matter of the

Document; and (g) the specific nature of the privilege or protection claimed with respect

to the Document.

5.    The Court's interim protective order in the Order Governing Proceedings shall govern the

disclosure of confidential information in this Action:

> Pending entry of the final Protective Order, the Court issues the following interim Protective Order to govern the disclosure of confidential information in this matter:

>> If any document or information produced in this matter is deemed confidential by the producing party and if the Court has not entered a protective order, until a protective order is issued by the Court, the document shall be marked "confidential" or with some other confidential designation (such as "Confidential – Outside Attorneys Eyes Only") by the disclosing party and disclosure of the confidential document or information shall be limited to each party's outside attorney(s) of record and the employees of such outside attorney(s).

>> If a party is not represented by an outside attorney, disclosure of the confidential document or information shall be limited to one designated "in house" attorney, whose identity and job functions shall be disclosed to the producing party 5 days prior to any such disclosure, in order to permit any motion for protective order or other relief regarding such disclosure. The person(s) to whom disclosure of a confidential document or information is made under this local rule shall keep it confidential and use it only for purposes of litigating the case.

6.    Upon entry of a final protective order in this matter that protective order shall govern the

disclosure of confidential information in this Action.

## DOCUMENT REQUESTS

1.      Documents regarding the Asserted Patent, any Related Patents, or Related Applications, including any alleged infringement of such patents.

2.      Documents relating to any Prior Art search performed by You, on Your behalf, or that You are aware of, relating to the Asserted Patent, any Related Patent, or Related Application (including, but not limited to, any search methodology, results and any policies regarding Prior Art searches).

3.      Documents regarding whether any claim in the Asserted Patent is invalid, valid, enforceable, or unenforceable (including any Prior Art or alleged Prior Art).

4.      Documents sufficient to identify all products of which you are/were aware that practiced or currently practice any claim of the Asserted Patent, Related Patents, or Related Applications and all allegations of which you are/were aware that products practiced or currently practice any claim of the Asserted Patent, Related Patents, or Related Applications.

5.      Documents and Communications concerning any evaluation or analysis of the Asserted Patent, Related Patents, or Related Applications, whether individually or in combination with any other patents or applications, including any evaluation or analysis of infringement, validity, or commercialization.

6.      Documents and Communications concerning any ranking (in terms of strength, value, or otherwise) or rating of, or attempts to rank or rate the Asserted Patent, Related Patents, or Related Applications, whether individually or in combination with any other patents or applications, or any portfolio containing the Asserted Patent, Related Patents, or Related Applications.

7.      Documents and Communications concerning each proposal, offer or other

discussions by you or your predecessors in interest, regarding actual or potential agreements with Allied Security Trust, or WSOU regarding any asserted patent including communications regarding such a proposal, draft agreements, and executed agreements.

8.      Communications (or Documents relating thereto) with Alcatel or Nokia regarding the Asserted Patent, Related Patents, or Related Applications.

9.      Communications (or Documents relating thereto) between You and Plaintiff relating to a) the Asserted Patent, Related Patents, Related Applications, or Other Action Patents; b) this Action (including the initiation of or projected outcomes from this Action); c) any Defendant or its products; and d) any portfolio of which the Asserted Patent, Related Patents, Related Applications were a part.

10.     Documents and Communications concerning any decision to pursue or not to pursue any claim of infringement of the Asserted Patent of any Related Patent against any Defendant.

11.     Documents and Communications concerning any decision to pursue or not to pursue any claim of infringement against any of the Other Action Defendants.

12.     Documents regarding ownership, assignment, licenses, royalties, covenants, standstills, settlements, acquisition, financial interest, security interest, sale, transfer of rights (in whole or in part), or any other disposition of, or any offers to buy, sell, or license the Asserted Patent, Related Patents, Related Applications or Other Action Patents.  This includes, but is not limited to:

    a.      Offers to buy, sell, or license, agreements granting rights, assignments, licenses, covenants, royalties, settlements, agreements releasing any third party from liability for infringement, and covenants not to sue, involving

or concerning the Asserted Patent, Related Patents, Related Applications, or Other Action Patents;

b.   Negotiations, discussions, or other Communications relating to the Documents referenced in sub-paragraph (a); and

c.   Communications (or documents relating thereto) between You and any potential Licensee or purchaser of the Asserted Patent, Related Patents, Related Applications, or Other Action Patents.

13.   Documents and Communications concerning any right, title, or interest in any litigation or action involving any of the Asserted Patent, Related Patents, or Other Action Defendants.

14.   Documents and Communications concerning any business plans, marketing plans, marketing efforts, advertising plans, advertising efforts, promotional programs, involving or concerning the Asserted Patent, Related Patents, Related Applications or Other Action Patents.

15.   Documents and Communications concerning any budgets, forecasts, revenues, projections, costs, sales, expenses, margins, profits, or any other means for generating revenue from any Product, process, equipment, or service that allegedly embodies any claim of the Asserted Patent or any Other Action Patents.

16.   Valuations of the Asserted Patent, Related Patents, Related Applications or Other Action Patents, either alone, or together with other patents or consideration, including as part of an intellectual property portfolio, and including any appraisals or valuations for tax purposes.

17.   Documents (or Communications relating thereto) concerning any licensing policy that You may have, including without limitation policies and practices relating to taking or granting licenses, relating to any of the Asserted Patent, Related Patents, Related Applications,

or Other Action Patents.

18.     Documents and Communications concerning whether all of the Licensees of the Asserted Patent have complied with the <mark>marking or notice provisions</mark> of 35 U.S.C. § 287(a) with respect to the Asserted Patent.

19.     Documents sufficient to identify the <mark>nature and scope of any rights in the Asserted Patent</mark> that You have obtained and/or retained at any time, including, without limitation, any right to control litigation, future royalties, payments for licenses, or payments relating to or resulting from the outcome of any litigation involving the Asserted Patent, Related Patents, or Other Action Patents.

# **EXHIBIT 2**

## ORAL EXAMINATION TOPICS REQUESTED

Defendants Dell Technologies Inc., Dell Inc., EMC Corporation, and VMware, Inc. (collectively, "Defendants") seek to ask questions on topics described below.

## DEFINITIONS

The following definitions are applicable to terms employed in responding to this request:

1.  "Accused Product" or "Accused Products" shall refer to any device, product, or other thing that Plaintiff is permitted to accuse of infringing the Asserted Patent in this Action.  A copy of the Complaint in case numbers 6:20-cv-00480-ADA, 6:20-cv-00481-ADA, 6:20-cv-00485-ADA, 6:20-cv-00486-ADA is attached as Exhibit 3.  In referring to any device, product, or other thing as an "Accused Product," Defendants in no way communicate their agreement that it infringes the Asserted Patent.

2.  "Action" shall refer to the above-captioned proceeding in the United States District Court for the Western District of Texas, with case numbers: 6:20-cv-00480-ADA, 6:20-cv-00481-ADA, 6:20-cv-00485-ADA, 6:20-cv-00486-ADA.

3.  "Alcatel" shall mean Alcatel-Lucent International and all parents, subsidiaries, affiliates, predecessors, successors, including but not limited to Alcatel and Lucent Technologies.

4.  "Asserted Claim" shall refer to each claim of the Asserted Patent that Plaintiff contends Defendants infringe.

5.  "Asserted Patent(s)" shall refer to U.S. Patent Nos. 7,539,133; 9,164,800; 7,636,309; 7,092,360 and any patent applications related thereto.

6.  "Communication" shall mean, without limitation, any written, oral, or other transmission of information, including but not limited to emails.

7.     "Complaint" shall refer to the Complaint (including exhibits) that Plaintiff filed on June 2, 2020 as docket number 1 in this Action, the Amended Complaint filed on October 19, 2020, and any other amended complaints thereafter.

8.     "Concerning," "refer(s) to," "related to," "reflecting," "regarding," and "relating to" shall mean directly or indirectly relating to, referring to, regarding, mentioning, reflecting, pertaining to, evidencing, illustrating, involving, describing, discussing, commenting on, embodying, responding to, supporting, contradicting, or constituting (in whole or in part), as the context makes appropriate.

9.     "Defendants" or "Defendant" shall refer to Dell Technologies Inc., Dell Inc., EMC Corporation, and VMware, Inc. and any and all of their then-current or prior subsidiaries, parents, affiliates, divisions, successors, predecessors, agents, employees, representatives, directors, officers, trustees, and attorneys, or any other person or entity acting in whole or in part in concert with any of the foregoing, directly or indirectly.

10.    "Document" shall include, without limitation, all documents, electronically stored information, and tangible things within the scope of the Federal Rules of Civil Procedure, including Rule 34.   Federal Rules of Civil Procedure 34 permits discovery of:   "(A) documents or electronically stored information—including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form; or (B) any designated tangible things."

11.    "Employee" shall refer to any officer, director, partner, employee, representative, or agent.

12.    "Licensee(s)" shall refer to any entity having a license, assignment, covenant not to sue, or other understanding, written, oral or implied, that the entity has any rights to the Asserted Patent, any Related Patents, or any Related Applications, may practice one or more claims of the Asserted Patent and/or that Plaintiff will not file suit or otherwise enforce against that entity one or more claims of the Asserted Patent or any Related Patent or Related Application.

13.    "Nokia" shall mean Nokia Corporation and all parents, subsidiaries, affiliates, predecessors, including but not limited to Nokia Technologies Oy and Nokia Solutions and Networks BV.

14.    "Person" shall refer to any natural person, firm, association, partnership, government agency, corporation, proprietorship, or other entity and its officers, directors, partners, employee, representatives, and agents.

15.    The terms "Plaintiff," and/or "WSOU" shall refer to the responding Plaintiff WSOU Investments, LLC d/b/a Brazos Licensing and Development, and any and all of its then-current or prior subsidiaries, parents, affiliates, divisions, successors, predecessors, agents, employees, representatives, directors, officers, trustees, and attorneys, or any other person or entity acting in whole or in part in concert with any of the foregoing, directly or indirectly.

16.    "Prior Art" encompasses, without limitation, the subject matter described in each and every subdivision of 35 U.S.C. §§ 102 and 103, and includes, but is not limited to, memoranda, notes, manuals, interviews, testing data, disclosures, prototypes, correspondence, drawings, papers, articles, patents, printed publications, public uses, demonstrations, offers for sale or license, and sales.

17.     "Product(s)" means a machine, manufacture, apparatus, device, instrument, mechanism, appliance, software, service, process, or an assemblage of components/parts (either individually or collectively) that are designed to function together electronically, mechanically, or otherwise, including any offered for sale or under development.

18.     "Related Application(s)" means any and all applications related to the Asserted Patent, including any provisional or non-provisional applications, continuations, continuations- in-part, divisions, interferences, reexaminations, re-issues, parents, foreign counterpart applications, and any other applications disclosing, describing or claiming any invention disclosed, described or claimed in the Asserted Patent, or claiming the benefit of the filing date of any application whose benefit is claimed in the Asserted Patent, whether or not abandoned and whether or not issued.

19.     "Related Patent(s)" means any and all U.S. or foreign patents based upon or related to any Related Application(s) or Asserted Patent, including any patents or applications that may have been opposed, reexamined, re-issued or subjected to any validity or nullity proceeding.

20.     "Third Party" shall refer to any person other than Plaintiff or Defendants.

21.     "You," "Your," "Yours" shall refer to Aqua Licensing, LLC, and any and all of its then-current or prior subsidiaries, parents, affiliates, divisions, successors, predecessors, agents, employees, representatives, directors, officers, trustees, and attorneys, or any other person or entity acting in whole or in part in concert with any of the foregoing, directly or indirectly.

22.     Any pronouns shall be construed to refer to the masculine, feminine, or neutral gender, in singular or plural, as in each case is most appropriate.

23.     The singular form of any word shall be construed to also include the plural, and vice-versa.

24.     The word "each" shall be construed to mean "each and every."

25.     The words "and" and "or" shall be construed conjunctively or disjunctively, whichever makes the request more inclusive.

26.     The words "any" and "all" shall be construed to mean "any and all."

## INSTRUCTIONS

1.     This request seeks disclosure to the full extent of the Federal Rules of Civil Procedure and shall be interpreted as inclusive rather than exclusive.

2.     It is Your duty in responding to this request to designate one or more officers, directors, managing agents, or other Persons who are the most knowledgeable with respect to the topics identified below.

## DEPOSITION TOPICS

1.     The past and current ownership of the Asserted Patent, including its chain of title.

2.     Any facts, studies, investigations, information, documents (including Prior Art), and analyses You identified, received, or knew at any time relating to the alleged validity, enforceability, infringement, valuation, or priority dates of the Asserted Patent, Related Patents, Related Applications, or patents and applications incorporated by reference into the Asserted Patent, including any Communications with third parties relating to the foregoing.

3.     Any attempts to sell or otherwise transfer financial interests in the Asserted Patent, any portfolio of patents containing the Asserted Patent, any patents related to the subject matter of the Asserted Claims, and any patent that was asserted against any of the entities that Plaintiff has accused of patent infringement (including but not limited to, Huawei, ZTE, Microsoft, Google, HP, Juniper, F5, Xilinx, NEC, Oneplus, Canon, TP-Link, Arista Networks,

Salesforce, Cisco, and NetGear).

4.      The timing and circumstances related to Your first knowledge or awareness of any alleged infringement of the Asserted Patent by each of the Defendants.

5.      Any evaluation or analysis of the Asserted Patent, Related Patents, or Related Applications, whether individually or in combination with any other patents or applications, including any evaluation or analysis of infringement, validity, or commercialization.

6.      All products of which you are/were aware that practiced or currently practice any claim of the Asserted Patent, Related Patents, or Related Applications and all allegations of which you are/were aware that products practiced or currently practice any claim of the Asserted Patent, Related Patents, or Related Applications.

7.      Any ranking (in terms of strength, value, or otherwise) or rating of, or attempts to rank or rate the Asserted Patent, Related Patents, or Related Applications, whether individually or in combination with any other patents or applications, or any portfolio containing the Asserted Patent, Related Patents, or Related Applications.

8.      Each proposal, offer or other discussions by you or your predecessors in interest, regarding actual or potential agreements with Allied Security Trust, or WSOU regarding any asserted patent including communications regarding such a proposal, draft agreements, and executed agreements.

9.      Any Communications with Alcatel or Nokia regarding the Asserted Patent, Related Patents, or Related Applications.

10.     Any decision to pursue or not to pursue any claim of infringement of any of the claims of the Asserted Patent against any Defendant or any of the entities that Plaintiff has accused of patent infringement (including but not limited to, Huawei, ZTE, Microsoft, Google,

HP, Juniper, F5, Xilinx, NEC, Oneplus, Canon, TP-Link, Arista Networks, Salesforce, Cisco, and NetGear).

11.     Any efforts by You, any predecessor-in-interest of the Asserted Patent, or any other Person to enforce or license the Asserted Patent, or any portfolio of patents containing the Asserted Patent, any patents related to the subject matter of the Asserted Claims, or any patent that was asserted against any of the entities that Plaintiff has accused of patent infringement (including but not limited to, Huawei, ZTE, Microsoft, Google, HP, Juniper, F5, Xilinx, NEC, Oneplus, Canon, TP-Link, Arista Networks, Salesforce, Cisco, and NetGear).

12.     Your policies and practices concerning patent agreements (including licensing), including:

        a.     any written licensing policies or best practices;

        b.     any most favored Licensee;

        c.     the economic and technical factors considered by You in drafting and entering into any license, royalty, standstill, partnership, joint venture, vendor, or settlement agreements;

        d.     any standard or preferred terms for license, royalty, standstill or settlement agreements;

        e.     the process by which You determine the nature, scope and terms of license agreements in which You are a licensor; and

        f.     any circumstance in which You deviated from such policies.

13.     Your knowledge of, and participation in, any Communications between Plaintiff and Defendants prior to the filing of the Action.

14.     Any Communications related to Plaintiff, including communications related to

licensing of any of the Asserted Patent, Related Patents, Related Applications, or any patent that was asserted against any of the entities that Plaintiff has accused of patent infringement (including but not limited to, Huawei, ZTE, Microsoft, Google, HP, Juniper, F5, Xilinx, NEC, Oneplus, Canon, TP-Link, Arista Networks, Salesforce, Cisco, and NetGear), and any compensation, license rates, royalties related thereto, agreements with Plaintiff, Defendants, the Action, the decision to file the Action, requests or offers to provide assistance, witnesses and/or documents for use in the Lawsuit, and any discussion about standing of Plaintiff to bring the Action.

15.     Your relationship with all potential Licensees, including all agreements, assurances, covenants not to sue, and understandings not to assert patents against such potential Licensees, including but not limited to Communications and agreements relating to the Asserted Patent, Related Patents, Related Applications, any patent that was asserted against any of the entities that Plaintiff has accused of patent infringement (including but not limited to, Huawei, ZTE, Microsoft, Google, HP, Juniper, F5, Xilinx, NEC, Oneplus, Canon, TP-Link, Arista Networks, Salesforce, Cisco, and NetGear), and the circumstances relating to such activity.

16.     Your relationship with any entity associated with Stuart A. Shanus, Marc Wade, and/or Craig Etchegoyen, including without limitation Wade and Company, Orange Holdings, WSOU, and/or Uniloc USA, Inc.,[1] including any patent license agreements with any such entity that relate to patents or patent applications that claim subject matter related to the subject matter of the Asserted Claims.

17.     Any Communication You engaged in regarding each Defendant and its

---

[1] Stuart A. Shanus and Craig Etchegoyen are the Chairman and President of WSOU.  Mark Wade, Wade and Company, Orange Holdings, and/or Uniloc USA, Inc. are all related persons or entities of WSOU.

respective Products or services, and any analysis You performed of each Defendant and each entity that Plaintiff has accused of patent infringement (including but not limited to, Huawei, ZTE, Microsoft, Google, HP, Juniper, F5, Xilinx, NEC, Oneplus, Canon, TP-Link, Arista Networks, Salesforce, Cisco, and NetGear) and its respective Products and services related to the Asserted Patent, Related Patents, Related Applications, and the patents asserted against any of the entities that Plaintiff has accused of patent infringement.

18.     Any valuations of the Asserted Patent, any portfolio of patents that includes the Asserted Patent, any patent that was asserted against any of the entities that Plaintiff has accused of patent infringement (including but not limited to, Huawei, ZTE, Microsoft, Google, HP, Juniper, F5, Xilinx, NEC, Oneplus, Canon, TP-Link, Arista Networks, Salesforce, Cisco, and NetGear), or any portfolio of patents that includes those patents.

19.     Any licenses, assignments, conveyances, security interests, or other agreements relating to the Asserted Patent, or any portfolio of patents that includes or included the Asserted Patent, and offers and negotiations leading to and circumstances surrounding such agreement.

20.     Any revenues and profits received by You for any Products practicing the alleged invention of the Asserted Patent.

21.     Revenues, costs, expenses, and profits (including gross and net profits) generated in connection with the Asserted Patent, and the methodology used to calculate or otherwise determine revenues, costs, expenses, and/or profits.

22.     Any licensing fees and rates paid for each portfolio that includes the Asserted Patent.

23.     The rates paid by any Licensee for the use of other patents comparable to the Asserted Patent.

24.     Any financial interests that You may have in the Asserted Patent, including but not limited to royalties and the outcome of the Action.

25.     Your collection, retention and production of documents and information relevant to the Action.

26.     The subject matter, content, and authenticity of all Documents and Communications identified and/or produced in response to the above requests.

27.     All Documents reviewed by You in connection with the deposition on these topics.

28.     For each of the topics set forth in this request, the identity and location of Your employee, agent, representative, independent contractor, or other partner, affiliate, or business associate, with the most knowledge concerning that topic.

# EXHIBIT 3A

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| WSOU INVESTMENTS, LLC d/b/a | § | |
| BRAZOS LICENSING AND | § | NO. 6:20-cv-480-ADA |
| DEVELOPMENT, | § | |
| | § | |
| Plaintiff, | § | **JURY TRIAL DEMANDED** |
| | § | |
| v. | § | |
| | § | |
| DELL TECHNOLOGIES INC., DELL | § | |
| INC., EMC CORPORATION, AND | § | |
| VMWARE, INC. | § | |
| | § | |
| Defendants. | | |

**FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff WSOU Investments, LLC d/b/a Brazos Licensing and Development ("Brazos" or "Plaintiff"), by and through its attorneys, files this First Amended Complaint ("Amended Complain" or "Complaint") for Patent Infringement against Dell Technologies Inc., Dell Inc., EMC Corporation, and VMWare, Inc. (collectively, "Defendants") and alleges:

**NATURE OF THE ACTION**

1.       This is a civil action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. §§ 1, et seq., including §§ 271, 281, 284, and 285.

**THE PARTIES**

2.       Brazos is a limited liability corporation organized and existing under the laws of Delaware, with its principal place of business at 605 Austin Avenue, Suite 6, Waco, Texas 76701.

3.       On information and belief, defendant Dell Technologies Inc. ("Dell") is a Delaware corporation with a principal place of business at One Dell Way, Round Rock, Texas 78682.

4.     On information and belief, defendant Dell Inc. is a Delaware corporation with a principal place of business at One Dell Way, Round Rock, Texas 78682. Dell Inc. is wholly owned by its corporate parent, Dell.

5.     On information and belief, defendant EMC Corporation ("EMC") is a Massachusetts corporation with a principal place of business at One Dell Way, Round Rock, Texas 78682. EMC Corporation is wholly owned by its corporate parent, Dell Technologies Inc.

6.     Upon information and belief, VMware, Inc. ("VMWare") is a Delaware corporation with two established places of business in this District, including two in Austin, Texas with over 700 employees.

7.     Upon information and belief, VMWare was acquired by EMC in 2004 and conducted an initial public offering of Class A common stock in August 2007.  On or around September 2016, Dell acquired by EMC. As a result, EMC became a wholly-owned subsidiary of Dell, and VMWare became an indirectly-held, majority-owned subsidiary of Dell. Under the rules of the New York Stock Exchange, VMWare is a controlled company. As of January 31, 2020, Dell controlled approximately 80.9% of VMWare's outstanding common stock, including 31 million shares of its Class A common stock and all of it Class B common stock.

## JURISDICTION AND VENUE

8.     This is an action for patent infringement which arises under the Patent Laws of the United States, in particular, 35 U.S.C. §§ 271, 281, 284, and 285.

9.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

10.     This Court has specific and general personal jurisdiction over each defendant pursuant to due process and/or the Texas Long Arm Statute, because each defendant has committed

acts giving rise to this action within Texas and within this judicial district. The Court's exercise of jurisdiction over each defendant would not offend traditional notions of fair play and substantial justice because each defendant has established minimum contacts with the forum. For example, on information and belief, each defendant has committed acts of infringement in this judicial district, by among other things, selling and offering for sale products that infringe the asserted patent, directly or through intermediaries, as alleged herein.

11.     Venue in the Western District of Texas is proper pursuant to 28 U.S.C. §§1391 and/or 1400(b). Each defendant has established places of business in the Western District of Texas. Each defendant is registered to do business in Texas. Upon information and belief, each defendant has transacted business in this District and has committed acts of infringement in this District.

**COUNT ONE - INFRINGEMENT OF
U.S. PATENT NO. 7,539,133**

12.     Brazos re-alleges and incorporates by reference the preceding paragraphs of this Complaint.

13.     On May 26, 2009, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 7,539,133 ("the '133 Patent"), entitled "Method and Apparatus for Preventing Congestion in Load-Balancing Networks." A true and correct copy of the '133 Patent is attached as Exhibit A to this Complaint.

14.     Brazos is the owner of all rights, title, and interest in and to the '133 Patent, including the right to assert all causes of action arising under the '133 Patent and the right to any remedies for the infringement of the '133 Patent.

15.     Defendants make, use, sell, offer for sale, import, and/or distribute in the United States, including within this judicial district, products such as, but not limited to, cloud-related solutions, including but not limited to, devices incorporating VMware's VeloCloud solutions and

SD-WAN software, such as Dell EMC SD-WAN Edge 600 series products (collectively, the "Accused Products").



https://www.dell.com/learn/us/en/15/solutions/vmware-vcloud



https://www.delltechnologies.com/en-us/networking/sd-wan-solution/index.htm

16.    The Accused Products can provide a cloud network service solution enabling sites to deploy enterprise-grade access to legacy and cloud applications over both private networks and

Internet broadband. Cloud-delivered Software-Defined Wide-Area-Network (SD-WAN) aids enterprise and cloud application performance over Internet and hybrid WAN.

> This section provides an overview of VeloCloud.
>
> Cloud-delivered Software-defined WAN from VeloCloud assures enterprise and cloud application performance over Internet and hybrid WAN while simplifying deployments and reducing costs.
>
> VeloCloud is a cloud network service solution enabling sites to quickly deploy Enterprise grade access to legacy and cloud applications over both private networks and Internet broadband. The following figure

https://docs.vmware.com/en/VMware-SD-WAN-by-VeloCloud/3.3/velocloud-admin-guide-33.pdf

    17.    The Accused Products have a variety of features and capabilities including Dynamic Multipath Optimization (DMPO) technology. VMware SD-WAN processing of traffic flows at a node in a network can provide packet level redirection, which allows one or multiple physical WAN links to be abstracted and virtualized packet-by-packet. Path selection and remediation techniques can be applied in virtually real-time. Dynamic load-sharing maintains end-customer application performance quality, regardless of the reliability or consistency of the individual physical link.

> Dell deploys VMware SD-WAN Gateways as part of its overall SD-WAN platform, managing all sites on its network and eliminating any latency that may occur. Using VMware SD-WAN Dynamic Multi-Path Optimization (DMPO), Dell no longer has to manage traffic routes on the network or troubleshoot sub-par connections. Additionally, VMware SD-WAN captures data on users and traffic patterns so that Dell IT administrators can analyze it to determine what type of transport and bandwidth is necessary based on the branch location.

https://www.velocloud.com/content/dam/digitalmarketing/velocloud/en/documents/case-study-dell-emc.pdf

# Introduction

VeloCloud Cloud-delivered SD-WAN solution enables Enterprise and Service Provider to utilize multiple WAN transports simultaneously, maximize the bandwidth, while ensuring application performance. The unique Cloud-Delivered architecture offers these benefits for on-premise and cloud applications (SaaS/IaaS). This requires building overlay network, which consists of multiple tunnels, monitoring and adapting to the change in the underlying WAN transports in real time. To deliver a resilient overlay network that takes into account real-time performance of WAN links, VeloCloud has developed the Dynamic Multi-Path Optimization (DMPO). This document explains the key functionalities and benefits of DMPO.

https://partners.lantelligence.com/wp-content/uploads/2018/07/dmpo-brief.pdf

18.     VMware DMPO provides automatic link monitoring, auto-detection of provider and autoconfiguration of link characteristics, routing, and quality of service (QoS) settings. VMware DMPO delivers sub-second blackout and brownout protection to improve application availability. VMware DMPO remediates link degradation through forward error correction (FEC), jitter buffering activation, and synthetic packet production.

## VMware SD-WAN Features

Dynamic Multipath Optimization™ (DMPO)
VMware DMPO provides automatic link monitoring, auto-detection of provider and autoconfiguration of link characteristics, routing and quality of service (QoS) settings. VMware DMPO delivers subsecond blackout and brownout protection to improve application availability. It remediates link degradation through FEC, activating jitter buffering and synthetic packet production.

https://www.velocloud.com/content/dam/digitalmarketing/velocloud/en/documents/brief-solution-overview.pdf

19.     DMPO performs per-packet load balancing for SD-WAN networks.

## Bandwidth Aggregation

For applications that can benefit from more bandwidth, e.g. file transfer, DMPO performs per-packet load balancing, utilizing all available links to deliver all packets of a single flow to the destination.

https://partners.lantelligence.com/wp-content/uploads/2018/07/dmpo-brief.pdf

20.     Nodes may have a hub-spoke design with a hub and multiple spokes. Traffic flow may be received at the hub and may be transmitted to various spokes. When dynamic edge-to-edge is enabled, the hub will not know the traffic between edges and may keep sending low priority

traffic until congestion occurs. As congestion conditions are detected at an edge, with multi-source inbound QoS enabled, the edge will proactively inform the hub to slow down the low priority traffic.

## Multi-Source Inbound QoS

VeloCloud supports multi-source inbound QoS which proactively measures the bandwidth usage with multiple remote peers, and will begin to regulate the traffic before congestion.With a hub-spoke design, when dynamic edge to edge is enabled, the hub will not know the traffic between edges and keep sending low priority traffic until congestion occurs. With multi-source inbound QoS enabled, the edge will proactively inform the hub to slow down the low priority traffic.

https://partners.lantelligence.com/wp-content/uploads/2018/07/dmpo-brief.pdf

     21.    Under congestion, the traffic in the Accused Products will be queued. When the queue is full, packets are dropped. This is an example of processing packets such that those associated with egress nodes for which the congestion condition does not exist have a different queuing priority within the load-balancing network than packets associated with egress nodes for which the congestion condition exists.

### Rate-Limiting an Application or Category

Rate limiting is offered in both inbound and outbound directions for a specific application. When a rate limit for the outbound/inbound traffic is applied, under congestion, the traffic will be queued and when the queue is full, the packets will be dropped.

https://partners.lantelligence.com/wp-content/uploads/2018/07/dmpo-brief.pdf

     22.    The Accused Products may also provide an enhanced QoS feature called Business Policy. Based on this Business Policy configuration, the Accused Products examine the traffic being used (whether congestion condition exists or not) and identify the application behavior and the Edge WAN Link conditions. Based on this, the Business Policy optimizes application behavior driving queuing, bandwidth utilization, link steering, and the mitigation of network errors.

The VeloCloud provides an enhanced Quality of Service feature called Business Policy. This feature is defined using the **Business Policy** tab in a Profile (or at the Edge override level).

https://docs.vmware.com/en/VMware-SD-WAN-by-VeloCloud/3.3/velocloud-admin-guide-

33.pdf

Based on the business policy configuration, the VeloCloud examines the traffic being used, identifies the Application behavior, the business service objective required for a given app (High, Med, or Low), and the Edge WAN Link conditions. Based on this, the Business Policy optimizes Application behavior driving queuing, bandwidth utilization, link steering, and the mitigation of network errors.

https://docs.vmware.com/en/VMware-SD-WAN-by-VeloCloud/3.3/velocloud-admin-guide-33.pdf

23.    In view of preceding paragraphs, each and every element of at least claim 1 of the '133 Patent is found in the Accused Products.

24.    And upon information and belief, each and every element of at least one claim of the patent-in-suit is performed or practiced by Defendants at least through Defendants' own use and configuration of its own Accused Products, and/or through Defendants' own testing and configuration of its own Accused Products, and/or through Defendants' providing services for its Accused Products, including but not limited to providing installation, deployment, support and configuration of its Accused Products.

25.    Defendants continue to directly infringe at least one claim of the '133 Patent, literally or under the doctrine of equivalents, by making, using, selling, offering for sale, importing, and/or distributing the Accused Products in the United States, including within this judicial district, without the authority of Brazos.

26.    In May 2020, Plaintiff filed a suit against Defendants asserting infringement of the same patent and by the same accused products that are asserted in this case.  Plaintiff dismissed the prior suit before filing this suit.  As a result of the prior suit, Defendants had notice and actual or constructive knowledge of their infringement of the patent-in-suit since at least May 2020, before the filing of this case.  Further, Defendants had knowledge of their infringement of

the patent-in-suit before the filing of this Amended Complaint.[1]

    27.    Since at least May 2020, through its actions, Defendants have actively induced product makers, distributors, retailers, and/or end users of the Accused Products to infringe the '133 Patent throughout the United States, including within this judicial district, by, among other things, advertising and promoting the use of the Accused Products in various websites, including providing and disseminating product descriptions, operating manuals, and other instructions on how to implement and configure the Accused Products. Examples of such advertising, promoting, and/or instructing include the documents at:

- https://www.vmware.com/company/acquisitions/velocloud.html

- https://www.dell.com/learn/us/en/15/solutions/vmware-vcloud

- https://www.delltechnologies.com/en-us/networking/sd-wan-solution/index.htm

---

[1] Dell filed a motion to dismiss that is mooted by this amended complaint. Dell's motion cites a WDTX case (which relies authority from the District of Delaware) for the proposition that knowledge of a plaintiff's patent after the lawsuit was filed is insufficient to plead the requisite knowledge for indirect infringement. *See Aguirre v. Powerchute Sports, LLC*, No. SA-10-CV-0702 XR, 2011 WL 2471299, at *3 (W.D. Tex. June 17, 2011) (citing *Xpoint Techs. v. Microsoft Corp.*, 730 F.Supp.2d 349 (D. Del. 2010)). Several Delaware courts have since rejected this rule because there is no statutory basis to support it and because there is no purpose served by the formality of requiring the plaintiff to file an amended complaint in order to be allowed to assert knowledge of the patents during the period following the filing of the original complaint. *See Walker Digital, LLC v. Facebook, Inc.*, 852 F. Supp. 2d 559, 566 (D. Del. 2012) ("The court acknowledges that this result is inconsistent with its prior decisions in *Xpoint Techs. v. Microsoft Corp.*, 730 F.Supp.2d 349 (D.Del.2010), and *EON Corp. IP Holdings LLC v. FLO TV Inc.*, 802 F.Supp.2d 527 (D. Del. 2011). Given the ease of amendment, the limitation of damages to post-knowledge conduct, and in the interests of judicial economy, the court finds that the better reasoning is to allow a complaint that satisfies Rule 8 to proceed to discovery rather than dismissing it for lack of pre-filing knowledge when, by the time the motion to dismiss has been filed, defendant in fact has the requisite knowledge as pled by plaintiff."); *see also IOENGINE, LLC v. PayPal Holdings, Inc*., CV 18-452-WCB, 2019 WL 330515, at *4 (D. Del. Jan. 25, 2019) ("The Court sees no purpose that would be served by the formality of requiring IOENGINE to file an amended complaint in order to be allowed to assert knowledge of the patents during the period following the filing of the original complaint.").

- https://www.dell.com/en-us/work/shop/povw/sd-wan-edge-600

- https://partners.lantelligence.com/wp-content/uploads/2018/07/dmpo-brief.pdf

- https://docs.vmware.com/en/VMware-SD-WAN-by-VeloCloud/3.3/velocloud-admin-guide-33.pdf

- https://www.velocloud.com/content/dam/digitalmarketing/velocloud/en/documents/brief-solution-overview.pdf

28. Since at least May 2020, through its actions, Defendants have contributed to the infringement of the '133 Patent by having others sell, offer for sale, or use the Accused Products throughout the United States, including within this judicial district, with knowledge that the Accused Products infringe the '133 Patent. The Accused Products are especially made or adapted for infringing the '133 Patent and have no substantial non-infringing use. For example, in view of the preceding paragraphs, the Accused Products contain functionality which is material to at least one claim of the '133 Patent.

## **JURY DEMAND**

Brazos hereby demands a jury on all issues so triable.

## **REQUEST FOR RELIEF**

WHEREFORE, Brazos respectfully requests that the Court:

(A) Enter judgment that Defendants infringe one or more claims of the '133 Patent literally and/or under the doctrine of equivalents;

(B) Enter judgment that Defendants have induced infringement and continue to induce infringement of one or more claims of the '133 Patent;

(C) Enter judgment that Defendants have contributed to and continue to contribute to the infringement of one or more claims of the '133 Patent;

(D)     Award Brazos damages, to be paid by Defendants in an amount adequate to compensate Brazos for such damages, together with pre-judgment and post-judgment interest for the infringement by Defendants of the '133 Patent through the date such judgment is entered in accordance with 35 U.S.C. § 284, and increase such award by up to three times the amount found or assessed in accordance with 35 U.S.C. § 284;

(E)     Declare this case exceptional pursuant to 35 U.S.C. § 285; and

(F)     Award Brazos its costs, disbursements, attorneys' fees, and such further and additional relief as is deemed appropriate by this Court.

Dated: October 19, 2020                                  Respectfully submitted,

                                         /s/ James L. Etheridge
                                         James L. Etheridge
                                         Texas State Bar No. 24059147
                                         Ryan S. Loveless
                                         Texas State Bar No. 24036997
                                         Travis L. Richins
                                         Texas State Bar No. 24061296

                                         ETHERIDGE LAW GROUP, PLLC
                                         2600 E. Southlake Blvd., Suite 120 / 324
                                         Southlake, Texas 76092
                                         Telephone: (817) 470-7249
                                         Facsimile: (817) 887-5950
                                         Jim@EtheridgeLaw.com
                                         Ryan@EtheridgeLaw.com
                                         Travis@EtheridgeLaw.com

                                         Mark D. Siegmund
                                         State Bar No. 24117055
                                         mark@waltfairpllc.com
                                         Law Firm of Walt, Fair PLLC.
                                         1508 North Valley Mills Drive
                                         Waco, Texas 76710
                                         Telephone: (254) 772-6400
                                         Facsimile: (254) 772-6432

                                         **COUNSEL FOR PLAINTIFF**

# **EXHIBIT 3B**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | | |
|---|---|---|
| WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT, | § § § § | CIVIL ACTION NO. 6:20-cv-481-ADA |
| Plaintiff, | § § | **JURY TRIAL DEMANDED** |
| v. | § § | |
| DELL TECHNOLOGIES INC., DELL INC., EMC CORPORATION, AND VMWARE, INC. | § § § § § | |
| Defendants. | § | |

## SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff WSOU Investments, LLC d/b/a Brazos Licensing and Development ("Brazos" or "Plaintiff"), by and through its attorneys, files this Second Amended Complaint ("Amended Complaint" or "Complaint") for Patent Infringement against Dell Technologies Inc., Dell Inc., EMC Corporation, and VMWare, Inc. (collectively, "Defendants") and alleges:

## NATURE OF THE ACTION

1.      This is a civil action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. §§ 1, et seq., including §§ 271, 281, 284, and 285.

## THE PARTIES

2.      Brazos is a limited liability corporation organized and existing under the laws of Delaware, with its principal place of business at 605 Austin Avenue, Suite 6, Waco, Texas 76701.

3.      On information and belief, defendant Dell Technologies Inc. ("Dell") is a Delaware corporation with a principal place of business at One Dell Way, Round Rock, Texas 78682.

4.      On information and belief, defendant Dell Inc. is a Delaware corporation with a principal place of business at One Dell Way, Round Rock, Texas 78682. Dell Inc. is wholly owned by its corporate parent, Dell.

5.      On information and belief, defendant EMC Corporation ("EMC") is a Massachusetts corporation with a principal place of business at One Dell Way, Round Rock, Texas 78682. EMC Corporation is wholly owned by its corporate parent, Dell Technologies Inc.

6.      Upon information and belief, VMware, Inc. ("VMWare") is a Delaware corporation with two established places of business in this District, including two in Austin, Texas with over 700 employees.

7.      Upon information and belief, VMWare was acquired by EMC in 2004 and conducted an initial public offering of Class A common stock in August 2007. On or around September 2016, Dell acquired by EMC. As a result, EMC became a wholly-owned subsidiary of Dell, and VMWare became an indirectly-held, majority-owned subsidiary of Dell. Under the rules of the New York Stock Exchange, VMWare is a controlled company. As of January 31, 2020, Dell controlled approximately 80.9% of VMWare's outstanding common stock, including 31 million shares of its Class A common stock and all of it Class B common stock.

## JURISDICTION AND VENUE

8.      This is an action for patent infringement which arises under the Patent Laws of the United States, in particular, 35 U.S.C. §§ 271, 281, 284, and 285.

9.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

10.     This Court has specific and general personal jurisdiction over each defendant pursuant to due process and/or the Texas Long Arm Statute, because each defendant has committed

acts giving rise to this action within Texas and within this judicial district. The Court's exercise of jurisdiction over each defendant would not offend traditional notions of fair play and substantial justice because each defendant has established minimum contacts with the forum. For example, on information and belief, each defendant has committed acts of infringement in this judicial district, by among other things, selling and offering for sale products that infringe the asserted patent, directly or through intermediaries, as alleged herein.

11. Venue in the Western District of Texas is proper pursuant to 28 U.S.C. §§1391 and/or 1400(b). Each defendant has established places of business in the Western District of Texas. Each defendant is registered to do business in Texas. Upon information and belief, each defendant has transacted business in this District and has committed acts of infringement in this District.

## COUNT ONE - INFRINGEMENT OF U.S. PATENT NO. 9,164,800

12. Brazos re-alleges and incorporates by reference the preceding paragraphs of this Complaint.

13. On October 20, 2015, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,164,800 ("the '800 Patent"), entitled "Optimizing Latencies in

3

Cloud Systems by Intelligent Compute Node Placement." A true and correct copy of the '800 Patent is attached as Exhibit A to this Complaint.

14.     Brazos is the owner of all rights, title, and interest in and to the '800 Patent, including the right to assert all causes of action arising under the '800 Patent and the right to any remedies for the infringement of the '800 Patent.

15.     Defendants make, use, sell, offer for sale, import, and/or distribute in the United States, including within this judicial district, products such as, but not limited to, cloud-related solutions, including but not limited to, devices incorporating VMware's VeloCloud solutions and vSphere software, such as Dell's PowerEdge servers and VxRail appliances (collectively, the "Accused Products").



https://www.dell.com/learn/us/en/15/solutions/vmware-vcloud



https://www.dell.com/downloads/global/power/ps3q07-20070562-hanson.pdf

**Simplify your journey to the hybrid cloud.**

Together, Dell EMC and VMware accelerate digital business in a multi-cloud world. Building on our solid partnership, Dell EMC PowerEdge will offer the latest versions of VMware vSphere®, VMware vSAN™ and VMware Cloud Foundation once available. Learn more about VMware's recent announcements here.

https://www.delltechnologies.com/en-us/solutions/vmware/servers-for-vmware.htm

The two-socket server is an ideal base for building VI3 clusters as there are not as many "eggs in one basket". However, it would be best if there were a mechanism to restart the virtual machines from the failed hosts on remaining hosts in the VMware farm. Using VMware's HA (High Availibility) and DRS (Distributed Resource Scheduler) it is possible to obtain this functionality.

VMware HA allows virtual machines on failed ESX server hosts to restart on surviving ESX hosts. The DRS solution uses system algorithms and user created rules to determine the optimal placement of the virtual machines.

https://www.dell.com/downloads/global/vectors/dell_and_vmware_drs_ha_solutions.pdf

## 3 VxRail appliances

VxRail is jointly developed by Dell EMC and VMware and is the only fully integrated, preconfigured, and tested HCI appliance that is powered by VMware Virtual SAN (vSAN). VxRail is managed through the vCenter Server interface. It provides a familiar vSphere experience and enables streamlined deployment and the ability to extend the use of existing IT tools and processes.

VxRail appliances are managed using VxRail HCI System software for hardware and appliance maintenance tasks as well as software life cycle management. VxRail HCI System Software incorporates Secure Remote Services (SRS) and other serviceability capabilities. VxRail appliances are discoverable and visible in Dell EMC Vision™ Intelligent Operations.

**Note:** For day-to-day VM management, you manage the VMware stack on the VxRail appliance directly through vCenter server.

The VxRail software bundle is preloaded and licensed onto hardware and consists of the following components (specific software versions not shown):

- VxRail HCI System Software
- VMware vCenter Server
- VMware vRealize Log Insight™
- VMware vSAN™
- Dell Secure Remote Services (SRS)/VE

Also preloaded is VMware vSphere®; however, licenses are required and can be purchased through Dell EMC, VMware, or your preferred VMware reseller partner.

https://www.dellemc.com/resources/en-us/asset/technical-guides-support-information/products/converged-infrastructure/vxrail-vcenter-server-planning-guide.pdf

16.     The Accused Products allow administration of hybrid cloud environments and provide resource management.

VMware vSphere is VMware's virtualization platform, which transforms data centers into aggregated computing infrastructures that include CPU, storage, and networking resources. vSphere manages these infrastructures as a unified operating environment, and provides you with the tools to administer the data centers that participate in that environment.

https://docs.vmware.com/en/VMware-vSphere/index.html

## Introduction

VMware vSphere® 6.7 delivers key capabilities to enable IT organizations to address the following notable trends that are putting new demands on their IT infrastructure:

- Explosive growth in quantity and variety of applications, from business-critical applications to new intelligent workloads
- Rapid increase in hybrid cloud environments and use cases
- Global expansion of on-premises data centers, including at the edge
- Heightened importance of security relating to infrastructure and applications

The following sections discuss some of the key capabilities in vSphere 6.7 that address the aforementioned trends.

https://www.vmware.com/content/dam/digitalmarketing/vmware/en/pdf/products/vsphere/vmware-whats-new-in-vsphere-whitepaper.pdf

vSphere Resource Management describes resource management for VMware® ESXi and vCenter® Server environments.

This documentation focuses on the following topics.

- Resource allocation and resource management concepts
- Virtual machine attributes and admission control
- Resource pools and how to manage them
- Clusters, vSphere® Distributed Resource Scheduler (DRS), vSphere Distributed Power Management (DPM), and how to work with them
- Datastore clusters, Storage DRS, Storage I/O Control, and how to work with them
- Advanced resource management options
- Performance considerations

https://docs.vmware.com/en/VMware-vSphere/6.7/vsphere-esxi-vcenter-server-67-resource-management-guide.pdf

17.     The Accused Products employ Distributed Resources Scheduler (DRS) solutions to manage workloads and group hosts to resource clusters in order to segregate the computing needs of different business units and balance workloads.

## Enable VMware DRS to Manage Workloads

Group VMware ESXi hosts into resource clusters to segregate the computing needs of different business units. VMware vSphere clusters allow you to:

- Provide highly available resources to your workloads.
- Balance workloads for optimal performance.
- Scale and manage computing resources without service disruption.

https://www.vmware.com/in/products/vsphere/drs-dpm.html

18.     The Accused Products allocate I/O resources to virtual machines (VMs) performing computing based on importance by assigning a relative number of shares to the virtual machines. A storage DRS solution in the Accused Products can provide placement of VMs and VM disks (VMDKs) for data storage, for example.

## Set Storage I/O Control Resource Shares and Limits

Allocate storage I/O resources to virtual machines based on importance by assigning a relative amount of shares to the virtual machine.

https://docs.vmware.com/en/VMware-vSphere/6.7/vsphere-esxi-vcenter-server-67-resource-management-guide.pdf

19.     The Accused Products uses clusters to manage the resources. In vSphere clusters, vSphere High Availability (HA) and vSphere Distributed Resources Scheduler (DRS) solutions

are also enabled.

**Create a Cluster**

A cluster is a group of hosts. When a host is added to a cluster, the host's resources become part of the cluster's resources. The cluster manages the resources of all hosts within it. Clusters enable the vSphere High Availability (HA) and vSphere Distributed Resource Scheduler (DRS) solutions.

https://docs.vmware.com/en/VMware-vSphere/6.7/vsphere-esxi-vcenter-server-67-resource-management-guide.pdf

20.     A DRS cluster created by a vSphere Client may be a collection of hosts and associated virtual machines with shared resources and a shared management interface. A vSphere Client can add multiple hosts to a cluster. A Datastore Cluster is a group of datastores. A vCenter server can manage all these resources.

A cluster is a group of hosts. You can create a cluster using vSphere Client, and add multiple hosts to the cluster. vCenter Server manages these hosts' resources jointly: the cluster owns all of the CPU and memory of all hosts. You can enable the cluster for joint load balancing or failover. See Chapter 11 Creating a DRS Cluster for more information.

A datastore cluster is a group of datastores. Like DRS clusters, you can create a datastore cluster using the vSphere Client, and add multiple datastores to the cluster. vCenter Server manages the datastore resources jointly. You can enable Storage DRS to balance I/O load and space utilization. See Chapter 13 Creating a Datastore Cluster.

https://docs.vmware.com/en/VMware-vSphere/6.7/vsphere-esxi-vcenter-server-67-resource-management-guide.pdf

21.     A vSphere cluster contains VMs, datastores, and links between them.

Storage DRS allows you to manage the aggregated resources of a datastore cluster. When Storage DRS is enabled, it provides recommendations for virtual machine disk placement and migration to balance space and I/O resources across the datastores in the datastore cluster.

https://docs.vmware.com/en/VMware-vSphere/6.7/vsphere-esxi-vcenter-server-67-resource-management-guide.pdf

9

22.     Storage DRS in the Accused Products allows users to manage the aggregated resources in a datastore cluster to achieve objectives, including space load balancing, I/O load balancing, and placement for virtual disks.

When you enable Storage DRS, you enable the following functions.

- Space load balancing among datastores within a datastore cluster.

- I/O load balancing among datastores within a datastore cluster.

- Initial placement for virtual disks based on space and I/O workload.

https://docs.vmware.com/en/VMware-vSphere/6.7/vsphere-esxi-vcenter-server-67-resource-management-guide.pdf

Virtual machine (VM) provisioning operations such as create, clone, and relocate involve the placement of storage resources. Storage DRS (sometimes seen as "SDRS") is the resource management component in vSphere responsible for optimal storage placement and load balancing recommendations in the datastore cluster.

A key contributor to VM provisioning times in Storage DRS-enabled environments is the time it takes (latency) to receive placement recommendations for the VM disks (VMDKs). This latency particularly comes into play when multiple VM provisioning requests are issued concurrently.

Several changes were made in vSphere 6.7 to improve the time to generate placement recommendations for provisioning operations. Specifically, the level of parallelism was improved for the case where there are no storage reservations for VMDKs. This resulted in significant improvements in recommendation times when there are concurrent provisioning requests.

https://blogs.vmware.com/performance/2018/11/sdrs-performance-vsphere67.html

23.     Storage DRS in the Accused Products place VMs and VMDKs with reduced latency. Dell claims that significant improvement in the latency is observed in the new version of vSphere, i.e., VMware vSphere 6.7.

10

Virtual machine (VM) provisioning operations such as create, clone, and relocate involve the placement of storage resources. Storage DRS (sometimes seen as "SDRS") is the resource management component in vSphere responsible for optimal storage placement and load balancing recommendations in the datastore cluster.

A key contributor to VM provisioning times in Storage DRS-enabled environments is the time it takes (latency) to receive placement recommendations for the VM disks (VMDKs). This latency particularly comes into play when multiple VM provisioning requests are issued concurrently.

Several changes were made in vSphere 6.7 to improve the time to generate placement recommendations for provisioning operations. Specifically, the level of parallelism was improved for the case where there are no storage reservations for VMDKs. This resulted in significant improvements in recommendation times when there are concurrent provisioning requests.

https://blogs.vmware.com/performance/2018/11/sdrs-performance-vsphere67.html

24. In the Accused Products, the Storage DRS works in conjunction with the cluster DRS based on a variety of metrics, including device latency and prioritizations, to avoid over provisioning storage and other resources. As an example of an assignment objective, the Storage DRS allocates resources (*e.g.,* the placement for VMs and VMDKs) using a variety of metrics (*e.g.*, latency), which may each be controlled and/or monitored. In addition, resources can be adjusted and can be set (*e.g.*, as per virtual machines) through application of assignment algorithms (*e.g.*, VMotion).

> ## Important VM Level Metrics
>
> - CPU active (run, ready and peak)
> - Memory overhead (growth rate)
> - Active, Consumed and Idle Memory
> - Shared memory pages, balloon, swapped
>
> The most important metric to determine a virtual machines' CPU demand is CPU active. CPU active is a collection of multiple stats all morphed into a single stat. One important statistic that is a part of CPU active is CPU ready time. DRS takes ready time into account to understand the demand of the virtual machine. On top of this, DRS considers both peak active as average active in the past five minutes.
>
> The most important metric to determine a virtual machines' memory demand is the active memory and the consumed memory. Another metric that is considered is the page sharing between multiple virtual machines running on the same host, whenever DRS makes a decision it knows about how pages are being shared between their respective virtual machines on that particular host. If a virtual machine is moved away from this host, DRS takes into account the loss of page sharing. This is one of the main reasons, why DRS prefers to move medium-sized workloads over larger sized workloads. Moving a virtual machine to a destination could force the ESXi host to reclaim memory to make room for the in-transit virtual machine. But there is one metric that supersedes all metrics listed above, and that is virtual machine happiness.

https://vspherecentral.vmware.com/t/resource-management-and-availability/vsphere-resources-and-availability/drs-decision-engine/

> vSphere Storage I/O Control allows cluster-wide storage I/O prioritization, which allows better workload consolidation and helps reduce extra costs associated with over provisioning.
>
> Storage I/O Control extends the constructs of shares and limits to handle storage I/O resources. You can control the amount of storage I/O that is allocated to virtual machines during periods of I/O congestion, which ensures that more important virtual machines get preference over less important virtual machines for I/O resource allocation.
>
> When you enable Storage I/O Control on a datastore, ESXi begins to monitor the device latency that hosts observe when communicating with that datastore. When device latency exceeds a threshold, the datastore is considered to be congested and each virtual machine that accesses that datastore is allocated I/O resources in proportion to their shares. You set shares per virtual machine. You can adjust the number for each based on need.

https://docs.vmware.com/en/VMware-vSphere/6.7/vsphere-esxi-vcenter-server-67-resource-management-guide.pdf

25.     Based on the metrics and prioritizations, algorithms applied in the Accused Products (*e.g.*, VMotion) can create assignments to migrate and optimize resources.



**AT A GLANCE**

VMware® VMotion™ enables the live migration of running virtual machines from one physical server to another with zero downtime, continuous service availability, and complete transaction integrity. VMotion is a key enabling technology for creating the dynamic, automated, and self-optimizing data center.

https://www.vmware.com/pdf/vmotion_datasheet.pdf

26.     In view of preceding paragraphs, each and every element of at least claim 1 of the '800 Patent is found in the Accused Products.

27.     Upon information and belief, each and every element of at least claim 1 of the patent-in-suit is performed or practiced by Defendants at least through Defendants' own use and configuration of its own Accused Products, and/or through Defendants' own testing and configuration of its own Accused Products, and/or through Defendants' providing services for its Accused Products, including but not limited to providing installation, deployment, support and configuration of its Accused Products.

28.     Defendants continue to directly infringe at least one claim of the '800 Patent, literally or under the doctrine of equivalents, by making, using, selling, offering for sale, importing, and/or distributing the Accused Products in the United States, including within this judicial district, without the authority of Brazos.

29.     In May 2020, Brazos filed a suit against Defendants asserting infringement of the same patent and by the same accused products that are asserted in this case.  Brazos dismissed the prior suit before filing this suit.  As a result of the prior suit, Defendants had notice and actual

or constructive knowledge of their infringement of the patent-in-suit since at least May 2020, before the filing of this case. Further, Defendants had knowledge of their infringement of the patent-in-suit before the filing of this Amended Complaint.[1]

30. Since at least May 2020, through its actions, Defendants have actively induced product makers, distributors, retailers, and/or end users of the Accused Products to infringe the '800 Patent throughout the United States, including within this judicial district, by, among other things, advertising and promoting the use of the Accused Products in various websites, including providing and disseminating product descriptions, operating manuals, and other instructions on how to implement and configure the Accused Products. Examples of such advertising, promoting, and/or instructing include the documents at:

- https://www.dell.com/learn/us/en/15/solutions/vmware-vcloud

---

[1] Dell filed a motion to dismiss that is mooted by this amended complaint. Dell's motion cites a WDTX case (which relies authority from the District of Delaware) for the proposition that knowledge of a plaintiff's patent after the lawsuit was filed is insufficient to plead the requisite knowledge for indirect infringement. *See Aguirre v. Powerchute Sports, LLC*, No. SA-10-CV-0702 XR, 2011 WL 2471299, at *3 (W.D. Tex. June 17, 2011) (citing *Xpoint Techs. v. Microsoft Corp.*, 730 F.Supp.2d 349 (D. Del. 2010)). Several Delaware courts have since rejected this rule because there is no statutory basis to support it and because there is no purpose served by the formality of requiring the plaintiff to file an amended complaint in order to be allowed to assert knowledge of the patents during the period following the filing of the original complaint. *See Walker Digital, LLC v. Facebook, Inc.*, 852 F. Supp. 2d 559, 566 (D. Del. 2012) ("The court acknowledges that this result is inconsistent with its prior decisions in *Xpoint Techs. v. Microsoft Corp.*, 730 F.Supp.2d 349 (D.Del.2010), and *EON Corp. IP Holdings LLC v. FLO TV Inc.*, 802 F.Supp.2d 527 (D. Del. 2011). Given the ease of amendment, the limitation of damages to post-knowledge conduct, and in the interests of judicial economy, the court finds that the better reasoning is to allow a complaint that satisfies Rule 8 to proceed to discovery rather than dismissing it for lack of pre-filing knowledge when, by the time the motion to dismiss has been filed, defendant in fact has the requisite knowledge as pled by plaintiff."); *see also IOENGINE, LLC v. PayPal Holdings, Inc.*, CV 18-452-WCB, 2019 WL 330515, at *4 (D. Del. Jan. 25, 2019) ("The Court sees no purpose that would be served by the formality of requiring IOENGINE to file an amended complaint in order to be allowed to assert knowledge of the patents during the period following the filing of the original complaint.").

- https://www.dell.com/downloads/global/power/ps3q07-20070562-hanson.pdf

- https://www.delltechnologies.com/en-us/solutions/vmware/servers-for-vmware.htm

- https://www.dell.com/downloads/global/vectors/dell_and_vmware_drs_ha_solutions.pdf

- https://www.dell.com/support/article/en-uk/sln314727/dell-s-customization-of-vmware-esxi-and-its-advantages?lang=en

- https://www.dell.com/en-us/work/shop/povw/vmware-vsphere

- https://docs.vmware.com/en/VMware-vSphere/index.html

- https://www.vmware.com/content/dam/digitalmarketing/vmware/en/pdf/products/vsphere/vmware-whats-new-in-vsphere-whitepaper.pdf

- https://docs.vmware.com/en/VMware-vSphere/6.7/vsphere-esxi-vcenter-server-67-resource-management-guide.pdf

- https://www.vmware.com/in/products/vsphere/drs-dpm.html

- https://blogs.vmware.com/performance/2018/11/sdrs-performance-vsphere67.html

- https://www.vmware.com/pdf/vmotion_datasheet.pdf

- https://vspherecentral.vmware.com/t/vsphere-resources-and-availability/drs-decision-engine/

31.     Since at least May 2020, through its actions, Defendants have contributed to the infringement of the '800 Patent by having others sell, offer for sale, or use the Accused Products throughout the United States, including within this judicial district, with knowledge that the Accused Products infringe the '800 Patent. The Accused Products are especially made or adapted for infringing the '800 Patent and have no substantial non-infringing use. For example, in view of the preceding paragraphs, the Accused Products contain functionality which is material to at least one claim of the '800 Patent.

## JURY DEMAND

Brazos hereby demands a jury on all issues so triable.

## REQUEST FOR RELIEF

WHEREFORE, Brazos respectfully requests that the Court:

(A)    Enter judgment that Defendants infringe one or more claims of the '800 Patent literally and/or under the doctrine of equivalents;

(B)    Enter judgment that Defendants have induced infringement and continue to induce infringement of one or more claims of the '800 Patent;

(C)    Enter judgment that Defendants have contributed to and continue to contribute to the infringement of one or more claims of the '800 Patent;

(D)    Award Brazos damages, to be paid by Defendants in an amount adequate to compensate Brazos for such damages, together with pre-judgment and post-judgment interest for the infringement by Defendants of the '800 Patent through the date such judgment is entered in accordance with 35 U.S.C. § 284, and increase such award by up to three times the amount found or assessed in accordance with 35 U.S.C. § 284;

(E)    Declare this case exceptional pursuant to 35 U.S.C. § 285; and

(F)    Award Brazos its costs, disbursements, attorneys' fees, and such further and additional relief as is deemed appropriate by this Court.

Dated: November 12, 2020                 Respectfully submitted,

                                         */s/ James L. Etheridge*
                                         James L. Etheridge
                                         Texas State Bar No. 24059147
                                         Ryan S. Loveless
                                         Texas State Bar No. 24036997
                                         Travis L. Richins
                                         Texas State Bar No. 24061296

                                         ETHERIDGE LAW GROUP, PLLC
                                         2600 E. Southlake Blvd., Suite 120 / 324
                                         Southlake, Texas 76092
                                         Telephone: (817) 470-7249
                                         Facsimile: (817) 887-5950
                                         Jim@EtheridgeLaw.com
                                         Ryan@EtheridgeLaw.com
                                         Travis@EtheridgeLaw.com

                                         Mark D. Siegmund
                                         State Bar No. 24117055
                                         mark@waltfairpllc.com
                                         Law Firm of Walt, Fair PLLC.
                                         1508 North Valley Mills Drive
                                         Waco, Texas 76710
                                         Telephone: (254) 772-6400
                                         Facsimile: (254) 772-6432

                                         **COUNSEL FOR PLAINTIFF**

17

# EXHIBIT 3C

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT, | § § § § | NO. 6:20-cv-485-ADA |
| Plaintiff, | § § | **JURY TRIAL DEMANDED** |
| v. | § § | |
| DELL TECHNOLOGIES INC., DELL INC., EMC CORPORATION, AND VMWARE, INC. | § § § § § | |
| Defendants. | | |

**FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff WSOU Investments, LLC d/b/a Brazos Licensing and Development ("Brazos" or "Plaintiff"), by and through its attorneys, files this First Amended Complaint ("Amended Complaint" or "Complaint") for Patent Infringement against Dell Technologies Inc., Dell Inc., EMC Corporation, and VMWare, Inc. (collectively, "Defendants") and alleges:

**NATURE OF THE ACTION**

1.     This is a civil action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. §§ 1, et seq., including §§ 271, 281, 284, and 285.

**THE PARTIES**

2.     Brazos is a limited liability corporation organized and existing under the laws of Delaware, with its principal place of business at 605 Austin Avenue, Suite 6, Waco, Texas 76701.

3.     On information and belief, defendant Dell Technologies Inc. ("Dell") is a Delaware corporation with a principal place of business at One Dell Way, Round Rock, Texas 78682.

4.      On information and belief, defendant Dell Inc. is a Delaware corporation with a principal place of business at One Dell Way, Round Rock, Texas 78682.  Dell Inc. is wholly owned by its corporate parent, Dell.

5.      On information and belief, defendant EMC Corporation ("EMC") is a Massachusetts corporation with a principal place of business at One Dell Way, Round Rock, Texas 78682. EMC Corporation is wholly owned by its corporate parent, Dell Technologies Inc.

6.      Upon information and belief, VMware, Inc. ("VMWare") is a Delaware corporation with two established places of business in this District, including two in Austin, Texas with over 700 employees.

7.      Upon information and belief, VMWare was acquired by EMC in 2004 and conducted an initial public offering of Class A common stock in August 2007.  On or around September 2016, Dell acquired by EMC. As a result, EMC became a wholly-owned subsidiary of Dell, and VMWare became an indirectly-held, majority-owned subsidiary of Dell. Under the rules of the New York Stock Exchange, VMWare is a controlled company. As of January 31, 2020, Dell controlled approximately 80.9% of VMWare's outstanding common stock, including 31 million shares of its Class A common stock and all of it Class B common stock.

## JURISDICTION AND VENUE

8.      This is an action for patent infringement which arises under the Patent Laws of the United States, in particular, 35 U.S.C. §§ 271, 281, 284, and 285.

9.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

10.     This Court has specific and general personal jurisdiction over each defendant pursuant to due process and/or the Texas Long Arm Statute, because each defendant has committed

acts giving rise to this action within Texas and within this judicial district. The Court's exercise of jurisdiction over each defendant would not offend traditional notions of fair play and substantial justice because each defendant has established minimum contacts with the forum. For example, on information and belief, each defendant has committed acts of infringement in this judicial district, by among other things, selling and offering for sale products that infringe the asserted patent, directly or through intermediaries, as alleged herein.

11. Venue in the Western District of Texas is proper pursuant to 28 U.S.C. §§1391 and/or 1400(b). Each defendant has established places of business in the Western District of Texas. Each defendant is registered to do business in Texas. Upon information and belief, each defendant has transacted business in this District and has committed acts of infringement in this District.

## COUNT ONE - INFRINGEMENT OF
## U.S. PATENT NO. 7,636,309

12. Brazos re-alleges and incorporates by reference the preceding paragraphs of this Complaint.

13. On December 22, 2009, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 7,636,309 ("the '309 Patent"), entitled "Multi-Path Routing Using Intra-Flow Splitting." A true and correct copy of the '309 Patent is attached as Exhibit A to this Complaint.

14. Brazos is the owner of all rights, title, and interest in and to the '309 Patent, including the right to assert all causes of action arising under the '309 Patent and the right to any remedies for the infringement of the '309 Patent.

15. Defendants make, use, sell, offer for sale, import, and/or distribute in the United States, including within this judicial district, products such as, but not limited to, cloud-related solutions, including but not limited to, devices incorporating VMware's VeloCloud solutions and

SD-WAN software, such as Dell EMC SD-WAN Edge 600 series products (collectively, the "Accused Products").



https://www.vmware.com/company/acquisitions/velocloud.html



https://www.dell.com/learn/us/en/15/solutions/vmware-vcloud



https://www.delltechnologies.com/en-us/networking/sd-wan-solution/index.htm

16.     The Accused Products have a variety of features and capabilities including Dynamic Multipath Optimization (DMPO) technology.  VMware SD-WAN processing of traffic flows at a node in a network can provide packet level redirection. This allows one or multiple physical WAN links to be abstracted and virtualized packet-by-packet. Path selection and remediation techniques can be applied in virtually real-time. Dynamic load-sharing maintains end-customer application performance quality, regardless of the reliability or consistency of the individual physical link.

**Network Visibility Enables Proactive Management of Bandwidth and Users**

Dell deploys VMware SD-WAN Gateways as part of its overall SD-WAN platform, managing all sites on its network and eliminating any latency that may occur. Using VMware SD-WAN Dynamic Multi-Path Optimization (DMPO), Dell no longer has to manage traffic routes on the network or troubleshoot sub-par connections. Additionally, VMware SD-WAN captures data on users and traffic patterns so that Dell IT administrators can analyze it to determine what type of transport and bandwidth is necessary based on the branch location.

https://www.velocloud.com/content/dam/digitalmarketing/velocloud/en/documents/case-study-dell-emc.pdf



https://technologyleadership.academy/wp-content/uploads/2019/08/SDWAN-velocloud-benefits-DynamicMultipathOptimization.pdf

17.     DMPO can perform continuous, uni-directional measurements of performance metrics (for example, loss, latency, and jitter) of every packet obtained from multiple flows on

every tunnel between any two DMPO endpoints, VeloCloud Edge (VCE), or VeloCloud Gateway (VCG).

**Continuous Path Monitoring**

DMPO performs continuous, uni-directional measurements of performance metrics - loss, latency and jitter of every packet on every tunnel between any two DMPO endpoints, VCE or VCG. VeloCloud's per-packet steering allows independent decisions in both uplink and downlink directions without introducing any asymmetric routing. DMPO uses both passive and active monitoring approaches.

When user traffic is present, the DMPO tunnel header contains additional performance metrics including sequence number and timestamp, thus enabling the DMPO endpoints to identify lost and out-of-order packets, and calculate jitter and latency in each direction. The DMPO endpoints communicate the performance metrics of the path between each other every 100 ms.

When there is no user traffic, an active probe is sent every 100 ms and, after 5 minutes of no high priority user traffic, the probe frequency is reduced to 500 ms. This comprehensive measurement enables the DMPO to react very quickly to the change in the underlying WAN condition, resulting in the ability to deliver sub-second protection against brownout and blackout in the WAN.

https://technologyleadership.academy/wp-content/uploads/2019/08/SDWAN-velocloud-benefits-DynamicMultipathOptimization.pdf

**Dynamic Application Steering**

**Application-aware Per-packet Steering**

DMPO identifies traffic using layer 2 to 7 attributes, e.g. VLAN, IP address, protocol, and applications. VeloCloud performs application aware per-packet steering based on Business Policy configurations and real-time link conditions. The Business Policy contains out-of-the-box Smart Defaults that specifies the default steering behavior and priority of more than 2500 applications. Customers can immediately use the dynamic packet steering and application-aware prioritization without having to define policies.

Throughout its lifetime, a single traffic flow can be steered onto one or more DMPO tunnels, in the middle of the communication, with no impact to the flow. A link that is completely down is referred to as having a blackout condition. A link that is unable to deliver SLA for a given application is referred to as having a brownout condition. VeloCloud offers sub-second blackout and brownout protection. With the continuous monitoring of all the WAN links, DMPO detects brownout or blackout condition within 300-500 ms and ,immediately steers traffic flow to protect the application performance, while ensuring no impact to the active flow and user experience. There is one minute hold time from the time when the link brownout or blackout condition is cleared before DMPO steers the traffic back onto the preferred link if specified in the business policy.

Intelligent learning enables application steering based on first packet of the application by caching classification results. This is necessary for application-based redirection, e.g. redirect Netflix on to the branch Internet link, bypassing the DMPO tunnel, while backhauling Office 365 to the Enterprise regional hub or data center.

https://technologyleadership.academy/wp-content/uploads/2019/08/SDWAN-velocloud-benefits-DynamicMultipathOptimization.pdf

6

18.     The Accused Products perform splitting traffic flows using application-aware per-packet steering based on Business Policy configurations and real-time conditions to route the packets on the best available path. Packets of multiple applications may be steered on a per-packet basis onto one or more DMPO tunnels.

**VMware and VeloCloud**

In December 2017, VMware acquired VeloCloud, the market leader in cloud-delivered SD-WAN that enables enterprises and service providers to deploy flexible, secure WAN connectivity.

https://www.vmware.com/company/acquisitions/velocloud.html



**Dynamic Path Selection**

VMware SD-WAN Dynamic Multipath OptimizationTM comprises deep application recognition, automatic link monitoring, auto-detection of provider and auto-configuration of link characteristics, routing and QOS settings

https://www.velocloud.com/products/features

allowing for rapid deployment using the best available link choices. Once enabled, it automatically detects the circuit characteristics, such as bandwidth, latency and more. It then builds a secure overlay network with the SD-WAN gateways across all the available links and starts steering the applications per the configured policy. VMware SD-WAN Dynamic Multipath Optimization (DMPO) ensures superior application perforamnce by dynamically steering packets on the best available path and protects critical applications from sub-optimal performance of the underlying transport.

https://www.velocloud.com/content/dam/digitalmarketing/velocloud/en/documents/solution-overview-service-providers.pdf

**Continuous Path Monitoring**

DMPO performs continuous, uni-directional measurements of performance metrics - loss, latency and jitter of every packet on every tunnel between any two DMPO endpoints, VCE or VCG. VeloCloud's per-packet steering allows independent decisions in both uplink and downlink directions without introducing any asymmetric routing. DMPO uses both passive and active monitoring approaches.

When user traffic is present, the DMPO tunnel header contains additional performance metrics including sequence number and timestamp, thus enabling the DMPO endpoints to identify lost and out-of-order packets, and calculate jitter and latency in each direction. The DMPO endpoints communicate the performance metrics of the path between each other every 100 ms.

When there is no user traffic, an active probe is sent every 100 ms and, after 5 minutes of no high priority user traffic, the probe frequency is reduced to 500 ms. This comprehensive measurement enables the DMPO to react very quickly to the change in the underlying WAN condition, resulting in the ability to deliver sub-second protection against brownout and blackout in the WAN.

https://technologyleadership.academy/wp-content/uploads/2019/08/SDWAN-velocloud-benefits-DynamicMultipathOptimization.pdf

**Dynamic Application Steering**

**Application-aware Per-packet Steering**

DMPO identifies traffic using layer 2 to 7 attributes, e.g. VLAN, IP address, protocol, and applications. VeloCloud performs application aware per-packet steering based on Business Policy configurations and real-time link conditions. The Business Policy contains out-of-the-box Smart Defaults that specifies the default steering behavior and priority of more than 2500 applications. Customers can immediately use the dynamic packet steering and application-aware prioritization without having to define policies.

Throughout its lifetime, a single traffic flow can be steered onto one or more DMPO tunnels, in the middle of the communication, with no impact to the flow. A link that is completely down is referred to as having a blackout condition. A link that is unable to deliver SLA for a given application is referred to as having a brownout condition. VeloCloud offers sub-second blackout and brownout protection. With the continuous monitoring of all the WAN links, DMPO detects brownout or blackout condition within 300-500 ms and ,immediately steers traffic flow to protect the application performance, while ensuring no impact to the active flow and user experience. There is one minute hold time from the time when the link brownout or blackout condition is cleared before DMPO steers the traffic back onto the preferred link if specified in the business policy.

Intelligent learning enables application steering based on first packet of the application by caching classification results. This is necessary for application-based redirection, e.g. redirect Netflix on to the branch Internet link, bypassing the DMPO tunnel, while backhauling Office 365 to the Enterprise regional hub or data center.

https://technologyleadership.academy/wp-content/uploads/2019/08/SDWAN-velocloud-benefits-DynamicMultipathOptimization.pdf

19.     The Accused Products can provide a branch networking solution that combines the economics and flexibility of multiple WAN transports. Packets belonging to multiple flows can be

received through multiple branches. The packets can be combined and steered on a per-packet basis on different DMPO tunnels.

> ### Transforming the MPLS Network to a Service-Ready Network
>
> VMware SD-WAN is a pioneer in branch networking with a solution that combines the economics and flexibility of multiple WAN transports with the deployment and agility of a cloud-based service. VMware SD-WAN provides a managed, cloud-ready solution for service providers looking to deliver a managed hybrid WAN with MPLS service. With VMware SD-WAN, policies can be defined in the VMware SD-WAN Orchestrator to provide application steering according to business requirements, policy and goverenance. By compining internet links with MPLS, coupled with a centralized policy controller, service providers can meet the demands for a unified, elastic bandwidth service.In addition to higher reliability, increased available bandwidth, and improved application performance for their end customers, service providers can easily operate and integrate this new architecture into their existing MPLS network. Managed Hybrid WAN can be the next generation WAN service that is easier to manage and deploy, that can be built on the foundation of a cloud-delivered SD-WAN.

https://www.velocloud.com/content/dam/digitalmarketing/velocloud/en/documents/solution-overview-service-providers.pdf



> ### Number One: Dynamic Multi-Path Optimization (DMPO)
>
> DMPO aggregates all available links including broadband, LTE, and MPLS circuits and using application-aware per-packet link steering and on-demand remediation, achieves optimal performance under all conditions including brown-out or black-out scenario This ensures that healthcare data is accessible and transmittable at all times, including the accelerated transfer of radiological images (PACS, DICOM, etc.) and that sub-second failover maintains stable VDI sessions and real-time traffic for voice, video, and telehealth communications.

https://blogs.vmware.com/velocloud/2018/08/02/healthcare-technology-part-3-why-providers-say-i-gotta-have-sd-wan/

**Dynamic Application Steering**

**Application-aware Per-packet Steering**

DMPO identifies traffic using layer 2 to 7 attributes, e.g. VLAN, IP address, protocol, and applications. VeloCloud performs application aware per-packet steering based on Business Policy configurations and real-time link conditions. The Business Policy contains out-of-the-box Smart Defaults that specifies the default steering behavior and priority of more than 2500 applications. Customers can immediately use the dynamic packet steering and application-aware prioritization without having to define policies.

Throughout its lifetime, a single traffic flow can be steered onto one or more DMPO tunnels, in the middle of the communication, with no impact to the flow. A link that is completely down is referred to as having a blackout condition. A link that is unable to deliver SLA for a given application is referred to as having a brownout condition. VeloCloud offers sub-second blackout and brownout protection. With the continuous monitoring of all the WAN links, DMPO detects brownout or blackout condition within 300-500 ms and ,immediately steers traffic flow to protect the application performance, while ensuring no impact to the active flow and user experience. There is one minute hold time from the time when the link brownout or blackout condition is cleared before DMPO steers the traffic back onto the preferred link if specified in the business policy.

Intelligent learning enables application steering based on first packet of the application by caching classification results. This is necessary for application-based redirection, e.g. redirect Netflix on to the branch Internet link, bypassing the DMPO tunnel, while backhauling Office 365 to the Enterprise regional hub or data center.

https://technologyleadership.academy/wp-content/uploads/2019/08/SDWAN-velocloud-benefits-DynamicMultipathOptimization.pdf

20.     The Accused Products can perform per-packet load balancing to maintain even traffic flow through the branches of the network. Per-packet link steering can be performed automatically, for example, based on measured performance metrics, intelligent application learning, the business priority of the application, and link cost.



**Bandwidth Aggregation**

For applications that can benefit from more bandwidth, e.g. file transfer, DMPO performs per-packet load balancing, utilizing all available links to deliver all packets of a single flow to the destination. DMPO takes into account the real-time WAN performance and decides which paths should be used for the flow. Additionally, the DMPL performs resequencing at the receiving end to ensure there is no out-of-order packets introduced as a result of per-packet load balancing.

*Example*: Two 50 Mbps links deliver 100 Mbps of aggregated capacity for a single traffic flow. Quality of Service (QoS) is applied at both the aggregate and individual link levels.

https://technologyleadership.academy/wp-content/uploads/2019/08/SDWAN-velocloud-benefits-DynamicMultipathOptimization.pdf



**Link Steering and Remediation**

On-demand, Per-packet link steering is performed automatically based on the measured performance metric, intelligent application learning, business priority of the application, and link cost. Delivers sub-second blackout and brownout protection to improve application availability. Remediates link degradation through forward error correction, activating jitter buffering and synthetic packet production.

https://www.velocloud.com/products/features

21.     The Accused Products can perform per-packet load-balancing of packets belonging to a traffic flow across all available paths to the destination. On information and belief, the Accused Products use a split ratio vector in the manner claimed.  For example, they take into account the real-time WAN performance, such as which paths are in use, automatically decide which paths should be used for the flow, and then perform resequencing at the destination to ensure the packets reach the destination in a sequential manner.

- *Automated Bandwidth Discovery* – During the deployment of an NSX SD-WAN Edge by VeloCloud, it will automatically detect WAN links, measuring both the up and down bandwidth to the nearest available NSX SD-WAN Gateway by VeloCloud or hub. Using continuous link monitoring at an interval of every 100 m/s, DMPO performs continues unidirectional measurement of link characteristics: latency, packet loss and jitter of every packet on every tunnel between any two DMPO endpoints.
- *Dynamic Application-Aware Per Packet Steering* – Based on the real-time link measurements and business policy configuration, DMPO can perform application-aware per packet steering in sub-second intervals during blackout and brownout conditions. Because NSX SD-WAN is a packet-based and not flow-based solution, it can steer packets mid-flow with no impact to the overall flow of traffic.
- *Bandwidth Aggregation* – DMPO performs per-packet load-balancing of packets belonging to a traffic flow across all available links to the destination. It takes into account the real-time WAN performance and automatically decides which paths should be used for the flow and then performs resequencing at the destination to ensure there is no out-of-order.

https://blogs.vmware.com/velocloud/2018/08/02/healthcare-technology-part-3-why-providers-say-i-gotta-have-sd-wan/

22.     In view of preceding paragraphs, each and every element of at least claim 1 of the '309 Patent is found in the Accused Products.

23.     Defendants continue to directly infringe at least one claim of the '309 Patent, literally or under the doctrine of equivalents, by making, using, selling, offering for sale, importing, and/or distributing the Accused Products in the United States, including within this judicial district, without the authority of Brazos.

24.     Upon information and belief, each and every element of at least one claim of the patent-in-suit is performed or practiced by Defendants at least through Defendants' own use and configuration of its own Accused Products, and/or through Defendants' own testing and configuration of its own Accused Products, and/or through Defendants' providing services for its Accused Products, including but not limited to providing installation, deployment, support and configuration of its Accused Products.

25.     Defendants had knowledge of their infringement of the patent-in-suit before the filing of this Amended Complaint.[1] Defendants received notice and actual or constructive

---

[1] Dell filed a motion to dismiss that is mooted by this Amended Complaint.  Dell's motion cites a WDTX case (which relies authority from the District of Delaware) for the proposition that knowledge of a plaintiff's patent after the lawsuit was filed is insufficient to plead the requisite knowledge for indirect infringement.  *See Aguirre v. Powerchute Sports, LLC*, No. SA-10-CV-0702 XR, 2011 WL 2471299, at *3 (W.D. Tex. June 17, 2011) (citing *Xpoint Techs. v. Microsoft Corp.*, 730 F.Supp.2d 349 (D. Del. 2010)). Several Delaware courts have since rejected this rule because there is no statutory basis to support it and because there is no purpose served by the formality of requiring the plaintiff to file an amended complaint in order to be allowed to assert knowledge of the patents during the period following the filing of the original complaint.  *See Walker Digital, LLC v. Facebook, Inc.*, 852 F. Supp. 2d 559, 566 (D. Del. 2012) ("The court acknowledges that this result is inconsistent with its prior decisions in *Xpoint Techs. v. Microsoft Corp.*, 730 F.Supp.2d 349 (D.Del.2010), and *EON Corp. IP Holdings LLC v. FLO TV Inc.*, 802 F.Supp.2d 527 (D. Del. 2011). Given the ease of amendment, the limitation of damages to post-knowledge conduct, and in the interests of judicial economy, the court finds that the better reasoning is to allow a complaint that satisfies Rule 8 to proceed to discovery rather than dismissing it for lack of pre-filing knowledge when, by the time the motion to dismiss has been filed, defendant in fact has the requisite knowledge as pled by plaintiff."); *see also IOENGINE,*

knowledge of their infringement of the patent-in-suit since at least the date of service of the original Complaint.

26.  Since before the filing of this Amended Complaint, through its actions, Defendants have actively induced product makers, distributors, retailers, and/or end users of the Accused Products to infringe the '309 Patent throughout the United States, including within this judicial district, by, among other things, advertising and promoting the use of the Accused Products in various websites, including providing and disseminating product descriptions, operating manuals, and other instructions on how to implement and configure the Accused Products. Examples of such advertising, promoting, and/or instructing include the documents at:

- https://www.dell.com/learn/us/en/15/solutions/vmware-vcloud

- https://www.delltechnologies.com/en-us/networking/sd-wan-solution/index.htm

- https://www.dell.com/en-us/work/shop/povw/sd-wan-edge-600

- https://www.velocloud.com/content/dam/digitalmarketing/velocloud/en/documents/case-study-dell-emc.pdf

- https://technologyleadership.academy/wp-content/uploads/2019/08/SDWAN-velocloud-benefits-DynamicMultipathOptimization.pdf

- https://www.vmware.com/company/acquisitions/velocloud.html

- https://www.velocloud.com/products/features

- https://www.velocloud.com/content/dam/digitalmarketing/velocloud/en/documents/solution-overview-service-providers.pdf

---

*LLC v. PayPal Holdings, Inc.*, CV 18-452-WCB, 2019 WL 330515, at *4 (D. Del. Jan. 25, 2019) ("The Court sees no purpose that would be served by the formality of requiring IOENGINE to file an amended complaint in order to be allowed to assert knowledge of the patents during the period following the filing of the original complaint.").

- https://blogs.vmware.com/velocloud/2018/08/02/healthcare-technology-part-3-why-providers-say-i-gotta-have-sd-wan/

27.     Since before the filing of this Amended Complaint, through its actions, Defendants have contributed to the infringement of the '309 Patent by having others sell, offer for sale, or use the Accused Products throughout the United States, including within this judicial district, with knowledge that the Accused Products infringe the '309 Patent. The Accused Products are especially made or adapted for infringing the '309 Patent and have no substantial non-infringing use. For example, in view of the preceding paragraphs, the Accused Products contain functionality which is material to at least one claim of the '309 Patent.

## JURY DEMAND

Brazos hereby demands a jury on all issues so triable.

## REQUEST FOR RELIEF

WHEREFORE, Brazos respectfully requests that the Court:

(A)     Enter judgment that Defendants infringe one or more claims of the '309 Patent literally and/or under the doctrine of equivalents;

(B)     Enter judgment that Defendants have induced infringement and continue to induce infringement of one or more claims of the '309 Patent;

(C)     Enter judgment that Defendants have contributed to and continue to contribute to the infringement of one or more claims of the '309 Patent;

(D)     Award Brazos damages, to be paid by Defendants in an amount adequate to compensate Brazos for such damages, together with pre-judgment and post-judgment interest for the infringement by Defendants of the '309 Patent through the date such judgment is entered in

accordance with 35 U.S.C. § 284, and increase such award by up to three times the amount found

or assessed in accordance with 35 U.S.C. § 284;

(E)     Declare this case exceptional pursuant to 35 U.S.C. § 285; and

(F)     Award Brazos its costs, disbursements, attorneys' fees, and such further and

additional relief as is deemed appropriate by this Court.

Dated: October 19, 2020                          Respectfully submitted,

                                        */s/ James L. Etheridge*
                                        James L. Etheridge
                                        Texas State Bar No. 24059147
                                        Ryan S. Loveless
                                        Texas State Bar No. 24036997
                                        Travis L. Richins
                                        Texas State Bar No. 24061296

                                        ETHERIDGE LAW GROUP, PLLC
                                        2600 E. Southlake Blvd., Suite 120 / 324
                                        Southlake, Texas 76092
                                        Telephone: (817) 470-7249
                                        Facsimile: (817) 887-5950
                                        Jim@EtheridgeLaw.com
                                        Ryan@EtheridgeLaw.com
                                        Travis@EtheridgeLaw.com

                                        Mark D. Siegmund
                                        State Bar No. 24117055
                                        mark@waltfairpllc.com
                                        Law Firm of Walt, Fair PLLC.
                                        1508 North Valley Mills Drive
                                        Waco, Texas 76710
                                        Telephone: (254) 772-6400
                                        Facsimile: (254) 772-6432

                                        **COUNSEL FOR PLAINTIFF**

# **EXHIBIT 3D**

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT, | § § § § | NO. 6:20-cv-486-ADA |
| Plaintiff, | § § | **JURY TRIAL DEMANDED** |
| v. | § § | |
| DELL TECHNOLOGIES INC., DELL INC., EMC CORPORATION, AND VMWARE, INC. | § § § § § | |
| Defendants. | | |

**FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff WSOU Investments, LLC d/b/a Brazos Licensing and Development ("Brazos" or "Plaintiff"), by and through its attorneys, files this First Amended Complaint ("Amended Complaint" or "Complaint") for Patent Infringement against Dell Technologies Inc., Dell Inc., EMC Corporation, and VMWare, Inc. (collectively, "Defendants") and alleges:

## <u>NATURE OF THE ACTION</u>

1. This is a civil action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. §§ 1, et seq., including §§ 271, 281, 284, and 285.

## <u>THE PARTIES</u>

2. Brazos is a limited liability corporation organized and existing under the laws of Delaware, with its principal place of business at 605 Austin Avenue, Suite 6, Waco, Texas 76701.

3. On information and belief, defendant Dell Technologies Inc. ("Dell") is a Delaware corporation with a principal place of business at One Dell Way, Round Rock, Texas 78682.

4.     On information and belief, defendant Dell Inc. is a Delaware corporation with a principal place of business at One Dell Way, Round Rock, Texas 78682.  Dell Inc. is wholly owned by its corporate parent, Dell.

5.     On information and belief, defendant EMC Corporation ("EMC") is a Massachusetts corporation with a principal place of business at One Dell Way, Round Rock, Texas 78682. EMC Corporation is wholly owned by its corporate parent, Dell Technologies Inc.

6.     Upon information and belief, VMware, Inc. ("VMWare") is a Delaware corporation with two established places of business in this District, including two in Austin, Texas with over 700 employees.

7.     Upon information and belief, VMWare was acquired by EMC in 2004 and conducted an initial public offering of Class A common stock in August 2007.  On or around September 2016, Dell acquired by EMC. As a result, EMC became a wholly-owned subsidiary of Dell, and VMWare became an indirectly-held, majority-owned subsidiary of Dell. Under the rules of the New York Stock Exchange, VMWare is a controlled company. As of January 31, 2020, Dell controlled approximately 80.9% of VMWare's outstanding common stock, including 31 million shares of its Class A common stock and all of it Class B common stock.

**JURISDICTION AND VENUE**

8.     This is an action for patent infringement which arises under the Patent Laws of the United States, in particular, 35 U.S.C. §§ 271, 281, 284, and 285.

9.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

10.     This Court has specific and general personal jurisdiction over each defendant pursuant to due process and/or the Texas Long Arm Statute, because each defendant has committed

acts giving rise to this action within Texas and within this judicial district. The Court's exercise of jurisdiction over each defendant would not offend traditional notions of fair play and substantial justice because each defendant has established minimum contacts with the forum. For example, on information and belief, each defendant has committed acts of infringement in this judicial district, by among other things, selling and offering for sale products that infringe the asserted patent, directly or through intermediaries, as alleged herein.

11.     Venue in the Western District of Texas is proper pursuant to 28 U.S.C. §§1391 and/or 1400(b). Each defendant has established places of business in the Western District of Texas. Each defendant is registered to do business in Texas. Upon information and belief, each defendant has transacted business in this District and has committed acts of infringement in this District.

**COUNT ONE - INFRINGEMENT OF
U.S. PATENT NO. 7,092,360**

12.     Brazos re-alleges and incorporates by reference the preceding paragraphs of this Complaint.

13.     On August 15, 2006, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 7,092,360 ("the '360 Patent"), entitled "Monitor, System and Method for Monitoring Performance of a Scheduler." A true and correct copy of the '360 Patent is attached as Exhibit A to this Complaint.

14.     Brazos is the owner of all rights, title, and interest in and to the '360 Patent, including the right to assert all causes of action arising under the '360 Patent and the right to any remedies for the infringement of the '360 Patent.

15.     Defendants make, use, sell, offer for sale, import, and/or distribute in the United States, including within this judicial district, products such as, but not limited to, cloud-related solutions, including but not limited to, devices incorporating VMware's VeloCloud solutions and

3

vSphere software, such as Dell's PowerEdge servers and VxRail appliances (collectively, the "Accused Products").



https://www.dell.com/learn/us/en/15/solutions/vmware-vcloud



https://www.dell.com/downloads/global/power/ps3q07-20070562-hanson.pdf

Simplify your journey to the hybrid cloud.

Together, Dell EMC and VMware accelerate digital business in a multi-cloud world. Building on our solid partnership, Dell EMC PowerEdge will offer the latest versions of VMware vSphere®, VMware vSAN™ and VMware Cloud Foundation once available. Learn more about VMware's recent announcements here.

https://www.delltechnologies.com/en-us/solutions/vmware/servers-for-vmware.htm

The two-socket server is an ideal base for building VI3 clusters as there are not as many "eggs in one basket". However, it would be best if there were a mechanism to restart the virtual machines from the failed hosts on remaining hosts in the VMware farm. Using VMware's HA (High Availabilility) and DRS (Distributed Resource Scheduler) it is possible to obtain this functionality.

VMware HA allows virtual machines on failed ESX server hosts to restart on surviving ESX hosts. The DRS solution uses system algorithms and user created rules to determine the optimal placement of the virtual machines.

https://www.dell.com/downloads/global/vectors/dell_and_vmware_drs_ha_solutions.pdf

## 3 VxRail appliances

VxRail is jointly developed by Dell EMC and VMware and is the only fully integrated, preconfigured, and tested HCI appliance that is powered by VMware Virtual SAN (vSAN). VxRail is managed through the vCenter Server interface. It provides a familiar vSphere experience and enables streamlined deployment and the ability to extend the use of existing IT tools and processes.

VxRail appliances are managed using VxRail HCI System software for hardware and appliance maintenance tasks as well as software life cycle management. VxRail HCI System Software incorporates Secure Remote Services (SRS) and other serviceability capabilities. VxRail appliances are discoverable and visible in Dell EMC Vision™ Intelligent Operations.

**Note:** For day-to-day VM management, you manage the VMware stack on the VxRail appliance directly through vCenter server.

The VxRail software bundle is preloaded and licensed onto hardware and consists of the following components (specific software versions not shown):

- VxRail HCI System Software
- VMware vCenter Server
- VMware vRealize Log Insight™
- VMware vSAN™
- Dell Secure Remote Services (SRS)/VE

Also preloaded is VMware vSphere®; however, licenses are required and can be purchased through Dell EMC, VMware, or your preferred VMware reseller partner.

https://www.dellemc.com/resources/en-us/asset/technical-guides-support-information/products/converged-infrastructure/vxrail-vcenter-server-planning-guide.pdf

16.    The Accused Products provide functions for resource management, designated as Network I/O Control (NetIOC), including scheduling.

Performance Evaluation of Network I/O Control in VMware vSphere® 6

https://www.vmware.com/content/dam/digitalmarketing/vmware/en/pdf/techpaper/network-ioc-vsphere6-performance-evaluation-white-paper.pdf

VMware vSphere Feature Comparison

Across versions

| KEY FEATURES/ CAPABILITIES | VMWARE vSPHERE® VERSION | | |
|---|---|---|---|
| | 6.5 | 6.7 | 7[i] |

…

| RESOURCE MANAGEMENT | | | |
|---|---|---|---|
| vSphere Network I/O Control | • | • | • |

https://www.vmware.com/content/dam/digitalmarketing/vmware/en/pdf/products/vsphere/vmware-vsphere-feature-comparison-datasheet.pdf

Performance Best Practices for VMware vSphere 6.7

Network I/O Control (NetIOC)

For further information about NetIOC, see *Performance Evaluation of Network I/O Control in VMware vSphere 6.0* and *vSphere Networking* for version 6.7.

https://www.vmware.com/content/dam/digitalmarketing/vmware/en/pdf/techpaper/performance/vsphere-esxi-vcenter-server-67-performance-best-practices.pdf

NetIOC introduces an additional layer of packet scheduling at the hypervisor. A major enhancement in NetIOC in vSphere 6.0 with respect to previous NetIOC releases is that a separate scheduler queue is maintained for each virtual port. The network scheduler picks up packets from the network port queues and dispatches them for transmit over the network adapter, while making sure that bandwidth, shares, and limit settings are provided to each network port in NetIOC.

https://www.vmware.com/content/dam/digitalmarketing/vmware/en/pdf/techpaper/network-ioc-vsphere6-performance-evaluation-white-paper.pdf

17.     In NetIOC, each resource-pool flow can have a dedicated software queue inside the

scheduler.



Figure 1. NetIOC Architecture

**Shares**

A user can specify the relative importance of a given resource-pool flow using shares that are enforced at the dvUplink level. The underlying dvUplink bandwidth is then divided among resource-pool flows based on their relative shares in a work-conserving way. This means that unused capacity will be redistributed to other contending flows and won't go to waste. As shown in Figure 1, the network flow scheduler is the entity responsible for enforcing shares and therefore is in charge of the overall arbitration under overcommitment. Each resource-pool flow has its own dedicated software queue inside the scheduler so that packets from a given resource pool won't be dropped due to high utilization by other flows.

https://www.vmware.com/content/dam/digitalmarketing/vmware/en/pdf/techpaper/vmware_netio
c_bestpractices-white-paper.pdf

18.     VMware Vsphere's NetIOC scheduler includes certain scheduling functionality including,

for example, the hClock Scheduler.  The NetIOC scheduler in the Accused Products maintains and

keeps track of each network port and decides which network port to pick for scheduling the dispatch of data traffic.

> The implementation of the NetIOC scheduler is based on the hClock scheduler [3], please read the referenced paper for more details. The NetIOC scheduler consumes CPU while it maintains track of each network port, and decides which network port to pick for scheduling at a given point of time. Since network traffic is real-time, the scheduler needs to make its decision quickly and transmit fast enough to reach line rate on the device. Latency is another critical requirement of many applications, and the NetIOC scheduler must not add to the latency in the hypervisor. VMware designed NetIOC to facilitate efficient sharing of the network across different network ports, and deliver great throughput, latency, and system utilization at the same time.

https://www.vmware.com/content/dam/digitalmarketing/vmware/en/pdf/techpaper/network-ioc-vsphere6-performance-evaluation-white-paper.pdf

19.    Various tags are in use in the hClock scheduler to help in monitoring the status of different states of an element in hClock Scheduler. For example, Reservation tags (Rq), Limit tags (Lq) and Shares tags (Sq) are used to track the allocation based on reservation values (rq), limit values (lq), and shares values (sq) respectively, and these elements track different metrics associated with a transmit queue. These tags are in a real-time domain to track the fulfillment of reservations and limits by comparing the corresponding tags with the real-time values. Comparison is made regarding the previous values and the real-time value, which helps in determining the output.

> We first present a brief outline of mClock algorithm that supports the same three controls per queue in a non-hierarchical manner. mClock uses three separate tags per queue $q$. These tags namely, reservation tag ($R_q$), limit tag

> ($L_q$) and shares tag ($S_q$) are used to track the allocation based on reservation value ($r_q$), limit value ($l_q$) and shares value ($s_q$) respectively. These tags are incremented based on corresponding $r$, $l$ and $s$ values whenever each IO is scheduled. All of these tags are in real time domain to track the fulfillment of reservations and limits by comparing the corresponding tags with the real time.

…

8

| Symbol | Meaning |
|---|---|
| $T$ | Current real time |
| $q$ | A queue regardless of its type |
| $s_q$ | Shares of queue $q$ |
| $r_q$ | Reservation setting of queue $q$ |
| $l_q$ | Limit setting of queue $q$ |
| $S_q$ | Proportional shares tag of queue $q$ |
| $R_q$ | Reservation tag of queue $q$ |
| $L_q$ | Limit tag of queue $q$ |
| $K, M, G$ | $10^3, 10^6$ and $10^9$ |

**Table 2.** Symbols used and their descriptions

https://dl.acm.org/doi/abs/10.1145/2465351.2465382

20.     The hClock scheduler checks the status of each queue. There are pointers associated

at the end of each queue to track the status. The next step is based on the output of the status of the

queue.

> When a new request arrives in a queue $q$, we first check the activity status. If the queue is already active, the request is simply added to the end of the queue. The more interesting case is when $q$ is idle. If so, we need to activate the queue which allows it to be considered during next scheduling instance.

https://dl.acm.org/doi/abs/10.1145/2465351.2465382

21.     The Accused Products are programmed to handle transmit queues.

NetIOC's scheduling algorithm adds an additional scheduling layer which slices the NIC bandwidth to meet the NetIOC reservation, limit, and share policies. Packets may queue up at the network port when the NIC transmit queue is being programmed by NetIOC. This might lead to a slightly higher wait time for a packet.

https://www.vmware.com/content/dam/digitalmarketing/vmware/en/pdf/techpaper/vmware_netioc_bestpractices-white-paper.pdf

## NetIOC Architecture

9



The overall architecture is shown in Figure 1.

**Figure 1.** NetIOC Architecture

**Shares**

A user can specify the relative importance of a given resource-pool flow using shares that are enforced at the dvUplink level. The underlying dvUplink bandwidth is then divided among resource-pool flows based on their relative shares in a work-conserving way. This means that unused capacity will be redistributed to other contending flows and won't go to waste. As shown in Figure 1, the network flow scheduler is the entity responsible for enforcing shares and therefore is in charge of the overall arbitration under overcommitment. Each resource-pool flow has its own dedicated software queue inside the scheduler so that packets from a given resource pool won't be dropped due to high utilization by other flows.

https://www.vmware.com/content/dam/digitalmarketing/vmware/en/pdf/techpaper/vmware_netioc_bestpractices-white-paper.pdf

22.     The Accused Products provide the impact of NetIOC Scheduler on a vSphere host and have a separate scheduler queue for each virtual port. The NetIOC scheduler picks up packets from the network port queues. It dispatches them for transmitting over the network adapter while making sure that bandwidth, shares, and limit settings are provided to each network port in NetIOC.

NetIOC introduces an additional layer of packet scheduling at the hypervisor. A major enhancement in NetIOC in vSphere 6.0 with respect to previous NetIOC releases is that a separate scheduler queue is maintained for each virtual port. The network scheduler picks up packets from the network port queues and dispatches them for transmit over the network adapter, while making sure that bandwidth, shares, and limit settings are provided to each network port in NetIOC.

https://www.vmware.com/content/dam/digitalmarketing/vmware/en/pdf/techpaper/network-ioc-vsphere6-performance-evaluation-white-paper.pdf

23. As noted above, the NetIOC scheduler decides which network port to pick for scheduling at a given amount of time among the plurality of ports and queues. It can use one transmit queue of a port from the available ports.

> The implementation of the NetIOC scheduler is based on the hClock scheduler [3], please read the referenced paper for more details. The NetIOC scheduler consumes CPU while it maintains track of each network port, and decides which network port to pick for scheduling at a given point of time. Since network traffic is real-time, the scheduler needs to make its decision quickly and transmit fast enough to reach line rate on the device. Latency is another critical requirement of many applications, and the NetIOC scheduler must not add to the latency in the hypervisor. VMware designed NetIOC to facilitate efficient sharing of the network across different network ports, and deliver great throughput, latency, and system utilization at the same time.

https://www.vmware.com/content/dam/digitalmarketing/vmware/en/pdf/techpaper/network-ioc-vsphere6-performance-evaluation-white-paper.pdf

> The current implementation of NetIOC is limited to using one transmit DMA channel (transmit queue) of the NIC. This is necessary to impose the constraints of bandwidth reservations. On the other hand, the default

https://www.vmware.com/content/dam/digitalmarketing/vmware/en/pdf/techpaper/network-ioc-vsphere6-performance-evaluation-white-paper.pdf

24. The Accused Products may also use HClock Multiqueue to distribute traffic across multiple transmit queues on a single physical NIC.

> **Network I/O Control Advanced Performance Options**
> - A new option in vSphere 6.5, HClock Multiqueue, can improve performance in some environments with small packets and high packet rate. This option, which is disabled by default, allows multiple vNICs or multiple vmknics to distribute traffic across multiple hardware transmit queues on a single physical NIC.

https://www.vmware.com/content/dam/digitalmarketing/vmware/en/pdf/techpaper/performance/Perf_Best_Practices_vSphere65.pdf

11

25.     The hClock scheduler in the Accused Products has an algorithm based on whether a transmit queue is empty or occupied.

**Algorithm 4:** Queue Eligibility

**FindEligibleQueue ()**

    let $E$ be the set of queues with $R_q$ and $L_q \leq T$

    **if** $E$ *is not empty* **then**

        let $q$ be the queue with the minimum $R_q$

        flag $q$ and ancestors as eligible for reservation

    **else**

        let $q$ be the *root* of the hierarchy

    **return** FindEligibleQueueBasedOnShares($q$)

**FindEligibleQueueBasedOnShares** (queue $q$)

    **if** $q$ *is a leaf* **then**

        **return** $q$

    let $E_c$ be the set of $q$'s children, whose limit tag $\leq T$

    **if** $E_c$ *is empty* **then**

        **return** $nil$

    let $c$ be the child queue of $q$ with minimum $S_c$

    **return** FindEligibleQueueBasedOnShares($c$)

https://www.vmware.com/content/dam/digitalmarketing/vmware/en/pdf/techpaper/network-ioc-vsphere6-performance-evaluation-white-paper.pdf

26.     Various decisions for a scheduler in the Accused Products are based on the number of packets in a queue, which is calculated based on "packet length."

**Algorithm 3:** Scheduling Process

let $max\_inflight$ = maximum allowed outstanding bytes

let $inflight$ be the current outstanding bytes

**ScheduleRequest ()**

    **while** $inflight \leq max\_inflight$ **do**

        $q$ = FindEligibleQueue()

        $p$ = DeQueuePacket($q$)

        $inflight$ += $packetLength$ of $p$

        send $p$ to the device for transmit

https://www.vmware.com/content/dam/digitalmarketing/vmware/en/pdf/techpaper/network-ioc-vsphere6-performance-evaluation-white-paper.pdf

27.     In view of preceding paragraphs, each and every element of at least claim 26 of the '360 Patent is found in the Accused Products.

28.     Upon information and belief, each and every element of at least claim 26 of the patent-in-suit is performed or practiced by Defendants at least through Defendants' own use and configuration of its own Accused Products, and/or through Defendants' own testing and configuration of its own Accused Products, and/or through Defendants' providing services for its Accused Products, including but not limited to providing installation, deployment, support and configuration of its Accused Products.

29.     Defendants continue to directly infringe at least one claim of the '360 Patent, literally or under the doctrine of equivalents, by making, using, selling, offering for sale, importing, and/or distributing the Accused Products in the United States, including within this judicial district, without the authority of Brazos.

30.     Defendants had knowledge of their infringement of the patent-in-suit before the filing of this Amended Complaint.[1] Defendants received notice and actual or constructive

---

[1] Dell filed a motion to dismiss that is mooted by this amended complaint.  Dell's motion cites a WDTX case (which relies authority from the District of Delaware) for the proposition that knowledge of a plaintiff's patent after the lawsuit was filed is insufficient to plead the requisite knowledge for indirect infringement.  *See Aguirre v. Powerchute Sports, LLC*, No. SA-10-CV-0702 XR, 2011 WL 2471299, at *3 (W.D. Tex. June 17, 2011) (citing *Xpoint Techs. v. Microsoft Corp.*, 730 F.Supp.2d 349 (D. Del. 2010)). Several Delaware courts have since rejected this rule because there is no statutory basis to support it and because there is no purpose served by the formality of requiring the plaintiff to file an amended complaint in order to be allowed to assert knowledge of the patents during the period following the filing of the original complaint.  *See Walker Digital, LLC v. Facebook, Inc.*, 852 F. Supp. 2d 559, 566 (D. Del. 2012) ("The court acknowledges that this result is inconsistent with its prior decisions in *Xpoint Techs. v. Microsoft Corp.*, 730 F.Supp.2d 349 (D.Del.2010), and *EON Corp. IP Holdings LLC v. FLO TV Inc.*, 802 F.Supp.2d 527 (D. Del. 2011). Given the ease of amendment, the limitation of damages to post-knowledge conduct, and in the interests of judicial economy, the court finds that the better reasoning is to allow a complaint that satisfies Rule 8 to proceed to discovery rather than dismissing it for lack of pre-filing knowledge when, by the time the motion to dismiss has been filed, defendant in fact has the requisite knowledge as pled by plaintiff."); *see also IOENGINE,*

knowledge of their infringement of the patent-in-suit since at least the date of service of the original Complaint.

31.     Since before the filing of this Amended Complaint, through its actions, Defendants have actively induced product makers, distributors, retailers, and/or end users of the Accused Products to infringe the '360 Patent throughout the United States, including within this judicial district, by, among other things, advertising and promoting the use of the Accused Products in various websites, including providing and disseminating product descriptions, operating manuals, and other instructions on how to implement and configure the Accused Products. Examples of such advertising, promoting, and/or instructing include the documents at:

- https://www.dell.com/learn/us/en/15/solutions/vmware-vcloud

- https://www.dell.com/downloads/global/power/ps3q07-20070562-hanson.pdf

- https://www.delltechnologies.com/en-us/solutions/vmware/servers-for-vmware.htm

- https://www.dell.com/downloads/global/vectors/dell_and_vmware_drs_ha_solutions.pdf

- https://www.dellemc.com/resources/en-us/asset/technical-guides-support-information/products/converged-infrastructure/vxrail-vcenter-server-planning-guide.pdf

- https://www.vmware.com/content/dam/digitalmarketing/vmware/en/pdf/techpaper/network-ioc-vsphere6-performance-evaluation-white-paper.pdf

- http://fileapi.it.hactcm.edu.cn/yjsyxnh/file/2019/3/1/131959260611073796.pdf

- https://www.vmware.com/content/dam/digitalmarketing/vmware/en/pdf/techpaper/performance/Perf_Best_Practices_vSphere65.pdf

---

*LLC v. PayPal Holdings, Inc.*, CV 18-452-WCB, 2019 WL 330515, at *4 (D. Del. Jan. 25, 2019) ("The Court sees no purpose that would be served by the formality of requiring IOENGINE to file an amended complaint in order to be allowed to assert knowledge of the patents during the period following the filing of the original complaint.").

- https://www.vmware.com/content/dam/digitalmarketing/vmware/en/pdf/techpaper/vmware_netioc_bestpractices-white-paper.pdf

- https://www.vmware.com/content/dam/digitalmarketing/vmware/en/pdf/products/vsphere/vmware-vsphere-feature-comparison-datasheet.pdf

- https://www.vmware.com/content/dam/digitalmarketing/vmware/en/pdf/techpaper/performance/vsphere-esxi-vcenter-server-67-performance-best-practices.pdf

32.     Since before the filing of this Amended Complaint, through its actions, Defendants have contributed to the infringement of the '360 Patent by having others sell, offer for sale, or use the Accused Products throughout the United States, including within this judicial district, with knowledge that the Accused Products infringe the '360 Patent. The Accused Products are especially made or adapted for infringing the '360 Patent and have no substantial non-infringing use. For example, in view of the preceding paragraphs, the Accused Products contain functionality which is material to at least one claim of the '360 Patent.

## JURY DEMAND

Brazos hereby demands a jury on all issues so triable.

## REQUEST FOR RELIEF

WHEREFORE, Brazos respectfully requests that the Court:

(A)     Enter judgment that Defendants infringe one or more claims of the '360 Patent literally and/or under the doctrine of equivalents;

(B)     Enter judgment that Defendants have induced infringement and continue to induce infringement of one or more claims of the '360 Patent;

(C)     Enter judgment that Defendants have contributed to and continue to contribute to the infringement of one or more claims of the '360 Patent;

(D)     Award Brazos damages, to be paid by Defendants in an amount adequate to compensate Brazos for such damages, together with pre-judgment and post-judgment interest for the infringement by Defendants of the '360 Patent through the date such judgment is entered in accordance with 35 U.S.C. § 284, and increase such award by up to three times the amount found or assessed in accordance with 35 U.S.C. § 284;

(E)     Declare this case exceptional pursuant to 35 U.S.C. § 285; and

(F)     Award Brazos its costs, disbursements, attorneys' fees, and such further and additional relief as is deemed appropriate by this Court.

Dated: October 19, 2020                              Respectfully submitted,

                                                     */s/ James L. Etheridge*
                                                     James L. Etheridge
                                                     Texas State Bar No. 24059147
                                                     Ryan S. Loveless
                                                     Texas State Bar No. 24036997
                                                     Travis L. Richins
                                                     Texas State Bar No. 24061296

                                                     ETHERIDGE LAW GROUP, PLLC
                                                     2600 E. Southlake Blvd., Suite 120 / 324
                                                     Southlake, Texas 76092
                                                     Telephone: (817) 470-7249
                                                     Facsimile: (817) 887-5950
                                                     Jim@EtheridgeLaw.com
                                                     Ryan@EtheridgeLaw.com
                                                     Travis@EtheridgeLaw.com

                                                     Mark D. Siegmund
                                                     State Bar No. 24117055
                                                     mark@waltfairpllc.com
                                                     Law Firm of Walt, Fair PLLC.
                                                     1508 North Valley Mills Drive
                                                     Waco, Texas 76710
                                                     Telephone: (254) 772-6400
                                                     Facsimile: (254) 772-6432

                                                     **COUNSEL FOR PLAINTIFF**

AO 88A  (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Western District of Texas

| | | |
|---|---|---|
| WSOU Investments, LLC d/b/a Brazos Licensing & | ) | 6:20-cv-00475 |
| _Plaintiff_　　　　　Development | ) | 6:20-cv-00477 |
| v. | ) | 6:20-cv-00478 |
| Dell Technologies Inc., Dell Inc., and EMC | ) | Civil Action No.　6:20-cv-00479 |
| Corporation | ) | |
| _Defendant_ | ) | |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:　　　　　　　　　　　　　Basepoint Administrative, LLC

_____
_(Name of person to whom this subpoena is directed)_

☑ Testimony:  **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:  See Appendix A, attached hereto.

| Place:  Shelton Coburn LLP | Date and Time: |
|---|---|
| 311 Ranch Road 620 S, Suite 205 Austin, Texas 78734-4775 | 09/17/2021 9:00 am |

　　　　The deposition will be recorded by this method:　Stenographic and videotape

☑ _Production:_  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:  See Appendix A, attached hereto.  Please produce documents on or before September 10, 2021 to Barry Shelton, Shelton Coburn LLP, 311 Ranch Road 620 S, Suite 205, Austin, Texas 78734-4775.

　　　　The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:　August 20, 2021

　　　　　　　　_CLERK OF COURT_

　　　　　　　　　　　　　　　　　　　　OR

| | |
|---|---|
| | /s/ Barry Shelton |
| _Signature of Clerk or Deputy Clerk_ | _Attorney's signature_ |

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_ Dell Technologies Inc., Dell Inc., and EMC Corporation　　　　　　　　　　　　　, who issues or requests this subpoena, are:

Barry Shelton | Shelton Coburn LLP, 311 Ranch Rd 620 S, Ste 205, Austin, Texas 78734-4775 |  (512) 263-2165
bshelton@sheltoncoburn.com

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.   6:20-cv-00475
                   6:20-cv-00477
                   6:20-cv-00478
                   6:20-cv-00479                   **PROOF OF SERVICE**
                   *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____

_____ on *(date)* _____ ; or

❐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

                              _____
                                              *Server's signature*

                              _____
                                             *Printed name and title*

                              _____
                                               *Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify a subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# **APPENDIX A**

# EXHIBIT 1

## DOCUMENTS REQUESTED

Defendants Dell Technologies Inc., Dell Inc., and EMC Corporation (collectively, "Defendants") request the production of the documents described below.

## DEFINITIONS

The following definitions are applicable to terms employed in responding to this request:

1. "Accused Product" or "Accused Products" shall refer to any device, product, or other thing that Plaintiff is permitted to accuse of infringing the Asserted Patent in this Action. A copy of the Complaint in case numbers 6:20-cv-00475-ADA, 6:20-cv-00477-ADA, 6:20-cv-00478-ADA, 6:20-cv-00479-ADA is attached as Exhibit 3. In referring to any device, product, or other thing as an "Accused Product," Defendants in no way communicate their agreement that it infringes the Asserted Patent.

2. "Action" shall refer to the above-captioned proceeding in the United States District Court for the Western District of Texas, with case numbers: 6:20-cv-00475-ADA, 6:20-cv-00477-ADA, 6:20-cv-00478-ADA, 6:20-cv-00479-ADA.

3. "Alcatel" shall mean Alcatel-Lucent International and all parents, subsidiaries, affiliates, predecessors, successors, including but not limited to Alcatel and Lucent Technologies.

4. "Asserted Claim" shall refer to each claim of the Asserted Patent that Plaintiff contends Defendants infringe.

5. "Asserted Patent(s)" shall refer to U.S. Patent Nos. 7,126,921; 7,453,888; 8,402,129; 8,913,489 and any patent applications related thereto.

6. "Communication" shall mean, without limitation, any written, oral, or other transmission of information, including but not limited to emails.

7.     "Complaint" shall refer to the Complaint (including exhibits) that Plaintiff filed on June 2, 2020 as docket number 1 in this Action, the Amended Complaint filed on October 19, 2020, and any other amended complaints thereafter.

8.     "Concerning," "refer(s) to," "related to," "reflecting," "regarding," and "relating to" shall mean directly or indirectly relating to, referring to, regarding, mentioning, reflecting, pertaining to, evidencing, illustrating, involving, describing, discussing, commenting on, embodying, responding to, supporting, contradicting, or constituting (in whole or in part), as the context makes appropriate.

9.     "Defendants" or "Defendant" shall refer to Dell Technologies Inc., Dell Inc., and EMC Corporation, and any and all of their then-current or prior subsidiaries, parents, affiliates, divisions, successors, predecessors, agents, employees, representatives, directors, officers, trustees, and attorneys, or any other person or entity acting in whole or in part in concert with any of the foregoing, directly or indirectly.

10.    "Document" shall include, without limitation, all documents, electronically stored information, and tangible things within the scope of the Federal Rules of Civil Procedure, including Rule 34.   Federal Rules of Civil Procedure 34 permits discovery of:  "(A) documents or electronically stored information—including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form; or (B) any designated tangible things."

11.    "Employee" shall refer to any officer, director, partner, employee, representative, or agent.

12. "Licensee(s)" shall refer to any entity having a license, assignment, covenant not to sue, or other understanding, written, oral or implied, that the entity has any rights to the Asserted Patent, any Related Patents, or any Related Applications, may practice one or more claims of the Asserted Patent and/or that Plaintiff will not file suit or otherwise enforce against that entity one or more claims of the Asserted Patent or any Related Patent or Related Application.

13. "Nokia" shall mean Nokia Corporation and all parents, subsidiaries, affiliates, predecessors, including but not limited to Nokia Technologies Oy and Nokia Solutions and Networks BV.

14. "Other Action Defendants" shall refer to any of the entities that Plaintiff has accused of patent infringement (including but not limited to, Huawei, ZTE, Microsoft, Google, HP, Juniper, F5, Xilinx, NEC, Oneplus, Canon, TP-Link, Arista Networks, Salesforce, Cisco, and NetGear).

15. "Other Action Patents" shall refer to any patent that was asserted against any of the Other Action Defendants.

16. "Person" shall refer to any natural person, firm, association, partnership, government agency, corporation, proprietorship, or other entity and its officers, directors, partners, employee, representatives, and agents.

17. The terms "Plaintiff," and/or "WSOU" shall refer to the responding Plaintiff WSOU Investments, LLC d/b/a Brazos Licensing and Development, and any and all of its then-current or prior subsidiaries, parents, affiliates, divisions, successors, predecessors, agents, employees, representatives, directors, officers, trustees, and attorneys, or any other person

or entity acting in whole or in part in concert with any of the foregoing, directly or indirectly.

18.    "Prior Art" encompasses, without limitation, the subject matter described in each and every subdivision of 35 U.S.C. §§ 102 and 103, and includes, but is not limited to, memoranda, notes, manuals, interviews, testing data, disclosures, prototypes, correspondence, drawings, papers, articles, patents, printed publications, public uses, demonstrations, offers for sale or license, and sales.

19.    "Product(s)" means a machine, manufacture, apparatus, device, instrument, mechanism, appliance, software, service, process, or an assemblage of components/parts (either individually or collectively) that are designed to function together electronically, mechanically, or otherwise, including any offered for sale or under development.

20.    "Related Application(s)" means any and all applications related to the Asserted Patent, including any provisional or non-provisional applications, continuations, continuations- in-part, divisions, interferences, reexaminations, re-issues, parents, foreign counterpart applications, and any other applications disclosing, describing or claiming any invention disclosed, described or claimed in the Asserted Patent, or claiming the benefit of the filing date of any application whose benefit is claimed in the Asserted Patent, whether or not abandoned and whether or not issued.

21.    "Related Patent(s)" means any and all U.S. or foreign patents based upon or related to any Related Application(s) or Asserted Patent, including any patents or applications that may have been opposed, reexamined, re-issued or subjected to any validity or nullity proceeding.

22.    "Third Party" shall refer to any person other than Plaintiff or Defendants.

23. "You," "Your," "Yours" shall refer to Basepoint Administrative, LLC (BP Funding Trust, Series SPL-VI), and any and all of its then-current or prior subsidiaries, parents, affiliates, divisions, successors, predecessors, agents, employees, representatives, directors, officers, trustees, and attorneys, or any other person or entity acting in whole or in part in concert with any of the foregoing, directly or indirectly.

24. Any pronouns shall be construed to refer to the masculine, feminine, or neutral gender, in singular or plural, as in each case is most appropriate.

25. The singular form of any word shall be construed to also include the plural, and vice-versa.

26. The word "each" shall be construed to mean "each and every."

27. The words "and" and "or" shall be construed conjunctively or disjunctively, whichever makes the request more inclusive.

28. The words "any" and "all" shall be construed to mean "any and all."

## INSTRUCTIONS

1. This request seeks disclosure to the full extent of the Federal Rules of Civil Procedure and shall be interpreted as inclusive rather than exclusive.

2. In responding to the Document requests set forth below, please furnish all responsive and non-privileged information that is available to You.

3. Please produce the requested Documents as they are kept in the ordinary course of business.

4. If production of any responsive Documents are being withheld on the ground of the attorney-client privilege, attorney work product, or any other privilege, immunity, or protection, please provide a privilege log with the following information for each such Document: (a) the name of the Document; (b) the name of the person(s) who prepared the Document; (c) the name of the person(s) to whom the Document was directed or circulated; (d) the date(s) on which the Document was prepared or transmitted; (e) the name of the

person(s) now in possession of the Document; (f) a description of the subject matter of the Document; and (g) the specific nature of the privilege or protection claimed with respect to the Document.

5.      The Court's interim protective order in the Order Governing Proceedings shall govern the disclosure of confidential information in this Action:

> Pending entry of the final Protective Order, the Court issues the following interim Protective Order to govern the disclosure of confidential information in this matter:
>
>> If any document or information produced in this matter is deemed confidential by the producing party and if the Court has not entered a protective order, until a protective order is issued by the Court, the document shall be marked "confidential" or with some other confidential designation (such as "Confidential – Outside Attorneys Eyes Only") by the disclosing party and disclosure of the confidential document or information shall be limited to each party's outside attorney(s) of record and the employees of such outside attorney(s).
>>
>> If a party is not represented by an outside attorney, disclosure of the confidential document or information shall be limited to one designated "in house" attorney, whose identity and job functions shall be disclosed to the producing party 5 days prior to any such disclosure, in order to permit any motion for protective order or other relief regarding such disclosure. The person(s) to whom disclosure of a confidential document or information is made under this local rule shall keep it confidential and use it only for purposes of litigating the case.

6.      Upon entry of a final protective order in this matter that protective order shall govern the disclosure of confidential information in this Action.

7

## DOCUMENT REQUESTS

1.     Documents regarding the Asserted Patent, any Related Patents, or Related Applications, including any alleged infringement of such patents.

2.     Documents relating to any Prior Art search performed by You, on Your behalf, or that You are aware of, relating to the Asserted Patent, any Related Patent, or Related Application (including, but not limited to, any search methodology, results and any policies regarding Prior Art searches).

3.     Documents regarding whether any claim in the Asserted Patent is invalid, valid, enforceable, or unenforceable (including any Prior Art or alleged Prior Art).

4.     Documents sufficient to identify all products of which you are/were aware that practiced or currently practice any claim of the Asserted Patent, Related Patents, or Related Applications and all allegations of which you are/were aware that products practiced or currently practice any claim of the Asserted Patent, Related Patents, or Related Applications.

5.     Documents and Communications concerning any evaluation or analysis of the Asserted Patent, Related Patents, or Related Applications, whether individually or in combination with any other patents or applications, including any evaluation or analysis of infringement, validity, or commercialization.

6.     Documents and Communications concerning any ranking (in terms of strength, value, or otherwise) or rating of, or attempts to rank or rate the Asserted Patent, Related Patents, or Related Applications, whether individually or in combination with any other patents or applications, or any portfolio containing the Asserted Patent, Related Patents, or Related Applications.

7.     Documents and Communications concerning each proposal, offer or other

8

discussions by you or your predecessors in interest, regarding actual or potential agreements with Allied Security Trust, or WSOU regarding any asserted patent including communications regarding such a proposal, draft agreements, and executed agreements.

8.      Communications (or Documents relating thereto) with Alcatel or Nokia regarding the Asserted Patent, Related Patents, or Related Applications.

9.      Communications (or Documents relating thereto) between You and Plaintiff relating to a) the Asserted Patent, Related Patents, Related Applications, or Other Action Patents; b) this Action (including the initiation of or projected outcomes from this Action); c) any Defendant or its products; and d) any portfolio of which the Asserted Patent, Related Patents, Related Applications were a part.

10.     Documents and Communications concerning any decision to pursue or not to pursue any claim of infringement of the Asserted Patent of any Related Patent against any Defendant.

11.     Documents and Communications concerning any decision to pursue or not to pursue any claim of infringement against any of the Other Action Defendants.

12.     Documents regarding ownership, assignment, licenses, royalties, covenants, standstills, settlements, acquisition, financial interest, security interest, sale, transfer of rights (in whole or in part), or any other disposition of, or any offers to buy, sell, or license the Asserted Patent, Related Patents, Related Applications or Other Action Patents.  This includes, but is not limited to:

        a.      Offers to buy, sell, or license, agreements granting rights, assignments, licenses, covenants, royalties, settlements, agreements releasing any third party from liability for infringement, and covenants not to sue, involving

or concerning the Asserted Patent, Related Patents, Related Applications, or Other Action Patents;

b.    Negotiations, discussions, or other Communications relating to the Documents referenced in sub-paragraph (a); and

c.    Communications (or documents relating thereto) between You and any potential Licensee or purchaser of the Asserted Patent, Related Patents, Related Applications, or Other Action Patents.

13.    Documents and Communications concerning any right, title, or interest in any litigation or action involving any of the Asserted Patent, Related Patents, or Other Action Defendants.

14.    Documents and Communications concerning any business plans, marketing plans, marketing efforts, advertising plans, advertising efforts, promotional programs, involving or concerning the Asserted Patent, Related Patents, Related Applications or Other Action Patents.

15.    Documents and Communications concerning any budgets, forecasts, revenues, projections, costs, sales, expenses, margins, profits, or any other means for generating revenue from any Product, process, equipment, or service that allegedly embodies any claim of the Asserted Patent or any Other Action Patents.

16.    Valuations of the Asserted Patent, Related Patents, Related Applications or Other Action Patents, either alone, or together with other patents or consideration, including as part of an intellectual property portfolio, and including any appraisals or valuations for tax purposes.

17.    Documents (or Communications relating thereto) concerning any licensing policy that You may have, including without limitation policies and practices relating to taking or granting licenses, relating to any of the Asserted Patent, Related Patents, Related Applications,

or Other Action Patents.

18.     Documents and Communications concerning whether all of the Licensees of the Asserted Patent have complied with the marking or notice provisions of 35 U.S.C. § 287(a) with respect to the Asserted Patent.

19.     Documents sufficient to identify the nature and scope of any rights in the Asserted Patent that You have obtained and/or retained at any time, including, without limitation, any right to control litigation, future royalties, payments for licenses, or payments relating to or resulting from the outcome of any litigation involving the Asserted Patent, Related Patents, or Other Action Patents.

# EXHIBIT 2

## ORAL EXAMINATION TOPICS REQUESTED

Defendants Dell Technologies Inc., Dell Inc., and EMC Corporation (collectively, "Defendants") seek to ask questions on topics described below.

## DEFINITIONS

The following definitions are applicable to terms employed in responding to this request:

1.  "Accused Product" or "Accused Products" shall refer to any device, product, or other thing that Plaintiff is permitted to accuse of infringing the Asserted Patent in this Action. A copy of the Complaint in case numbers 6:20-cv-00475-ADA, 6:20-cv-00477-ADA, 6:20-cv-00478-ADA, 6:20-cv-00479-ADA is attached as Exhibit 3. In referring to any device, product, or other thing as an "Accused Product," Defendants in no way communicate their agreement that it infringes the Asserted Patent.

2.  "Action" shall refer to the above-captioned proceeding in the United States District Court for the Western District of Texas, with case numbers: 6:20-cv-00475-ADA, 6:20-cv-00477-ADA, 6:20-cv-00478-ADA, 6:20-cv-00479-ADA.

3.  "Alcatel" shall mean Alcatel-Lucent International and all parents, subsidiaries, affiliates, predecessors, successors, including but not limited to Alcatel and Lucent Technologies.

4.  "Asserted Claim" shall refer to each claim of the Asserted Patent that Plaintiff contends Defendants infringe.

5.  "Asserted Patent(s)" shall refer to U.S. Patent Nos. 7,126,921; 7,453,888; 8,402,129; 8,913,489 and any patent applications related thereto.

6.  "Communication" shall mean, without limitation, any written, oral, or other transmission of information, including but not limited to emails.

7.     "Complaint" shall refer to the Complaint (including exhibits) that Plaintiff filed on June 2, 2020 as docket number 1 in this Action, the Amended Complaint filed on October 19, 2020, and any other amended complaints thereafter.

8.     "Concerning," "refer(s) to," "related to," "reflecting," "regarding," and "relating to" shall mean directly or indirectly relating to, referring to, regarding, mentioning, reflecting, pertaining to, evidencing, illustrating, involving, describing, discussing, commenting on, embodying, responding to, supporting, contradicting, or constituting (in whole or in part), as the context makes appropriate.

9.     "Defendants" or "Defendant" shall refer to Dell Technologies Inc., Dell Inc., and EMC Corporation, and any and all of their then-current or prior subsidiaries, parents, affiliates, divisions, successors, predecessors, agents, employees, representatives, directors, officers, trustees, and attorneys, or any other person or entity acting in whole or in part in concert with any of the foregoing, directly or indirectly.

10.    "Document" shall include, without limitation, all documents, electronically stored information, and tangible things within the scope of the Federal Rules of Civil Procedure, including Rule 34.   Federal Rules of Civil Procedure 34 permits discovery of:  "(A) documents or electronically stored information—including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form; or (B) any designated tangible things."

11.    "Employee" shall refer to any officer, director, partner, employee, representative, or agent.

12.    "Licensee(s)" shall refer to any entity having a license, assignment, covenant not to sue, or other understanding, written, oral or implied, that the entity has any rights to the Asserted Patent, any Related Patents, or any Related Applications, may practice one or more claims of the Asserted Patent and/or that Plaintiff will not file suit or otherwise enforce against that entity one or more claims of the Asserted Patent or any Related Patent or Related Application.

13.    "Nokia" shall mean Nokia Corporation and all parents, subsidiaries, affiliates, predecessors, including but not limited to Nokia Technologies Oy and Nokia Solutions and Networks BV.

14.    "Person" shall refer to any natural person, firm, association, partnership, government agency, corporation, proprietorship, or other entity and its officers, directors, partners, employee, representatives, and agents.

15.    The terms "Plaintiff," and/or "WSOU" shall refer to the responding Plaintiff WSOU Investments, LLC d/b/a Brazos Licensing and Development, and any and all of its then-current or prior subsidiaries, parents, affiliates, divisions, successors, predecessors, agents, employees, representatives, directors, officers, trustees, and attorneys, or any other person or entity acting in whole or in part in concert with any of the foregoing, directly or indirectly.

16.    "Prior Art" encompasses, without limitation, the subject matter described in each and every subdivision of 35 U.S.C. §§ 102 and 103, and includes, but is not limited to, memoranda, notes, manuals, interviews, testing data, disclosures, prototypes, correspondence, drawings, papers, articles, patents, printed publications, public uses, demonstrations, offers for sale or license, and sales.

17.  "Product(s)" means a machine, manufacture, apparatus, device, instrument, mechanism, appliance, software, service, process, or an assemblage of components/parts (either individually or collectively) that are designed to function together electronically, mechanically, or otherwise, including any offered for sale or under development.

18.  "Related Application(s)" means any and all applications related to the Asserted Patent, including any provisional or non-provisional applications, continuations, continuations- in-part, divisions, interferences, reexaminations, re-issues, parents, foreign counterpart applications, and any other applications disclosing, describing or claiming any invention disclosed, described or claimed in the Asserted Patent, or claiming the benefit of the filing date of any application whose benefit is claimed in the Asserted Patent, whether or not abandoned and whether or not issued.

19.  "Related Patent(s)" means any and all U.S. or foreign patents based upon or related to any Related Application(s) or Asserted Patent, including any patents or applications that may have been opposed, reexamined, re-issued or subjected to any validity or nullity proceeding.

20.  "Third Party" shall refer to any person other than Plaintiff or Defendants.

21.  "You," "Your," "Yours" shall refer to Basepoint Administrative, LLC (BP Funding Trust, Series SPL-VI), and any and all of its then-current or prior subsidiaries, parents, affiliates, divisions, successors, predecessors, agents, employees, representatives, directors, officers, trustees, and attorneys, or any other person or entity acting in whole or in part in concert with any of the foregoing, directly or indirectly.

22.  Any pronouns shall be construed to refer to the masculine, feminine, or neutral gender, in singular or plural, as in each case is most appropriate.

23.    The singular form of any word shall be construed to also include the plural, and vice-versa.

24.    The word "each" shall be construed to mean "each and every."

25.    The words "and" and "or" shall be construed conjunctively or disjunctively, whichever makes the request more inclusive.

26.    The words "any" and "all" shall be construed to mean "any and all."

## INSTRUCTIONS

1.    This request seeks disclosure to the full extent of the Federal Rules of Civil Procedure and shall be interpreted as inclusive rather than exclusive.

2.    It is Your duty in responding to this request to designate one or more officers, directors, managing agents, or other Persons who are the most knowledgeable with respect to the topics identified below.

## DEPOSITION TOPICS

1.    The past and current ownership of the Asserted Patent, including its chain of title.

2.    Any facts, studies, investigations, information, documents (including Prior Art), and analyses You identified, received, or knew at any time relating to the alleged validity, enforceability, infringement, valuation, or priority dates of the Asserted Patent, Related Patents, Related Applications, or patents and applications incorporated by reference into the Asserted Patent, including any Communications with third parties relating to the foregoing.

3.    Any attempts to sell or otherwise transfer financial interests in the Asserted Patent, any portfolio of patents containing the Asserted Patent, any patents related to the subject matter of the Asserted Claims, and any patent that was asserted against any of the entities that Plaintiff has accused of patent infringement (including but not limited to, Huawei, ZTE, Microsoft, Google, HP, Juniper, F5, Xilinx, NEC, Oneplus, Canon, TP-Link, Arista Networks,

6

Salesforce, Cisco, and NetGear).

4.      The timing and circumstances related to Your first knowledge or awareness of any alleged infringement of the Asserted Patent by each of the Defendants.

5.      Any evaluation or analysis of the Asserted Patent, Related Patents, or Related Applications, whether individually or in combination with any other patents or applications, including any evaluation or analysis of infringement, validity, or commercialization.

6.      All products of which you are/were aware that practiced or currently practice any claim of the Asserted Patent, Related Patents, or Related Applications and all allegations of which you are/were aware that products practiced or currently practice any claim of the Asserted Patent, Related Patents, or Related Applications.

7.      Any ranking (in terms of strength, value, or otherwise) or rating of, or attempts to rank or rate the Asserted Patent, Related Patents, or Related Applications, whether individually or in combination with any other patents or applications, or any portfolio containing the Asserted Patent, Related Patents, or Related Applications.

8.      Each proposal, offer or other discussions by you or your predecessors in interest, regarding actual or potential agreements with Allied Security Trust, or WSOU regarding any asserted patent including communications regarding such a proposal, draft agreements, and executed agreements.

9.      Any Communications with Alcatel or Nokia regarding the Asserted Patent, Related Patents, or Related Applications.

10.      Any decision to pursue or not to pursue any claim of infringement of any of the claims of the Asserted Patent against any Defendant or any of the entities that Plaintiff has accused of patent infringement (including but not limited to, Huawei, ZTE, Microsoft, Google,

HP, Juniper, F5, Xilinx, NEC, Oneplus, Canon, TP-Link, Arista Networks, Salesforce, Cisco, and NetGear).

11.     Any efforts by You, any predecessor-in-interest of the Asserted Patent, or any other Person to enforce or license the Asserted Patent, or any portfolio of patents containing the Asserted Patent, any patents related to the subject matter of the Asserted Claims, or any patent that was asserted against any of the entities that Plaintiff has accused of patent infringement (including but not limited to, Huawei, ZTE, Microsoft, Google, HP, Juniper, F5, Xilinx, NEC, Oneplus, Canon, TP-Link, Arista Networks, Salesforce, Cisco, and NetGear).

12.     Your policies and practices concerning patent agreements (including licensing), including:

> a.     any written licensing policies or best practices;
>
> b.     any most favored Licensee;
>
> c.     the economic and technical factors considered by You in drafting and entering into any license, royalty, standstill, partnership, joint venture, vendor, or settlement agreements;
>
> d.     any standard or preferred terms for license, royalty, standstill or settlement agreements;
>
> e.     the process by which You determine the nature, scope and terms of license agreements in which You are a licensor; and
>
> f.     any circumstance in which You deviated from such policies.

13.     Your knowledge of, and participation in, any Communications between Plaintiff and Defendants prior to the filing of the Action.

14.     Any Communications related to Plaintiff, including communications related to

licensing of any of the Asserted Patent, Related Patents, Related Applications, or any patent that was asserted against any of the entities that Plaintiff has accused of patent infringement (including but not limited to, Huawei, ZTE, Microsoft, Google, HP, Juniper, F5, Xilinx, NEC, Oneplus, Canon, TP-Link, Arista Networks, Salesforce, Cisco, and NetGear), and any compensation, license rates, royalties related thereto, agreements with Plaintiff, Defendants, the Action, the decision to file the Action, requests or offers to provide assistance, witnesses and/or documents for use in the Lawsuit, and any discussion about standing of Plaintiff to bring the Action.

      15.    Your relationship with all potential Licensees, including all agreements, assurances, covenants not to sue, and understandings not to assert patents against such potential Licensees, including but not limited to Communications and agreements relating to the Asserted Patent, Related Patents, Related Applications, any patent that was asserted against any of the entities that Plaintiff has accused of patent infringement (including but not limited to, Huawei, ZTE, Microsoft, Google, HP, Juniper, F5, Xilinx, NEC, Oneplus, Canon, TP-Link, Arista Networks, Salesforce, Cisco, and NetGear), and the circumstances relating to such activity.

      16.    Your relationship with any entity associated with Stuart A. Shanus, Marc Wade, and/or Craig Etchegoyen, including without limitation Wade and Company, Orange Holdings, WSOU, and/or Uniloc USA, Inc.,[1] including any patent license agreements with any such entity that relate to patents or patent applications that claim subject matter related to the subject matter of the Asserted Claims.

      17.    Any Communication You engaged in regarding each Defendant and its

---

[1]  Stuart A. Shanus and Craig Etchegoyen are the Chairman and President of WSOU.  Mark Wade, Wade and Company, Orange Holdings, and/or Uniloc USA, Inc. are all related persons or entities of WSOU.

respective Products or services, and any analysis You performed of each Defendant and each entity that Plaintiff has accused of patent infringement (including but not limited to, Huawei, ZTE, Microsoft, Google, HP, Juniper, F5, Xilinx, NEC, Oneplus, Canon, TP-Link, Arista Networks, Salesforce, Cisco, and NetGear) and its respective Products and services related to the Asserted Patent, Related Patents, Related Applications, and the patents asserted against any of the entities that Plaintiff has accused of patent infringement.

18.     Any valuations of the Asserted Patent, any portfolio of patents that includes the Asserted Patent, any patent that was asserted against any of the entities that Plaintiff has accused of patent infringement (including but not limited to, Huawei, ZTE, Microsoft, Google, HP, Juniper, F5, Xilinx, NEC, Oneplus, Canon, TP-Link, Arista Networks, Salesforce, Cisco, and NetGear), or any portfolio of patents that includes those patents.

19.     Any licenses, assignments, conveyances, security interests, or other agreements relating to the Asserted Patent, or any portfolio of patents that includes or included the Asserted Patent, and offers and negotiations leading to and circumstances surrounding such agreement.

20.     Any revenues and profits received by You for any Products practicing the alleged invention of the Asserted Patent.

21.     Revenues, costs, expenses, and profits (including gross and net profits) generated in connection with the Asserted Patent, and the methodology used to calculate or otherwise determine revenues, costs, expenses, and/or profits.

22.     Any licensing fees and rates paid for each portfolio that includes the Asserted Patent.

23.     The rates paid by any Licensee for the use of other patents comparable to the Asserted Patent.

24.     Any financial interests that You may have in the Asserted Patent, including but not limited to royalties and the outcome of the Action.

25.     Your collection, retention and production of documents and information relevant to the Action.

26.     The subject matter, content, and authenticity of all Documents and Communications identified and/or produced in response to the above requests.

27.     All Documents reviewed by You in connection with the deposition on these topics.

28.     For each of the topics set forth in this request, the identity and location of Your employee, agent, representative, independent contractor, or other partner, affiliate, or business associate, with the most knowledge concerning that topic.

# EXHIBIT 3A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | | |
|---|---|---|
| WSOU INVESTMENTS, LLC d/b/a | § | |
| BRAZOS LICENSING AND | § | |
| DEVELOPMENT, | § | NO. 6:20-cv-475-ADA |
| | § | |
| Plaintiff, | § | **JURY TRIAL DEMANDED** |
| | § | |
| v. | § | |
| | § | |
| DELL TECHNOLOGIES INC., DELL | § | |
| INC., AND EMC CORPORATION, | § | |
| | § | |
| Defendants. | § | |

## FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff WSOU Investments, LLC d/b/a Brazos Licensing and Development ("Brazos" or

"Plaintiff"), by and through its attorneys, files this First Amended Complaint ("Amended

Complaint" or "Complaint") for Patent Infringement against Dell Technologies Inc., Dell Inc., and

EMC Corporation (collectively, "Defendants") and alleges:

### NATURE OF THE ACTION

1.     This is a civil action for patent infringement arising under the Patent Laws of the

United States, 35 U.S.C. §§ 1, et seq., including §§ 271, 281, 284, and 285.

### THE PARTIES

2.     Brazos is a limited liability corporation organized and existing under the laws of

Delaware, with its principal place of business at 605 Austin Avenue, Suite 6, Waco, Texas 76701.

3.     On information and belief, defendant Dell Technologies Inc. is a Delaware

corporation with a principal place of business at One Dell Way, Round Rock, Texas 78682.

1

4.      On information and belief, defendant Dell Inc. is a Delaware corporation with a principal place of business at One Dell Way, Round Rock, Texas 78682. Dell Inc. is wholly owned by its corporate parent, Dell Technologies Inc.

5.      On information and belief, defendant EMC Corporation is a Massachusetts corporation with a principal place of business at One Dell Way, Round Rock, Texas 78682. EMC Corporation is wholly owned by its corporate parent, Dell Technologies Inc.

## JURISDICTION AND VENUE

6.      This is an action for patent infringement which arises under the Patent Laws of the United States, in particular, 35 U.S.C. §§ 271, 281, 284, and 285.

7.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

8.      This Court has specific and general personal jurisdiction over each defendant pursuant to due process and/or the Texas Long Arm Statute, because each defendant has committed acts giving rise to this action within Texas and within this judicial district. The Court's exercise of jurisdiction over each defendant would not offend traditional notions of fair play and substantial justice because each defendant has established minimum contacts with the forum. For example, on information and belief, each defendant has committed acts of infringement in this judicial district, by among other things, selling and offering for sale products that infringe the asserted patent, directly or through intermediaries, as alleged herein.

9.      Venue in the Western District of Texas is proper pursuant to 28 U.S.C. §§1391 and/or 1400(b). Each defendant has established places of business in the Western District of Texas. Each defendant is registered to do business in Texas. Upon information and belief, each defendant has transacted business in this District and has committed acts of infringement in this District.

## COUNT ONE - INFRINGEMENT OF
## U.S. PATENT NO. 7,453,888

10.     Brazos re-alleges and incorporates by reference the preceding paragraphs of this Complaint.

11.     On November 18, 2008, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 7,453,888 ("the '888 Patent"), entitled "Stackable Virtual Local Area Network Provisioning in Bridged Networks." A true and correct copy of the '888 Patent is attached as Exhibit A to this Complaint.

12.     Brazos is the owner of all rights, title, and interest in and to the '888 Patent, including the right to assert all causes of action arising under the '888 Patent and the right to any remedies for the infringement of the '888 Patent.

13.     Defendants make, use, sell, offer for sale, import, and/or distribute in the United States, including within this judicial district, products such as, but not limited to, networking switches, including but not limited to, Force 10 MXL switches (collectively, the "Accused Products").

14.     The Accused Products may be deployed in environments with Virtual Local Area Network (VLAN) applications and virtualization hosts and can provide VLAN double tagging, frame extensions for VLAN tagging, and native VLAN features, among other features. Force 10 MXL switches, for example, may enhance bandwidth and performance, as well as provide

3

flexibility to satisfy changing demands of data centers embracing virtualization, network convergence, and other I/O-intensive applications or workloads.

```
VLAN
802.1Q VLAN Tagging, Double VLAN Tagging, GVRP
802.3ac Frame Extensions for VLAN Tagging
Force10 PVST+
Native VLAN
Data center bridging
IEEE 802.1Qbb Priority-Based Flow Contrl (PFC)
IEEE 802.1Qaz Enhanced Transmission Selection (ETS)
Data Center Bridging eXchange (DCBx)
DCBx Application TLV (iSCSI, FCoE)
Fibre channel
NPIV Proxy Gateway (NPG)
Fibre Channel port types . N
Bridging to FC SAN
Up to 8 FCoE_Maps per switch

FC/ FCoE
INCITS FC-BB-5 Ver 2.00 (FSB, NPIV & F-Port parts only).
Fibre Channel Generic Services
(FC-GS, FC-GS2, GC-GS3)
```

https://i.dell.com/sites/csdocuments/Shared-Content_data-Sheets_Documents/en/SS804_Dell_Force10_MXL.pdf

      15.    The Accused Products may configure a trunk port so that a numbered tag is inserted in each ethernet frame to keep the traffic of different VLANs from mixing.  Accused Products running Per-VLAN Spanning Tree (PVST) configure their trunk ports appropriately.

> ### Trunk Port Downlink Configuration
>
> Trunk ports can participate in multiple VLANs over one Ethernet interface and are often used for connection to virtualization hosts and other VLAN aware applications. To keep the traffic of the different VLANs from mixing, a numbered tag is inserted in each Ethernet frame (with the optional exception of the interface's "native" VLAN). To deploy a trunk port on an MXL running PVST follow these four steps.

http://bladesmadesimple.com/wp-content/uploads/2017/05/Deploying_the_Dell_Force10_MXL_on_a_Cisco_Nexus_Network_v1_1.pdf

4

```
Configure Tagged VLANs for a Trunk Port Interface
        MXL2#configure
        MXL2(conf)#interface vlan 11
        MXL2(conf-if-vl-11)#tagged tengigabitethernet 0/1
        MXL2(conf-if-vl-11)#no shutdown
        MXL2(conf-if-vl-11)#exit
        MXL2(conf)#interface vlan 12
        MXL2(conf-if-vl-12)#tagged tengigabitethernet 0/1
        MXL2(conf-if-vl-12)#no shutdown
        MXL2(conf-if-vl-12)#exit
        MXL2(conf)#exit
        MXL2#
```

http://bladesmadesimple.com/wp-content/uploads/2017/05/Deploying_the_Dell_Force10_MXL_on_a_Cisco_Nexus_Network_v1_1.pdf

16.     Trunk ports in the accused products can participate in multiple VLANs over an

ethernet interface carrying multiple tagged VLANs and/or a single untagged VLAN.

> The "portmode hybrid" command allows an Ethernet interface to carry both multiple tagged VLANs and a single untagged (also called a native) VLAN. If a given port is only expected to carry tagged VLANs or a single untagged VLAN, the "portmode hybrid" command may be omitted from its configuration.

http://bladesmadesimple.com/wp-content/uploads/2017/05/Deploying_the_Dell_Force10_MXL_on_a_Cisco_Nexus_Network_v1_1.pdf

17.     The Accused Products may configure all the trunk ports participating in VLANs

when the port is in a standby state. The configured trunk port may be enabled to begin forwarding

traffic as soon as its link is active.

> The "switchport" setting enables a switch's Ethernet interface to participate in VLANs. A switchport enabled interface is referred to as a layer-2 interface. (Note: If the Ethernet interface had previously been configured as a layer-3 interface—which is one with an IP address directly configured on it—than the "no ip address" command would need to be run on the interface before the switchport feature could be enabled.)
>
> The "portmode hybrid" command allows an Ethernet interface to carry both multiple tagged VLANs and a single untagged (also called a native) VLAN. If a given port is only expected to carry tagged VLANs or a single untagged VLAN, the "portmode hybrid" command may be omitted from its configuration.
>
> The "spanning-tree pvst edge-port" command should only be run on ports that will connect to servers or other end nodes and never on ports that will connect to other switches. This command designates a port as an expected edge of the spanning tree (only switches participate in spanning tree) and enables it to begin forwarding traffic as soon as it's link is active (many seconds before the spanning-tree protocol would otherwise allow it to forward traffic).
>
> With the switchport feature enabled, the Ethernet interface is now ready for one or more tagged VLANs to be configured for it.

http://bladesmadesimple.com/wp-content/uploads/2017/05/Deploying_the_Dell_Force10_MXL_on_a_Cisco_Nexus_Network_v1_1.pdf

18.     In view of preceding paragraphs, each and every element of at least claim 1 of the

'888 Patent is found in the Accused Products. And upon information and belief, each and every

element of at least claim 1 of the '888 Patent is performed or practiced by Defendants at least

through Defendants' own use and configuration of its own Accused Products, and/or through

Defendants' own testing and configuration of its own Accused Products, and/or through

Defendants' providing services for its Accused Products, including but not limited to providing

installation, deployment, support, and configuration of its Accused Products.

19.     Defendants continue to directly infringe at least one claim of the '888 Patent,

literally or under the doctrine of equivalents, by making, using, selling, offering for sale, importing,

and/or distributing the Accused Products in the United States, including within this judicial district,

without the authority of Brazos.

20.     In May 2020, Plaintiff filed a suit against Defendants asserting infringement of

the same patent and by the same accused products that are asserted in this case.  Plaintiff

dismissed the prior suit before filing this suit.  As a result of the prior suit, Defendants had notice

and actual or constructive knowledge of their infringement of the patent-in-suit since at least May

2020, before the filing of this case.  Further, Defendants had knowledge of their infringement of

the patent-in-suit before the filing of this Amended Complaint.[1]

---

[1] Dell filed a motion to dismiss that is mooted by this amended complaint.  Dell's motion cites a
WDTX case (which relies authority from the District of Delaware) for the proposition that
knowledge of a plaintiff's patent after the lawsuit was filed is insufficient to plead the requisite
knowledge for indirect infringement.  *See Aguirre v. Powerchute Sports, LLC*, No. SA-10-CV-
0702 XR, 2011 WL 2471299, at *3 (W.D. Tex. June 17, 2011) (citing *Xpoint Techs. v. Microsoft
Corp.*, 730 F.Supp.2d 349 (D. Del. 2010)).  Several Delaware courts have since rejected this rule
because there is no statutory basis to support it and because there is no purpose served by the
formality of requiring the plaintiff to file an amended complaint in order to be allowed to assert
knowledge of the patents during the period following the filing of the original complaint.  *See
Walker Digital, LLC v. Facebook, Inc.*, 852 F. Supp. 2d 559, 566 (D. Del. 2012) ("The court
acknowledges that this result is inconsistent with its prior decisions in *Xpoint Techs. v. Microsoft
Corp.*, 730 F.Supp.2d 349 (D.Del.2010), and *EON Corp. IP Holdings LLC v. FLO TV Inc.*, 802
F.Supp.2d 527 (D. Del. 2011).  Given the ease of amendment, the limitation of damages to post-
knowledge conduct, and in the interests of judicial economy, the court finds that the better
reasoning is to allow a complaint that satisfies Rule 8 to proceed to discovery rather than
dismissing it for lack of pre-filing knowledge when, by the time the motion to dismiss has been
filed, defendant in fact has the requisite knowledge as pled by plaintiff.");  *see also IOENGINE,
LLC v. PayPal Holdings, Inc.*, CV 18-452-WCB, 2019 WL 330515, at *4 (D. Del. Jan. 25, 2019)
("The Court sees no purpose that would be served by the formality of requiring IOENGINE to file

21.     Since at least May 2020, through its actions, Defendants have actively induced product makers, distributors, retailers, and/or end users of the Accused Products to infringe the '888 Patent throughout the United States, including within this judicial district, by, among other things, advertising and promoting the use of the Accused Products in various websites, including providing and disseminating product descriptions, operating manuals, and other instructions on how to implement and configure the Accused Products. Examples of such advertising, promoting, and/or instructing include the documents at:

- http://bladesmadesimple.com/wp-content/uploads/2017/05/Deploying_the_Dell_Force10_MXL_on_a_Cisco_Nexus_Network_v1_1.pdf
- https://i.dell.com/sites/csdocuments/Shared-Content_data-Sheets_Documents/en/SS804_Dell_Force10_MXL.pdf

22.     Since at least May 2020, through its actions, Defendants have contributed to the infringement of the '888 Patent by having others sell, offer for sale, or use the Accused Products throughout the United States, including within this judicial district, with knowledge that the Accused Products infringe the '888 Patent. The Accused Products are especially made or adapted for infringing the '888 Patent and have no substantial non-infringing use. For example, in view of the preceding paragraphs, the Accused Products contain functionality which is material to at least one claim of the '888 Patent.

## **JURY DEMAND**

Brazos hereby demands a jury on all issues so triable.

---

an amended complaint in order to be allowed to assert knowledge of the patents during the period following the filing of the original complaint.").

## REQUEST FOR RELIEF

WHEREFORE, Brazos respectfully requests that the Court:

(A)     Enter judgment that Defendants infringe one or more claims of the '888 Patent literally and/or under the doctrine of equivalents;

(B)     Enter judgment that Defendants have induced infringement and continue to induce infringement of one or more claims of the '888 Patent;

(C)     Enter judgment that Defendants have contributed to and continue to contribute to the infringement of one or more claims of the '888 Patent;

(D)     Award Brazos damages, to be paid by Defendants in an amount adequate to compensate Brazos for such damages, together with pre-judgment and post-judgment interest for the infringement by Defendants of the '888 Patent through the date such judgment is entered in accordance with 35 U.S.C. § 284, and increase such award by up to three times the amount found or assessed in accordance with 35 U.S.C. § 284;

(E)     Declare this case exceptional pursuant to 35 U.S.C. § 285; and

(F)     Award Brazos its costs, disbursements, attorneys' fees, and such further and additional relief as is deemed appropriate by this Court.

Dated: October 19, 2020

Respectfully submitted,

*/s/ James L. Etheridge*
James L. Etheridge
Texas State Bar No. 24059147
Ryan S. Loveless
Texas State Bar No. 24036997
Travis L. Richins
Texas State Bar No. 24061296

ETHERIDGE LAW GROUP, PLLC
2600 E. Southlake Blvd., Suite 120 / 324
Southlake, Texas 76092
Telephone: (817) 470-7249
Facsimile: (817) 887-5950
Jim@EtheridgeLaw.com
Ryan@EtheridgeLaw.com
Travis@EtheridgeLaw.com

Mark D. Siegmund
State Bar No. 24117055
mark@waltfairpllc.com
Law Firm of Walt, Fair PLLC.
1508 North Valley Mills Drive
Waco, Texas 76710
Telephone: (254) 772-6400
Facsimile: (254) 772-6432

**COUNSEL FOR PLAINTIFF**

Law Firm of Walt, Fair PLLC.
1508 North Valley Mills Drive
Waco, Texas 76710
Telephone: (254) 772-6400
Facsimile: (254) 772-6432

**COUNSEL FOR PLAINTIFF**

# EXHIBIT 3B

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | | |
|---|---|---|
| WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT, | § § § § | NO. 6:20-cv-477-ADA |
| Plaintiff, | § § | **JURY TRIAL DEMANDED** |
| v. | § § | |
| DELL TECHNOLOGIES INC., DELL INC., AND EMC CORPORATION, | § § § | |
| Defendants. | § § | |

## FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff WSOU Investments, LLC d/b/a Brazos Licensing and Development ("Brazos" or "Plaintiff"), by and through its attorneys, files this First Amended Complaint ("Amended Complaint" or "Complaint") for Patent Infringement against Dell Technologies Inc., Dell Inc., and EMC Corporation (collectively, "Defendants") and alleges:

## NATURE OF THE ACTION

1.      This is a civil action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. §§ 1, et seq., including §§ 271, 281, 284, and 285.

## THE PARTIES

2.      Brazos is a limited liability corporation organized and existing under the laws of Delaware, with its principal place of business at 605 Austin Avenue, Suite 6, Waco, Texas 76701.

3.      On information and belief, defendant Dell Technologies Inc. is a Delaware corporation with a principal place of business at One Dell Way, Round Rock, Texas 78682.

1

4.      On information and belief, defendant Dell Inc. is a Delaware corporation with a principal place of business at One Dell Way, Round Rock, Texas 78682. Dell Inc. is wholly owned by its corporate parent, Dell Technologies Inc.

5.      On information and belief, defendant EMC Corporation is a Massachusetts corporation with a principal place of business at One Dell Way, Round Rock, Texas 78682. EMC Corporation is wholly owned by its corporate parent, Dell Technologies Inc.

## JURISDICTION AND VENUE

6.      This is an action for patent infringement which arises under the Patent Laws of the United States, in particular, 35 U.S.C. §§ 271, 281, 284, and 285.

7.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

8.      This Court has specific and general personal jurisdiction over each defendant pursuant to due process and/or the Texas Long Arm Statute, because each defendant has committed acts giving rise to this action within Texas and within this judicial district. The Court's exercise of jurisdiction over each defendant would not offend traditional notions of fair play and substantial justice because each defendant has established minimum contacts with the forum. For example, on information and belief, each defendant has committed acts of infringement in this judicial district, by among other things, selling and offering for sale products that infringe the asserted patent, directly or through intermediaries, as alleged herein.

9.      Venue in the Western District of Texas is proper pursuant to 28 U.S.C. §§1391 and/or 1400(b). Each defendant has established places of business in the Western District of Texas. Each defendant is registered to do business in Texas. Upon information and belief, each defendant has transacted business in this District and has committed acts of infringement in this District.

## COUNT ONE - INFRINGEMENT OF
## U.S. PATENT NO. 8,913,489

10.     Brazos re-alleges and incorporates by reference the preceding paragraphs of this Complaint.

11.     On December 16, 2014, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,913,489 ("the '489 Patent"), entitled "System and Method for Virtual Fabric Link Failure Recovery." A true and correct copy of the '489 Patent is attached as Exhibit A to this Complaint.

12.     Brazos is the owner of all rights, title, and interest in and to the '489 Patent, including the right to assert all causes of action arising under the '489 Patent and the right to any remedies for the infringement of the '489 Patent.

13.     Defendants make, use, sell, offer for sale, import, and/or distribute in the United States, including within this judicial district, products such as, but not limited to, networking

switches with Virtual Link Trunking (VLT), including but not limited to, C9000 series switches (collectively, the "Accused Products").

14.    The Accused Products provide multi-rate, modular switching platforms, which can be used for campus, mid-market, and large-enterprise networks and support Layer 2 multipath using VLT.

## Dell Networking C9000 Series Switches



...

## Next-generation modular chassis switch

https://www.dell.com/en-us/work/shop/povw/networking-c9000-series

15.    The Accused Products operate based on Dell Networking OS (DNOS), which incorporates features from Force10 Networks's Force10 Operating System (FTOS), including VLT. VLT allows two physical switches to be represented as a single logical switch, which can be regarded as a part of a multi-chassis link aggregation group (MC-LAG). With physical links as a

port-channel, connecting two individual switches configured with VLT would logically group it as a single entity only for the access switches which connect to the VLT domain.

## Virtual Link Trunking (VLT)

Virtual link trunking (VLT) is supported on Dell Networking OS.

## Overview

VLT reduces the role of spanning tree protocols (STPs) by allowing link aggregation group (LAG) terminations on two separate distribution or core switches and supporting a loop-free topology.

To prevent the initial loop that may occur prior to VLT being established, use a spanning tree protocol. After VLT is established, you may use rapid spanning tree protocol (RSTP) to prevent loops from forming with new links that are incorrectly connected and outside the VLT domain.

VLT provides Layer 2 multipathing, creating redundancy through increased bandwidth, enabling multiple parallel paths between nodes and load-balancing traffic where alternative paths exist.

Virtual link trunking offers the following benefits:

- Allows a single device to use a LAG across two upstream devices.
- Eliminates STP-blocked ports.
- Provides a loop-free topology.
- Uses all available uplink bandwidth.
- Provides fast convergence if either the link or a device fails.
- Optimized forwarding with virtual router redundancy protocol (VRRP).
- Provides link-level resiliency.

https://topics-cdn.dell.com/pdf/networking-c9000-series_users-guide_en-us.pdf

16.    For example, a VLT topology may include two switches, including an Accused Product, in a VLT Domain that communicates with servers by forming a multi-chassis link aggregation group over port interfaces of the switches.

### 1.6 Typical VLT Topology



https://downloads.dell.com/solutions/networking-solution-resources/Virtual%20Link%20Trunking-Reference%20Architecture%202%200_External.pdf

17.     Further, as shown in the example above, switches in the VLT Domain may be considered VTI peer devices and connected using a VLTi interconnect port-channel, which acts a virtual fiber link. The VLT interconnect (VLTi) carries MAC, ARP Tables, and IGMP State information between the VLT peer switches in a VLT topology.

### VLT Terminology

…

- **VLT interconnect (VLTi)** — The link used to synchronize states between the VLT peer switches. Both ends must be on 10G or 40G interfaces.

…

- **VLT peer device** — One of a pair of devices that are connected with the special port channel known as the VLT interconnect (VLTi).

> VLT peer switches have independent management planes. A VLT interconnect between the VLT chassis maintains synchronization of L2/L3 control planes across the two VLT peer switches. The VLT interconnect uses either 10G or 40G user ports on the chassis.

https://topics-cdn.dell.com/pdf/networking-c9000-series_users-guide_en-us.pdf

## 1.2  VLT Implementation

> Periodic hello messages are sent through the VLT Interconnect (VLTi) and the VLT control messages are sent in TLV format through the VLTi links for synchronizing the L2/L3 control planes across the two VLT peers. MAC, ARP tables, IGMP States are synchronized between the VLT peers ensuring traffic flow across the links and seamless failover in case of VLT link or node failure. The VLT feature ensures the local traffic on a VLT Switch takes the shortest path to the destination through the VLT links and not through the VLTi links. However VLTi carries the traffic during the link failure states. (Figure 1.0)

https://downloads.dell.com/solutions/networking-solution-resources/Virtual%20Link%20Trunking-Reference%20Architecture%202%200_External.pdf

18.     The Accused Products can determine a connection failure of the VLTi

interconnect.



Figure 3.2 Traffic flow during VLTi failure

https://downloads.dell.com/solutions/networking-solution-resources/Virtual%20Link%20Trunking-Reference%20Architecture%202%200_External.pdf

**Configuration Notes**

...

• Failure scenarios

...

- If all ports in the VLT interconnect fail, or if the messaging infrastructure fails to communicate across the interconnect trunk, the VLT management system uses the backup link interface to determine whether the failure is a link-level failure or whether the remote peer has failed entirely. If the remote peer is still alive (heartbeat messages are still being received), the VLT secondary switch disables its VLT port channels. If keepalive messages from the peer are not being received, the peer continues to forward traffic, assuming that it is the last device available in the network. In either case, after recovery of the peer link or reestablishment of message forwarding across the interconnect trunk, the two VLT peers resynchronize any MAC addresses learned while communication was interrupted and the VLT system continues normal data forwarding.

https://topics-cdn.dell.com/pdf/networking-c9000-series_users-guide_en-us.pdf

19.    When the MC-LAG is disrupted (e.g., after the Accused Products determines VLTi and back uplink failure between VLT peer switches), the MC-LAG can be reconfigured into two link aggregates associated with each VLT peer switch to take the primary role and continue to communicate traffic over link aggregates to the end node. In the Accused Products, the VLT backup link can be configurable. If a VLT backup link is not enabled, then during VLTi failure, both VLT peer switches may take primary roles to form link aggregates.

## 3.1   Split-Brain in VLT

...

In case of both VLTi and backup link failure, both the VLT nodes take primary role and continue to pass the traffic if the system mac is configured on both the VLT peers. However there would not be MAC/ARP synchronization.

https://downloads.dell.com/solutions/networking-solution-resources/Virtual%20Link%20Trunking-Reference%20Architecture%202%200_External.pdf

---

### Configuring a VLT Backup Link

To configure a VLT backup link, use the following command.

1. Specify the management interface to be used for the backup link through an out-of-band management network.

   CONFIGURATION mode

   ```
   interface managementethernet slot/ port
   ```

---

https://topics-cdn.dell.com/pdf/networking-c9000-series_users-guide_en-us.pdf

20.     In the event of VLTi failure causing disruption of the MC-LAG, the spanning tree protocol (STP) may be initiated in the first set of port interfaces to avoid a traffic loop.

---

### 5.1 Dell#1 Switch Configurations and Verification

**Dell#1#sh run | find protocol**
protocol spanning-tree pvst
 no disable
 vlan 1,20,800,900 bridge-priority 0
*(Take note that deploying VLT does NOT preclude the need to deploy the spanning tree protocol (STP). STP will be acting as a loop prevention mechanism in the event of a VLT failure or an errant connection that creates a physical bridging loop.*
*!*

---

https://www.dell.com/community/s/vjauj58549/attachments/vjauj58549/Network/35449/1/Route d%20VLT%20v1.2.pdf

21.     In view of preceding paragraphs, each and every element of at least claim 8 of the '489 Patent is found in the Accused Products. And upon information and belief, each and every element of at least claim 8 of the '489 Patent is performed or practiced by Defendants at least through Defendants' own use and configuration of its own Accused Products, and/or through Defendants' own testing and configuration of its own Accused Products, and/or through

Defendants' providing services for its Accused Products, including but not limited to providing installation, deployment, support, and configuration of its Accused Products.

22.     Defendants continue to directly infringe at least one claim of the '489 Patent, literally or under the doctrine of equivalents, by making, using, selling, offering for sale, importing, and/or distributing the Accused Products in the United States, including within this judicial district, without the authority of Brazos.

23.     In May 2020, Plaintiff filed a suit against Defendants asserting infringement of the same patent and by the same accused products that are asserted in this case. Plaintiff dismissed the prior suit before filing this suit. As a result of the prior suit, Defendants had notice and actual or constructive knowledge of their infringement of the patent-in-suit since at least May 2020, before the filing of this case. Further, Defendants had knowledge of their infringement of the patent-in-suit before the filing of this Amended Complaint.[1].

24.     Since at least May 2020, through its actions, Defendants have actively induced product makers, distributors, retailers, and/or end users of the Accused Products to infringe the

---

[1] Dell filed a motion to dismiss that is mooted by this amended complaint. Dell's motion cites a WDTX case (which relies authority from the District of Delaware) for the proposition that knowledge of a plaintiff's patent after the lawsuit was filed is insufficient to plead the requisite knowledge for indirect infringement. *See Aguirre v. Powerchute Sports, LLC*, No. SA-10-CV-0702 XR, 2011 WL 2471299, at *3 (W.D. Tex. June 17, 2011) (citing *Xpoint Techs. v. Microsoft Corp.*, 730 F.Supp.2d 349 (D. Del. 2010)). Several Delaware courts have since rejected this rule because there is no statutory basis to support it and because there is no purpose served by the formality of requiring the plaintiff to file an amended complaint in order to be allowed to assert knowledge of the patents during the period following the filing of the original complaint. *See Walker Digital, LLC v. Facebook, Inc.*, 852 F. Supp. 2d 559, 566 (D. Del. 2012) ("The court acknowledges that this result is inconsistent with its prior decisions in *Xpoint Techs. v. Microsoft Corp.*, 730 F.Supp.2d 349 (D.Del.2010), and *EON Corp. IP Holdings LLC v. FLO TV Inc.*, 802 F.Supp.2d 527 (D. Del. 2011). Given the ease of amendment, the limitation of damages to post-knowledge conduct, and in the interests of judicial economy, the court finds that the better reasoning is to allow a complaint that satisfies Rule 8 to proceed to discovery rather than dismissing it for lack of pre-filing knowledge when, by the time the motion to dismiss has been filed, defendant in fact has the requisite knowledge as pled by plaintiff."); *see also IOENGINE,*

'489 Patent throughout the United States, including within this judicial district, by, among other things, advertising and promoting the use of the Accused Products in various websites, including providing and disseminating product descriptions, operating manuals, and other instructions on how to implement and configure the Accused Products. Examples of such advertising, promoting, and/or instructing include the documents at:

- https://www.dell.com/en-us/work/shop/povw/networking-c9000-series

- https://www.dell.com/en-us/work/shop/productdetailstxn/force10-ftos

- https://topics-cdn.dell.com/pdf/networking-c9000-series_users-guide_en-us.pdf

- https://downloads.dell.com/solutions/networking-solution-resources/Virtual%20Link%20Trunking-Reference%20Architecture%202%200_External.pdf

- https://www.dell.com/community/s/vjauj58549/attachments/vjauj58549/Network/35449/1/Routed%20VLT%20v1.2.pdf

25.     Since at least May 2020, through its actions, Defendants have contributed to the infringement of the '489 Patent by having others sell, offer for sale, or use the Accused Products throughout the United States, including within this judicial district, with knowledge that the Accused Products infringe the '489 Patent. The Accused Products are especially made or adapted for infringing the '489 Patent and have no substantial non-infringing use. For example, in view of the preceding paragraphs, the Accused Products contain functionality which is material to at least one claim of the '489 Patent.

## JURY DEMAND

LLC v. PayPal Holdings, Inc., CV 18-452-WCB, 2019 WL 330515, at *4 (D. Del. Jan. 25, 2019) ("The Court sees no purpose that would be served by the formality of requiring IOENGINE to file an amended complaint in order to be allowed to assert knowledge of the patents during the period following the filing of the original complaint.").

Brazos hereby demands a jury on all issues so triable.

## REQUEST FOR RELIEF

WHEREFORE, Brazos respectfully requests that the Court:

(A)     Enter judgment that Defendants infringe one or more claims of the '489 Patent literally and/or under the doctrine of equivalents;

(B)     Enter judgment that Defendants have induced infringement and continue to induce infringement of one or more claims of the '489 Patent;

(C)     Enter judgment that Defendants have contributed to and continue to contribute to the infringement of one or more claims of the '489 Patent;

(D)     Award Brazos damages, to be paid by Defendants in an amount adequate to compensate Brazos for such damages, together with pre-judgment and post-judgment interest for the infringement by Defendants of the '489 Patent through the date such judgment is entered in accordance with 35 U.S.C. § 284, and increase such award by up to three times the amount found or assessed in accordance with 35 U.S.C. § 284;

(E)     Declare this case exceptional pursuant to 35 U.S.C. § 285; and

(F)     Award Brazos its costs, disbursements, attorneys' fees, and such further and additional relief as is deemed appropriate by this Court.

Dated: October 19, 2020        Respectfully submitted,

*/s/ James L. Etheridge*
James L. Etheridge
Texas State Bar No. 24059147
Ryan S. Loveless
Texas State Bar No. 24036997
Travis L. Richins
Texas State Bar No. 24061296

ETHERIDGE LAW GROUP, PLLC
2600 E. Southlake Blvd., Suite 120 / 324
Southlake, Texas 76092
Telephone: (817) 470-7249
Facsimile: (817) 887-5950
Jim@EtheridgeLaw.com
Ryan@EtheridgeLaw.com
Travis@EtheridgeLaw.com

Mark D. Siegmund
State Bar No. 24117055
mark@waltfairpllc.com
Law Firm of Walt, Fair PLLC.
1508 North Valley Mills Drive
Waco, Texas 76710
Telephone: (254) 772-6400
Facsimile: (254) 772-6432

**COUNSEL FOR PLAINTIFF**

# EXHIBIT 3C

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT, | § § § § | NO. 6:20-cv-478-ADA |
| Plaintiff, | § § | **JURY TRIAL DEMANDED** |
| v. | § § | |
| DELL TECHNOLOGIES INC., DELL INC., AND EMC CORPORATION, | § § § | |
| Defendants. | § | |

## FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff WSOU Investments, LLC d/b/a Brazos Licensing and Development ("Brazos" or "Plaintiff"), by and through its attorneys, files this First Amended Complaint ("Amended Complain" or "Complaint") for Patent Infringement against Dell Technologies Inc., Dell Inc., and EMC Corporation (collectively, "Defendants") and alleges:

## NATURE OF THE ACTION

1.      This is a civil action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. §§ 1, et seq., including §§ 271, 281, 284, and 285.

## THE PARTIES

2.      Brazos is a limited liability corporation organized and existing under the laws of Delaware, with its principal place of business at 605 Austin Avenue, Suite 6, Waco, Texas 76701.

3.      On information and belief, defendant Dell Technologies Inc. is a Delaware corporation with a principal place of business at One Dell Way, Round Rock, Texas 78682.

4.     On information and belief, defendant Dell Inc. is a Delaware corporation with a principal place of business at One Dell Way, Round Rock, Texas 78682. Dell Inc. is wholly owned by its corporate parent, Dell Technologies Inc.

5.     On information and belief, defendant EMC Corporation is a Massachusetts corporation with a principal place of business at One Dell Way, Round Rock, Texas 78682. EMC Corporation is wholly owned by its corporate parent, Dell Technologies Inc.

## JURISDICTION AND VENUE

6.     This is an action for patent infringement which arises under the Patent Laws of the United States, in particular, 35 U.S.C. §§ 271, 281, 284, and 285.

7.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

8.     This Court has specific and general personal jurisdiction over each defendant pursuant to due process and/or the Texas Long Arm Statute, because each defendant has committed acts giving rise to this action within Texas and within this judicial district. The Court's exercise of jurisdiction over each defendant would not offend traditional notions of fair play and substantial justice because each defendant has established minimum contacts with the forum. For example, on information and belief, each defendant has committed acts of infringement in this judicial district, by among other things, selling and offering for sale products that infringe the asserted patent, directly or through intermediaries, as alleged herein.

9.     Venue in the Western District of Texas is proper pursuant to 28 U.S.C. §§1391 and/or 1400(b). Each defendant has established places of business in the Western District of Texas. Each defendant is registered to do business in Texas. Upon information and belief, each defendant has transacted business in this District and has committed acts of infringement in this District.

## COUNT ONE - INFRINGEMENT OF
## U.S. PATENT NO. 7,126,921

10.     Brazos re-alleges and incorporates by reference the preceding paragraphs of this Complaint.

11.     On October 24, 2006, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 7,126,921 ("the '921 Patent"), entitled "Packet Network Providing Fast Distribution of Node Related Information and a Method Therefor." A true and correct copy of the '921 Patent is attached as Exhibit A to this Complaint.

12.     Brazos is the owner of all rights, title, and interest in and to the '921 Patent, including the right to assert all causes of action arising under the '921 Patent and the right to any remedies for the infringement of the '921 Patent.

13.     Defendants make, use, sell, offer for sale, import, and/or distribute in the United States, including within this judicial district, products such as, but not limited to, controlled networking devices, including but not limited to, routers controlled by Dell Network Operating System ("DNOS") incorporating features of Force10 Network's Force10 Operating System ("FTOS"), including but not limited to the Dell Networking S3048-ON, Dell Networking S4048-ON, Dell Networking S4810-ON, Dell Networking S6000-ON, and E-Series, C-Series, N-Series, and S- Series hardware (collectively, the "Accused Products").

14.     The Accused Products operate based on Dell Networking OS (DNOS), which incorporates features from FTOS for packet networks having nodes and links. FTOS supports

packet networks, which comprises multiple nodes and links. FTOS is a part of various Dell networking devices, including E-Series, C-Series, and S- Series hardware.

# Dell takes deeper dive into networking, buys Force10

https://www.networkworld.com/article/2179414/dell-takes-deeper-dive-into-networking--buys-force10.html

# FTOS Configuration Guide

...

This guide describes the protocols and features supported by the Force10 Operating System (FTOS) and provides configuration instructions and examples for implementing them. It supports the system platforms E-Series, C-Series, and S-Series.

https://www.force10networks.com/CSPortal20/KnowledgeBase/DOCUMENTATION/CLIConfig/FTOS/All_CONFIG%20Book_8212_13-Oct-09.pdf

15. FTOS can be installed on Dell Open Networking (ON) Switches, including Dell Networking S3048-ON, S4048-ON, S4810-ON, and S6000-ON.



https://www.dell.com/support/article/us/en/04/how11548/how-to-install-dell-networking-ftos-on-dell-open-networking-on-switches?lang=en

16. The Accused Products implement a control plane to control the nodes and a forwarding (data) plane responsive to the control plane. A control plane is a set of protocols that determine how the forwarding plane should forward packets, deciding which data packets are

allowed        to        be        forwarded        and        where        they        should        go.

The control plane is the set of protocols that determine how the forwarding plane should forward packets, deciding which data packets are allowed to be forwarded and where they should go.

https://cdn.competec.ch/documents/3/9/392428/DE_Handbuch_switch.pdf

17.        Link State Advertisements (LSAs) help routing network devices forward data packets. Link state information provides routing-related information to the nodes in the packet network and is provided to the control plane for computing forward routing information.

- Type 9 - Link Local LSA (OSPFv2), Intra-Area-Prefix LSA (OSPFv3)
  - For OSPFv2, this is a link-local "opaque" LSA as defined by RFC2370.
  - For OSPFv3, this LSA carries the IPv6 prefixes of the router and network links.

https://www.force10networks.com/CSPortal20/KnowledgeBase/DOCUMENTATION/CLIConfi g/FTOS/All_CONFIG%20Book_8212_13-Oct-09.pdf

18.        When one of the routing network devices goes down, there is a potential to lose access to parts of the network, causing potential packet loss. Therefore, the network will want to maintain a stable topology if it is possible for data flow to continue uninterrupted. To facilitate this in networks using the Accused Products, the computed forward routing information gets

downloaded into a Forwarding Information Base (FIB) on the line cards (the data plane) of the

routing network devices.

When a router goes down without a Graceful Restart, there is a potential to lose access to parts of the network due to the necessity of network topology changes. Additionally, LSA flooding and reconvergence can cause substantial delays. It is, therefor, desirable that the network maintain a stable topology if it is possible for data flow to continue uninterrupted.

OSPF Graceful Restart recognizes the fact that in a modern router, the control plane and data plane functionality are separate, restarting the control plane functionality (such as the failover of the active RPM to the backup in a redundant configuration), does not necessarily have to interrupt the forwarding of data packets. This behavior is supported because the forwarding tables previously computed by an active RPM have been downloaded into the Forwarding Information Base on the line cards (the data plane), and are still resident. For packets that have existing FIB/CAM entries, forwarding between ingress and egress ports/VLANs etc., can continue uninterrupted while the control plane OSPF process comes back to full functionality and rebuilds its routing tables.

https://www.force10networks.com/CSPortal20/KnowledgeBase/DOCUMENTATION/CLIConfig/FTOS/All_CONFIG%20Book_8212_13-Oct-09.pdf

19.     The data plane provides fast propagation of link state information. For example,

type 9 link-local opaque grace-LSAs notify the helper neighbors during a restart process. The other

nodes routers continue to announce information regarding the restarting router if the network

topology is unchanged. Link state information contains the forward route information for the

nodes.

The grace period is the time period that a router defines for other adjacent routers to wait for it to return to full control plane functionality, and which it advertises to its neighbors. When an outage occurs, the neighbors will wait for this time period before flooding LSAs and beginning reconvergence. When a router is attempting to restart gracefully, it will originate Type 9 link local opaque grace-LSAs that notify its helper neighbors that the restart process is beginning. During this period, the helper neighbor routers continue to announce the restarting router as fully adjacent, as long as the network topology remains unchanged. When the restarting router completes its restart, it flushes the grace-LSAs, thereby notifying its neighbors that the restart is complete. This should happen before the grace period expires.

https://www.force10networks.com/CSPortal20/KnowledgeBase/DOCUMENTATION/CLIConfig/FTOS/All_CONFIG%20Book_8212_13-Oct-09.pdf

20.     Moreover, Fast Convergence allows a user to define the speeds at which link-state information originates and accepted to speed up route information propagation.

## Fast Convergence ( OSPFv2, IPv4 only)

Fast Convergence allows you to define the speeds at which LSAs are originated and accepted, and reduce OSPFv2 end-to-end convergence time. FTOS enables you to accept and originate LSAa as soon as they are available to speed up route information propagation.

https://www.force10networks.com/CSPortal20/KnowledgeBase/DOCUMENTATION/CLIConfig/FTOS/All_CONFIG%20Book_8212_13-Oct-09.pdf

21.     In view of preceding paragraphs, each and every element of at least claim 1 of the '921 Patent is found in the Accused Products.

22.     Defendants continue to directly infringe at least one claim of the '921 Patent, literally or under the doctrine of equivalents, by making, using, selling, offering for sale, importing, and/or distributing the Accused Products in the United States, including within this judicial district, without the authority of Brazos.

23.     And upon information and belief, each and every element of at least one claim of the patent-in-suit is performed or practiced by Defendants at least through Defendants' own use and configuration of its own Accused Products, and/or through Defendants' own testing and configuration of its own Accused Products, and/or through Defendants' providing services for its Accused Products, including but not limited to providing installation, deployment, support and configuration of its Accused Products.

24.     In May 2020, Plaintiff filed a suit against Defendants asserting infringement of the same patent and by the same accused products that are asserted in this case. Plaintiff dismissed the prior suit before filing this suit. As a result of the prior suit, Defendants had notice and actual or constructive knowledge of their infringement of the patent-in-suit since at least

May 2020, before the filing of this case.  Further, Defendants had knowledge of their

infringement of the patent-in-suit before the filing of this Amended Complaint.[1]

      25.     Since at least May 2020, through its actions, Defendants have actively induced

product makers, distributors, retailers, and/or end users of the Accused Products to infringe the

'921 Patent throughout the United States, including within this judicial district, by, among other

things, advertising and promoting the use of the Accused Products in various websites, including

providing and disseminating product descriptions, operating manuals, and other instructions on

how to implement and configure the Accused Products. Examples of such advertising,

promoting, and/or instructing include the documents at:

- https://www.networkworld.com/article/2179414/dell-takes-deeper-dive-into-networking--buys-force10.html

- https://www.force10networks.com/CSPortal20/KnowledgeBase/DOCUMENTATION/

---

[1] Dell filed a motion to dismiss that is mooted by this amended complaint. Dell's motion cites a WDTX case (which relies authority from the District of Delaware) for the proposition that knowledge of a plaintiff's patent after the lawsuit was filed is insufficient to plead the requisite knowledge for indirect infringement. *See Aguirre v. Powerchute Sports, LLC*, No. SA-10-CV-0702 XR, 2011 WL 2471299, at *3 (W.D. Tex. June 17, 2011) (citing *Xpoint Techs. v. Microsoft Corp.*, 730 F.Supp.2d 349 (D. Del. 2010)). Several Delaware courts have since rejected this rule because there is no statutory basis to support it and because there is no purpose served by the formality of requiring the plaintiff to file an amended complaint in order to be allowed to assert knowledge of the patents during the period following the filing of the original complaint. *See Walker Digital, LLC v. Facebook, Inc.*, 852 F. Supp. 2d 559, 566 (D. Del. 2012) ("The court acknowledges that this result is inconsistent with its prior decisions in *Xpoint Techs. v. Microsoft Corp.*, 730 F.Supp.2d 349 (D.Del.2010), and *EON Corp. IP Holdings LLC v. FLO TV Inc.*, 802 F.Supp.2d 527 (D. Del. 2011). Given the ease of amendment, the limitation of damages to post-knowledge conduct, and in the interests of judicial economy, the court finds that the better reasoning is to allow a complaint that satisfies Rule 8 to proceed to discovery rather than dismissing it for lack of pre-filing knowledge when, by the time the motion to dismiss has been filed, defendant in fact has the requisite knowledge as pled by plaintiff."); *see also IOENGINE, LLC v. PayPal Holdings, Inc.*, CV 18-452-WCB, 2019 WL 330515, at *4 (D. Del. Jan. 25, 2019) ("The Court sees no purpose that would be served by the formality of requiring IOENGINE to file an amended complaint in order to be allowed to assert knowledge of the patents during the period following the filing of the original complaint.").

CLIConfig/FTOS/All_CONFIG%20Book_8212_13-Oct-09.pdf

- https://cdn.competec.ch/documents/3/9/392428/DE_Handbuch_switch.pdf

- https://www.dell.com/support/article/us/en/04/how11548/how-to-install-dell-networking-ftos-on-dell-open-networking-on-switches?lang=en

26.     Since at least May 2020, through its actions, Defendants have contributed to the infringement of the '921 Patent by having others sell, offer for sale, or use the Accused Products throughout the United States, including within this judicial district, with knowledge that the Accused Products infringe the '921 Patent. The Accused Products are especially made or adapted for infringing the '921 Patent and have no substantial non-infringing use. For example, in view of the preceding paragraphs, the Accused Products contain functionality which is material to at least one claim of the '921 Patent.

**JURY DEMAND**

Brazos hereby demands a jury on all issues so triable.

**REQUEST FOR RELIEF**

WHEREFORE, Brazos respectfully requests that the Court:

(A)     Enter judgment that Defendants infringe one or more claims of the '921 Patent literally and/or under the doctrine of equivalents;

(B)     Enter judgment that Defendants have induced infringement and continue to induce infringement of one or more claims of the '921 Patent;

(C)     Enter judgment that Defendants have contributed to and continue to contribute to the infringement of one or more claims of the '921 Patent;

(D)     Award Brazos damages, to be paid by Defendants in an amount adequate to compensate Brazos for such damages, together with pre-judgment and post-judgment interest for

the infringement by Defendants of the '921 Patent through the date such judgment is entered in

accordance with 35 U.S.C. § 284, and increase such award by up to three times the amount found

or assessed in accordance with 35 U.S.C. § 284;

(E)     Declare this case exceptional pursuant to 35 U.S.C. § 285; and

(F)     Award Brazos its costs, disbursements, attorneys' fees, and such further and

additional relief as is deemed appropriate by this Court.

Dated: May 19, 2020                       Respectfully submitted,

                                          */s/ James L. Etheridge*
                                          James L. Etheridge
                                          Texas State Bar No. 24059147
                                          Ryan S. Loveless
                                          Texas State Bar No. 24036997
                                          Travis L. Richins
                                          Texas State Bar No. 24061296

                                          ETHERIDGE LAW GROUP, PLLC
                                          2600 E. Southlake Blvd., Suite 120 / 324
                                          Southlake, Texas 76092
                                          Telephone: (817) 470-7249
                                          Facsimile: (817) 887-5950
                                          Jim@EtheridgeLaw.com
                                          Ryan@EtheridgeLaw.com
                                          Travis@EtheridgeLaw.com

                                          Mark D. Siegmund
                                          State Bar No. 24117055
                                          mark@waltfairpllc.com
                                          Law Firm of Walt, Fair PLLC.
                                          1508 North Valley Mills Drive
                                          Waco, Texas 76710
                                          Telephone: (254) 772-6400
                                          Facsimile: (254) 772-6432

                                          **COUNSEL FOR PLAINTIFF**

# EXHIBIT 3D

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | | |
|---|---|---|
| WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT, | § § § § | NO. 6:20-cv-479-ADA |
| Plaintiff, | § § | **JURY TRIAL DEMANDED** |
| v. | § § | |
| DELL TECHNOLOGIES INC., DELL INC., AND EMC CORPORATION, | § § § | |
| Defendants. | § | |

## FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff WSOU Investments, LLC d/b/a Brazos Licensing and Development ("Brazos" or "Plaintiff"), by and through its attorneys, files this First Amended Complaint ("Amended Complaint" or "Complaint") for Patent Infringement against Dell Technologies Inc., Dell Inc., and EMC Corporation (collectively, "Defendants") and alleges:

## NATURE OF THE ACTION

1. This is a civil action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. §§ 1, et seq., including §§ 271, 281, 284, and 285.

## THE PARTIES

2. Brazos is a limited liability corporation organized and existing under the laws of Delaware, with its principal place of business at 605 Austin Avenue, Suite 6, Waco, Texas 76701.

3. On information and belief, defendant Dell Technologies Inc. is a Delaware corporation with a principal place of business at One Dell Way, Round Rock, Texas 78682.

4.      On information and belief, defendant Dell Inc. is a Delaware corporation with a principal place of business at One Dell Way, Round Rock, Texas 78682. Dell Inc. is wholly owned by its corporate parent, Dell Technologies Inc.

5.      On information and belief, defendant EMC Corporation is a Massachusetts corporation with a principal place of business at One Dell Way, Round Rock, Texas 78682. EMC Corporation is wholly owned by its corporate parent, Dell Technologies Inc.

## JURISDICTION AND VENUE

6.      This is an action for patent infringement which arises under the Patent Laws of the United States, in particular, 35 U.S.C. §§ 271, 281, 284, and 285.

7.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

8.      This Court has specific and general personal jurisdiction over each defendant pursuant to due process and/or the Texas Long Arm Statute, because each defendant has committed acts giving rise to this action within Texas and within this judicial district. The Court's exercise of jurisdiction over each defendant would not offend traditional notions of fair play and substantial justice because each defendant has established minimum contacts with the forum. For example, on information and belief, each defendant has committed acts of infringement in this judicial district, by among other things, selling and offering for sale products that infringe the asserted patent, directly or through intermediaries, as alleged herein.

9.      Venue in the Western District of Texas is proper pursuant to 28 U.S.C. §§1391 and/or 1400(b). Each defendant has established places of business in the Western District of Texas. Each defendant is registered to do business in Texas. Upon information and belief, each defendant has transacted business in this District and has committed acts of infringement in this District.

## COUNT ONE - INFRINGEMENT OF
## U.S. PATENT NO. 8,402,129

10.    Brazos re-alleges and incorporates by reference the preceding paragraphs of this Complaint.

11.    On March 19, 2013, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,402,129 ("the '129 Patent"), entitled "Method and Apparatus for Efficient Reactive Monitoring." A true and correct copy of the '129 Patent is attached as Exhibit A to this Complaint.

12.    Brazos is the owner of all rights, title, and interest in and to the '129 Patent, including the right to assert all causes of action arising under the '129 Patent and the right to any remedies for the infringement of the '129 Patent.

13.    Defendants make, use, sell, offer for sale, import, and/or distribute in the United States, including within this judicial district, products such as, but not limited to, network management systems, including but not limited to, Dell EMC OpenManage Enterprise and Dell OpenManage Enterprise (OME) and OpenManage Network Manager (OMNM) applications (collectively, the "Accused Products").

14.    The Accused Products can provide a console for managing hardware devices, including Dell servers, storage arrays, tape libraries, network devices (switches/routers), printers, and clients distributed throughout a network. Dell OME can be integrated with OMNM to view networking information. From a central console, an administrator can exercise control based on proactive alerts and notifications.

15. Various devices that can be discovered and monitored by Dell OME.



Product Testing.

16. Dell OME identifies systems experiencing problems and alerts the administrator to help reduce the risk of system downtime. Using the web-enabled graphical user interface, one can monitor systems within the network.

## Dell EMC OpenManage Enterprise

Dell EMC OpenManage Enterprise is an intuitive infrastructure management console. It is designed to take the complexity out of IT infrastructure management. It delivers better results with less time and fewer steps. OpenManage Enterprise helps IT professionals balance time and energy between complex IT infrastructure and business goals.

https://www.delltechnologies.com/en-us/solutions/openmanage/enterprise.htm

## OpenManage Enterprise

OpenManage Enterprise (OME) is a hardware management and monitoring console that provides a comprehensive view of devices. These devices include servers, chassis, network switches, and other third-party devices on the enterprise network. OME is designed with a focus

https://topics-cdn.dell.com/pdf/dell-openmanage-enterprise-v32_api-guide2_en-us.pdf



Product Testing

17.    Dell OME monitors various resources (e.g. "current" of system board) of nodes

(i.e. monitored device) within the network. As an example, the alert with MESSAGE ID -

AMP0302 is generated for a monitored device when the system board current of the device (i.e. usage of resource) reaches beyond the upper warning threshold.



Product Testing.

18.      The Accused Products poll the monitored devices on regular user-defined time interval bases irrespective of any alerts received from the monitoring devices. Dell OME provides independent settings and functionalities for alert policies and health check polling.

19.      Dell OME provides the ability for a user to define the time interval for the health poll recurrence and a Global health task performs the job repeatedly to poll the health of the devices in defined time intervals irrespective of the alerts received by Dell OME. When an alert

is received, the polling of the devices may occur independently at the user-defined interval (i.e. irrespective of the alert).



Product Testing.



Product Testing.

20.     In view of preceding paragraphs, each and every element of at least claim 3 of the '129 Patent is found in the Accused Products.

21.     Defendants continue to directly infringe at least one claim of the '129 Patent, literally or under the doctrine of equivalents, by making, using, selling, offering for sale, importing, and/or distributing the Accused Products in the United States, including within this judicial district, without the authority of Brazos.

22.     And upon information and belief, each and every element of at least one claim of the patent-in-suit is performed or practiced by Defendants at least through Defendants' own use and configuration of its own Accused Products, and/or through Defendants' own testing and configuration of its own Accused Products, and/or through Defendants' providing services for its Accused Products, including but not limited to providing installation, deployment, support and configuration of its Accused Products.

23.     In May 2020, Plaintiff filed a suit against Defendants asserting infringement of the same patent and by the same accused products that are asserted in this case.  Plaintiff dismissed the prior suit before filing this suit.  As a result of the prior suit, Defendants had notice and actual or constructive knowledge of their infringement of the patent-in-suit since at least May 2020, before the filing of this case.  Further, Defendants had knowledge of their infringement of the patent-in-suit before the filing of this Amended Complaint.[1]

24.     Since at least May 2020, through its actions, Defendants have actively induced product makers, distributors, retailers, and/or end users of the Accused Products to infringe the

---

[1] Dell filed a motion to dismiss that is mooted by this amended complaint.  Dell's motion cites a WDTX case (which relies authority from the District of Delaware) for the proposition that knowledge of a plaintiff's patent after the lawsuit was filed is insufficient to plead the requisite knowledge for indirect infringement.  *See Aguirre v. Powerchute Sports, LLC*, No. SA-10-CV-0702 XR, 2011 WL 2471299, at *3 (W.D. Tex. June 17, 2011) (citing *Xpoint Techs. v. Microsoft Corp.*, 730 F.Supp.2d 349 (D. Del. 2010)).  Several Delaware courts have since rejected this rule

'129 Patent throughout the United States, including within this judicial district, by, among other things, advertising and promoting the use of the Accused Products in various websites, including providing and disseminating product descriptions, operating manuals, and other instructions on how to implement and configure the Accused Products. Examples of such advertising, promoting, and/or instructing include the documents at:

- https://www.delltechnologies.com/en-us/solutions/openmanage/enterprise.htm

- https://topics-cdn.dell.com/pdf/dell-openmanage-enterprise-v32_api-guide2_en-us.pdf

- https://www.dell.com/support/article/en-us/sln312494/support-for-openmanage-essentials?lang=en

- https://www.dell.com/support/article/en-us/sln310714/support-for-openmanage-enterprise?lang=en

- https://www.dell.com/us/bsd/p/dell-openmanage-network-manager/pd?c=us&cs=04&l=en&s=bsd&redirect=1

- https://www.youtube.com/watch?v=MNIJNVbeXLE

- https://topics-cdn.dell.com/pdf/openmanage-essentials-v25_users-guide_en-us.pdf

- https://topics-cdn.dell.com/pdf/dell-openmanage-server-administrator-

because there is no statutory basis to support it and because there is no purpose served by the formality of requiring the plaintiff to file an amended complaint in order to be allowed to assert knowledge of the patents during the period following the filing of the original complaint. *See Walker Digital, LLC v. Facebook, Inc.*, 852 F. Supp. 2d 559, 566 (D. Del. 2012) ("The court acknowledges that this result is inconsistent with its prior decisions in *Xpoint Techs. v. Microsoft Corp.*, 730 F.Supp.2d 349 (D.Del.2010), and *EON Corp. IP Holdings LLC v. FLO TV Inc.*, 802 F.Supp.2d 527 (D. Del. 2011). Given the ease of amendment, the limitation of damages to post-knowledge conduct, and in the interests of judicial economy, the court finds that the better reasoning is to allow a complaint that satisfies Rule 8 to proceed to discovery rather than dismissing it for lack of pre-filing knowledge when, by the time the motion to dismiss has been filed, defendant in fact has the requisite knowledge as pled by plaintiff."); *see also IOENGINE, LLC v. PayPal Holdings, Inc.*, CV 18-452-WCB, 2019 WL 330515, at *4 (D. Del. Jan. 25, 2019) ("The Court sees no purpose that would be served by the formality of requiring IOENGINE to file an amended complaint in order to be allowed to assert knowledge of the patents during the period following the filing of the original complaint.").

v8.3_connectivity-guide_en-us.pdf

- http://www.doradosoftware.com/_assets/downloads/omnm/omnmv8userguide.pdf

- https://www.dell.com/support/manuals/us/en/04/dell-openmanage-essentials-v2.2/ome22ug/status-polling-schedule-settings?guid=guid-1a47107a-e2c9-4102-b2e3-938477093317&lang=en-us

- https://downloads.dell.com/manuals/all-products/esuprt_ser_stor_net/esuprt_networking/dell-openmanage-network-manager_owners-manual4_en-us.pdf

25.     Since at least May 2020, through its actions, Defendants have contributed to the infringement of the '129 Patent by having others sell, offer for sale, or use the Accused Products throughout the United States, including within this judicial district, with knowledge that the Accused Products infringe the '129 Patent. The Accused Products are especially made or adapted for infringing the '129 Patent and have no substantial non-infringing use. For example, in view of the preceding paragraphs, the Accused Products contain functionality which is material to at least one claim of the '129 Patent.

## JURY DEMAND

Brazos hereby demands a jury on all issues so triable.

## REQUEST FOR RELIEF

WHEREFORE, Brazos respectfully requests that the Court:

(A)     Enter judgment that Defendants infringe one or more claims of the '129 Patent literally and/or under the doctrine of equivalents;

(B)     Enter judgment that Defendants have induced infringement and continue to induce infringement of one or more claims of the '129 Patent;

(C)     Enter judgment that Defendants have contributed to and continue to contribute to the infringement of one or more claims of the '129 Patent;

(D)     Award Brazos damages, to be paid by Defendants in an amount adequate to compensate Brazos for such damages, together with pre-judgment and post-judgment interest for the infringement by Defendants of the '129 Patent through the date such judgment is entered in accordance with 35 U.S.C. § 284, and increase such award by up to three times the amount found or assessed in accordance with 35 U.S.C. § 284;

(E)     Declare this case exceptional pursuant to 35 U.S.C. § 285; and

(F)     Award Brazos its costs, disbursements, attorneys' fees, and such further and additional relief as is deemed appropriate by this Court.

Dated: October 19, 2020    Respectfully submitted,

          */s/ James L. Etheridge*
          James L. Etheridge
          Texas State Bar No. 24059147
          Ryan S. Loveless
          Texas State Bar No. 24036997
          Travis L. Richins
          Texas State Bar No. 24061296

          ETHERIDGE LAW GROUP, PLLC
          2600 E. Southlake Blvd., Suite 120 / 324
          Southlake, Texas 76092
          Telephone: (817) 470-7249
          Facsimile: (817) 887-5950
          Jim@EtheridgeLaw.com
          Ryan@EtheridgeLaw.com
          Travis@EtheridgeLaw.com

          Mark D. Siegmund
          State Bar No. 24117055
          mark@waltfairpllc.com
          Law Firm of Walt, Fair PLLC.
          1508 North Valley Mills Drive
          Waco, Texas 76710
          Telephone: (254) 772-6400
          Facsimile: (254) 772-6432

          **COUNSEL FOR PLAINTIFF**

# EXHIBIT 4

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| WSOU INVESTMENTS, LLC, d/b/a BRAZOS LICENSING AND DEVELOPMENT, <br><br> Plaintiff, <br><br> v. <br><br> HEWLETT PACKARD ENTERPRISE COMPANY, <br><br> Defendant. | Civil Action No. 6:20-cv-00725-ADA <br> Civil Action No. 6:20-cv-00726-ADA <br> Civil Action No. 6:20-cv-00728-ADA <br> Civil Action No. 6:20-cv-00730-ADA <br> Civil Action No. 6:20-cv-00783-ADA |

**DEFENDANT HEWLETT PACKARD ENTERPRISE COMPANY'S NOTICE OF
SUBPOENA TO THIRD-PARTY AQUA LICENSING LLC**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, pursuant to Rules 34 and 45 of the Federal Rules of Civil

Procedure, Defendant Hewlett Packard Enterprise Company ("HPE"), by and through its

undersigned counsel, will serve subpoenas on third-party Aqua Licensing LLC ("Aqua").

PLEASE TAKE FURTHER NOTICE that HPE will require Aqua to produce the

documents, tangible things, and items set forth in Exhibit A1 to the subpoena, and to testify to

the topics as outlined in Exhibit A2.  The documents, tangible things, and items shall be

produced at Sidley Austin LLP c/o John Miscevich, 555 California St., Suite 2000, San

Francisco, CA 94104, on January 7, 2022, or at another date and location upon which counsel

and the subpoenaed party may jointly agree.  The deposition shall take place on January 21, 2022

at 9:00 am Pacific Time at Sidley Austin LLP, 555 California St., Suite 2000, San Francisco, CA

94104 or at another date and location upon which counsel and the subpoenaed party may jointly

agree.  In view of the current circumstances related to COVID-19, the deposition may take place

remotely by oral examination via video conference.

Dated:  December 17, 2021

*/s/ Michael R. Franzinger*
_____
Michael D. Hatcher
Texas State Bar No. 24027067
Callie C. Butcher
Texas State Bar No. 24092203
SIDLEY AUSTIN LLP
2021 McKinney Avenue, Suite 2000
Dallas, TX 75201
Telephone: (214) 981-3300
Facsimile: (214) 981-3400
mhatcher@sidley.com
cbutcher@sidley.com

Michael R. Franzinger
DC Bar No. 500080
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC 20005
Telephone: (202) 736-8000
Facsimile: (202) 736-8711
mfranzinger@sidley.com

Barry K. Shelton
Texas State Bar No. 24055029
SHELTON COBURN LLP
311 RR 620, Suite 205
Austin, TX 78734-4775
Telephone: (512) 263-2165
Facsimile: (512) 263-2166
bshelton@sheltoncoburn.com

***Counsel for Defendant***
***Hewlett Packard Enterprise Company***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 17th day of December 2021, I electronically served the foregoing upon the following:

| *Counsel for WSOU, LLC*<br><br>Alessandra C. Messing<br>Timothy J. Rousseau<br>Yarelyn Mena<br>BROWN RUDNICK LLP<br>7 Times Square<br>New York, New York 10036<br>telephone: (212) 209-4800<br>facsimile: (212) 209-4801<br><br>Edward J. Naughton<br>Rebecca MacDowell Lecaroz<br>BROWN RUDNICK LLP<br>One Financial Center<br>Boston, Massachusetts 02111<br>telephone: (617) 856-8200<br>facsimile: (617) 856-8201<br><br>David M. Stein Sarah G. Hartman<br>BROWN RUDNICK LLP<br>2211 Michelson Drive, 7th Floor<br>Irvine, California 92612<br>telephone: (949) 752-7100<br>facsimile: (949) 252-1514<br><br>Raymond W. Mort, III<br>THE MORT LAW FIRM, PLLC<br>100 Congress Avenue, Suite 2000<br>Austin, Texas 78701<br>tel/fax: (512) 677-6825 | wsou-hpe@brownrudnick.com<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>raymort@austinlaw.com |
| --- | --- |

  /s/ Michael  R. Franzinger
Michael R. Franzinger

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Western District of Texas

| | |
|---|---|
| WSOU INVESTMENTS, LLC, | ) |
| _Plaintiff_ | ) |
| v. | ) |
| | ) |
| HEWLETT PACKARD ENTERPRISE COMPANY, | ) |
| _Defendant_ | ) |

Civil Action No.   6:20-cv-00725, -726, -728, -730, -783

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                          Aqua Licensing LLC
                 201 Mission Suite 1200, San Francisco, CA 94105
_____
_(Name of person to whom this subpoena is directed)_

✔ _Production:_ **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:  See Exhibit A-1

| Place: Sidley Austin LLP c/o John Miscevich 555 California Street, Suite 2000 San Francisco, CA 94104 | Date and Time: 01/07/2022 5:00 pm |
|---|---|

❏ _Inspection of Premises:_ **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   12/17/2021

_CLERK OF COURT_

                                              OR

_____           _____
_Signature of Clerk or Deputy Clerk_           /s/ John Miscevich
                                        _Attorney's signature_

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_   Hewlett Packard Enterprise Company
_____ , who issues or requests this subpoena, are:

 John Miscevich, 2021 McKinney Avenue, Suite 2000, Dallas, TX 75201, jmiscevich@sidley.com, (214) 981-3371

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   6:20-cv-00725, -726, -728, -730, -783

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____    on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

  **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

AO 88A  (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Western District of Texas

| | | |
|---|---|---|
| WSOU INVESTMENTS, LLC, | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.  6:20-cv-00725, -726, -728, -730, -783 |
| HEWLETT PACKARD ENTERPRISE COMPANY, | ) | |
| *Defendant* | ) | |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:                                  Aqua Licensing LLC
                        201 Mission Suite 1200, San Francisco, CA 94105
*(Name of person to whom this subpoena is directed)*

☑ Testimony:  YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:  See Exhibit A2

| Place:  Sidley Austin LLP<br>555 California Street, Suite 2000<br>San Francisco, CA 94104 or via remote platform | Date and Time:<br>01/21/2022 9:00 am |
|---|---|

The deposition will be recorded by this method:  Video and/or stenographic means

☑ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:  See Exhibit A1

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:      12/17/2021

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| _____ | | /s/ John Miscevich<br>_____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*  Hewlett Packard Enterprise Company                                                                    , who issues or requests this subpoena, are:

John Miscevich, 2021 McKinney Avenue, Suite 2000, Dallas, TX 75201, jmiscevich@sidley.com, (214) 981-3371

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.  6:20-cv-00725, -726, -728, -730, -783

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❒ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❒ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) _For a Trial, Hearing, or Deposition._** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
     **(i)** is a party or a party's officer; or
     **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) _For Other Discovery._** A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) _Avoiding Undue Burden or Expense; Sanctions._** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) _Command to Produce Materials or Permit Inspection._**
   **(A)** _Appearance Not Required._ A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** _Objections._ A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
     **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
     **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) _Quashing or Modifying a Subpoena._**

   **(A)** _When Required._ On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

     **(i)** fails to allow a reasonable time to comply;
     **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
     **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
     **(iv)** subjects a person to undue burden.
   **(B)** _When Permitted._ To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

     **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
     **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** _Specifying Conditions as an Alternative._ In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
     **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
     **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) _Producing Documents or Electronically Stored Information._** These procedures apply to producing documents or electronically stored information:
   **(A)** _Documents._ A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** _Form for Producing Electronically Stored Information Not Specified._ If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** _Electronically Stored Information Produced in Only One Form._ The person responding need not produce the same electronically stored information in more than one form.
   **(D)** _Inaccessible Electronically Stored Information._ The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) _Claiming Privilege or Protection._**
   **(A)** _Information Withheld._ A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
     **(i)** expressly make the claim; and
     **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** _Information Produced._ If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# EXHIBIT A-1

**EXHIBIT A1**

INSTRUCTIONS

1.      In responding to the following document requests, furnish all available documents in Your possession, custody, or control.

2.      Please produce electronically stored information in the native form in which it is ordinarily maintained.  Paper Documents, if any, may be scanned and produced as PDF files.

3.      Confidential Documents may be produced in accordance with the Protective Order in this case, a copy of which is attached as Exhibit B.

DEFINITIONS

1.      "Aqua" "You," or "Your" refers to Aqua Licensing, LLC, any affiliated entity, its successors, its predecessors, and all Persons acting or purporting to act at or under the direction or control of Aqua Licensing, LLC.

2.      "Patents-in-Suit" refers to U.S. Patent Nos. 7,280,534 ("the '534 Patent"); 7,386,630 ("the '630 Patent"); 7,519,056 ("the '056 Patent"); 8,462,774 ("the '774 Patent"); and 9,398,629 ("the '629 Patent"), and all related patents or patent applications, whether foreign or domestic.

3.      "This Litigation" shall mean *WSOU Investments, LLC, d/b/a Brazos Licensing and Development v. Hewlett Packard Enterprise Company,* Civil Action Nos. 6:20-cv-725, -726, -728, -730, and -783, filed in the U.S. District Court for the Western District of Texas on August 12, 2020.

4.      "HPE" shall mean Hewlett Packard Enterprise Company.

5.      "WSOU" shall mean WSOU Investments, LLC d/b/a Brazos Licensing and Development, any affiliated entity, its successors, its predecessors and all persons acting or

purporting to act at or under the direction or control of WSOU, including any attorneys for WSOU.

6.      "Communication" shall have the broadest possible meaning and shall include any transmission or exchange of information by one or more persons or entities and/or between two or more persons or entities by any means, including by email, telephone, letter, facsimile, or by any other process, electric, electronic or otherwise.

7.      "Document" shall be construed under the broadest possible construction and shall include electronic media and shall include all documents in Your possession, custody or control. By way of illustration and without limitation, documents include the following: originals, drafts and all non-identical copies of memoranda, reports, notes, graphs, laboratory notebooks, correspondence, interoffice communications, letters, calendars, sketches, drawings, promotional material, technical papers, printed publications, patents, and all other writings, as well as all non-paper information storage means such as sound reproductions, computer inputs and outputs, computer memory devices, as well as tangible things such as models, prototypes, and commercially saleable products.

8.      "Prior Art" shall mean all documentary and non-documentary sources, including patents, patent applications, printed publications, and things known, used, offered for sale, or sold, that may be used to determine lack of novelty and/or obviousness of the claimed subject matter in the Patents-in-Suit.

9.      "Other WSOU Defendants" shall mean any and all companies that WSOU has sued in patent litigation matters, including but not limited to ZTE Corporation, ZTE (USA), Inc., ZTE (TX), Inc.; Dell Technologies, Inc., Dell Inc., EMC Corporation, VMWare, Inc.; Huawei Technologies Co., Ltd., Huawei Technologies USA Inc., Huawei Device Co. Ltd. (f/k/a Huawei

Device (Dongguan) Co.), Huawei Device (Shenzhen) Co., Ltd. (f/k/a Huawei Device Co., Ltd.),

Huawei Device USA, Inc., Huawei Investment & Holding Co., Ltd.; Google LLC; Hewlett

Packard Enterprise Company; Juniper Networks, Inc.; Xilinx, Inc.; NEC Corporation; OnePlus

Technology (Shenzhen) Co., Ltd.; Canon, Inc.; TP-Link Technology Co., Ltd.; F5 Networks,

Inc.; Microsoft Corporation; Arista Networks, Inc.; Salesforce.com, Inc.; Cisco Systems, Inc.;

and Netgear, Inc.

10.     Any term not specifically defined herein shall be defined in accordance with its

ordinary usage and the Federal Rules of Civil Procedure.

## REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS

1.      Documents and Communications concerning the assignment, licensing,

acquisition, financial interest, security interest, lien, sale, transfer of rights (in whole or in part),

agreements, proposals, or any other disposition of or any offers to buy, sell, obtain rights to, or

license any of the Patents-in-Suit, including negotiations or discussions, by You or Your

predecessor(s) in interest.

2.      Agreements, whether executed or draft, and proposals regarding the licensing of

any of the Patents-in-Suit.

3.      Documents sufficient to show all attempts to license, sell, acquire, or assign any

of the Patents-in-Suit and/or any rights to or interests in any of the Patents-in-Suit.

4.      Documents concerning any decision to license, sell, assign, or offer to license,

sell, or assign any of the Patents-in-Suit and/or any rights to or interests in any of the Patents-in-

Suit.

5.      Documents sufficient to identify all persons and/or entities that have been

involved in the licensing, assignment, sale, or offer(s) to license, assign, or sell, of any of the

Patents-in-Suit.

6.      Documents sufficient to identify all entities of which You are aware that are currently, or were previously, licensed to any of the Patents-in-Suit.

7.      Documents and Communications reflecting assurances, covenants not to sue, and understandings not to assert any of the Patents-in-Suit against potential licensees, including copies of any such agreements, and the circumstances relating to such assurances, covenants not to sue, or understandings not to assert any of the Patents-in-Suit.

8.      Documents concerning any current or former right, title, or interest in any of the Patents-in-Suit, including the chain of title.

9.      All Documents concerning valuations, attempts to value, or otherwise reflecting the value of any of the Patents-in-Suit, including of any portfolio containing any of the Patents-in-Suit.

10.     All Documents concerning any evaluation, ranking, rating, or attempts to evaluate, rank, or rate (e.g., based on strength, validity, value, or otherwise) any of the Patents-in-Suit or any portfolio containing any of the Patents-in-Suit.

11.     Any evaluation or analysis of any of the Patents-in-Suit, including evaluation or analysis of infringement, validity, Prior Art, or commercialization, and Documents and Communications concerning the same.

12.     All Documents and Communications concerning any agreement, proposal, offer, or other discussions with Allied Security Trust regarding any of the Patents-in-Suit.

13.     All Documents and Communications concerning any agreement, proposal, offer, or other discussions with Houlihan Lokey, Inc. regarding any of the Patents-in-Suit.

14.     All Documents concerning any agreement, proposal, offer, or discussions with WSOU or any affiliate of WSOU.

15.     Documents concerning and Communications with WSOU, any affiliate of WSOU, or Wade and Company regarding the Patents-in-Suit, This Litigation, or HPE, including Documents and/or Communications relating to the licensing of any of the Patents-in-Suit, compensation, license rates, royalties related thereto, royalty reports, agreements, the decision to file This Litigation, and requests or offers to provide assistance, witnesses and/or documents for use in This Litigation.

16.     Documents, including agreements, identifying Your relationship with Stuart A. Shanus, Marc Wade, or Craig Etchegoyen and entities associated therewith, including without limitation, Orange Holdings, WSOU, any WSOU affiliates, and Wade and Company, and Uniloc USA, Inc., including any patent license agreements with any such entity that relate to patents or patent applications that claim subject matter related to the subject matter of any of the Patents-in-Suit.

17.     Communications with any Other WSOU Defendant concerning WSOU, any of the Patents-in-Suit, or any portfolio containing any of the Patents-in-Suit.

18.     All Documents produced by You in litigation involving any Other WSOU Defendant.

# EXHIBIT A-2

**EXHIBIT A2**

DEFINITIONS AND INSTRUCTIONS

1.      In responding to this request for a deposition, please designate one or more other officers, directors, managing agents, or other Persons who are the most knowledgeable with respect to the topics identified below.

2.      The Definitions outlined in Exhibit A1 are incorporated by reference herein and apply with equal force to the topics described below.

DEPOSITION TOPICS

1.      Documents produced by You, including authentication of the Documents.

2.      The assignment, licensing, acquisition, financial interest, security interest, lien, sale, transfer of rights (in whole or in part), agreements, proposals, or any other disposition of or any offers to buy, sell, obtain rights to, or license any of the Patents-in-Suit, including negotiations or discussions, by You or Your predecessor(s) in interest.

3.      Agreements, whether executed or draft, and proposals regarding the licensing of any of the Patents-in-Suit.

4.      All attempts to license, sell, acquire, or assign any of the Patents-in-Suit and/or any rights to or interests in any of the Patents-in-Suit.

5.      Any decision to license, sell, assign, or offer to license, sell, or assign any of the Patents-in-Suit and/or any rights to or interests in any of the Patents-in-Suit.

6.      The identity of all persons and/or entities that have been involved in the licensing, assignment, sale, or offer(s) to license, assign, or sell, of any of the Patents-in-Suit.

7.      The identity of all entities of which You are aware that are currently, or were previously, licensed to any of the Patents-in-Suit.

8.      Assurances, covenants not to sue, and understandings not to assert any of the Patents-in-Suit against potential licensees, including copies of any such agreements, and the circumstances relating to such assurances, covenants not to sue, or understandings not to assert any of the Patents-in-Suit.

9.      Any current or former right, title, or interest in any of the Patents-in-Suit, including the chain of title.

10.     The value of, any valuations of, or attempts to value any of the Patents-in-Suit, including of any portfolio containing any of the Patents-in-Suit.

11.     Any evaluation, ranking, rating, or attempts to evaluate, rank, or rate (e.g., based on strength, validity, value, or otherwise) any of the Patents-in-Suit or any portfolio containing any of the Patents-in-Suit.

12.     Any evaluation or analysis of any of the Patents-in-Suit, including evaluation or analysis of infringement, validity, Prior Art, or commercialization.

13.     Any agreement, proposal, offer, or other discussions with Allied Security Trust regarding any of the Patents-in-Suit.

14.     Any agreement, proposal, offer, or other discussions with Houlihan Lokey, Inc. regarding any of the Patents-in-Suit.

15.     Any agreement, proposal, offer, or discussions with WSOU or any affiliate of WSOU.

16.     Communications with WSOU, any affiliate of WSOU, or Wade and Company regarding the Patents-in-Suit, This Litigation, or HPE, including Communications relating to the licensing of any of the Patents-in-Suit, compensation, license rates, royalties related thereto,

royalty reports, agreements, the decision to file This Litigation, and requests or offers to provide assistance, witnesses and/or documents for use in This Litigation.

17.     Your relationship with Stuart A. Shanus, Marc Wade, or Craig Etchegoyen and entities associated therewith, including without limitation, Orange Holdings, WSOU, any WSOU affiliates, Wade and Company, and Uniloc USA, Inc., including any patent license agreements with any such entity that relate to patents or patent applications that claim subject matter related to the subject matter of any of the Patents-in-Suit.

18.     Communications with any Other WSOU Defendant concerning WSOU, any of the Patents-in-Suit, or any portfolio containing any of the Patents-in-Suit.

19.     The search for and collection of Documents and Communications in response to this subpoena.

# EXHIBIT B

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT, | Nos. 6:20-cv-00725-ADA |
| | 6:20-cv-00726-ADA |
| Plaintiff, | 6:20-cv-00727-ADA |
| | 6:20-cv-00728-ADA |
| v. | 6:20-cv-00729-ADA |
| | 6:20-cv-00730-ADA |
| HEWLETT PACKARD ENTERPRISE COMPANY, | 6:20-cv-00783-ADA |
| Defendant. | |

PROTECTIVE ORDER

WHEREAS, plaintiff WSOU Investments LLC d/b/a Brazos Licensing and Development and defendant Hewlett Packard Enterprise Company, hereinafter referred to as "the Parties," believe that certain information that is or will be encompassed by discovery demands by the Parties involves the production or disclosure of trade secrets, confidential business information, or other proprietary information;

WHEREAS, the Parties seek a protective order limiting disclosure and use thereof in this Action (this "Action" being limited to the seven cases identified in the caption of this order) in accordance with Federal Rule of Civil Procedure 26(c):

THEREFORE, it is hereby stipulated among the Parties and ORDERED that:

1. Each Party may designate as confidential for protection under this Order, in whole or in part, any document, information, or material that constitutes or includes, in whole or in part, confidential or proprietary information or trade secrets of the Party or a Third Party to whom the Party reasonably believes it owes an obligation of confidentiality with respect to such document, information, or material ("Protected Material"). Protected Material shall be designated by the

Party producing it by affixing a legend or stamp on such document, information, or material as follows: "CONFIDENTIAL."  The word "CONFIDENTIAL" shall be placed clearly on each page of the Protected Material (except deposition and hearing transcripts and natively produced documents) for which such protection is sought.  For deposition and hearing transcripts, the word "CONFIDENTIAL" shall be placed on the cover page of the transcript (if not already present on the cover page of the transcript when received from the court reporter) by each attorney receiving a copy of the transcript after that attorney receives notice of the designation of some or all of that transcript as "CONFIDENTIAL."  For natively produced Protected Material, the word "CONFIDENTIAL" shall be placed in the filename of each such natively produced document.

2. Any document produced before issuance of this Order, including pursuant to the Court's Order Governing Proceedings - Patent Case, with the designation "Confidential" or the like shall receive the same treatment as if designated "CONFIDENTIAL" under this order and any such documents produced with the designation "Confidential - Outside Attorneys' Eyes Only" or the like shall receive the same treatment as if designated "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY" under this Order, unless and until such document is re-designated to have a different classification under this Order.

3. With respect to documents, information, or material designated "CONFIDENTIAL," "CONFIDENTIAL - ATTORNEYS' EYES ONLY," "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY," "CONFIDENTIAL - SOURCE CODE," or "CONFIDENTIAL - RESTRICTED

2

SOURCE CODE" ("DESIGNATED MATERIAL"),[1] subject to the provisions herein and unless otherwise stated, this Order governs, without limitation: (a) all documents, electronically stored information, and/or things as defined by the Federal Rules of Civil Procedure; (b) all pretrial, hearing or deposition testimony, or documents marked as exhibits or for identification in depositions and hearings; (c) pretrial pleadings, exhibits to pleadings and other court filings; (d) affidavits; and (e) stipulations. All copies, reproductions, extracts, digests, and complete or partial summaries prepared from any DESIGNATED MATERIALS shall also be considered DESIGNATED MATERIAL and treated as such under this Order.

4. A designation of Protected Material (*i.e.*, "CONFIDENTIAL," "CONFIDENTIAL - ATTORNEYS' EYES ONLY," "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY," "CONFIDENTIAL - SOURCE CODE," or "CONFIDENTIAL – RESTRICTED SOURCE CODE") may be made at any time. Inadvertent or unintentional production of documents, information, or material that has not been designated as DESIGNATED MATERIAL shall not be deemed a waiver in whole or in part of a claim for confidential treatment. Any Party that inadvertently or unintentionally produces Protected Material without designating it as DESIGNATED MATERIAL may request destruction of that Protected Material by notifying the recipient(s) as soon as reasonably possible after the producing Party becomes aware of the inadvertent

---

[1] The term DESIGNATED MATERIAL is used throughout this Protective Order to refer to the class of materials designated as "CONFIDENTIAL," "CONFIDENTIAL - ATTORNEYS' EYES ONLY," "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY," "CONFIDENTIAL - SOURCE CODE," or "CONFIDENTIAL – RESTRICTED SOURCE CODE" individually and collectively.

or unintentional disclosure, and providing replacement Protected Material that is

properly designated. The recipient(s) shall then destroy all copies of the

inadvertently or unintentionally produced undesignated Protected Materials.

5. "CONFIDENTIAL" documents, information, and material may be disclosed only

to the following persons, except upon receipt of the prior written consent of the

designating Party, upon order of the Court, or as set forth in paragraph 15 herein:

(a)     Outside counsel of record in this Action for the Parties, and the partners, counsel
        and associates of such counsel to whom it is reasonably necessary to disclose the
        information to assist in the litigation of this Action.

(b)     Employees of such counsel assigned to and reasonably necessary to assist such
        counsel in the litigation of this Action.

(c)     In-house counsel for the Parties who either have responsibility for making
        decisions dealing directly with the litigation of this Action, or who are assisting
        outside counsel in the litigation of this Action.

(d)     Up to and including three (3) designated representatives of each of the Parties to
        the extent reasonably necessary for the litigation of this Action, except that any
        Party may in good faith request the other Party's consent to designate one or more
        additional representatives, the other Party shall not unreasonably withhold such
        consent, and the requesting Party may seek leave of Court to designate such
        additional representative(s) if the requesting Party believes the other Party has
        unreasonably withheld such consent.

(e)     Outside consultants or experts retained for the purpose of this litigation, provided
        that: (1) such consultants or experts are not presently employed by the Parties or
        of an affiliate of a Party hereto for purposes other than this Action; (2) before
        access is given, the consultant or expert has completed the Undertaking attached
        as Appendix A hereto and the same is served upon the producing Party with a
        current curriculum vitae of the consultant or expert, including a list of other cases
        in which the individual has provided a report or testified (at trial or deposition)
        and a list of companies that the individual has been employed by or provided
        consulting services pertaining to the field of the invention of the patent(s)-in-suit
        or the products accused of infringement within the last four years and a brief
        description of the subject matter of the consultancy or employment, at least ten
        (10) days before access to the Protected Material is to be given to that consultant
        or expert to object to and notify the receiving Party in writing that it objects to
        disclosure of Protected Material to the consultant or expert. The Parties agree to
        promptly confer and use good faith to resolve any such objection. If the Parties
        are unable to resolve any objection, the objecting Party may file a motion with the

Court within fifteen (15) days of receipt of the notice, or within such other time as the Parties may agree, seeking a protective order with respect to the proposed disclosure.  The objecting Party shall have the burden of proving the need for a protective order.  No disclosure shall occur until all such objections are resolved by agreement or Court order.

(f)    Independent litigation support services, including persons working for or as court reporters, graphics or design services, jury or trial consulting services, and photocopy, document imaging, and database services retained by counsel and reasonably necessary to assist counsel with the litigation of this Action.

(g)    The Court and its personnel, as well as any mediator appointed by the Court and/or agreed to by the Parties.

6.  A Party shall designate documents, information, or material as "CONFIDENTIAL" only upon a good faith belief that the documents, information, or material contains confidential or proprietary information or trade secrets of the Party or a Third Party to whom the Party reasonably believes it owes an obligation of confidentiality with respect to such documents, information, or material.

7.  Documents, information, or material produced pursuant to any discovery request in this Action, including but not limited to Protected Material designated as DESIGNATED MATERIAL, shall be used by the Parties only in the litigation of this Action and shall not be used for any other purpose.  Any person or entity who obtains access to DESIGNATED MATERIAL or the contents thereof pursuant to this Order shall not make any copies, duplicates, extracts, summaries, or descriptions of such DESIGNATED MATERIAL or any portion thereof except as may be reasonably necessary in the litigation of this Action.  Any such copies, duplicates, extracts, summaries, or descriptions shall be classified DESIGNATED MATERIALS and subject to all of the terms and conditions of this Order.

8. To the extent a producing Party believes that certain Protected Material qualifying to be designated CONFIDENTIAL is so sensitive that its dissemination deserves even further limitation, the producing Party may designate such Protected Material "CONFIDENTIAL - ATTORNEYS' EYES ONLY" or "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY," or to the extent such Protected Material includes computer source code and/or live data (that is, data as it exists residing in a database or databases) ("Source Code Material"), the producing Party may designate such Protected Material as "CONFIDENTIAL - SOURCE CODE."

9. For Protected Material designated CONFIDENTIAL - ATTORNEYS' EYES ONLY, access to, and disclosure of, such Protected Material shall be limited to individuals listed in paragraphs 5(a–c) and (e–g); provided, however, that access by in-house counsel pursuant to paragraph 5(c) be limited to in-house counsel who exercise no competitive decision-making authority on behalf of the client.

10. For Protected Material designated CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY, access to, and disclosure of, such Protected Material shall be limited to individuals listed in paragraphs 5(a–b) and (e–g); provided, however, that the designating Party shall accommodate reasonable requests to provide summary information to in-house counsel designated pursuant to paragraph 5(c) who exercise no competitive decision-making authority on behalf of the client and reasonably require access to such information.

11. For Protected Material designated CONFIDENTIAL - SOURCE CODE, the following additional restrictions apply:

(a)     Access to a Party's Source Code Material shall be provided on two source code machines with the identical production available for in-person review as follows: on "stand-alone" computer(s) (that is, the computer may not be linked to any network, including a local area network ("LAN"), an intranet or the Internet). The stand-alone computer(s) may be connected to (i) a printer, or (ii) a device capable of temporarily storing electronic copies solely for the limited purposes permitted pursuant to paragraphs 11(h and k) below.  The stand-alone computer(s) shall, at the receiving Party's request, including reasonable analysis tools for the type of Source Code Material provided thereon.  The receiving Party shall be responsible for providing tools or licenses to tools that it wished to use so that the producing Party may install such tools on the stand-alone computer(s). Additionally, except as provided in paragraph 11(k) below, the stand-alone computer(s) may only be located at the offices of the producing Party's outside counsel or its vendors within a reasonable distance of the receiving Party's expert or law firm, at the discretion of the producing Party as to which one.  If an office of the producing Party's outside counsel is not available within a reasonable distance of the receiving Party's expert or law firm, the producing Party will make the stand-alone computer(s) available at the nearest Iron Mountain facility to receiving Party's expert or law firm, at the receiving Party's expense.  Should the need arise due to a public health emergency, state, local or national restrictions or travel restriction, which hinder the source code review, the Parties shall meet and confer in good faith to discuss the feasibility of making the stand-alone computer(s) available in a location that would allow source code review to occur.

(b)     The receiving Party shall make reasonable efforts to restrict its requests for such access to the stand-alone computer(s) to normal business hours, which for purposes of this paragraph shall be 8:00 a.m. through 6:00 p.m.  However, upon reasonable notice from the receiving Party, the producing Party shall make reasonable efforts to accommodate the receiving Party's request for access to the stand-alone computer(s) outside of normal business hours.  The Parties agree to cooperate in good faith such that maintaining the producing Party's Source Code Material at the offices of its outside counsel or its vendors shall not unreasonably hinder the receiving Party's ability to efficiently and effectively conduct the prosecution or defense of this Action.

(c)     The producing Party shall provide the receiving Party with information explaining how to start, log on to, and operate the stand-alone computer(s) in order to access the produced Source Code Material on the stand-alone computer(s).

(d)     The producing Party will produce Source Code Material in computer searchable format on the stand-alone computer(s) as described above, and shall install on the stand-alone computer(s) reasonable analysis tools appropriate for the type of Source Code Material requested pursuant to paragraph 11(a) above.  Specific tools may include but are not limited to the following: SciTools Understand, SlickEdit, Eclipse, UltraEdit, Android Studio, Microsoft Visual Studio, Notepad++, Beyond Compare, Mozilla FireFox, and Adobe Acrobat Pro.  The producing Party shall allow the reviewing Party to store and modify documents

(other than the Source Code Material offered for inspection) on the stand-alone computer(s), and shall provide, at the reviewing Party's expense as with the other tools requested by reviewing Party per paragraph 11(a), VeraCrypt software (https://www.veracrypt.fr/en/Home.html) for the reviewing Party to secure the reviewing Party's work product stored on the stand-alone computer(s). The producing Party shall not install any keystroke or other monitoring software on any stand-alone computer.

(e)     Access to Source Code Material shall be limited to outside counsel and up to three (3) outside consultants or experts[2] (*i.e.*, not existing employees or affiliates of a Party or an affiliate of a Party or competitor identified by the Producing Party with reasonable specificity) retained for the purpose of this litigation and approved to access such Protected Materials pursuant to paragraph 5(e) above. Each person authorized to access Source Code Material may use a laptop computer for the sole purpose of typing notes related to source code review; provided that, outside of the inspection, such notes are securely stored on the laptop by the receiving Party in a manner consistent with the provisions of this Order. No other electronic devices shall be permitted in the secure room, including but not limited to laptops, floppy drives, zip drives, cellular telephones, personal digital assistants, Blackberries, cameras, voice recorders, Dictaphones, or telephone jacks. Nor shall any non-electronic devices capable of similar functionality be permitted in the secure room. During review of Source Code Material, the receiving Party (including its consultants and experts) shall be entitled to take notes relating to the Source Code Material but may not copy more than ten (10) consecutive lines of the Source Code Material into the notes. No copies of all or any portion of the Source Code Material may leave the room in which the Source Code Material is inspected except as otherwise permitted pursuant to paragraphs 11(h and k) below. Further, no other written or electronic record of the Source Code Material is permitted except as otherwise provided herein. A receiving Party may include excerpts of Source Code Material in an exhibit to a pleading, expert report, or deposition transcript (collectively, "Source Code Exhibits"), provided that the Source Code Exhibits are appropriately marked under this Order, restricted to those who are entitled to have access to them as specified herein, and, if filed with the Court, filed under seal in accordance with the Court's rules, procedures, and orders.

(f)     To the extent portions of Source Code Material are quoted in a Source Code Exhibit, either (1) the entire Source Code Exhibit will be stamped and treated as CONFIDENTIAL - SOURCE CODE or (2) those pages containing quoted Source

---

[2] For the purposes of this paragraph, an outside consultant or expert is defined to include the outside consultant's or expert's direct reports and other support personnel, such that the disclosure to a consultant or expert who employs others within their firm to help in their analysis shall count as a disclosure to a single consultant or expert, provided that such personnel helping in the analysis of Source Code Material shall be disclosed pursuant to Paragraph 5(e).

Code Material will be separately stamped and treated as CONFIDENTIAL -
SOURCE CODE.

(g)     Except as set forth in paragraph 11(k) below, no electronic copies of Source Code
        Material shall be made without prior written consent of the producing Party,
        except as necessary to create documents that, pursuant to the Court's rules,
        procedures, and order, must be filed or served electronically.

(h)     The producing Party shall provide with the stand-alone computers and printers
        letter-sized paper that is blank other than a unique Bates number on each page and
        the label "CONFIDENTIAL - SOURCE CODE" for use by the receiving Party
        when printing Source Code Material from the stand-alone computers.  The
        receiving Party shall be permitted to make a reasonable number of printouts and
        photocopies of Source Code Material, which shall presumptively be a total of ten
        (10), all of which shall be designated and clearly labeled "CONFIDENTIAL -
        SOURCE CODE" and the Bates number(s) for the page or pages, and the
        receiving Party shall maintain a log of all such files that are printed or
        photocopied.  When the receiving Party prints Source Code Material from a
        stand-alone computer, it shall allow copies of all the printouts to be made before
        leaving the location of the stand-alone computer, which copies shall be promptly
        furnished to the producing Party.

(i)     Should such printouts or photocopies be permissibly transferred back to electronic
        media, such media shall be labeled "CONFIDENTIAL - SOURCE CODE" and
        shall continue to be treated as such.

(j)     If the receiving Party's outside counsel, consultants, or experts obtain printouts or
        photocopies of Source Code Material, the receiving Party shall ensure that such
        outside counsel, consultants, or experts keep the printouts or photocopies in a
        secured locked area in the offices of such outside counsel, consultants, or expert.
        The receiving Party may also temporarily keep the printouts or photocopies at:
        (i) the Court for any proceedings(s) relating to the Source Code Material, for the
        dates associated with the proceeding(s); (ii) the sites where any deposition(s)
        relating to the Source Code Material are taken, for the dates associated with the
        deposition(s); and (iii) any intermediate location reasonably necessary to transport
        the printouts or photocopies (*e.g.*, a hotel prior to a Court proceeding or
        deposition).

(k)     A producing Party's Source Code Material may only be transported by the
        receiving Party at the direction of a person authorized under paragraph 11(e)
        above to another person authorized under paragraph 11(e) above, on paper or
        removable electronic media (*e.g.*, a DVD, CD-ROM, or flash memory "stick") via
        hand carry, Federal Express, or other similarly reliable courier.  Source Code
        Material may not be transported or transmitted electronically over a network of
        any kind, including a LAN, an intranet, or the Internet.  The producing Party
        shall, on request, make one of the standalone computers containing the Source
        Code Material, or a secure laptop computer containing the Source Code Material,

9

available at depositions of witnesses who would otherwise be permitted access to the standalone computer(s).  The receiving Party shall make such requests ten (10) calendar days before the deposition.  A producing Party shall make reasonable efforts to comply with such a request made less than ten (10) calendar days before a deposition, provided the request is made in good faith and could not reasonably under the circumstances have been made sooner.

12.     "CONFIDENTIAL – RESTRICTED SOURCE CODE" refers to any Source Code Material that a Party or Non-Party reasonably believes to be subject to federal, state or foreign government restrictions or agreements related to such restrictions that strictly limit access to, movement of, or transmittal of the information.  Examples of the sources of such restrictions include the Defense Production Act of 1950 and the Committee on Foreign Investment in the United States (CFIUS).

13.     For Protected Material designated CONFIDENTIAL - RESTRICTED SOURCE CODE, notwithstanding any other restrictions or requirements imposed on either Party by this Order, access to CONFIDENTIAL - RESTRICTED SOURCE CODE material shall only be available in accordance with the restrictions imposed on it by the applicable governmental entities or the agreements related to such restrictions.

14.     If a Party is served with a subpoena or a court order issued in other litigation that compels disclosure of any information or items designated in this Action as CONFIDENTIAL, CONFIDENTIAL - ATTORNEYS' EYES ONLY, CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY, CONFIDENTIAL - SOURCE CODE, or CONFIDENTIAL – RESTRICTED SOURCE CODE, that Party must:

(a)     promptly notify in writing the designating Party.  Such notification shall include a copy of the subpoena or court order if allowed under applicable protective orders in the other litigation;

(b)     promptly notify in writing the party who caused the subpoena or order to issue in

the other litigation that some or all of the material covered by the subpoena or order is subject to this Protective Order.  Such notification shall include a copy of this Order. If the designating Party timely seeks a protective order, the Party served with the subpoena or court order shall not produce any information designated in this Action as CONFIDENTIAL, CONFIDENTIAL - ATTORNEYS' EYES ONLY, CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY, CONFIDENTIAL - SOURCE CODE, or CONFIDENTIAL – RESTRICTED SOURCE CODE before a determination by the court from which the subpoena or order issued, unless the Party has obtained the designating Party's permission.  The designating Party shall bear the burden and expense of seeking protection in that court of its confidential material – and nothing in these provisions should be construed as authorizing or encouraging a receiving Party in this Action to disobey a lawful directive from another court.

15. In the event that a Party is required, by a valid discovery request, to produce a Non-Party's confidential information in its possession, and the Party is subject to an agreement with the Non-Party not to produce the Non-Party's confidential information, then the Party shall:

1. promptly notify in writing the Requesting Party and the Non-Party that some or all of the information requested is subject to a confidentiality agreement with a Non-Party;

2. promptly provide the Non-Party with a copy of this Order, the relevant discovery request(s), and a reasonably specific description of the information requested; and

3. make the information requested available for inspection by the Non-Party.

If the Non-Party fails to object or seek a protective order from this court within 14

calendar days of receiving the notice and accompanying information, the Receiving Party may produce the Non-Party's confidential information responsive to the discovery request.  If the Non-Party timely seeks a protective order, the Receiving Party shall not produce any information in its possession or control that is subject to the confidentiality agreement with the Non-Party before a determination by the court.  Absent a court order to the contrary, the Non-Party shall bear the burden and expense of seeking protection in this court of its Protected Material.

16.     Any attorney representing a Party, whether in-house or outside counsel, and any person associated with a Party and permitted to receive the other Party's Protected Material that is designated CONFIDENTIAL - ATTORNEYS' EYES ONLY, CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY, CONFIDENTIAL - SOURCE CODE, and/or CONFIDENTIAL – RESTRICTED SOURCE CODE and directed to technical information relevant to the case, but excluding financial data or non-technical business information (collectively "HIGHLY SENSITIVE MATERIAL"), who obtains, receives, has access to, or otherwise learns, in whole or in part, the other Party's HIGHLY SENSITIVE MATERIAL under this Order shall not prepare, prosecute, supervise, or assist in the preparation or prosecution of any patent application pertaining to the field of the invention of the patents-in-suit during the pendency of this Action and for one year after its conclusion, including any appeals.  To ensure compliance with the purpose of this provision, each Party shall create an "Ethical Wall" between those persons with access to HIGHLY SENSITIVE MATERIAL and any individuals who prepare, prosecute, supervise or assist in the preparation or prosecution of any patent application pertaining to the field of invention of the patent-in-suit.  Nothing in this Order shall

12

prevent a person with access to HIGHLY SENSITIVE MATERIAL from participating in a PTO proceeding, *e.g.*, IPR or PGR, except for that person shall not participate—directly or indirectly—in the amendment of any claim(s).

17.     Nothing in this Order shall require production of documents, information, or other material that a Party contends is protected from disclosure by the attorney-client privilege, the work product doctrine, or other privilege, doctrine, or immunity.  Pursuant to Federal Rule of Evidence 502(d), if documents, information, or other material subject to a claim of attorney-client privilege, work product doctrine, or other privilege, doctrine, or immunity is inadvertently or unintentionally produced, such production shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any such privilege, doctrine, or immunity.  Any Party that inadvertently or unintentionally produces documents, information, or other material it reasonably believes are protected under the attorney-client privilege, work product doctrine, or other privilege, doctrine, or immunity may obtain the return of such documents, information, or other material by promptly notifying the recipient(s) and providing a privilege log for the inadvertently or unintentionally produced documents, information, or other material.  The recipient(s) shall gather and return all copies of such documents, information, or other material to the producing Party, except for any pages containing privileged or otherwise protected markings by the recipient(s), which pages shall instead be destroyed and certified as such to the producing Party.

18.     There shall be no disclosure of any DESIGNATED MATERIAL by any person authorized to have access thereto to any person who is not authorized for such access under this Order.  The Parties are hereby ORDERED to safeguard all such documents,

information, and material to protect against disclosure to any unauthorized persons or entities.

19.    Nothing contained herein shall be construed to prejudice any Party's right to use any DESIGNATED MATERIAL in taking testimony at any deposition or hearing provided that the DESIGNATED MATERIAL is only disclosed to a person(s) who is: (i) eligible to have access to the DESIGNATED MATERIAL by virtue of their employment with the designating Party; (ii) identified in the DESIGNATED MATERIAL as an author, addressee, or copy recipient of such information; (iii) although not identified as an author, addressee, or copy recipient of such DESIGNATED MATERIAL, has, in the ordinary course of business, seen such DESIGNATED MATERIAL; (iv) a current or former officer, director or employee of the producing Party, a current or former officer, director, or employee of a company affiliated with the producing Party, or a designee under Federal Rule of Civil Procedure 30(b)(6) to testify on behalf of the producing Party; (v) counsel for a Party, including outside counsel and in-house counsel (subject to paragraph 9 of this Order); (vi) an independent contractor, consultant, and/or expert retained for the purpose of this litigation; (vii) court reporters and videographers; (viii) the Court; or (ix) other persons entitled hereunder to access to DESIGNATED MATERIAL.  DESIGNATED MATERIAL shall not be disclosed to any other persons unless prior authorization is obtained from counsel representing the producing Party or from the Court.

20.    Parties may, at the deposition or hearing or within thirty (30) days after receipt of a deposition or hearing transcript, designate the deposition or hearing transcript or any portion thereof as "CONFIDENTIAL," "CONFIDENTIAL - ATTORNEYS' EYES

ONLY," "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY,"

"CONFIDENTIAL - SOURCE CODE," or "CONFIDENTIAL – RESTRICTED

SOURCE CODE" pursuant to this Order.  Access to the deposition or hearing transcript

so designated shall be limited in accordance with the terms of this Order.  Until

expiration of the 30-day period, the entire deposition or hearing transcript shall be treated

as CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY.

21.     Any DESIGNATED MATERIAL that is filed with the Court shall be filed under seal and

shall remain under seal until further order of the Court.  The filing Party shall be

responsible for informing the Clerk of the Court that the filing should be sealed and for

placing the legend "FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER"

above the caption and conspicuously on each page of the filing.  Exhibits to a filing shall

conform to the labeling requirements set forth in this Order.  If a pretrial pleading filed

with the Court, or an exhibit thereto, discloses or relies on DESIGNATED MATERIAL,

such confidential portions shall be redacted to the extent necessary and the pleading or

exhibit filed publicly with the Court.

22.     The Order applies to pretrial discovery.  Nothing in this Order shall be deemed to prevent

the Parties from introducing any DESIGNATED MATERIAL into evidence at the trial of

this Action, or from using any information contained in DESIGNATED MATERIAL at

the trial of this Action, subject to any pretrial order issued by this Court.

23.     A Party may request in writing to the other Party that the designation given to any

DESIGNATED MATERIAL be modified or withdrawn.  If the designating Party does

not agree to re-designation within ten (10) days of receipt of the written request, the

requesting Party may apply to the Court for relief.  Upon any such application to the

Court, the burden shall be on the designating Party to show why its classification is proper. Such application shall be treated procedurally as a motion to compel pursuant to Federal Rule of Civil Procedure 37, subject to the Rule's provisions relating to sanctions. In making such application, the requirements of the Federal Rules of Civil Procedure and the Local Rules of the Court shall be met. Pending the Court's determination of the application, the designation of the designating Party shall be maintained.

24.    Each outside consultant or expert to whom DESIGNATED MATERIAL is disclosed in accordance with the terms of this Order shall be advised by counsel of the terms of this Order, shall be informed that they are subject to the terms and conditions of this Order, and shall sign an acknowledgment that they have received a copy of, have read, and have agreed to be bound by this Order. A copy of the acknowledgment form is attached as Appendix A.

25.    To the extent that any discovery is taken of persons who are not Parties to this Action ("Third Parties") and in the event that such Third Parties contend the discovery sought involves trade secrets, confidential business information, or other proprietary information, then such Third Parties may agree to be bound by this Order.

26.    To the extent that discovery or testimony is taken of Third Parties, the Third Parties may designate as "CONFIDENTIAL," "CONFIDENTIAL - ATTORNEYS' EYES ONLY," or "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY," "CONFIDENTIAL - SOURCE CODE," and/or "CONFIDENTIAL – RESTRICTED SOURCE CODE" any documents, information, or other material, in whole or in part, produced by such Third Parties. The Third Parties shall have ten (10) days after production of such documents, information, or other materials to make such a designation. Until that time period lapses

or until such a designation has been made, whichever occurs sooner, all documents, information, or other material so produced or given shall be treated as "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY" in accordance with this Order.

27.   Within thirty (30) days of final termination of this Action, including any appeals, all DESIGNATED MATERIAL, including all copies, duplicates, abstracts, indexes, summaries, descriptions, and excerpts or extracts thereof (excluding excerpts or extracts incorporated into any privileged memoranda of the Parties and excluding any electronic copies that may exist on standard system back-up tapes or other standard system back-up media according to standard electronic back-up and archival procedures), shall at the producing Party's election either be returned to the producing Party or be destroyed.  For avoidance of doubt, the foregoing requirement to return or destroy does not apply to attorney work product created by the attorneys for the Parties.  The receiving Party shall verify the return or destruction by affidavit furnished to the producing Party, upon the producing Party's request.

28.   The failure to designate documents, information, or material in accordance with this Order and the failure to object to a designation at a given time shall not preclude the filing of a motion at a later date seeking to impose such designation or challenging the propriety thereof.  The entry of this Order and/or the production of documents, information, or material hereunder shall in no way constitute a waiver of any objection to the furnishing thereof, all such objections being hereby preserved.

29.   Any Party knowing or believing that any other Party is in violation of or intends to violate this Order and has raised the question of violation or potential violation with the opposing Party and has been unable to resolve the matter by agreement may move the

Court for such relief as may be appropriate in the circumstances. Pending disposition of the motion by the Court, the Party alleged to be in violation of or intending to violate this Order shall discontinue the performance of and/or shall not undertake the further performance of any action alleged to constitute a violation of this Order.

30. Production of DESIGNATED MATERIAL by any Party shall not be deemed a publication of the documents, information, or material (or the contents thereof) produced so as to void or make voidable whatever claim the Parties may have as to the proprietary and confidential nature of the documents, information, or other material or its contents.

31. Nothing in this Order shall be construed to effect an abrogation, waiver, or limitation of any kind on the rights of each of the Parties to assert any applicable discovery or trial privilege.

32. Each of the Parties shall also retain the right to file a motion with the Court (a) to modify this Order to allow disclosure of DESIGNATED MATERIAL to additional persons or entities if reasonably necessary to prepare and present this Action; and (b) to apply for additional protection of DESIGNATED MATERIAL.

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

WSOU Investments, LLC d/b/a
Brazos Licensing and Development,

       Plaintiff,

    v.

Hewlett Packard Enterprise Company,

       Defendant.

Nos. 6:20-cv-00725-ADA
6:20-cv-00726-ADA
6:20-cv-00727-ADA
6:20-cv-00728-ADA
6:20-cv-00729-ADA
6:20-cv-00730-ADA
6:20-cv-00783-ADA

**APPENDIX A**
**UNDERTAKING OF EXPERTS OR CONSULTANTS REGARDING PROTECTIVE ORDER**

I, _____, declare that:

1.    My address is _____.

My current employer is _____.

My current occupation is _____.

2.    I have received a copy of the Protective Order in this action.  I have carefully read and understand the provisions of the Protective Order.

3.    I will comply with all of the provisions of the Protective Order.  I will hold in confidence, will not disclose to anyone not qualified under the Protective Order, and will use only for purposes of this action any information designated as "CONFIDENTIAL," "CONFIDENTIAL - ATTORNEYS' EYES ONLY," "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY," "CONFIDENTIAL - SOURCE CODE," or "CONFIDENTIAL – RESTRICTED SOURCE CODE" that is disclosed to me.

4. Promptly upon termination of these actions, I will return all documents and things designated as "CONFIDENTIAL," "CONFIDENTIAL - ATTORNEYS' EYES ONLY," "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY," "CONFIDENTIAL - SOURCE CODE," or "CONFIDENTIAL – RESTRICTED SOURCE CODE" that came into my possession, and all documents and things that I have prepared relating thereto, to the outside counsel for the Party by whom I am employed.

5. I hereby submit to the jurisdiction of this Court for the purpose of enforcement of the Protective Order in this action.

I declare under penalty of perjury that the foregoing is true and correct.

Signature _____

Date _____

63941133 v5-WorkSiteUS-036252/0001

A-2

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| WSOU INVESTMENTS, LLC, d/b/a BRAZOS LICENSING AND DEVELOPMENT,<br><br>       Plaintiff,<br><br>       v.<br><br>HEWLETT PACKARD ENTERPRISE COMPANY,<br><br>       Defendant. | Civil Action No. 6:20-cv-00725-ADA<br>Civil Action No. 6:20-cv-00726-ADA<br>Civil Action No. 6:20-cv-00728-ADA<br>Civil Action No. 6:20-cv-00730-ADA<br>Civil Action No. 6:20-cv-00783-ADA |

**DEFENDANT HEWLETT PACKARD ENTERPRISE COMPANY'S NOTICE OF
SUBPOENA TO THIRD-PARTY AQUA LICENSING LLC**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, pursuant to Rules 34 and 45 of the Federal Rules of Civil

Procedure, Defendant Hewlett Packard Enterprise Company ("HPE"), by and through its

undersigned counsel, will serve subpoenas on third-party Aqua Licensing LLC ("Aqua").

PLEASE TAKE FURTHER NOTICE that HPE will require Aqua to produce the

documents, tangible things, and items set forth in Exhibit A1 to the subpoena, and to testify to

the topics as outlined in Exhibit A2.  The documents, tangible things, and items shall be

produced at Sidley Austin LLP c/o John Miscevich, 555 California St., Suite 2000, San

Francisco, CA 94104, on January 19, 2022, or at another date and location upon which counsel

and the subpoenaed party may jointly agree.  The deposition shall take place on February 2, 2022

at 9:00 am Pacific Time at Sidley Austin LLP, 555 California St., Suite 2000, San Francisco, CA

94104 or at another date and location upon which counsel and the subpoenaed party may jointly

agree. In view of the current circumstances related to COVID-19, the deposition may take place

remotely by oral examination via video conference.

Dated: December 29, 2021

*/s/ Michael R. Franzinger*

Michael D. Hatcher
Texas State Bar No. 24027067
Callie C. Butcher
Texas State Bar No. 24092203
SIDLEY AUSTIN LLP
2021 McKinney Avenue, Suite 2000
Dallas, TX 75201
Telephone: (214) 981-3300
Facsimile: (214) 981-3400
mhatcher@sidley.com
cbutcher@sidley.com

Michael R. Franzinger
DC Bar No. 500080
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC 20005
Telephone: (202) 736-8000
Facsimile: (202) 736-8711
mfranzinger@sidley.com

Barry K. Shelton
Texas State Bar No. 24055029
SHELTON COBURN LLP
311 RR 620, Suite 205
Austin, TX 78734-4775
Telephone: (512) 263-2165
Facsimile: (512) 263-2166
bshelton@sheltoncoburn.com

***Counsel for Defendant***
***Hewlett Packard Enterprise Company***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 29th day of December 2021, I electronically served the foregoing upon the following:

| | |
|---|---|
| ***Counsel for WSOU, LLC*** | |
| | wsou-hpe@brownrudnick.com |
| Alessandra C. Messing | |
| Timothy J. Rousseau | |
| Yarelyn Mena | |
| BROWN RUDNICK LLP | |
| 7 Times Square | |
| New York, New York 10036 | |
| telephone: (212) 209-4800 | |
| facsimile: (212) 209-4801 | |
| | |
| Edward J. Naughton | |
| Rebecca MacDowell Lecaroz | |
| BROWN RUDNICK LLP | |
| One Financial Center | |
| Boston, Massachusetts 02111 | |
| telephone: (617) 856-8200 | |
| facsimile: (617) 856-8201 | |
| | |
| David M. Stein Sarah G. Hartman | |
| BROWN RUDNICK LLP | |
| 2211 Michelson Drive, 7th Floor | |
| Irvine, California 92612 | |
| telephone: (949) 752-7100 | |
| facsimile: (949) 252-1514 | |
| | |
| Raymond W. Mort, III | raymort@austinlaw.com |
| THE MORT LAW FIRM, PLLC | |
| 100 Congress Avenue, Suite 2000 | |
| Austin, Texas 78701 | |
| tel/fax: (512) 677-6825 | |

 */s/ Michael  R. Franzinger*
Michael R. Franzinger

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Western District of Texas

| | |
|---|---|
| WSOU INVESTMENTS, LLC, | ) |
| _Plaintiff_ | ) |
| v. | ) |
| | ) |
| HEWLETT PACKARD ENTERPRISE COMPANY, | ) |
| _Defendant_ | ) |

Civil Action No.  6:20-cv-00725, -726, -728, -730, -783

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:          Steven W. Smyrski, agent for service on behalf of Aqua Licensing LLC
             3310 Airport Avenue, SW, Santa Monica, CA 90405

*(Name of person to whom this subpoena is directed)*

✔ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:  See Exhibit A-1

| Place: Sidley Austin LLP c/o John Miscevich<br>555 California Street, Suite 2000<br>San Francisco, CA 94104 | Date and Time:<br><br>01/19/2022 5:00 pm |
|---|---|

❑ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

       The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:          12/29/2021

|   _CLERK OF COURT_ |   | |
|---|---|---|
| | OR | |
| _____ | | /s/ John Miscevich |
| _Signature of Clerk or Deputy Clerk_ | | _Attorney's signature_ |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   Hewlett Packard Enterprise Company                                                        , who issues or requests this subpoena, are:

 John Miscevich, 2021 McKinney Avenue, Suite 2000, Dallas, TX 75201, jmiscevich@sidley.com, (214) 981-3371

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 6:20-cv-00725, -726, -728, -730, -783

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❑ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❑ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
   **(i)** is a party or a party's officer; or
   **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
   **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
   **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
   **(i)** fails to allow a reasonable time to comply;
   **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
   **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
   **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
   **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

   **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
   **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
   **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
   **(i)** expressly make the claim; and
   **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

AO 88A  (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Western District of Texas

| | |
|---|---|
| WSOU INVESTMENTS, LLC, | ) |
| *Plaintiff* | ) |
| v. | ) |
| HEWLETT PACKARD ENTERPRISE COMPANY, | ) |
| *Defendant* | ) |

Civil Action No. 6:20-cv-00725, -726, -728, -730, -783

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To: Steven W. Smyrski, agent for service on behalf of Aqua Licensing LLC
3310 Airport Avenue, SW, Santa Monica, CA 90405
*(Name of person to whom this subpoena is directed)*

☑ Testimony:  YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:  See Exhibit A2

| Place: Sidley Austin LLP | Date and Time: |
|---|---|
| 555 California Street, Suite 2000 | |
| San Francisco, CA 94104 or via remote platform | 02/02/2022 9:00 am |

The deposition will be recorded by this method:  Video and/or stenographic means

☑ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:  See Exhibit A1

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  12/29/2021

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| | | /s/ John Miscevich |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Hewlett Packard Enterprise Company , who issues or requests this subpoena, are:

John Miscevich, 2021 McKinney Avenue, Suite 2000, Dallas, TX 75201, jmiscevich@sidley.com, (214) 981-3371

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.  6:20-cv-00725, -726, -728, -730, -783

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❒ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❒ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____                    _____
                                                    *Server's signature*

                                                    _____
                                                    *Printed name and title*

                                                    _____
                                                    *Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) For a Trial, Hearing, or Deposition.** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) For Other Discovery.** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) Avoiding Undue Burden or Expense; Sanctions.** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) Command to Produce Materials or Permit Inspection.**
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) Quashing or Modifying a Subpoena.**

  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) Producing Documents or Electronically Stored Information.** These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) Claiming Privilege or Protection.**
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# EXHIBIT A-1

**EXHIBIT A1**

INSTRUCTIONS

1.      In responding to the following document requests, furnish all available documents in Your possession, custody, or control.

2.      Please produce electronically stored information in the native form in which it is ordinarily maintained.  Paper Documents, if any, may be scanned and produced as PDF files.

3.      Confidential Documents may be produced in accordance with the Protective Order in this case, a copy of which is attached as Exhibit B.

DEFINITIONS

1.      "Aqua" "You," or "Your" refers to Aqua Licensing, LLC, any affiliated entity, its successors, its predecessors, and all Persons acting or purporting to act at or under the direction or control of Aqua Licensing, LLC.

2.      "Patents-in-Suit" refers to U.S. Patent Nos. 7,280,534 ("the '534 Patent"); 7,386,630 ("the '630 Patent"); 7,519,056 ("the '056 Patent"); 8,462,774 ("the '774 Patent"); and 9,398,629 ("the '629 Patent"), and all related patents or patent applications, whether foreign or domestic.

3.      "This Litigation" shall mean *WSOU Investments, LLC, d/b/a Brazos Licensing and Development v. Hewlett Packard Enterprise Company,* Civil Action Nos. 6:20-cv-725, -726, -728, -730, and -783, filed in the U.S. District Court for the Western District of Texas on August 12, 2020.

4.      "HPE" shall mean Hewlett Packard Enterprise Company.

5.      "WSOU" shall mean WSOU Investments, LLC d/b/a Brazos Licensing and Development, any affiliated entity, its successors, its predecessors and all persons acting or

purporting to act at or under the direction or control of WSOU, including any attorneys for WSOU.

6.      "Communication" shall have the broadest possible meaning and shall include any transmission or exchange of information by one or more persons or entities and/or between two or more persons or entities by any means, including by email, telephone, letter, facsimile, or by any other process, electric, electronic or otherwise.

7.      "Document" shall be construed under the broadest possible construction and shall include electronic media and shall include all documents in Your possession, custody or control. By way of illustration and without limitation, documents include the following: originals, drafts and all non-identical copies of memoranda, reports, notes, graphs, laboratory notebooks, correspondence, interoffice communications, letters, calendars, sketches, drawings, promotional material, technical papers, printed publications, patents, and all other writings, as well as all non-paper information storage means such as sound reproductions, computer inputs and outputs, computer memory devices, as well as tangible things such as models, prototypes, and commercially saleable products.

8.      "Prior Art" shall mean all documentary and non-documentary sources, including patents, patent applications, printed publications, and things known, used, offered for sale, or sold, that may be used to determine lack of novelty and/or obviousness of the claimed subject matter in the Patents-in-Suit.

9.      "Other WSOU Defendants" shall mean any and all companies that WSOU has sued in patent litigation matters, including but not limited to ZTE Corporation, ZTE (USA), Inc., ZTE (TX), Inc.; Dell Technologies, Inc., Dell Inc., EMC Corporation, VMWare, Inc.; Huawei Technologies Co., Ltd., Huawei Technologies USA Inc., Huawei Device Co. Ltd. (f/k/a Huawei

Device (Dongguan) Co.), Huawei Device (Shenzhen) Co., Ltd. (f/k/a Huawei Device Co., Ltd.),

Huawei Device USA, Inc., Huawei Investment & Holding Co., Ltd.; Google LLC; Hewlett

Packard Enterprise Company; Juniper Networks, Inc.; Xilinx, Inc.; NEC Corporation; OnePlus

Technology (Shenzhen) Co., Ltd.; Canon, Inc.; TP-Link Technology Co., Ltd.; F5 Networks,

Inc.; Microsoft Corporation; Arista Networks, Inc.; Salesforce.com, Inc.; Cisco Systems, Inc.;

and Netgear, Inc.

10.     Any term not specifically defined herein shall be defined in accordance with its

ordinary usage and the Federal Rules of Civil Procedure.

## REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS

1.      Documents and Communications concerning the assignment, licensing,

acquisition, financial interest, security interest, lien, sale, transfer of rights (in whole or in part),

agreements, proposals, or any other disposition of or any offers to buy, sell, obtain rights to, or

license any of the Patents-in-Suit, including negotiations or discussions, by You or Your

predecessor(s) in interest.

2.      Agreements, whether executed or draft, and proposals regarding the licensing of

any of the Patents-in-Suit.

3.      Documents sufficient to show all attempts to license, sell, acquire, or assign any

of the Patents-in-Suit and/or any rights to or interests in any of the Patents-in-Suit.

4.      Documents concerning any decision to license, sell, assign, or offer to license,

sell, or assign any of the Patents-in-Suit and/or any rights to or interests in any of the Patents-in-

Suit.

5.      Documents sufficient to identify all persons and/or entities that have been

involved in the licensing, assignment, sale, or offer(s) to license, assign, or sell, of any of the

Patents-in-Suit.

6.     Documents sufficient to identify all entities of which You are aware that are currently, or were previously, licensed to any of the Patents-in-Suit.

7.     Documents and Communications reflecting assurances, covenants not to sue, and understandings not to assert any of the Patents-in-Suit against potential licensees, including copies of any such agreements, and the circumstances relating to such assurances, covenants not to sue, or understandings not to assert any of the Patents-in-Suit.

8.     Documents concerning any current or former right, title, or interest in any of the Patents-in-Suit, including the chain of title.

9.     All Documents concerning valuations, attempts to value, or otherwise reflecting the value of any of the Patents-in-Suit, including of any portfolio containing any of the Patents-in-Suit.

10.    All Documents concerning any evaluation, ranking, rating, or attempts to evaluate, rank, or rate (e.g., based on strength, validity, value, or otherwise) any of the Patents-in-Suit or any portfolio containing any of the Patents-in-Suit.

11.    Any evaluation or analysis of any of the Patents-in-Suit, including evaluation or analysis of infringement, validity, Prior Art, or commercialization, and Documents and Communications concerning the same.

12.    All Documents and Communications concerning any agreement, proposal, offer, or other discussions with Allied Security Trust regarding any of the Patents-in-Suit.

13.    All Documents and Communications concerning any agreement, proposal, offer, or other discussions with Houlihan Lokey, Inc. regarding any of the Patents-in-Suit.

14.    All Documents concerning any agreement, proposal, offer, or discussions with WSOU or any affiliate of WSOU.

15.     Documents concerning and Communications with WSOU, any affiliate of WSOU, or Wade and Company regarding the Patents-in-Suit, This Litigation, or HPE, including Documents and/or Communications relating to the licensing of any of the Patents-in-Suit, compensation, license rates, royalties related thereto, royalty reports, agreements, the decision to file This Litigation, and requests or offers to provide assistance, witnesses and/or documents for use in This Litigation.

16.     Documents, including agreements, identifying Your relationship with Stuart A. Shanus, Marc Wade, or Craig Etchegoyen and entities associated therewith, including without limitation, Orange Holdings, WSOU, any WSOU affiliates, and Wade and Company, and Uniloc USA, Inc., including any patent license agreements with any such entity that relate to patents or patent applications that claim subject matter related to the subject matter of any of the Patents-in-Suit.

17.     Communications with any Other WSOU Defendant concerning WSOU, any of the Patents-in-Suit, or any portfolio containing any of the Patents-in-Suit.

18.     All Documents produced by You in litigation involving any Other WSOU Defendant.

# EXHIBIT A-2

**EXHIBIT A2**

DEFINITIONS AND INSTRUCTIONS

1.      In responding to this request for a deposition, please designate one or more other officers, directors, managing agents, or other Persons who are the most knowledgeable with respect to the topics identified below.

2.      The Definitions outlined in Exhibit A1 are incorporated by reference herein and apply with equal force to the topics described below.

DEPOSITION TOPICS

1.      Documents produced by You, including authentication of the Documents.

2.      The assignment, licensing, acquisition, financial interest, security interest, lien, sale, transfer of rights (in whole or in part), agreements, proposals, or any other disposition of or any offers to buy, sell, obtain rights to, or license any of the Patents-in-Suit, including negotiations or discussions, by You or Your predecessor(s) in interest.

3.      Agreements, whether executed or draft, and proposals regarding the licensing of any of the Patents-in-Suit.

4.      All attempts to license, sell, acquire, or assign any of the Patents-in-Suit and/or any rights to or interests in any of the Patents-in-Suit.

5.      Any decision to license, sell, assign, or offer to license, sell, or assign any of the Patents-in-Suit and/or any rights to or interests in any of the Patents-in-Suit.

6.      The identity of all persons and/or entities that have been involved in the licensing, assignment, sale, or offer(s) to license, assign, or sell, of any of the Patents-in-Suit.

7.      The identity of all entities of which You are aware that are currently, or were previously, licensed to any of the Patents-in-Suit.

8.     Assurances, covenants not to sue, and understandings not to assert any of the Patents-in-Suit against potential licensees, including copies of any such agreements, and the circumstances relating to such assurances, covenants not to sue, or understandings not to assert any of the Patents-in-Suit.

9.     Any current or former right, title, or interest in any of the Patents-in-Suit, including the chain of title.

10.     The value of, any valuations of, or attempts to value any of the Patents-in-Suit, including of any portfolio containing any of the Patents-in-Suit.

11.     Any evaluation, ranking, rating, or attempts to evaluate, rank, or rate (e.g., based on strength, validity, value, or otherwise) any of the Patents-in-Suit or any portfolio containing any of the Patents-in-Suit.

12.     Any evaluation or analysis of any of the Patents-in-Suit, including evaluation or analysis of infringement, validity, Prior Art, or commercialization.

13.     Any agreement, proposal, offer, or other discussions with Allied Security Trust regarding any of the Patents-in-Suit.

14.     Any agreement, proposal, offer, or other discussions with Houlihan Lokey, Inc. regarding any of the Patents-in-Suit.

15.     Any agreement, proposal, offer, or discussions with WSOU or any affiliate of WSOU.

16.     Communications with WSOU, any affiliate of WSOU, or Wade and Company regarding the Patents-in-Suit, This Litigation, or HPE, including Communications relating to the licensing of any of the Patents-in-Suit, compensation, license rates, royalties related thereto,

royalty reports, agreements, the decision to file This Litigation, and requests or offers to provide assistance, witnesses and/or documents for use in This Litigation.

17.     Your relationship with Stuart A. Shanus, Marc Wade, or Craig Etchegoyen and entities associated therewith, including without limitation, Orange Holdings, WSOU, any WSOU affiliates, Wade and Company, and Uniloc USA, Inc., including any patent license agreements with any such entity that relate to patents or patent applications that claim subject matter related to the subject matter of any of the Patents-in-Suit.

18.     Communications with any Other WSOU Defendant concerning WSOU, any of the Patents-in-Suit, or any portfolio containing any of the Patents-in-Suit.

19.     The search for and collection of Documents and Communications in response to this subpoena.

# EXHIBIT B

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | |
|---|---|
| WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT, | Nos. 6:20-cv-00725-ADA |
| | 6:20-cv-00726-ADA |
| Plaintiff, | 6:20-cv-00727-ADA |
| | 6:20-cv-00728-ADA |
| v. | 6:20-cv-00729-ADA |
| | 6:20-cv-00730-ADA |
| HEWLETT PACKARD ENTERPRISE COMPANY, | 6:20-cv-00783-ADA |
| Defendant. | |

## PROTECTIVE ORDER

WHEREAS, plaintiff WSOU Investments LLC d/b/a Brazos Licensing and Development and defendant Hewlett Packard Enterprise Company, hereinafter referred to as "the Parties," believe that certain information that is or will be encompassed by discovery demands by the Parties involves the production or disclosure of trade secrets, confidential business information, or other proprietary information;

WHEREAS, the Parties seek a protective order limiting disclosure and use thereof in this Action (this "Action" being limited to the seven cases identified in the caption of this order) in accordance with Federal Rule of Civil Procedure 26(c):

THEREFORE, it is hereby stipulated among the Parties and ORDERED that:

1. Each Party may designate as confidential for protection under this Order, in whole or in part, any document, information, or material that constitutes or includes, in whole or in part, confidential or proprietary information or trade secrets of the Party or a Third Party to whom the Party reasonably believes it owes an obligation of confidentiality with respect to such document, information, or material ("Protected Material"). Protected Material shall be designated by the

Party producing it by affixing a legend or stamp on such document, information, or material as follows: "CONFIDENTIAL."  The word "CONFIDENTIAL" shall be placed clearly on each page of the Protected Material (except deposition and hearing transcripts and natively produced documents) for which such protection is sought.  For deposition and hearing transcripts, the word "CONFIDENTIAL" shall be placed on the cover page of the transcript (if not already present on the cover page of the transcript when received from the court reporter) by each attorney receiving a copy of the transcript after that attorney receives notice of the designation of some or all of that transcript as "CONFIDENTIAL."  For natively produced Protected Material, the word "CONFIDENTIAL" shall be placed in the filename of each such natively produced document.

2. Any document produced before issuance of this Order, including pursuant to the Court's Order Governing Proceedings - Patent Case, with the designation "Confidential" or the like shall receive the same treatment as if designated "CONFIDENTIAL" under this order and any such documents produced with the designation "Confidential - Outside Attorneys' Eyes Only" or the like shall receive the same treatment as if designated "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY" under this Order, unless and until such document is re-designated to have a different classification under this Order.

3. With respect to documents, information, or material designated "CONFIDENTIAL," "CONFIDENTIAL - ATTORNEYS' EYES ONLY," "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY," "CONFIDENTIAL - SOURCE CODE," or "CONFIDENTIAL - RESTRICTED

SOURCE CODE" ("DESIGNATED MATERIAL"),[1] subject to the provisions herein and unless otherwise stated, this Order governs, without limitation: (a) all documents, electronically stored information, and/or things as defined by the Federal Rules of Civil Procedure; (b) all pretrial, hearing or deposition testimony, or documents marked as exhibits or for identification in depositions and hearings; (c) pretrial pleadings, exhibits to pleadings and other court filings; (d) affidavits; and (e) stipulations. All copies, reproductions, extracts, digests, and complete or partial summaries prepared from any DESIGNATED MATERIALS shall also be considered DESIGNATED MATERIAL and treated as such under this Order.

4. A designation of Protected Material (*i.e.*, "CONFIDENTIAL," "CONFIDENTIAL - ATTORNEYS' EYES ONLY," "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY," "CONFIDENTIAL - SOURCE CODE," or "CONFIDENTIAL – RESTRICTED SOURCE CODE") may be made at any time. Inadvertent or unintentional production of documents, information, or material that has not been designated as DESIGNATED MATERIAL shall not be deemed a waiver in whole or in part of a claim for confidential treatment. Any Party that inadvertently or unintentionally produces Protected Material without designating it as DESIGNATED MATERIAL may request destruction of that Protected Material by notifying the recipient(s) as soon as reasonably possible after the producing Party becomes aware of the inadvertent

---

[1] The term DESIGNATED MATERIAL is used throughout this Protective Order to refer to the class of materials designated as "CONFIDENTIAL," "CONFIDENTIAL - ATTORNEYS' EYES ONLY," "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY," "CONFIDENTIAL - SOURCE CODE," or "CONFIDENTIAL – RESTRICTED SOURCE CODE" individually and collectively.

or unintentional disclosure, and providing replacement Protected Material that is

properly designated. The recipient(s) shall then destroy all copies of the

inadvertently or unintentionally produced undesignated Protected Materials.

5.  "CONFIDENTIAL" documents, information, and material may be disclosed only

to the following persons, except upon receipt of the prior written consent of the

designating Party, upon order of the Court, or as set forth in paragraph 15 herein:

(a)  Outside counsel of record in this Action for the Parties, and the partners, counsel and associates of such counsel to whom it is reasonably necessary to disclose the information to assist in the litigation of this Action.

(b)  Employees of such counsel assigned to and reasonably necessary to assist such counsel in the litigation of this Action.

(c)  In-house counsel for the Parties who either have responsibility for making decisions dealing directly with the litigation of this Action, or who are assisting outside counsel in the litigation of this Action.

(d)  Up to and including three (3) designated representatives of each of the Parties to the extent reasonably necessary for the litigation of this Action, except that any Party may in good faith request the other Party's consent to designate one or more additional representatives, the other Party shall not unreasonably withhold such consent, and the requesting Party may seek leave of Court to designate such additional representative(s) if the requesting Party believes the other Party has unreasonably withheld such consent.

(e)  Outside consultants or experts retained for the purpose of this litigation, provided that: (1) such consultants or experts are not presently employed by the Parties or of an affiliate of a Party hereto for purposes other than this Action; (2) before access is given, the consultant or expert has completed the Undertaking attached as Appendix A hereto and the same is served upon the producing Party with a current curriculum vitae of the consultant or expert, including a list of other cases in which the individual has provided a report or testified (at trial or deposition) and a list of companies that the individual has been employed by or provided consulting services pertaining to the field of the invention of the patent(s)-in-suit or the products accused of infringement within the last four years and a brief description of the subject matter of the consultancy or employment, at least ten (10) days before access to the Protected Material is to be given to that consultant or expert to object to and notify the receiving Party in writing that it objects to disclosure of Protected Material to the consultant or expert. The Parties agree to promptly confer and use good faith to resolve any such objection. If the Parties are unable to resolve any objection, the objecting Party may file a motion with the

4

Court within fifteen (15) days of receipt of the notice, or within such other time as the Parties may agree, seeking a protective order with respect to the proposed disclosure.  The objecting Party shall have the burden of proving the need for a protective order.  No disclosure shall occur until all such objections are resolved by agreement or Court order.

(f)     Independent litigation support services, including persons working for or as court reporters, graphics or design services, jury or trial consulting services, and photocopy, document imaging, and database services retained by counsel and reasonably necessary to assist counsel with the litigation of this Action.

(g)     The Court and its personnel, as well as any mediator appointed by the Court and/or agreed to by the Parties.

6.     A Party shall designate documents, information, or material as

"CONFIDENTIAL" only upon a good faith belief that the documents,

information, or material contains confidential or proprietary information or trade

secrets of the Party or a Third Party to whom the Party reasonably believes it

owes an obligation of confidentiality with respect to such documents, information,

or material.

7.     Documents, information, or material produced pursuant to any discovery request

in this Action, including but not limited to Protected Material designated as

DESIGNATED MATERIAL, shall be used by the Parties only in the litigation of

this Action and shall not be used for any other purpose.  Any person or entity who

obtains access to DESIGNATED MATERIAL or the contents thereof pursuant to

this Order shall not make any copies, duplicates, extracts, summaries, or

descriptions of such DESIGNATED MATERIAL or any portion thereof except as

may be reasonably necessary in the litigation of this Action.  Any such copies,

duplicates, extracts, summaries, or descriptions shall be classified DESIGNATED

MATERIALS and subject to all of the terms and conditions of this Order.

8. To the extent a producing Party believes that certain Protected Material qualifying to be designated CONFIDENTIAL is so sensitive that its dissemination deserves even further limitation, the producing Party may designate such Protected Material "CONFIDENTIAL - ATTORNEYS' EYES ONLY" or "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY," or to the extent such Protected Material includes computer source code and/or live data (that is, data as it exists residing in a database or databases) ("Source Code Material"), the producing Party may designate such Protected Material as "CONFIDENTIAL - SOURCE CODE."

9. For Protected Material designated CONFIDENTIAL - ATTORNEYS' EYES ONLY, access to, and disclosure of, such Protected Material shall be limited to individuals listed in paragraphs 5(a–c) and (e–g); provided, however, that access by in-house counsel pursuant to paragraph 5(c) be limited to in-house counsel who exercise no competitive decision-making authority on behalf of the client.

10. For Protected Material designated CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY, access to, and disclosure of, such Protected Material shall be limited to individuals listed in paragraphs 5(a–b) and (e–g); provided, however, that the designating Party shall accommodate reasonable requests to provide summary information to in-house counsel designated pursuant to paragraph 5(c) who exercise no competitive decision-making authority on behalf of the client and reasonably require access to such information.

11. For Protected Material designated CONFIDENTIAL - SOURCE CODE, the following additional restrictions apply:

6

(a)     Access to a Party's Source Code Material shall be provided on two source code machines with the identical production available for in-person review as follows: on "stand-alone" computer(s) (that is, the computer may not be linked to any network, including a local area network ("LAN"), an intranet or the Internet). The stand-alone computer(s) may be connected to (i) a printer, or (ii) a device capable of temporarily storing electronic copies solely for the limited purposes permitted pursuant to paragraphs 11(h and k) below. The stand-alone computer(s) shall, at the receiving Party's request, including reasonable analysis tools for the type of Source Code Material provided thereon. The receiving Party shall be responsible for providing tools or licenses to tools that it wished to use so that the producing Party may install such tools on the stand-alone computer(s). Additionally, except as provided in paragraph 11(k) below, the stand-alone computer(s) may only be located at the offices of the producing Party's outside counsel or its vendors within a reasonable distance of the receiving Party's expert or law firm, at the discretion of the producing Party as to which one. If an office of the producing Party's outside counsel is not available within a reasonable distance of the receiving Party's expert or law firm, the producing Party will make the stand-alone computer(s) available at the nearest Iron Mountain facility to receiving Party's expert or law firm, at the receiving Party's expense. Should the need arise due to a public health emergency, state, local or national restrictions or travel restriction, which hinder the source code review, the Parties shall meet and confer in good faith to discuss the feasibility of making the stand-alone computer(s) available in a location that would allow source code review to occur.

(b)     The receiving Party shall make reasonable efforts to restrict its requests for such access to the stand-alone computer(s) to normal business hours, which for purposes of this paragraph shall be 8:00 a.m. through 6:00 p.m. However, upon reasonable notice from the receiving Party, the producing Party shall make reasonable efforts to accommodate the receiving Party's request for access to the stand-alone computer(s) outside of normal business hours. The Parties agree to cooperate in good faith such that maintaining the producing Party's Source Code Material at the offices of its outside counsel or its vendors shall not unreasonably hinder the receiving Party's ability to efficiently and effectively conduct the prosecution or defense of this Action.

(c)     The producing Party shall provide the receiving Party with information explaining how to start, log on to, and operate the stand-alone computer(s) in order to access the produced Source Code Material on the stand-alone computer(s).

(d)     The producing Party will produce Source Code Material in computer searchable format on the stand-alone computer(s) as described above, and shall install on the stand-alone computer(s) reasonable analysis tools appropriate for the type of Source Code Material requested pursuant to paragraph 11(a) above. Specific tools may include but are not limited to the following: SciTools Understand, SlickEdit, Eclipse, UltraEdit, Android Studio, Microsoft Visual Studio, Notepad++, Beyond Compare, Mozilla FireFox, and Adobe Acrobat Pro. The producing Party shall allow the reviewing Party to store and modify documents

(other than the Source Code Material offered for inspection) on the stand-alone computer(s), and shall provide, at the reviewing Party's expense as with the other tools requested by reviewing Party per paragraph 11(a), VeraCrypt software (https://www.veracrypt.fr/en/Home.html) for the reviewing Party to secure the reviewing Party's work product stored on the stand-alone computer(s). The producing Party shall not install any keystroke or other monitoring software on any stand-alone computer.

(e)     Access to Source Code Material shall be limited to outside counsel and up to three (3) outside consultants or experts[2] (*i.e.*, not existing employees or affiliates of a Party or an affiliate of a Party or competitor identified by the Producing Party with reasonable specificity) retained for the purpose of this litigation and approved to access such Protected Materials pursuant to paragraph 5(e) above. Each person authorized to access Source Code Material may use a laptop computer for the sole purpose of typing notes related to source code review; provided that, outside of the inspection, such notes are securely stored on the laptop by the receiving Party in a manner consistent with the provisions of this Order. No other electronic devices shall be permitted in the secure room, including but not limited to laptops, floppy drives, zip drives, cellular telephones, personal digital assistants, Blackberries, cameras, voice recorders, Dictaphones, or telephone jacks. Nor shall any non-electronic devices capable of similar functionality be permitted in the secure room. During review of Source Code Material, the receiving Party (including its consultants and experts) shall be entitled to take notes relating to the Source Code Material but may not copy more than ten (10) consecutive lines of the Source Code Material into the notes. No copies of all or any portion of the Source Code Material may leave the room in which the Source Code Material is inspected except as otherwise permitted pursuant to paragraphs 11(h and k) below. Further, no other written or electronic record of the Source Code Material is permitted except as otherwise provided herein. A receiving Party may include excerpts of Source Code Material in an exhibit to a pleading, expert report, or deposition transcript (collectively, "Source Code Exhibits"), provided that the Source Code Exhibits are appropriately marked under this Order, restricted to those who are entitled to have access to them as specified herein, and, if filed with the Court, filed under seal in accordance with the Court's rules, procedures, and orders.

(f)     To the extent portions of Source Code Material are quoted in a Source Code Exhibit, either (1) the entire Source Code Exhibit will be stamped and treated as CONFIDENTIAL - SOURCE CODE or (2) those pages containing quoted Source

---

[2] For the purposes of this paragraph, an outside consultant or expert is defined to include the outside consultant's or expert's direct reports and other support personnel, such that the disclosure to a consultant or expert who employs others within their firm to help in their analysis shall count as a disclosure to a single consultant or expert, provided that such personnel helping in the analysis of Source Code Material shall be disclosed pursuant to Paragraph 5(e).

Code Material will be separately stamped and treated as CONFIDENTIAL - SOURCE CODE.

(g)  Except as set forth in paragraph 11(k) below, no electronic copies of Source Code Material shall be made without prior written consent of the producing Party, except as necessary to create documents that, pursuant to the Court's rules, procedures, and order, must be filed or served electronically.

(h)  The producing Party shall provide with the stand-alone computers and printers letter-sized paper that is blank other than a unique Bates number on each page and the label "CONFIDENTIAL - SOURCE CODE" for use by the receiving Party when printing Source Code Material from the stand-alone computers. The receiving Party shall be permitted to make a reasonable number of printouts and photocopies of Source Code Material, which shall presumptively be a total of ten (10), all of which shall be designated and clearly labeled "CONFIDENTIAL - SOURCE CODE" and the Bates number(s) for the page or pages, and the receiving Party shall maintain a log of all such files that are printed or photocopied. When the receiving Party prints Source Code Material from a stand-alone computer, it shall allow copies of all the printouts to be made before leaving the location of the stand-alone computer, which copies shall be promptly furnished to the producing Party.

(i)  Should such printouts or photocopies be permissibly transferred back to electronic media, such media shall be labeled "CONFIDENTIAL - SOURCE CODE" and shall continue to be treated as such.

(j)  If the receiving Party's outside counsel, consultants, or experts obtain printouts or photocopies of Source Code Material, the receiving Party shall ensure that such outside counsel, consultants, or experts keep the printouts or photocopies in a secured locked area in the offices of such outside counsel, consultants, or expert. The receiving Party may also temporarily keep the printouts or photocopies at: (i) the Court for any proceedings(s) relating to the Source Code Material, for the dates associated with the proceeding(s); (ii) the sites where any deposition(s) relating to the Source Code Material are taken, for the dates associated with the deposition(s); and (iii) any intermediate location reasonably necessary to transport the printouts or photocopies (*e.g.*, a hotel prior to a Court proceeding or deposition).

(k)  A producing Party's Source Code Material may only be transported by the receiving Party at the direction of a person authorized under paragraph 11(e) above to another person authorized under paragraph 11(e) above, on paper or removable electronic media (*e.g.*, a DVD, CD-ROM, or flash memory "stick") via hand carry, Federal Express, or other similarly reliable courier. Source Code Material may not be transported or transmitted electronically over a network of any kind, including a LAN, an intranet, or the Internet. The producing Party shall, on request, make one of the standalone computers containing the Source Code Material, or a secure laptop computer containing the Source Code Material,

9

available at depositions of witnesses who would otherwise be permitted access to the standalone computer(s). The receiving Party shall make such requests ten (10) calendar days before the deposition. A producing Party shall make reasonable efforts to comply with such a request made less than ten (10) calendar days before a deposition, provided the request is made in good faith and could not reasonably under the circumstances have been made sooner.

12. "CONFIDENTIAL – RESTRICTED SOURCE CODE" refers to any Source Code Material that a Party or Non-Party reasonably believes to be subject to federal, state or foreign government restrictions or agreements related to such restrictions that strictly limit access to, movement of, or transmittal of the information. Examples of the sources of such restrictions include the Defense Production Act of 1950 and the Committee on Foreign Investment in the United States (CFIUS).

13. For Protected Material designated CONFIDENTIAL - RESTRICTED SOURCE CODE, notwithstanding any other restrictions or requirements imposed on either Party by this Order, access to CONFIDENTIAL - RESTRICTED SOURCE CODE material shall only be available in accordance with the restrictions imposed on it by the applicable governmental entities or the agreements related to such restrictions.

14. If a Party is served with a subpoena or a court order issued in other litigation that compels disclosure of any information or items designated in this Action as CONFIDENTIAL, CONFIDENTIAL - ATTORNEYS' EYES ONLY, CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY, CONFIDENTIAL - SOURCE CODE, or CONFIDENTIAL – RESTRICTED SOURCE CODE, that Party must:

(a)     promptly notify in writing the designating Party. Such notification shall include a copy of the subpoena or court order if allowed under applicable protective orders in the other litigation;

(b)     promptly notify in writing the party who caused the subpoena or order to issue in

the other litigation that some or all of the material covered by the subpoena or order is subject to this Protective Order. Such notification shall include a copy of this Order. If the designating Party timely seeks a protective order, the Party served with the subpoena or court order shall not produce any information designated in this Action as CONFIDENTIAL, CONFIDENTIAL - ATTORNEYS' EYES ONLY, CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY, CONFIDENTIAL - SOURCE CODE, or CONFIDENTIAL – RESTRICTED SOURCE CODE before a determination by the court from which the subpoena or order issued, unless the Party has obtained the designating Party's permission. The designating Party shall bear the burden and expense of seeking protection in that court of its confidential material – and nothing in these provisions should be construed as authorizing or encouraging a receiving Party in this Action to disobey a lawful directive from another court.

15. In the event that a Party is required, by a valid discovery request, to produce a Non-Party's confidential information in its possession, and the Party is subject to an agreement with the Non-Party not to produce the Non-Party's confidential information, then the Party shall:

1. promptly notify in writing the Requesting Party and the Non-Party that some or all of the information requested is subject to a confidentiality agreement with a Non-Party;

2. promptly provide the Non-Party with a copy of this Order, the relevant discovery request(s), and a reasonably specific description of the information requested; and

3. make the information requested available for inspection by the Non-Party.

If the Non-Party fails to object or seek a protective order from this court within 14

calendar days of receiving the notice and accompanying information, the Receiving Party may produce the Non-Party's confidential information responsive to the discovery request.  If the Non-Party timely seeks a protective order, the Receiving Party shall not produce any information in its possession or control that is subject to the confidentiality agreement with the Non-Party before a determination by the court.  Absent a court order to the contrary, the Non-Party shall bear the burden and expense of seeking protection in this court of its Protected Material.

16.    Any attorney representing a Party, whether in-house or outside counsel, and any person associated with a Party and permitted to receive the other Party's Protected Material that is designated CONFIDENTIAL - ATTORNEYS' EYES ONLY, CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY, CONFIDENTIAL - SOURCE CODE, and/or CONFIDENTIAL – RESTRICTED SOURCE CODE and directed to technical information relevant to the case, but excluding financial data or non-technical business information (collectively "HIGHLY SENSITIVE MATERIAL"), who obtains, receives, has access to, or otherwise learns, in whole or in part, the other Party's HIGHLY SENSITIVE MATERIAL under this Order shall not prepare, prosecute, supervise, or assist in the preparation or prosecution of any patent application pertaining to the field of the invention of the patents-in-suit during the pendency of this Action and for one year after its conclusion, including any appeals.  To ensure compliance with the purpose of this provision, each Party shall create an "Ethical Wall" between those persons with access to HIGHLY SENSITIVE MATERIAL and any individuals who prepare, prosecute, supervise or assist in the preparation or prosecution of any patent application pertaining to the field of invention of the patent-in-suit.  Nothing in this Order shall

prevent a person with access to HIGHLY SENSITIVE MATERIAL from participating in a PTO proceeding, *e.g.*, IPR or PGR, except for that person shall not participate—directly or indirectly—in the amendment of any claim(s).

17. Nothing in this Order shall require production of documents, information, or other material that a Party contends is protected from disclosure by the attorney-client privilege, the work product doctrine, or other privilege, doctrine, or immunity. Pursuant to Federal Rule of Evidence 502(d), if documents, information, or other material subject to a claim of attorney-client privilege, work product doctrine, or other privilege, doctrine, or immunity is inadvertently or unintentionally produced, such production shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any such privilege, doctrine, or immunity. Any Party that inadvertently or unintentionally produces documents, information, or other material it reasonably believes are protected under the attorney-client privilege, work product doctrine, or other privilege, doctrine, or immunity may obtain the return of such documents, information, or other material by promptly notifying the recipient(s) and providing a privilege log for the inadvertently or unintentionally produced documents, information, or other material. The recipient(s) shall gather and return all copies of such documents, information, or other material to the producing Party, except for any pages containing privileged or otherwise protected markings by the recipient(s), which pages shall instead be destroyed and certified as such to the producing Party.

18. There shall be no disclosure of any DESIGNATED MATERIAL by any person authorized to have access thereto to any person who is not authorized for such access under this Order. The Parties are hereby ORDERED to safeguard all such documents,

13

information, and material to protect against disclosure to any unauthorized persons or entities.

19.     Nothing contained herein shall be construed to prejudice any Party's right to use any DESIGNATED MATERIAL in taking testimony at any deposition or hearing provided that the DESIGNATED MATERIAL is only disclosed to a person(s) who is: (i) eligible to have access to the DESIGNATED MATERIAL by virtue of their employment with the designating Party; (ii) identified in the DESIGNATED MATERIAL as an author, addressee, or copy recipient of such information; (iii) although not identified as an author, addressee, or copy recipient of such DESIGNATED MATERIAL, has, in the ordinary course of business, seen such DESIGNATED MATERIAL; (iv) a current or former officer, director or employee of the producing Party, a current or former officer, director, or employee of a company affiliated with the producing Party, or a designee under Federal Rule of Civil Procedure 30(b)(6) to testify on behalf of the producing Party; (v) counsel for a Party, including outside counsel and in-house counsel (subject to paragraph 9 of this Order); (vi) an independent contractor, consultant, and/or expert retained for the purpose of this litigation; (vii) court reporters and videographers; (viii) the Court; or (ix) other persons entitled hereunder to access to DESIGNATED MATERIAL.  DESIGNATED MATERIAL shall not be disclosed to any other persons unless prior authorization is obtained from counsel representing the producing Party or from the Court.

20.     Parties may, at the deposition or hearing or within thirty (30) days after receipt of a deposition or hearing transcript, designate the deposition or hearing transcript or any portion thereof as "CONFIDENTIAL," "CONFIDENTIAL - ATTORNEYS' EYES

14

ONLY," "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY,"

"CONFIDENTIAL - SOURCE CODE," or "CONFIDENTIAL – RESTRICTED

SOURCE CODE" pursuant to this Order.  Access to the deposition or hearing transcript

so designated shall be limited in accordance with the terms of this Order.  Until

expiration of the 30-day period, the entire deposition or hearing transcript shall be treated

as CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY.

21.     Any DESIGNATED MATERIAL that is filed with the Court shall be filed under seal and

shall remain under seal until further order of the Court.  The filing Party shall be

responsible for informing the Clerk of the Court that the filing should be sealed and for

placing the legend "FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER"

above the caption and conspicuously on each page of the filing.  Exhibits to a filing shall

conform to the labeling requirements set forth in this Order.  If a pretrial pleading filed

with the Court, or an exhibit thereto, discloses or relies on DESIGNATED MATERIAL,

such confidential portions shall be redacted to the extent necessary and the pleading or

exhibit filed publicly with the Court.

22.     The Order applies to pretrial discovery.  Nothing in this Order shall be deemed to prevent

the Parties from introducing any DESIGNATED MATERIAL into evidence at the trial of

this Action, or from using any information contained in DESIGNATED MATERIAL at

the trial of this Action, subject to any pretrial order issued by this Court.

23.     A Party may request in writing to the other Party that the designation given to any

DESIGNATED MATERIAL be modified or withdrawn.  If the designating Party does

not agree to re-designation within ten (10) days of receipt of the written request, the

requesting Party may apply to the Court for relief.  Upon any such application to the

Court, the burden shall be on the designating Party to show why its classification is proper. Such application shall be treated procedurally as a motion to compel pursuant to Federal Rule of Civil Procedure 37, subject to the Rule's provisions relating to sanctions. In making such application, the requirements of the Federal Rules of Civil Procedure and the Local Rules of the Court shall be met. Pending the Court's determination of the application, the designation of the designating Party shall be maintained.

24.     Each outside consultant or expert to whom DESIGNATED MATERIAL is disclosed in accordance with the terms of this Order shall be advised by counsel of the terms of this Order, shall be informed that they are subject to the terms and conditions of this Order, and shall sign an acknowledgment that they have received a copy of, have read, and have agreed to be bound by this Order. A copy of the acknowledgment form is attached as Appendix A.

25.     To the extent that any discovery is taken of persons who are not Parties to this Action ("Third Parties") and in the event that such Third Parties contend the discovery sought involves trade secrets, confidential business information, or other proprietary information, then such Third Parties may agree to be bound by this Order.

26.     To the extent that discovery or testimony is taken of Third Parties, the Third Parties may designate as "CONFIDENTIAL," "CONFIDENTIAL - ATTORNEYS' EYES ONLY," or "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY," "CONFIDENTIAL - SOURCE CODE," and/or "CONFIDENTIAL – RESTRICTED SOURCE CODE" any documents, information, or other material, in whole or in part, produced by such Third Parties. The Third Parties shall have ten (10) days after production of such documents, information, or other materials to make such a designation. Until that time period lapses

or until such a designation has been made, whichever occurs sooner, all documents, information, or other material so produced or given shall be treated as "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY" in accordance with this Order.

27. Within thirty (30) days of final termination of this Action, including any appeals, all DESIGNATED MATERIAL, including all copies, duplicates, abstracts, indexes, summaries, descriptions, and excerpts or extracts thereof (excluding excerpts or extracts incorporated into any privileged memoranda of the Parties and excluding any electronic copies that may exist on standard system back-up tapes or other standard system back-up media according to standard electronic back-up and archival procedures), shall at the producing Party's election either be returned to the producing Party or be destroyed. For avoidance of doubt, the foregoing requirement to return or destroy does not apply to attorney work product created by the attorneys for the Parties. The receiving Party shall verify the return or destruction by affidavit furnished to the producing Party, upon the producing Party's request.

28. The failure to designate documents, information, or material in accordance with this Order and the failure to object to a designation at a given time shall not preclude the filing of a motion at a later date seeking to impose such designation or challenging the propriety thereof. The entry of this Order and/or the production of documents, information, or material hereunder shall in no way constitute a waiver of any objection to the furnishing thereof, all such objections being hereby preserved.

29. Any Party knowing or believing that any other Party is in violation of or intends to violate this Order and has raised the question of violation or potential violation with the opposing Party and has been unable to resolve the matter by agreement may move the

Court for such relief as may be appropriate in the circumstances. Pending disposition of the motion by the Court, the Party alleged to be in violation of or intending to violate this Order shall discontinue the performance of and/or shall not undertake the further performance of any action alleged to constitute a violation of this Order.

30. Production of DESIGNATED MATERIAL by any Party shall not be deemed a publication of the documents, information, or material (or the contents thereof) produced so as to void or make voidable whatever claim the Parties may have as to the proprietary and confidential nature of the documents, information, or other material or its contents.

31. Nothing in this Order shall be construed to effect an abrogation, waiver, or limitation of any kind on the rights of each of the Parties to assert any applicable discovery or trial privilege.

32. Each of the Parties shall also retain the right to file a motion with the Court (a) to modify this Order to allow disclosure of DESIGNATED MATERIAL to additional persons or entities if reasonably necessary to prepare and present this Action; and (b) to apply for additional protection of DESIGNATED MATERIAL.

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

WSOU INVESTMENTS, LLC D/B/A
BRAZOS LICENSING AND DEVELOPMENT,

        Plaintiff,

    v.

HEWLETT PACKARD ENTERPRISE COMPANY,

        Defendant.

Nos. 6:20-cv-00725-ADA
6:20-cv-00726-ADA
6:20-cv-00727-ADA
6:20-cv-00728-ADA
6:20-cv-00729-ADA
6:20-cv-00730-ADA
6:20-cv-00783-ADA

APPENDIX A
UNDERTAKING OF EXPERTS OR CONSULTANTS REGARDING PROTECTIVE ORDER

I, _____, declare that:

1.    My address is _____.

    My current employer is _____.

    My current occupation is _____.

2.    I have received a copy of the Protective Order in this action. I have carefully read and understand the provisions of the Protective Order.

3.    I will comply with all of the provisions of the Protective Order. I will hold in confidence, will not disclose to anyone not qualified under the Protective Order, and will use only for purposes of this action any information designated as "CONFIDENTIAL," "CONFIDENTIAL - ATTORNEYS' EYES ONLY," "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY," "CONFIDENTIAL - SOURCE CODE," or "CONFIDENTIAL – RESTRICTED SOURCE CODE" that is disclosed to me.

4. Promptly upon termination of these actions, I will return all documents and things designated as "CONFIDENTIAL," "CONFIDENTIAL - ATTORNEYS' EYES ONLY," "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY," "CONFIDENTIAL - SOURCE CODE," or "CONFIDENTIAL – RESTRICTED SOURCE CODE" that came into my possession, and all documents and things that I have prepared relating thereto, to the outside counsel for the Party by whom I am employed.

5. I hereby submit to the jurisdiction of this Court for the purpose of enforcement of the Protective Order in this action.

I declare under penalty of perjury that the foregoing is true and correct.


Signature _____


Date _____

63941133 v5-WorkSiteUS-036252/0001

# EXHIBIT 5

**Morgan Pietz**

| | |
|---|---|
| **From:** | Morgan Pietz |
| **Sent:** | Tuesday, December 21, 2021 11:32 AM |
| **To:** | Jim Etheridge |
| **Cc:** | Mike Jones; caribou@matters.warrenlex.com; WSOU-Google@jonesday.com; WSOUPOTTER GROUP; IPTeam; mark@swclaw.com; CA-BrazosTrials@carterarnett.com; Dan MacLemore; Rob@stantonllp.com; Julie Goerlinger; Admin; Ryan Loveless; Scott Breedlove |
| **Subject:** | Re: WSOU Investments, LLC d/b/a Brazos Licensing and Development v. Google LLC, Cause Nos. 6:20-cv-571, 6:20-cv-572, 6:20-cv-573, 6:20-cv-575, 6:20-cv-576, 6:20-cv-579, 6:20-cv-580, 6:20-cv-583, 6:20-cv-584, and 6:20-cv-585 |

My clients, for their part, also do not agree to any such requirement as a condition for the reasonable continuance I requested.

We've reached out to the Court.

Best regards,
Morgan

Sent from my iPhone

> On Dec 21, 2021, at 11:22 AM, Jim Etheridge <jim@etheridgelaw.com> wrote:

> Mike,

> A couple of points in reply to your email to Mr. Pietz.

> (1)  WSOU does not agree to any such limitation or reservation as to any WSOU depositions that are already set;
> (2) WSOU does not see how this issue is relevant to any upcoming depositions such as the deposition of Mr. Matt Hogan on Jan 10th; and
> (3) if Google is sufficiently concerned about this issue, then WSOU is amenable to potentially rescheduling until February depositions where you think these issues might come up, but, in order to have a discussion along those lines, Google will need to answer Mr. Pietz questions below and identify the depositions and topics where you think documents from the third parties would be relevant.

> Look forward to your quick reply.

> Cordially,
> Jim

> **From:** Mike Jones <mikejones@potterminton.com>
> **Sent:** Tuesday, December 21, 2021 12:35 PM
> **To:** Morgan Pietz <morgan@pstrials.com>
> **Cc:** caribou@matters.warrenlex.com; WSOU-Google@jonesday.com; WSOUPOTTER GROUP

<WSOUGoogle@potterminton.com>; IPTeam <IPTeam@etheridgelaw.com>; mark@swclaw.com; CA-BrazosTrials@carterarnett.com; Dan MacLemore <maclemore@thetexasfirm.com>; rob@stantonllp.com; Julie Goerlinger <julie@pstrials.com>; Admin <admin@pstrials.com>
**Subject:** Re: WSOU Investments, LLC d/b/a Brazos Licensing and Development v. Google LLC, Cause Nos. 6:20-cv-571, 6:20-cv-572, 6:20-cv-573, 6:20-cv-575, 6:20-cv-576, 6:20-cv-579, 6:20-cv-580, 6:20-cv-583, 6:20-cv-584, and 6:20-cv-585

Thank you for your email. We disagree on who has caused delays. This is a very time sensitive matter. However, to accommodate you and to avoid imposing on the Court, Google is willing to compromise and will agree not to oppose a continuance of the hearing until sometime during the week of January 10. In doing so, Google reserves its right to request that any depositions taken before the production of the documents in question be reopened in the event the production of said documents requires further questioning of a deponent.

Sent from my iPhone

On Dec 20, 2021, at 10:58 PM, Morgan Pietz <morgan@pstrials.com> wrote:

Mike,

Thanks for your response.

My understanding is that the fact discovery cutoff in the Google cases is not until the end of February.  If Google was so concerned about delays, it could easily have sought this information from WSOU directly, with a motion to compel before Judge Albright if necessary, rather than burdening my clients with third party subpoenas and ancillary enforcement proceedings in Delaware, which Google then forced us to move to have transferred back to Texas, over Google's objections.

In view of Google's refusal to stipulate to a continuance of the 12/27 hearing until later in January, I'd like to know specifically which scheduled depositions you think will involve documents you are seeking to obtain from my clients and when they are schedule to occur.  To that end, please provide me tomorrow with copies of any deposition notices or subpoenas that you contend will involve topics relevant to my clients, and indicate which specific noticed topics you think will involve documents you want to get from my clients.  And then if the noticed date on the face of your notice or subpoena is not the real date when the parties have agreed for the deposition, then please indicate the latest information about scheduling as well.

Please be advised that we'll be reaching out to the Court tomorrow to ask for a continuance to mid-January or later, and indicating that Google opposes any continuance beyond the week of 1/3.

Best regards,
Morgan

**From:** Mike Jones <mikejones@potterminton.com>
**Sent:** Monday, December 20, 2021 2:56 PM

**To:** Morgan Pietz <morgan@pstrials.com>; Mike Jones <mikejones@potterminton.com>; caribou@matters.warrenlex.com; WSOU-Google@jonesday.com; WSOUPOTTER GROUP <WSOUGoogle@potterminton.com>; IPTeam <IPTeam@etheridgelaw.com>; mark@swclaw.com; CA-BrazosTrials@carterarnett.com
**Cc:** Dan MacLemore <maclemore@thetexasfirm.com>; Rob@stantonllp.com; Julie Goerlinger <julie@pstrials.com>; Admin <admin@pstrials.com>
**Subject:** RE: WSOU Investments, LLC d/b/a Brazos Licensing and Development v. Google LLC, Cause Nos. 6:20-cv-571, 6:20-cv-572, 6:20-cv-573, 6:20-cv-575, 6:20-cv-576, 6:20-cv-579, 6:20-cv-580, 6:20-cv-583, 6:20-cv-584, and 6:20-cv-585


Morgan –

 We will comply with your request that we include you and other counsel for the subpoenaed parties on future emails concerning the third-party discovery in question.  We look forward to working with you concerning these matters.

 Google can agree to continue the hearing currently set by the Court for December 27, 2021 until sometime during the week of January 3, 2022.  Google cannot agree to extend the date for such hearing any longer.  Depositions where the documents being sought may be used are scheduled to begin on January 10, 2022.  Additionally, there is a discovery deadline upcoming shortly in this matter.  The delays that have already occurred concerning the documents sought make it impossible for Google to agree to any longer continuance.


Michael E. Jones

**POTTER** MINTON
-------------------------------A Professional Corporation
110 North College, Suite 500; Tyler TX  75702
telephone:  903.597.8311 ext. 239
Direct dial:  903.525.2239
facsimile:  903.593.0846
mikejones@potterminton.com

---

**From:** Morgan Pietz <morgan@pstrials.com>
**Sent:** Monday, December 20, 2021 2:38 PM
**To:** Mike Jones <mikejones@potterminton.com>; caribou@matters.warrenlex.com; WSOU-Google@jonesday.com; WSOUPOTTER GROUP <WSOUGoogle@potterminton.com>; IPTeam <IPTeam@etheridgelaw.com>; mark@swclaw.com; CA-BrazosTrials@carterarnett.com
**Cc:** Dan MacLemore <maclemore@thetexasfirm.com>; Rob@stantonllp.com; Julie Goerlinger <julie@pstrials.com>; Admin <admin@pstrials.com>
**Subject:** FW: WSOU Investments, LLC d/b/a Brazos Licensing and Development v. Google LLC, Cause Nos. 6:20-cv-571, 6:20-cv-572, 6:20-cv-573, 6:20-cv-575, 6:20-cv-576, 6:20-cv-579, 6:20-cv-580, 6:20-cv-583, 6:20-cv-584, and 6:20-cv-585

To Mr. Jones and other counsel of record in the WSOU v. Google litigation,

If you could please include me and other counsel for the subpoenaed parties (cc'd) on any future emails to chambers about the third-party discovery proceedings related to our clients, including anything related to the two motions to compel filed against my clients in Delaware that Mr. Jones mentioned in his 12/14 email below (which he neglected to copy me on), I would appreciate it.

I understand that a hearing has actually now already been set on the two matters Mr. Jones brought to the Court's attention with his 12/14 email.   Accordingly, I'll be working today on getting my local counsel formally engaged (Dan MacLemore is cc'd) and my PHV papers on file in the Western District of Texas.

With the holidays coming up, would anyone object to the hearing on this matter being continued to mid- to late- January?

If you could get back to me on that today, I would appreciate that as well.

Best regards,
Morgan

Morgan E. Pietz
PIETZ & SHAHRIARI, LLP
6700 S. Centinela Ave., 2nd Floor
Culver City, CA 90230
morgan@pstrials.com
(310) 424-5557

*WE HAVE MOVED.  PLEASE NOTE OUR NEW OFFICE MAILING ADDRESS*

*This transmission is from a law firm and may contain information that is privileged, confidential, and protected by the attorney-client or attorney work product privileges.  If you are not the addressee, note that any disclosure, copying, distribution or use of the contents of this message is prohibited.  If you have received this transmission in error, please destroy it and notify us immediately at the telephone number above.*

**From:** Travis Richins <travis@etheridgelaw.com>
**Sent:** Monday, December 20, 2021 11:59 AM
**To:** Morgan Pietz <morgan@pstrials.com>; Julie Goerlinger <julie@pstrials.com>
**Subject:** Fw: WSOU Investments, LLC d/b/a Brazos Licensing and Development v. Google LLC, Cause Nos. 6:20-cv-571, 6:20-cv-572, 6:20-cv-573, 6:20-cv-575, 6:20-cv-576, 6:20-cv-579, 6:20-cv-580, 6:20-cv-583, 6:20-cv-584, and 6:20-cv-585

**Travis Richins** | Etheridge Law Group

2600 East Southlake Blvd | Suite 120-324 |Southlake, TX  76092
travis@etheridgelaw.com | T 214 601 0678 | F 817 887 5950

---

**From:** Jeffrey Gunnell <Jeffrey_Gunnell@txwd.uscourts.gov>
**Sent:** Friday, December 17, 2021 10:24 AM
**To:** Mike Jones <mikejones@potterminton.com>
**Cc:** caribou@matters.warrenlex.com <caribou@matters.warrenlex.com>; WSOU-Google@jonesday.com <WSOU-Google@jonesday.com>; WSOUPOTTER GROUP <WSOUGoogle@potterminton.com>; IPTeam <IPTeam@etheridgelaw.com>; mark@swclaw.com <mark@swclaw.com>; CA-BrazosTrials@carterarnett.com <CA-BrazosTrials@carterarnett.com>
**Subject:** RE: WSOU Investments, LLC d/b/a Brazos Licensing and Development v. Google LLC, Cause Nos. 6:20-cv-571, 6:20-cv-572, 6:20-cv-573, 6:20-cv-575, 6:20-cv-576, 6:20-cv-579, 6:20-cv-580, 6:20-cv-583, 6:20-cv-584, and 6:20-cv-585

Counsel,

The Court will set these for a hearing on December 27, 2021 at 11am. Also, thank you for bringing the transferred motions to compel to the Court's attention. Merry Christmas and Happy Holidays to everyone in the meantime!

Many thanks,

**Jeffrey R. Gunnell**
Law Clerk to the Honorable Alan D Albright
United States District Court, Western District of Texas

---

**From:** Mike Jones <mikejones@potterminton.com>
**Sent:** Tuesday, December 14, 2021 3:22 PM
**To:** Jeffrey Gunnell <Jeffrey_Gunnell@txwd.uscourts.gov>
**Cc:** caribou@matters.warrenlex.com; WSOU-Google@jonesday.com; WSOUPOTTER GROUP <WSOUGoogle@potterminton.com>; IPTeam@etheridgelaw.com; mark@swclaw.com; CA-BrazosTrials@carterarnett.com
**Subject:** WSOU Investments, LLC d/b/a Brazos Licensing and Development v. Google LLC, Cause Nos. 6:20-cv-571, 6:20-cv-572, 6:20-cv-573, 6:20-cv-575, 6:20-cv-576, 6:20-cv-579, 6:20-cv-580, 6:20-cv-583, 6:20-cv-584, and 6:20-cv-585

<mark>CAUTION - EXTERNAL:</mark>

Jeffrey:
I wanted to inform you of a recent development in the above-referenced cases.  On October 6, 2021 and October 15, 2021 Google filed in the District of Delaware two motions to compel seeking enforcement of subpoenas for documents and testimony from Terrier SSC, LLC and BP Funding Trust, in connection with the 10 above-referenced matters pending before Judge Albright.  The Delaware court transferred these motions to the Western District of Texas by order of December 6, 2021.  Accordingly, the motions with respect to Terrier SSC, LLC and BP Funding Trust are now pending in the Western District of Texas under cause numbers 6:21-mc-1269 and 6:21-mc-1270, respectively.  Said motions are fully briefed and ready for hearing.

 Additionally, these motions have some issues in common with the Motion for Protective Order Requiring Withdrawal of Subpoenas Against Nonparties BP Funding and Terrier SSC filed by WSOU in 6:20-cv-571 [DKT #61], 6:20-cv-572 [DKT #64], 6:20-cv-573 [DKT #59], 6:20-cv-575 [DKT #68], 6:20-cv-576 [DKT #61], 6:20-cv-579 [DKT #61], 6:20-cv-580 [DKT #63], 6:20-cv-583 [DKT #58], 6:20-cv-584 [DKT #62], and 6:20-cv-585 [DKT #64].  Google filed its responses to those motions on October 27, 2021; accordingly, those motions are also fully briefed and ready for hearing.

 We appreciate your instructions and guidance on how we should bring these transferred Motions to the attention of the Court and the appropriate manner to request a hearing on these.  Thank you so much for your assistance.

Michael E. Jones

**P O T T E R** M I N T O N
-----------------------------A Professional Corporation
110 North College, Suite 500; Tyler TX  75702
telephone:  903.597.8311 ext. 239
Direct dial:  903.525.2239
facsimile:  903.593.0846
mikejones@potterminton.com

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

# EXHIBIT 6



**DAN MACLEMORE**
maclemore@thetexasfirm.com
**(254) 776-5500**
Waco Office

December 21, 2021

To:      Honorable Alan D. Albright, United States District Judge

From:   Daniel MacLemore, Beard Kultgen Brophy Bostwick & Dickson, PLLC
         Counsel for BP Funding Trust, Terrier SSC, LLC, and Aqua Licensing, LLC

Re:      _WSOU Investments, LLC v. Google, LLC_ – W.D. Tex. Nos. 6:20-cv-571, etc.
         **Request for Continuance of Third Party Discovery Matters Set for Hearing December 27, 2021**

Your Honor,

I have recently been engaged as local counsel for the three third-party subpoena recipients referenced above, all of which have received subpoenas from Google and other defendants related to WSOU cases.

I understand that late last week, at Google's request, the Court set a hearing for December 27, 2021 at 11 am, to hear three motions related to two of my clients: (1) Google's motion to compel Terrier SCC, LLC, (filed originally in the District of Delaware as a miscellaneous discovery petition); (2) Google's motion to compel BP Funding Trust (also filed originally in Delaware); and (3) WSOU's motion for a protective order (filed here as part of WSOU's suit against Google) relating to Terrier and BP Funding. Since the underlying Google lawsuit is pending here, my clients filed a motion to transfer the Delaware motions under Rule 45(f), which Google opposed but the Delaware District Court recently granted.

I am requesting a continuance of the December 27, 2021 hearing until mid- to late- January (Google has agreed to a continuance to sometime the week of January 10, 2022 but will not agree to a continuance longer than that). In addition to the timing issues (I plan on being out of the office most of the next two weeks), there are several substantive reasons for this request.

First, my understanding is that the issues are at least partially if not wholly the same as issues previously raised by Microsoft on a motion to compel that this Court denied this fall in a similar WSOU case. The transcript from the Microsoft hearing was sealed at the request of the parties. Accordingly, extra time will allow WSOU and Microsoft to confer about un-sealing the relevant transcript portions (which we are asking them to do), so that Google and my clients can review it and better understand what exactly was argued and what this Court decided when it denied Microsoft's motion concerning my clients.

Second, the three motions Google has brought to the Court's attention are not the only motions that concern my clients; there appear to be more similar motions coming, and we think it makes sense to hear all the issues related to these third parties at the same time.

Third, Google also filed a motion in Delaware against another third party witness that my firm now represents called Aqua Licensing, LLC. After Google lost on the transfer issue in the BP Funding and Terrier proceedings in Delaware, it consented to the transfer of its motion against Aqua to Texas, which the Delaware court granted (on 12/15/2021 Google's motion against Aqua, D. Del. No. 1:21-mc-00443, became W.D. Tex. 6:21-mc-01309). Unlike the three motions discussed above, the motion filed against Aqua was never fully briefed in Delaware, so we will need some time to prepare a response on that one.

Finally, in addition to the four motions discussed above (three motions to compel filed by Google in Delaware, and one for a protective order filed here by WSOU), my clients have also received similar (and, in some cases, identical) subpoenas from other defendants being sued by WSOU in the Western District of Texas, including ZTE, Dell, and HPE.  At least one of these other defendants—ZTE, which served my clients with subpoenas that were identical to the subpoenas served by Google—is threatening what might be a fifth motion on these related issues.  ZTE is currently insisting that it will not cooperate with Google in doing a single potential deposition of Aqua unless Aqua, BP Funding, and Terrier *all* agree to waive *all* of their objections to all documents and topics in the subpoenas that Google served on them and that ZTE then copied and served.

Accordingly, if counsel for the various different defendants sending my clients duplicative subpoenas are not going to cooperate with respect to potential depositions of these third party subpoena recipients, then my clients are going to file a motion to partially consolidate these cases for the limited purpose of certain third party discovery to streamline further, related proceedings before this Court and hopefully save my client's time, money, and inconvenience in light of their position as uninvolved third parties.

In sum, my clients believe a continuance of a month or so is warranted because they would like to review whatever can be unsealed with respect to what this Court has already decided about the issues involving my clients in the Microsoft case (and Google should get to see it, too).  If a hearing is still necessary, then we believe all the issues relating to my third-party subpoena recipient clients, including a potential limited-purpose consolidation, should be resolved at the same hearing where Google, ZTE, and any other party can argue why the Court should rule differently than it did when it previously denied Microsoft's motion to compel discovery from WSOU related to BP Funding and Terrier.

Sincerely yours,

**BEARD KULTGEN BROPHY**
**BOSTWICK & DICKSON, LLP**

Dan MacLemore

Cc(s):   Morgan Pietz (morgan@pstrials.com)
Julie Goerlinger (julie@pstrials.com)
Rob Millimet (Rob@stanonllp.com)

*Co-Counsel for Non Party Subpoena Recipients BP Funding Trust, Terrier SSC, LLC and Aqua Licensing LLC.*

AND TO ALL COUNSEL OF RECORD IN WSOU v. GOOGLE LITIGATION

# EXHIBIT 7

**Morgan Pietz**

| | |
|---|---|
| **From:** | Jeffrey Gunnell <Jeffrey_Gunnell@txwd.uscourts.gov> |
| **Sent:** | Tuesday, December 21, 2021 1:03 PM |
| **To:** | Mark Siegmund; Dan MacLemore |
| **Cc:** | mikejones@potterminton.com; caribou@matters.warrenlex.com; WSOU-Google@jonesday.com; WSOUPOTTER GROUP; IPTeam; CA-BrazosTrials@carterarnett.com; Morgan Pietz; Rob Millimet; Julie Goerlinger; Admin; Diego Salazar; Suzanne Miles; Kristie Davis |
| **Subject:** | Re: WSOU Investments, LLC d/b/a Brazos Licensing and Development v. Google LLC, Cause Nos. 6:20-cv-571, 6:20-cv-572, 6:20-cv-573, 6:20-cv-575, 6:20-cv-576, 6:20-cv-579, 6:20-cv-580, 6:20-cv-583, 6:20-cv-584, and 6:20-cv-585 |

Counsel,

The Court will cancel the hearing set for Monday, December 27, 2021.

Please meet and confer and provide the Court with a narrowed set of issues in need of resolution thereafter.

Merry Christmas, Happy Holidays, and Happy New Year to all. We look forward to seeing you in the near future.

Many thanks,

**Jeffrey R. Gunnell**
Law Clerk to the Honorable Alan D Albright
United States District Court, Western District of Texas

---

**From:** Mark Siegmund <mark@swclaw.com>
**Sent:** Tuesday, December 21, 2021 12:46:00 PM
**To:** Dan MacLemore <maclemore@thetexasfirm.com>; Jeffrey Gunnell <Jeffrey_Gunnell@txwd.uscourts.gov>
**Cc:** mikejones@potterminton.com <mikejones@potterminton.com>; caribou@matters.warrenlex.com <caribou@matters.warrenlex.com>; WSOU-Google@jonesday.com <WSOU-Google@jonesday.com>; WSOUPOTTER GROUP <WSOUGoogle@potterminton.com>; IPTeam <IPTeam@etheridgelaw.com>; CA-BrazosTrials@carterarnett.com <CA-BrazosTrials@carterarnett.com>; Morgan Pietz <morgan@pstrials.com>; Rob Millimet <Rob@stanton llp.com>; Julie Goerlinger <julie@pstrials.com>; Admin <admin@pstrials.com>; Diego Salazar <salazar@thetexasfirm.com>
**Subject:** RE: WSOU Investments, LLC d/b/a Brazos Licensing and Development v. Google LLC, Cause Nos. 6:20-cv-571, 6:20-cv-572, 6:20-cv-573, 6:20-cv-575, 6:20-cv-576, 6:20-cv-579, 6:20-cv-580, 6:20-cv-583, 6:20-cv-584, and 6:20-cv-585

<mark>**CAUTION - EXTERNAL:**</mark>

Jeffrey,

WSOU does not oppose the one-month continuance requested by third parties (PB Funding, Terrier, and Aqua).

Sincerely,
Mark



**MARK SIEGMUND**
SENIOR ASSOCIATE

STECKLER WAYNE COCHRAN CHERRY, PLLC
8416 OLD MCGREGOR ROAD
WACO, TEXAS 76712
254.651.3690
972.387.4041 (fax)
www.swclaw.com

---

**From:** Dan MacLemore <maclemore@thetexasfirm.com>
**Sent:** Tuesday, December 21, 2021 1:13 PM
**To:** Jeffrey_Gunnell@txwd.uscourts.gov
**Cc:** mikejones@potterminton.com; caribou@matters.warrenlex.com; WSOU-Google@jonesday.com; WSOUPOTTER GROUP <WSOUGoogle@potterminton.com>; IPTeam <IPTeam@etheridgelaw.com>; Mark Siegmund <mark@swclaw.com>; CA-BrazosTrials@carterarnett.com; Morgan Pietz <morgan@pstrials.com>; Rob Millimet <Rob@stantonllp.com>; Julie Goerlinger <julie@pstrials.com>; Admin <admin@pstrials.com>; Diego Salazar <salazar@thetexasfirm.com>
**Subject:** WSOU Investments, LLC d/b/a Brazos Licensing and Development v. Google LLC, Cause Nos. 6:20-cv-571, 6:20-cv-572, 6:20-cv-573, 6:20-cv-575, 6:20-cv-576, 6:20-cv-579, 6:20-cv-580, 6:20-cv-583, 6:20-cv-584, and 6:20-cv-585

Jeffrey:

Please find attached a memo to Judge Albright regarding the above referenced matters that were set late last week for a hearing next Monday. I will be filing notices of appearance as local counsel for the third parties (PB Funding, Terrier, and Aqua) and motions to appear pro hac vice for the parties' lead counsel, Morgan Pietz, later today. We are requesting a continuance of the hearing set for next Monday as outlined in the memo.

Please feel free to reach out if you or Judge Albright have any questions or concerns.

Kindest regards,
Dan

Dan MacLemore



www.thetexasfirm.com
220 South Fourth Street
Waco, Texas 76701
Main (254) 776-5500
Direct (254) 732-5848
Cell (254) 733-1828
Fax (254) 776-3591
maclemore@thetexasfirm.com

IRS CIRCULAR 230 DISCLAIMER:  TO ENSURE COMPLIANCE WITH REQUIREMENTS IMPOSED BY THE INTERNAL REVENUE SERVICE, WE INFORM YOU THAT ANY U.S. FEDERAL TAX ADVICE PROVIDED IN THIS COMMUNICATION IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY THE RECIPIENT OR ANY OTHER TAXPAYER (I) FOR THE PURPOSE OF AVOIDING TAX PENALTIES THAT MAY BE IMPOSED ON THE RECIPIENT OR ANY OTHER TAXPAYER, OR (II) IN PROMOTING, MARKETING OR RECOMMENDING TO ANOTHER PARTY A PARTNERSHIP OR OTHER ENTITY, INVESTMENT PLAN, ARRANGEMENT OR OTHER TRANSACTION ADDRESSED HEREIN.

CONFIDENTIALITY STATEMENT:  THE FOREGOING MESSAGE (INCLUDING ATTACHMENTS) IS COVERED BY THE ELECTRONIC COMMUNICATION PRIVACY ACT, 18 U.S.C. SECTIONS 2510-2521, IS CONFIDENTIAL AND MAY ALSO BE PROTECTED BY ATTORNEY-CLIENT OR OTHER PRIVILEGE.  IF YOU BELIEVE THAT IT HAS BEEN SENT TO YOU IN ERROR, DO NOT READ IT.  IF YOU ARE NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT

ANY RETENTION, DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED.  PLEASE REPLY TO THE SENDER
THAT YOU HAVE RECEIVED THE MESSAGE IN ERROR, THEN DELETE IT.  THANK YOU.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

# EXHIBIT 8

**Morgan Pietz**

| | |
|---|---|
| **From:** | Morgan Pietz |
| **Sent:** | Thursday, January 6, 2022 12:26 PM |
| **To:** | Mike Jones; Dan MacLemore; WSOUPOTTER GROUP; IPTeam; CA-BrazosTrials@carterarnett.com; Rob Millimet; Julie Goerlinger; Admin; Diego Salazar; Suzanne Miles; caribou@matters.warrenlex.com; WSOU-Google@jonesday.com; Kristie Davis; mark@swclaw.com; Jim Etheridge; Ryan Loveless |
| **Cc:** | mhatcher@sidley.com; cbutcher@sidley.com; Lavenue, Lionel; Schulz, Bradford; bshelton@sheltoncoburn.com; ablythe@gibsondunn.com; Hartman, Sarah G.; Rousseau, Timothy J. |
| **Subject:** | RE: WSOU Investments - Limited Purpose Consolidation as to Certain Third Party Discovery |
| **Attachments:** | 2021.01.06 - Proposed Order re Consolidation.pdf; 2021.12.21 Letter to Hon. Albright.pdf |

To Counsel in the WSOU patent infringement cases pending against Google, ZTE, Dell, and HPE in the Western District of Texas:

As you know, my office represents certain third parties that have been subpoenaed in connection with the above-mentioned cases.  Please review the attached proposed order and advise as to whether your client will stipulate to it being entered.  If not, then my clients, with support from WSOU, will be moving forward with a motion asking that the Court enter an order to this effect, which we will ask be heard at the same time as Google's pending motions to compel and WSOU's motion for a protective order, which are mentioned in the body of the attached.

In addition to the proposed order itself, I am also attaching a letter to the Court from our local counsel, relating to the setting of Google's motions, in case you other defendants have not seen that exchange yet.

Please advise as to your clients' positions.  I am available to meet and confer with each of you this week.

Best regards,
Morgan

P.S. In addition to copying all recipients on the email chain from the Google case below, I have copied at least one lawyer from each firm that is counsel of record in each of the low number cases for ZTE, Dell, and HPE, per PACER.  But I would ask anyone receiving this to please forward it on to other people on your team as may be appropriate.

---

**From:** Mike Jones <mikejones@potterminton.com>
**Sent:** Wednesday, January 5, 2022 8:30 AM
**To:** Morgan Pietz <morgan@pstrials.com>; Mike Jones <mikejones@potterminton.com>
**Cc:** Dan MacLemore <maclemore@thetexasfirm.com>; caribou@matters.warrenlex.com; WSOU-Google@jonesday.com; WSOUPOTTER GROUP <WSOUGoogle@potterminton.com>; IPTeam <IPTeam@etheridgelaw.com>; CA-BrazosTrials@carterarnett.com; Rob Millimet <Rob@stantonllp.com>; Julie Goerlinger <julie@pstrials.com>; Admin <admin@pstrials.com>; Diego Salazar <salazar@thetexasfirm.com>; Suzanne Miles <Suzanne_Miles@txwd.uscourts.gov>; Kristie Davis <Kristie_Davis@txwd.uscourts.gov>; mark@swclaw.com; Jim Etheridge <jim@etheridgelaw.com>; Ryan Loveless <ryan@etheridgelaw.com>
**Subject:** RE: WSOU Investments, LLC d/b/a Brazos Licensing and Development v. Google LLC, Cause Nos. 6:20-cv-571, 6:20-cv-572, 6:20-cv-573, 6:20-cv-575, 6:20-cv-576, 6:20-cv-579, 6:20-cv-580, 6:20-cv-583, 6:20-cv-584, and 6:20-cv-585

Morgan –

This will confirm Friday at 1:00 pm CT.  I will send a calendar invite and dial in shortly.

Michael E. Jones

**P O T T E R** M I N T O N
--------------------------------A Professional Corporation
110 North College, Suite 500; Tyler TX  75702
telephone:  903.597.8311 ext. 239
Direct dial:  903.525.2239
facsimile:  903.593.0846
mikejones@potterminton.com

---

**From:** Morgan Pietz <morgan@pstrials.com>
**Sent:** Wednesday, January 5, 2022 10:17 AM
**To:** Mike Jones <mikejones@potterminton.com>
**Cc:** Dan MacLemore <maclemore@thetexasfirm.com>; caribou@matters.warrenlex.com; WSOU-Google@jonesday.com; WSOUPOTTER GROUP <WSOUGoogle@potterminton.com>; IPTeam <IPTeam@etheridgelaw.com>; CA-BrazosTrials@carterarnett.com; Rob Millimet <Rob@stantonllp.com>; Julie Goerlinger <julie@pstrials.com>; Admin <admin@pstrials.com>; Diego Salazar <salazar@thetexasfirm.com>; Suzanne Miles <Suzanne_Miles@txwd.uscourts.gov>; Kristie Davis <Kristie_Davis@txwd.uscourts.gov>; mark@swclaw.com; Jim Etheridge <jim@etheridgelaw.com>; Ryan Loveless <ryan@etheridgelaw.com>
**Subject:** Re: WSOU Investments, LLC d/b/a Brazos Licensing and Development v. Google LLC, Cause Nos. 6:20-cv-571, 6:20-cv-572, 6:20-cv-573, 6:20-cv-575, 6:20-cv-576, 6:20-cv-579, 6:20-cv-580, 6:20-cv-583, 6:20-cv-584, and 6:20-cv-585

Mike,

Friday at 11 am Pacific / 1 pm Central should work.  If anyone has a conflict please advise now.  I'm out of the office and on my phone right now, so would you please be so kind as to circulate a calendar appt / dial in?

Best regards,
Morgan

Sent from my iPhone

> On Jan 5, 2022, at 7:41 AM, Mike Jones <mikejones@potterminton.com> wrote:
>
>
> Morgan,
>
> It is important we conduct this meet and confer this week.   We are available from 9 am central until 3 pm central time on Friday to conduct the meet and confer.   Please confirm today what works in this window for you and the others on your side who intend to participate.
>
>
> **Michael E. Jones**
> **P O T T E R** M I N T O N
> --------------------------------A Professional Corporation
> Address:  110 North College, Suite 500; Tyler TX  75702
> direct dial: 903–525–2239
> direct fax: 903–531–3939
> office:  903–597–8311
> mikejones@potterminton.com

**From:** Morgan Pietz <morgan@pstrials.com>
**Sent:** Tuesday, January 4, 2022 6:53 PM
**To:** Mike Jones <mikejones@potterminton.com>; Dan MacLemore <maclemore@thetexasfirm.com>
**Cc:** caribou@matters.warrenlex.com; WSOU-Google@jonesday.com; WSOUPOTTER GROUP <WSOUGoogle@potterminton.com>; IPTeam <IPTeam@etheridgelaw.com>; CA-BrazosTrials@carterarnett.com; Rob Millimet <Rob@stanronllp.com>; Julie Goerlinger <julie@pstrials.com>; Admin <admin@pstrials.com>; Diego Salazar <salazar@thetexasfirm.com>; Suzanne Miles <Suzanne_Miles@txwd.uscourts.gov>; Kristie Davis <Kristie_Davis@txwd.uscourts.gov>; mark@swclaw.com; Jim Etheridge <jim@etheridgelaw.com>; Ryan Loveless <ryan@etheridgelaw.com>
**Subject:** RE: WSOU Investments, LLC d/b/a Brazos Licensing and Development v. Google LLC, Cause Nos. 6:20-cv-571, 6:20-cv-572, 6:20-cv-573, 6:20-cv-575, 6:20-cv-576, 6:20-cv-579, 6:20-cv-580, 6:20-cv-583, 6:20-cv-584, and 6:20-cv-585

Hi Mike,

I had hoped to have you a draft of a consolidation proposal by tomorrow.  With the holidays, it is taking just a little longer than I had hoped, but I do anticipate having the proposal ready to circulate to you by end of the day tomorrow, Thursday morning at the very latest.

Re: an M&C call, I will work on clearing some times that work for me, my co-counsel, my local counsel, and with counsel for WSOU in the Google case and I'll propose a few times tomorrow for Thursday afternoon or on Friday.  If there are any good windows either day that work for your team, please let me know and I'll start by clearing those times.

Best regards,
Morgan


Morgan E. Pietz
PIETZ & SHAHRIARI, LLP
6700 S. Centinela Ave., 2nd Floor
Culver City, CA 90230
morgan@pstrials.com
(310) 424-5557

*WE HAVE MOVED.  PLEASE NOTE OUR NEW OFFICE MAILING ADDRESS*


*This transmission is from a law firm and may contain information that is privileged, confidential, and protected by the attorney-client or attorney work product privileges.  If you are not the addressee, note that any disclosure, copying, distribution or use of the contents of this message is prohibited.  If you have received this transmission in error, please destroy it and notify us immediately at the telephone number above.*

**From:** Mike Jones <mikejones@potterminton.com>
**Sent:** Tuesday, January 4, 2022 4:00 PM
**To:** Morgan Pietz <morgan@pstrials.com>; Dan MacLemore <maclemore@thetexasfirm.com>
**Cc:** caribou@matters.warrenlex.com; WSOU-Google@jonesday.com; WSOUPOTTER GROUP <WSOUGoogle@potterminton.com>; IPTeam <IPTeam@etheridgelaw.com>; CA-BrazosTrials@carterarnett.com; Rob Millimet <Rob@stanronllp.com>; Julie Goerlinger

<julie@pstrials.com>; Mike Jones <mikejones@potterminton.com>; Admin <admin@pstrials.com>;
Diego Salazar <salazar@thetexasfirm.com>; Suzanne Miles <Suzanne_Miles@txwd.uscourts.gov>;
Kristie Davis <Kristie_Davis@txwd.uscourts.gov>; mark@swclaw.com; Jim Etheridge
<jim@etheridgelaw.com>; Ryan Loveless <ryan@etheridgelaw.com>
**Subject:** RE: WSOU Investments, LLC d/b/a Brazos Licensing and Development v. Google LLC, Cause Nos.
6:20-cv-571, 6:20-cv-572, 6:20-cv-573, 6:20-cv-575, 6:20-cv-576, 6:20-cv-579, 6:20-cv-580, 6:20-cv-583,
6:20-cv-584, and 6:20-cv-585

Morgan and Dan –

I am confirming our meet and confer telephonic conference tomorrow at 11:00 a.m. CT as discussed in
the email below.  Please confirm your attendance and I will send dial in information first thing in the
morning.

Thanks so much.

Michael E. Jones

**P O T T E R** M I N T O N
------------------------**A Professional Corporation**
110 North College, Suite 500; Tyler TX  75702
telephone:  903.597.8311 ext. 239
Direct dial:  903.525.2239
facsimile:  903.593.0846
mikejones@potterminton.com

---

**From:** Mike Jones
**Sent:** Thursday, December 23, 2021 12:07 PM
**To:** Morgan Pietz <morgan@pstrials.com>; Dan MacLemore <maclemore@thetexasfirm.com>
**Cc:** caribou@matters.warrenlex.com; WSOU-Google@jonesday.com; WSOUPOTTER GROUP
<WSOUGoogle@potterminton.com>; IPTeam <IPTeam@etheridgelaw.com>; CA-
BrazosTrials@carterarnett.com; Rob Millimet <Rob@stantonllp.com>; Julie Goerlinger
<julie@pstrials.com>; Admin <admin@pstrials.com>; Diego Salazar <salazar@thetexasfirm.com>;
Suzanne Miles <Suzanne_Miles@txwd.uscourts.gov>; Kristie Davis <Kristie_Davis@txwd.uscourts.gov>;
mark@swclaw.com; Jim Etheridge <jim@etheridgelaw.com>; Ryan Loveless <ryan@etheridgelaw.com>
**Subject:** RE: WSOU Investments, LLC d/b/a Brazos Licensing and Development v. Google LLC, Cause Nos.
6:20-cv-571, 6:20-cv-572, 6:20-cv-573, 6:20-cv-575, 6:20-cv-576, 6:20-cv-579, 6:20-cv-580, 6:20-cv-583,
6:20-cv-584, and 6:20-cv-585

Morgan and Dan,

Thanks for your quick response.   Google is available to meet and confer on January 5, 2022 at 11:00 am
central time, please confirm that this works for your team.   At this time, we do not see the need to
include other third parties in a meet and confer on motions filed by Google, or by WSOU based on
subpoenas served by Google.  We will take a look at the consolidation proposal once provided to us and
can reassess at that time if it makes sense to invite others into our discussion.  As to the request
concerning unsealing of the hearing transcript in the Microsoft matter, Google does not oppose any
such request but does not agree that doing so is necessary for the Court to hear argument and resolve
the three pending motions at hand.

Happy Holidays.

Michael E. Jones

**P O T T E R** M I N T O N
--------------------------A Professional Corporation
110 North College, Suite 500; Tyler TX  75702
telephone:  903.597.8311 ext. 239
Direct dial:  903.525.2239
facsimile:  903.593.0846
mikejones@potterminton.com

---

**From:** Morgan Pietz <morgan@pstrials.com>
**Sent:** Wednesday, December 22, 2021 6:07 PM
**To:** Mike Jones <mikejones@potterminton.com>; Dan MacLemore <maclemore@thetexasfirm.com>
**Cc:** caribou@matters.warrenlex.com; WSOU-Google@jonesday.com; WSOUPOTTER GROUP
<WSOUGoogle@potterminton.com>; IPTeam <IPTeam@etheridgelaw.com>; CA-
BrazosTrials@carterarnett.com; Rob Millimet <Rob@stantonllp.com>; Julie Goerlinger
<julie@pstrials.com>; Admin <admin@pstrials.com>; Diego Salazar <salazar@thetexasfirm.com>;
Suzanne Miles <Suzanne_Miles@txwd.uscourts.gov>; Kristie Davis <Kristie_Davis@txwd.uscourts.gov>;
mark@swclaw.com; Jim Etheridge <jim@etheridgelaw.com>; Ryan Loveless <ryan@etheridgelaw.com>
**Subject:** RE: WSOU Investments, LLC d/b/a Brazos Licensing and Development v. Google LLC, Cause Nos.
6:20-cv-571, 6:20-cv-572, 6:20-cv-573, 6:20-cv-575, 6:20-cv-576, 6:20-cv-579, 6:20-cv-580, 6:20-cv-583,
6:20-cv-584, and 6:20-cv-585

Hi Mike,

We are available to meet and confer with you on this anytime January 5th or later.

Between now and then, I plan to circulate a proposal as to consolidation of certain WSOU cases for the
limited purpose of third party discovery.  Which, as Dan indicated in his letter, is something we'd like to
see resolved at the same time as Google's three motions to compel (all recently transferred in from
Delaware) and WSOU's motion for a protective order (filed in W.D. Tex. originally).  I'd like for you to
have a chance to review the particulars of our proposal, which I will be working on next week, and for us
to confer about that on the same call.

Query whether you'd like counsel for ZTE, Dell, and HPE to also participate in the call, since they have
also all subpoenaed my clients, and some of them are writing meet and confer letters threatening still
further motions related to my clients (beyond the six or seven already-filed motions I can count so
far)?  They'll need to be a part of the consolidation discussion, in any event, but I'm happy to have a
separate call with only Google first, if you so desire.

Further, can I assume that Google will join in our request that WSOU and Microsoft un-seal the relevant
discovery tables and excerpts of the transcript from the sealed hearing at which Microsoft's motion to
compel discovery related to BP Funding and Terrier was denied?  When Ms. Kash and I argued the
motions to compel in Delaware, we did so without being able to explain to Judge Burke exactly what
was at issue and what was decided in the Microsoft proceedings.  I don't believe it makes sense for us to
have another hearing on these issues without knowing exactly what was decided in Microsoft and it
being clear for all to see and discuss.  I presume Google agrees?

Please stay tuned for a proposal from me as to consolidation.  Let me know whether Google joins in our request as to unsealing the Microsoft proceedings related to my clients.  And I look forward to speaking with you in the new year.

Best regards,
Morgan


Morgan E. Pietz
PIETZ & SHAHRIARI, LLP
6700 S. Centinela Ave., 2nd Floor
Culver City, CA 90230
morgan@pstrials.com
(310) 424-5557

*WE HAVE MOVED.  PLEASE NOTE OUR NEW OFFICE MAILING ADDRESS*


*This transmission is from a law firm and may contain information that is privileged, confidential, and protected by the attorney-client or attorney work product privileges.  If you are not the addressee, note that any disclosure, copying, distribution or use of the contents of this message is prohibited.  If you have received this transmission in error, please destroy it and notify us immediately at the telephone number above.*

---

**From:** Mike Jones <mikejones@potterminton.com>
**Sent:** Wednesday, December 22, 2021 1:51 PM
**To:** Dan MacLemore <maclemore@thetexasfirm.com>
**Cc:** Mike Jones <mikejones@potterminton.com>; caribou@matters.warrenlex.com; WSOU-Google@jonesday.com; WSOUPOTTER GROUP <WSOUGoogle@potterminton.com>; IPTeam <IPTeam@etheridgelaw.com>; CA-BrazosTrials@carterarnett.com; Morgan Pietz <morgan@pstrials.com>; Rob Millimet <Rob@stantonllp.com>; Julie Goerlinger <julie@pstrials.com>; Admin <admin@pstrials.com>; Diego Salazar <salazar@thetexasfirm.com>; Suzanne Miles <Suzanne_Miles@txwd.uscourts.gov>; Kristie Davis <Kristie_Davis@txwd.uscourts.gov>; mark@swclaw.com; Jim Etheridge <jim@etheridgelaw.com>; Ryan Loveless <ryan@etheridgelaw.com>
**Subject:** WSOU Investments, LLC d/b/a Brazos Licensing and Development v. Google LLC, Cause Nos. 6:20-cv-571, 6:20-cv-572, 6:20-cv-573, 6:20-cv-575, 6:20-cv-576, 6:20-cv-579, 6:20-cv-580, 6:20-cv-583, 6:20-cv-584, and 6:20-cv-585

Mr. MacLemore:

Good afternoon.  I am sending this email to all recipients of Jeffrey Gunnell's email of December 21, 2021 at 3:30 p.m., as well as to Jim Etheridge and Ryan Loveless.  If any recipient feels it should be forward to someone else, please let me know and I will be happy to do so.

As you know, in Mr. Gunnell's email, the Court instructed us to meet and confer regarding:  (1) Google's motions to compel BP Funding Trust and Terrier SSC, LLC; and (2) WSOU's motion for protective order.  We are available on December 28 between 9:00 a.m. and noon CST, December 29 between 11:00 a.m. and 2:00 p.m. CST, and December 30 between 9:00 a.m. and 2:00 p.m. CST.

Please let us know when you are available during this time.

Thank you.

Michael E. Jones

**P O T T E R** M I N T O N
-------------------------------**A Professional Corporation**
110 North College, Suite 500; Tyler TX  75702
telephone:  903.597.8311 ext. 239
Direct dial:  903.525.2239
facsimile:  903.593.0846
[mikejones@potterminton.com](mailto:mikejones@potterminton.com)

# EXHIBIT 9

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT,<br><br>Plaintiff,<br><br>v.<br><br>DELL TECHNOLOGIES INC., DELL INC., EMC CORPORATION, AND VMWARE, INC.,<br><br>Defendants. | Case Numbers:<br>**6:20-cv-00473-ADA***<br>6:20-cv-00474-ADA<br>6:20-cv-00475-ADA<br>6:20-cv-00476-ADA<br>6:20-cv-00477-ADA<br>6:20-cv-00478-ADA<br>6:20-cv-00479-ADA<br>6:20-cv-00480-ADA<br>6:20-cv-00481-ADA<br>6:20-cv-00482-ADA<br>6:20-cv-00485-ADA<br>6:20-cv-00486-ADA |
| WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT,<br><br>Plaintiff,<br><br>v.<br><br>ZTE CORPORATION,<br><br>Defendant. | Case Numbers:<br>**6:20-cv-00487-ADA***<br>6:20-cv-00488-ADA<br>6:20-cv-00489-ADA<br>6:20-cv-00490-ADA<br>6:20-cv-00491-ADA<br>6:20-cv-00492-ADA<br>6:20-cv-00493-ADA<br>6:20-cv-00494-ADA<br>6:20-cv-00495-ADA<br>6:20-cv-00496-ADA<br>6:20-cv-00497-ADA |
| WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE, LLC,<br><br>Defendant. | Case Numbers:<br>**6:20-cv-00571-ADA***<br>6:20-cv-00572-ADA<br>6:20-cv-00573-ADA<br>6:20-cv-00575-ADA<br>6:20-cv-00576-ADA<br>6:20-cv-00579-ADA<br>6:20-cv-00580-ADA<br>6:20-cv-00583-ADA<br>6:20-cv-00584-ADA<br>6:20-cv-00585-ADA |

| | |
|---|---|
| WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT,<br><br>        Plaintiff,<br><br>    v.<br><br>HEWLETT PACKARD ENTERPRISE COMPANY,<br><br>        Defendant. | Case Numbers:<br>**6:20-cv-00725-ADA**\*<br>6:20-cv-00726-ADA<br>6:20-cv-00728-ADA<br>6:20-cv-00730-ADA<br>6:20-cv-00783-ADA |

### [PROPOSED] ORDER GRANTING CONSOLIDATION AS TO CERTAIN NON-PARTY DISCOVERY

WHEREAS the Court has certain similar patent infringement matters pending before it brought by plaintiff WSOU, including the particular cases set forward on the caption above (the "**Cases Proposed for Consolidation**");

WHEREAS the defendants in certain of the WSOU cases, including the defendants in the particular cases set forward on the caption above, have sought discovery from some of the same non-parties, including by serving subpoenas for documents and testimony on non-parties BP Funding Trust; BasePoint Administrative, LLC; Terrier SSC, LLC; and/or Aqua Licensing, LLC (the "**Requesting Non-Parties**");

WHEREAS this Court has previously addressed discovery issues related to some of the Requesting Non-Parties, and certain of the defendants in the Cases Proposed for Consolidation have filed discovery motions addressed to similar issues, while other defendants in the Cases Proposed for Consolidation have sought to meet and confer with the Requesting Non-Parties as to their objections to the subpoenas they have been served with.

WHEREAS the Requesting Non-Parties have requested, and the plaintiff WSOU has agreed, that the defendants in the Cases Proposed for Consolidation should coordinate with

respect to the documents they are seeking, the depositions they want to take of the Requesting

Non-Parties, and with respect to the discovery motions they have brought or are contemplating

bringing, which such coordination and cooperation the Requesting Non-Parties and WSOU have

asked the Court to order, pursuant to Federal Rules of Civil Procedure, Rule 42 (consolidation)

and Rule 26(c) (discovery protective order).

WHEREAS the defendants in the Cases Proposed for Consolidation have [agreed to / opposed] the Requesting Non-Parties' and WSOU's request, and the Court, after due

consideration of the parties' filings and arguments, hereby GRANTS the request for

consolidation pursuant to Rule 42 and for a protective order pursuant to Rule 26(c), for good

cause shown, as follows:

1.      <u>Consolidation and Protective Order</u>.  Each of the Cases Proposed for

Consolidation listed on the caption of this order are hereby CONSOLIDATED, per Fed. R. Civ.

P. 42, solely for the limited purposes set out below.  This Order is not a general purpose

consolidation and it applies to third party discovery  to the Requesting Non-Parties only, not to

party discovery, and not to trial.  To the extent this Order limits or changes the usual course of

discovery, it shall be deemed a protective order, which is hereby ENTERED on the terms set out

below, per Fed. R. Civ. P. 26(c).

2.      <u>Future Filings</u>.  The low-number case as to each different defendant (indicated by

bold typeface and an asterisk on the caption above) shall hereby become designated as a "Lead

Case" for the purposes of any proceedings or other filings made under this Order.  If any party

desires to file with the Court any motion or other document that is subject to or related to this

Order, that party shall file it only in each of the four Lead Cases (and not in every different case

number that is subject to this Order).

3.    <u>Documents</u>.  To the extent that a Requesting Non-Party has produced documents, or produces documents in the future, in response to a subpoena from any of the defendants in these consolidated cases, such Requesting Non-Party shall hereby be allowed to produce the same set of documents to the other defendants subject to this Order that have already served or who in the future serve subpoenas for documents to such Requesting Non-Party.  If a Requesting Non-Party designates any documents pursuant to a protective order (*e.g.*, as "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY") in one case, then the same designation shall hereby automatically be deemed to apply in the other cases and as to the other defendants subject to this Order.  The foregoing procedure is without prejudice to, and is not intended to resolve, the Requesting Non-Parties' objections to the document requests, including their objections that documents should more appropriately be sought from WSOU than from the Requesting Non-Parties.

4.    <u>Depositions</u>.  Prior to any Requesting Non-Parties appearing for a deposition in connection with any of these consolidated cases, the following procedures shall apply:   the defendants in the consolidated cases are ordered to confer with each other, review the Court's relevant prior discovery rulings in any of the consolidated cases and in the prior *WSOU v. Microsoft* cases (to the extent such rulings and proceedings may become unsealed), and agree on a single, consolidated list of deposition topics as to each Requesting Non-Party.  The Court hereby imposes a limit that there can be a maximum of a single, seven-hour deposition of each Requesting Non-Party, at which the defendants who have issued subpoenas for depositions to such Requesting Non-Party must cooperate in conducting their examination.  If any party believes it needs more time to cover special topics unique to its case, then, prior to the single deposition, it may apply to the Court for extra time for its special line of questions.  Any

deposition of a Requesting Non-Party taken pursuant to this Order will be usable in all of the cases consolidated pursuant to this Order in which a subpoena for deposition has been issued to such Requesting Non-Party. The foregoing procedure is without prejudice to, and is not intended to resolve, the Requesting Non-Parties' objections to being deposed at all and to the noticed topics.

5.     Discovery Proceedings.  With respect to any future discovery proceedings related to the Requesting Non-Parties or otherwise subject to this Order—proceedings which specifically include the motions to compel filed by Google in the District of Delaware, which have been transferred to this district and assigned case numbers 6:21-mc-1269, 6:21-mc-1270, and 6:21-mc-1309, in the Western District of Texas, and WSOU's motion for a protective order filed in the Google cases (together, the "**Google Motions**")—the parties in the consolidated cases shall cooperate and coordinate with respect to briefing and argument.  And whatever the Court decides with respect to a discovery issue decided under this Order shall apply to the other cases that are or that may become subject to this Order.

6.     Hearing on the Google Motions.  Hearing on the Google Motions is hereby set for _____.  All parties subject to these consolidated proceedings are invited to participate in the hearing on the Google Motions and will be bound by what the Court decides.  Any defendant other than Google that wishes to be heard at the hearing on the Google Motions, such as to support Google's position or argue that its own subpoenas to the Requesting Non-Parties should be treated differently, is invited to file a single brief of five pages or less by _____.  WSOU and the Requesting Non-Parties may then each file a single brief, of five pages or less, responding to the other defendants' briefs by _____.

7.     <u>Expansion of this Order to Include Additional Defendants</u>.  WSOU and the Requesting Non-Parties may apply to the Court, for good cause shown, to include within the scope of this Order additional defendants and cases before this Court in which discovery is open. Any defendant proposed to be included within this order may object to such a request and argue why there are special facts giving rise for a need to obtain additional or different discovery from the Requesting Non-Parties on topics different from the topics covered by prior defendants. However, if the Court grants the request to include an additional defendant within the scope of this order, then any documents or deposition testimony previously produced pursuant to this order shall be produced to that new defendant pursuant to this Order, in full satisfaction of the Requesting Non-Parties' discovery obligations to that new defendant, subject, however, to any conditions or extra discovery allowed or imposed by the Court at that time.

IT IS SO ORDERED.


DATED: _____     BY: _____
                                  Honorable Alan D. Albright
                                  United States District Judge

# EXHIBIT 10

**Morgan Pietz**

| | |
|---|---|
| **From:** | Lavenue, Lionel <lionel.lavenue@finnegan.com> |
| **Sent:** | Friday, January 7, 2022 7:11 PM |
| **To:** | Morgan Pietz |
| **Cc:** | Hines, Lisa; Schulz, Bradford; Jim Etheridge; Ryan Loveless; Rob@stantonllp.com; Travis Richins; Brett@etheridgelaw.com; jhuang@etheridgelaw.com; Julie Goerlinger; maclemore@thetexasfirm.com |
| **Subject:** | Fourth Attempt, Urgent, WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT v. ZTE CORPORATION - FOR SERVICE |

Morgan,

ZTE has not filed any motion to compel. What motion are you referring to? ZTE is not part of any of Google's motions to compel (whether any remaining ones in the District of Delaware, or any that were transferred to the WDTX). Nor was ZTE part of any motions by Microsoft. None of those motions are by ZTE and none of them are pending in the ZTE cases.

As previously noted, ZTE filed its own subpoenas on Aqua, BP, and Terrier with respect to the District of Delaware. You continue to refuse to provide your position in view of the persuasive District of Delaware law, and you refuse to provide legal support for withholding production. And it is also our understanding that you refuse to produce documents/testimony in accordance with the subpoenas. Thus, if need be, we will proceed accordingly in the *appropriate* District of Delaware.

Regarding your letter to the WDTX Court, we will further evaluate and address that directly if need be—given your refusal to meet-and-confer after more than three attempts.

Have a good night,

Lionel

**From:** Morgan Pietz <morgan@pstrials.com>
**Sent:** Friday, January 7, 2022 9:17 PM
**To:** Lavenue, Lionel <lionel.lavenue@finnegan.com>
**Cc:** Hines, Lisa <Lisa.Hines@finnegan.com>; Schulz, Bradford <Bradford.Schulz@finnegan.com>; Jim Etheridge <jim@etheridgelaw.com>; Ryan Loveless <ryan@etheridgelaw.com>; Rob@stantonllp.com; Travis Richins <travis@etheridgelaw.com>; Brett@etheridgelaw.com; jhuang@etheridgelaw.com; Julie Goerlinger <julie@pstrials.com>; maclemore@thetexasfirm.com
**Subject:** Re: Third Attempt, Urgent, WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT v. ZTE CORPORATION - FOR SERVICE

*EXTERNAL* Email:

Lionel, the motion is now pending in Texas.

Enjoy your weekend.

Sent from my iPhone

On Jan 7, 2022, at 6:14 PM, Lavenue, Lionel <lionel.lavenue@finnegan.com> wrote:

Morgan,

Please provide support for your position that "Delaware district court orders are not controlling as to anything."

Note, that we issued three subpoenas (one to each of Aqua, BP, and Terrier). At least two of these entities (BP and Terrier) are Delaware entities. The subpoena for BP was sent to BP Funding Trust at Wilmington Savings Fund Society, FSB, 500 Delaware Avenue, 11th Floor, Wilmington, Delaware 19801; and the subpoenas for Terrier was sent to Terrier SSC LLC at VCORP Services, LLC, 1013 Centre Road, Suite 403-B, Wilmington, Delaware 19805.

Again, it is our understanding that at least BP and Terrier are Delaware entities. As such, as third-parties, the WDTX court does not have jurisdiction over BP and Terrier to compel production—the District of Delaware does. Thus, the District of Delaware law is *very* persuasive for a pending motion to compel in *Delaware*.

So again—as requested a month ago in our December 8, 2021 letters—please provide your positions on the referenced District of Delaware case law. As you can see, the case law is very relevant to the issues at hand and whether Aqua, BP, and Terrier should produce the requested documents/testimony.

Regards,

Lionel

---

**From:** Morgan Pietz <morgan@pstrials.com>
**Sent:** Friday, January 7, 2022 8:42 PM
**To:** Lavenue, Lionel <lionel.lavenue@finnegan.com>
**Cc:** Hines, Lisa <Lisa.Hines@finnegan.com>; Schulz, Bradford <Bradford.Schulz@finnegan.com>; Jim Etheridge <jim@etheridgelaw.com>; Ryan Loveless <ryan@etheridgelaw.com>; Rob@stantonllp.com; Travis Richins <travis@etheridgelaw.com>; Brett@etheridgelaw.com; JHuang@etheridgelaw.com; Julie Goerlinger <julie@pstrials.com>; maclemore@thetexasfirm.com
**Subject:** RE: Third Attempt, Urgent, WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT v. ZTE CORPORATION - FOR SERVICE

**EXTERNAL** Email:

Lionel,

If you won't respond to me with an answer about whether ZTE agrees to specific consolidation proposal I have now circulated, please address that question in any communication you feel compelled to send to the Court and include this entire email thread in your submission. I don't think doing so on you part is necessary or appropriate for the reasons I've already explained below, but if you feel differently, go ahead and do what you think needs to be done. If you *are* going to quote from Dan's letter to the Court, might I suggest that you please include the full sentence you are complaining about, instead of placing a period where an ellipsis belongs and neglecting to mention the part where he continues on two write "unless" X, Y and Z, as you have done in your most-recent, third urgent email on this topic. I've stated our position and don't think any further back and forth on this topic will be helpful.

As to your other point, I've already explained in some detail in my lengthy letter to you of December 16 why we don't think the requested discovery is relevant enough to justify the ongoing burden being imposed by my clients, among other objections that were timely made. Delaware district court orders

are not controlling as to anything, but I would suggest that you can feel free to make whatever arguments you want to make in this regard in the supplemental brief that I have proposed that you should have a chance to file, should you choose to do so.

I'm available to discuss all this with you next week, but would prefer if we can get all the relevant defense counsel on the line at once. And I would appreciate it if you could please provide at least a preliminary response as to whether ZTE will agree to the proposed order I circulated yesterday, before we conduct any such call.

Best regards,
Morgan

---

**From:** Lavenue, Lionel <lionel.lavenue@finnegan.com>
**Sent:** Friday, January 7, 2022 5:16 PM
**To:** Morgan Pietz <morgan@pstrials.com>
**Cc:** Hines, Lisa <Lisa.Hines@finnegan.com>; Schulz, Bradford <Bradford.Schulz@finnegan.com>; Jim Etheridge <jim@etheridgelaw.com>; Ryan Loveless <ryan@etheridgelaw.com>; Rob@stantonllp.com; Travis Richins <travis@etheridgelaw.com>; Brett@etheridgelaw.com; JHuang@etheridgelaw.com; Julie Goerlinger <julie@pstrials.com>; maclemore@thetexasfirm.com
**Subject:** Third Attempt, Urgent, WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT v. ZTE CORPORATION - FOR SERVICE

Morgan,

ZTE never "insist[ed] that it will not cooperate." Your letter says that, and it's just wrong. It requires correction with the Court.

Further, and so we may access if/how to take this issue to the Court, please either provide your availability for a meet and confer between you and co-counsel, and counsel for ZTE as requested, or confirm that you refuse to do so.

As for your requests, we still await all three positions (from Aqua, BP, and Terrier) regarding the District of Delaware case law—as detailed in our December 8, 2021 letters—permitting the as-requested discovery. For example, the requested documents and testimony are relevant to the issues of valuation, damages, royalty rates, and pre-suit investigations. *Acceleration Bay LLC v. Activision Blizzard, Inc.*, No. CV 16-453-RGA, 2018 WL 798731, at *3 (D. Del. Feb. 9, 2018) (finding that discovery over third-parties, even third-parties with security interests, is proper as discovery "may be relevant to central issues like validity and infringement, valuation, damages, royalty rates, pre-suit investigative diligence, and whether [Plaintiff] is an operating company," and that "common sense" confirms the documents request relevancy). Your December 16, 2021 letter and subsequent communications failed to address this case law.

Please provide your positions on the Delaware case law so we can properly consider your positions—as you only just recently formed the specifics "of exactly what [you were] proposing," as of yesterday (despite submitting a letter to the Court on December 21, 2021 without our consideration).

Regards,

Lionel

---

**From:** Morgan Pietz <morgan@pstrials.com>
**Sent:** Friday, January 7, 2022 6:44 PM

**To:** Lavenue, Lionel <lionel.lavenue@finnegan.com>
**Cc:** Hines, Lisa <Lisa.Hines@finnegan.com>; Schulz, Bradford <Bradford.Schulz@finnegan.com>; Jim Etheridge <jim@etheridgelaw.com>; Ryan Loveless <ryan@etheridgelaw.com>; Rob@stantonllp.com; Travis Richins <travis@etheridgelaw.com>; Brett@etheridgelaw.com; JHuang@etheridgelaw.com; Julie Goerlinger <julie@pstrials.com>; maclemore@thetexasfirm.com
**Subject:** RE: Follow-Up, Second Attempt, Urgent, WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT v. ZTE CORPORATION - FOR SERVICE

*EXTERNAL* **Email:**

Lionel,

I am in receipt of your "Urgent" message of yesterday evening in which you "demand[ed] immediate correction" of what you style as an "errored submission" to Judge Albright, such that you asked me to "Please confirm by January 7, 2022,"—i.e., by today—"that you will inform the Court of the error, and that you will correct the misrepresentations." Thank you, as well, for your follow-up message of 12:42 p.m. this afternoon demanding to set a call on Monday or Tuesday "so we may discuss the means of correction of Aqua/BP/Terrier's statements about ZTE in its December 21, 2021 letter to the Court."

The letter you are complaining about, my co-counsel Dan MacLemore's letter to the Court of December 21, 2021, was accurate. So there is nothing to correct. In your email to me of December 18, 2021 (which is reproduced down below on this chain), you stated as follows:

> "Morgan,
>
> As you know, ZTE and the other defendants (including Google) are all separate entities in separate cases and, as such, are under no obligation to coordinate discovery efforts.
>
> Nevertheless, ZTE is willing to coordinate with Google *if* Aqua, BP, and Terrier are likewise willing to coordinate in *full compliance* and in all aspects of ZTE's subpoenas—including document collections/productions and depositions.
>
> Once we have your confirmation that Aqua, BP, and Terrier will ***waive its non-privilege objections (with rights to demand log, by ZTE) and will comply with the subpoenas in entirety for document collection and depositions—including producing already collected documents being withheld (as well as any relevant documents beyond those of the Plaintiff WSOU)***—then ZTE is willing to coordinate with Google on depositions.
>
> Regards,
> Lionel"

(***Emphasis added***).

If you nevertheless feel compelled to raise this issue with Judge Albright, I would ask that you please include the entirety of this email chain as part of your submission and copy my local counsel Dan MacLemore (now cc'd).

Perhaps a better use of our time communicating with one another might be to establish whether ZTE will actually now agree to coordination and consolidation, along the lines detailed in my proposed order to that effect that I sent to you yesterday? I had refrained from reaching out to ZTE on this issue previously because I wanted you to have the specifics of exactly what I was proposing, which is what I sent you yesterday, just as soon as the proposed order was ready to go.

If the other three defendants agree to my proposed order that I circulated yesterday, would ZTE also agree to it? Or is all three of my clients dropping all their objections (privilege or otherwise) still a pre-condition you are going to insist upon before agreeing to coordinate as to a deposition of Aqua? Obviously, that position is a non-starter.

And if ZTE would like to participate in the hearing on the "Google Motions," which, of course, are addressed to identical subpoenas to those served by ZTE, could you please let me know the date by which you will be prepared to submit the supplemental brief, as envisioned in the proposed order, if indeed you wish to do so?

Judge Albright already decided the issues related to my clients the first time around in the Microsoft case. Google is now re-treading the same ground with its own pending motions that have now ventured before three different judges in two different courts. I see no reason why ZTE should be entitled to burden my clients and the Court with what is, in effect, a third bite at the same apple, and what would be a fifth or a sixth motion – I've lost count.

I think an appropriate next step here is to get a preliminary response from all four defendants that are part of the consolidation proposal, and then have a meet and confer call with counsel for all four defendants, so we can determine if my consolidation proposal will need to be presented to the Court as a stipulation or as a motion.

I'll look forward to your response and have a nice weekend.

Best regards,
Morgan


Morgan E. Pietz
PIETZ & SHAHRIARI, LLP
6700 S. Centinela Ave., 2nd Floor
Culver City, CA 90230
morgan@pstrials.com
(310) 424-5557

*WE HAVE MOVED. PLEASE NOTE OUR NEW OFFICE MAILING ADDRESS*


*This transmission is from a law firm and may contain information that is privileged, confidential, and protected by the attorney-client or attorney work product privileges. If you are not the addressee, note that any disclosure, copying, distribution or use of the contents of this message is prohibited. If you have received this transmission in error, please destroy it and notify us immediately at the telephone number above.*

---

**From:** Lavenue, Lionel <lionel.lavenue@finnegan.com>
**Sent:** Friday, January 7, 2022 12:43 PM
**To:** Morgan Pietz <morgan@pstrials.com>
**Cc:** Hines, Lisa <Lisa.Hines@finnegan.com>; Schulz, Bradford <Bradford.Schulz@finnegan.com>; Jim Etheridge <jim@etheridgelaw.com>; Ryan Loveless <ryan@etheridgelaw.com>; Rob@stanonllp.com>; Travis Richins <travis@etheridgelaw.com>; Brett@etheridgelaw.com>; JHuang@etheridgelaw.com>; Julie Goerlinger <julie@pstrials.com>

**Subject:** Follow-Up, Second Attempt, Urgent, WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT v. ZTE CORPORATION - FOR SERVICE

Morgan,

You have not confirmed that you will inform the Court of your error and statements in your December 21, 2021 letter.

Please provide your availability for a meet-and-confer on Monday or Tuesday, January 10-11, 2022, so we may discuss the means of correction of Aqua/BP/Terrier's statements about ZTE in its December 21, 2021 letter to the Court.

Regards,

Lionel

---

**From:** Lavenue, Lionel <lionel.lavenue@finnegan.com>
**Sent:** Thursday, January 6, 2022 8:56 PM
**To:** Morgan Pietz <morgan@pstrials.com>
**Cc:** Hines, Lisa <Lisa.Hines@finnegan.com>; Schulz, Bradford <Bradford.Schulz@finnegan.com>; Jim Etheridge <jim@etheridgelaw.com>; Ryan Loveless <ryan@etheridgelaw.com>; Rob@stantonllp.com; Travis Richins <travis@etheridgelaw.com>; Brett@etheridgelaw.com; JHuang@etheridgelaw.com; Julie Goerlinger <julie@pstrials.com>
**Subject:** Urgent, WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT v. ZTE CORPORATION - FOR SERVICE
**Importance:** High

Morgan,

We write to address your errored submission to Judge Albright in your December 21, 2021 letter.

First, we remind you that ZTE is not privy to the communications and filings for the cases involving Google. ZTE and Google are unrelated entities. And none of the cases brought by WSOU against Google involve ZTE, nor do any of the cases brought by WSOU against ZTE involve Google. In fact, none of the WSOU asserted patents overlap between the two cases. As such, making erred submissions—including erred statements—to the Court without including ZTE's counsel in the communications is extremely improper. Your December 21, 2021 letter to Judge Albright includes multiple characterizations and representations pertaining to our client, ZTE, yet you only just now, January 6, 2022, provided us with notice of this communication. ZTE is not associated with Case Nos. 6:20-cv-0571, etc. (as referenced in your December 21, 2021 letter), thus please refrain from including statements about ZTE in such communications (certainly without our knowledge).

Second, your statements about ZTE are incorrect and we demand immediate correction of your specific erred statements. In your December 21, 2021, letter, you state to the Court that:

> "ZTE is currently insisting that it will not cooperate with Google in doing a single potential deposition of Aqua unless Aqua, BP Funding, and Terrier all agree to waive all of their objections to all documents and topics in the subpoenas that Google served on them and that ZTE then copied and served."

ZTE never refused to cooperate, or "insist[ed] that it will not cooperate with Google." Your December 21, 2021, letter to the Court clearly misstates ZTE's statements, and as addressed above, you failed to

provide ZTE notice of such communications the Court in the first place. This is improper, and we require immediate correction and notice to the Court of these incorrect statements.

Please confirm by January 7, 2022, that you will inform the Court of the error, and that you will correct the misrepresentations. Otherwise, ZTE will have to address this issue with the Court.

Regards,

Lionel

---

**From:** Lavenue, Lionel <lionel.lavenue@finnegan.com>
**Sent:** Saturday, December 18, 2021 10:15 AM
**To:** Morgan Pietz <morgan@pstrials.com>
**Cc:** Hines, Lisa <Lisa.Hines@finnegan.com>; Schulz, Bradford <Bradford.Schulz@finnegan.com>; Jim Etheridge <jim@etheridgelaw.com>; Ryan Loveless <ryan@etheridgelaw.com>; Rob@stantonllp.com; Travis Richins <travis@etheridgelaw.com>; Brett@etheridgelaw.com; JHuang@etheridgelaw.com; Julie Goerlinger <julie@pstrials.com>
**Subject:** WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT v. ZTE CORPORATION - FOR SERVICE

Morgan,

As you know, ZTE and the other defendants (including Google) are all separate entities in separate cases and, as such, are under no obligation to coordinate discovery efforts.

Nevertheless, ZTE is willing to coordinate with Google *if* Aqua, BP, and Terrier are likewise willing to coordinate in *full compliance* and in all aspects of ZTE's subpoenas—including document collections/productions and depositions.

Once we have your confirmation that Aqua, BP, and Terrier will waive its non-privilege objections (with rights to demand log, by ZTE) and will comply with the subpoenas in entirety for document collection and depositions—including producing already collected documents being withheld (as well as any relevant documents beyond those of the Plaintiff WSOU)—then ZTE is willing to coordinate with Google on depositions.

Regards,

Lionel

---

**From:** Morgan Pietz <morgan@pstrials.com>
**Sent:** Friday, December 17, 2021 5:13 PM
**To:** Lavenue, Lionel <lionel.lavenue@finnegan.com>
**Cc:** Hines, Lisa <Lisa.Hines@finnegan.com>; Schulz, Bradford <Bradford.Schulz@finnegan.com>; Jim Etheridge <jim@etheridgelaw.com>; Ryan Loveless <ryan@etheridgelaw.com>; Rob@stantonllp.com; Travis Richins <travis@etheridgelaw.com>; Brett@etheridgelaw.com; JHuang@etheridgelaw.com; Julie Goerlinger <julie@pstrials.com>
**Subject:** RE: WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT v. ZTE CORPORATION - FOR SERVICE

**EXTERNAL Email:**

Mr. Lavenue,

Could you please let me know on Monday whether ZTE is generally on board with the request in my letter of yesterday morning, asking that ZTE agree to coordinate any potential deposition of Aqua with, at a minimum, Google, if not other defendants as well?

Happy to discuss if you think that would be helpful. Have a nice weekend.

Best regards,
Morgan


Morgan E. Pietz
PIETZ & SHAHRIARI, LLP
6700 S. Centinela Ave., 2nd Floor
Culver City, CA 90230
morgan@pstrials.com
(310) 424-5557

*WE HAVE MOVED. PLEASE NOTE OUR NEW OFFICE MAILING ADDRESS*

*This transmission is from a law firm and may contain information that is privileged, confidential, and protected by the attorney-client or attorney work product privileges. If you are not the addressee, note that any disclosure, copying, distribution or use of the contents of this message is prohibited. If you have received this transmission in error, please destroy it and notify us immediately at the telephone number above.*

---

**From:** Morgan Pietz
**Sent:** Thursday, December 16, 2021 10:12 AM
**To:** Lavenue, Lionel <lionel.lavenue@finnegan.com>
**Cc:** Hines, Lisa <Lisa.Hines@finnegan.com>; Schulz, Bradford <Bradford.Schulz@finnegan.com>; Jim Etheridge <jim@etheridgelaw.com>; Ryan Loveless <ryan@etheridgelaw.com>; Rob@stantonllp.com; Travis Richins <travis@etheridgelaw.com>; Brett@etheridgelaw.com; JHuang@etheridgelaw.com; Julie Goerlinger <julie@pstrials.com>
**Subject:** RE: WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT v. ZTE CORPORATION - FOR SERVICE

Counsel,

Please find attached a response to the two letters attached to the email below, and to the similar letter of the same date sent to Mr. Richins.

Best regards,
Morgan


Morgan E. Pietz
PIETZ & SHAHRIARI, LLP
6700 S. Centinela Ave., 2nd Floor
Culver City, CA 90230
morgan@pstrials.com

(310) 424-5557

*WE HAVE MOVED. PLEASE NOTE OUR NEW OFFICE MAILING ADDRESS*

*This transmission is from a law firm and may contain information that is privileged, confidential, and protected by the attorney-client or attorney work product privileges. If you are not the addressee, note that any disclosure, copying, distribution or use of the contents of this message is prohibited. If you have received this transmission in error, please destroy it and notify us immediately at the telephone number above.*

**From:** Hines, Lisa <Lisa.Hines@finnegan.com>
**Sent:** Wednesday, December 8, 2021 1:41 PM
**To:** Julie Goerlinger <julie@pstrials.com>; Lavenue, Lionel <lionel.lavenue@finnegan.com>; Schulz, Bradford <Bradford.Schulz@finnegan.com>; Jim Etheridge <jim@etheridgelaw.com>; Ryan Loveless <ryan@etheridgelaw.com>; Travis Richins <travis@etheridgelaw.com>; Brett@etheridgelaw.com; JHuang@etheridgelaw.com
**Cc:** Morgan Pietz <morgan@pstrials.com>; Rob@stantonllp.com
**Subject:** RE: WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT v. ZTE CORPORATION - FOR SERVICE

Counsel,

Please find attached the following documents:

- Letter from L. Lavenue to M. Pietz re BP Funding Trust's Responses and Objections to Requests for Production and Corresponding Deposition Topics
- Letter from L. Lavenue to M. Pietz re Terrier SSC, LLC's Responses and Objections to Requests for Production and Corresponding Deposition Topics

Regards,

Lisa

Lisa Hines
Senior Litigation Legal Assistant
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
1875 Explorer Street, Suite 800, Reston, VA 20190-6023
571.203.2743| cell 202.236.1267| fax 202.408.4400|
lisa.hines@finnegan.com | www.finnegan.com

# FINNEGAN

This e-mail message is intended only for individual(s) to whom it is addressed and may contain information that is privileged, confidential, proprietary, or otherwise exempt from disclosure under applicable law. If you believe you have received this message in error, please advise the sender by return e-mail and delete it from your mailbox. Thank you.

**From:** Julie Goerlinger <julie@pstrials.com>
**Sent:** Monday, November 8, 2021 4:33 PM
**To:** Lavenue, Lionel <lionel.lavenue@finnegan.com>; Schulz, Bradford <Bradford.Schulz@finnegan.com>; Jim Etheridge <jim@etheridgelaw.com>; Ryan Loveless <ryan@etheridgelaw.com>; Travis Richins <travis@etheridgelaw.com>; Brett@etheridgelaw.com; JHuang@etheridgelaw.com

**Cc:** Morgan Pietz <morgan@pstrials.com>; Rob@stantonllp.com
**Subject:** WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT v. ZTE CORPORATION
- FOR SERVICE

*EXTERNAL* **Email:**

Counsel,

Attached for service are (i) BP Funding Trust's Responses and Objections to Requests for
Production and Corresponding Deposition Topics; and, (ii) Terrier SSC, LLC's Responses and
Objections to Requests for Production and Corresponding Deposition Topics.

Regards.

Julie Goerlinger
PIETZ & SHAHRIARI, LLP
9454 Wilshire Blvd., Suite #310
Beverly Hills, CA 90212
Direct: (714)925-3989
Tel: (310)424-5557
Fax: (310)597-4626
E-mail: julie@pstrials.com

This e-mail message is intended only for individual(s) to whom it is addressed and may contain information that is privileged, confidential, proprietary, or otherwise exempt from disclosure under applicable law. If you believe you have received this message in error, please advise the sender by return e-mail and delete it from your mailbox. Thank you.

This e-mail message is intended only for individual(s) to whom it is addressed and may contain information that is privileged, confidential, proprietary, or otherwise exempt from disclosure under applicable law. If you believe you have received this message in error, please advise the sender by return e-mail and delete it from your mailbox. Thank you.

This e-mail message is intended only for individual(s) to whom it is addressed and may contain information that is privileged, confidential, proprietary, or otherwise exempt from disclosure under applicable law. If you believe you have received this message in error, please advise the sender by return e-mail and delete it from your mailbox. Thank you.

This e-mail message is intended only for individual(s) to whom it is addressed and may contain information that is privileged, confidential, proprietary, or otherwise exempt from disclosure under applicable law. If you believe you have received this message in error, please advise the sender by return e-mail and delete it from your mailbox. Thank you.

This e-mail message is intended only for individual(s) to whom it is addressed and may contain information that is privileged, confidential, proprietary, or otherwise exempt from disclosure under applicable law. If you believe you have received this message in error, please advise the sender by return e-mail and delete it from your mailbox. Thank you.

# EXHIBIT 11

**Morgan Pietz**

| | |
|---|---|
| **From:** | Blythe, Andrew Philip <ABlythe@gibsondunn.com> |
| **Sent:** | Friday, January 21, 2022 10:48 AM |
| **To:** | Franzinger, Michael; Morgan Pietz; jen@warrenlex.com; Rosenthal, Brian A.; Schulz, Bradford |
| **Cc:** | Mark Siegmund; Admin; CA-BrazosTrials@carterarnett.com; Hatcher, Michael D.; Dan MacLemore; Diego Salazar; Hartman, Sarah G.; Kathir, Allen; IPTeam; Jim Etheridge; Julie Goerlinger; mikejones@potterminton.com; Rob Millimet; Rousseau, Timothy J.; bshelton@sheltoncoburn.com; Ryan Loveless; Schulz, Bradford; WSOU-Google@jonesday.com; Sabanoglu, Kyanna; Jen Kash; WSOUPOTTER GROUP; caribou@matters.warrenlex.com; Butcher, Callie; *** GDC-Dell_WSOU; jbennett@carterarnett.com; sbreedlove@carterarnett.com; Lionel.Lavenue@finnegan.com; Lecaroz, Rebecca MacDowell; Mian, Haroon N. |
| **Subject:** | RE: WSOU Investments - Limited Purpose Consolidation as to Certain Third Party Discovery |

Morgan,

We confirmed with our client and are willing to join Google's motion to compel discovery from BasePoint.  Please include us on any further correspondence with the Court regarding approval for your proposal that Dell submit supplemental briefing next week and participate in any oral hearing.

Best,

**Andrew Blythe**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
3161 Michelson Drive, Irvine, CA 92612-4412
Tel +1 949.451.3926 • Fax +1 949.475.4630
ABlythe@gibsondunn.com • www.gibsondunn.com

---

**From:** Blythe, Andrew Philip
**Sent:** Thursday, January 20, 2022 8:54 PM
**To:** 'Franzinger, Michael' <mfranzinger@sidley.com>; Morgan Pietz <morgan@pstrials.com>; jen@warrenlex.com; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>; Schulz, Bradford <Bradford.Schulz@finnegan.com>
**Cc:** Mark Siegmund <mark@swclaw.com>; Admin <admin@pstrials.com>; CA-BrazosTrials@carterarnett.com; Hatcher, Michael D. <mhatcher@sidley.com>; Dan MacLemore <maclemore@thetexasfirm.com>; Diego Salazar <salazar@thetexasfirm.com>; Hartman, Sarah G. <SHartman@brownrudnick.com>; Kathir, Allen <AKathir@gibsondunn.com>; IPTeam <IPTeam@etheridgelaw.com>; Jim Etheridge <jim@etheridgelaw.com>; Julie Goerlinger <julie@pstrials.com>; mikejones@potterminton.com; Rob Millimet <Rob@stantonllp.com>; Rousseau, Timothy J. <TRousseau@brownrudnick.com>; bshelton@sheltoncoburn.com; Ryan Loveless <ryan@etheridgelaw.com>; Schulz, Bradford <Bradford.Schulz@finnegan.com>; WSOU-Google@jonesday.com; Sabanoglu, Kyanna <KSabanoglu@gibsondunn.com>; Jen Kash <jen@warrenlex.com>; WSOUPOTTER GROUP <WSOUGoogle@potterminton.com>; caribou@matters.warrenlex.com; Butcher, Callie <cbutcher@sidley.com>; *** GDC-Dell_WSOU <GDC-Dell_WSOU@gibsondunn.com>; jbennett@carterarnett.com; sbreedlove@carterarnett.com; Lionel.Lavenue@finnegan.com; Lecaroz, Rebecca MacDowell <rlecaroz@brownrudnick.com>; Mian, Haroon N. <HMian@brownrudnick.com>
**Subject:** RE: WSOU Investments - Limited Purpose Consolidation as to Certain Third Party Discovery

Morgan,

We do not agree to join your motion to consolidate.

With respect to Aqua Licensing, you indicated that Aqua intends to make two additional document productions which you represented will be complete by February 4, 2022.  As we told you today, once Aqua completes its productions, we can evaluate whether it will be necessary to move to compel additional discovery in advance of any deposition.  If document production is actually complete on February 4th, and there are no outstanding production issues, and we thereafter determine that a deposition is needed, we will happily work to coordinate around the date you have proposed but cannot guarantee that we can proceed on that date or that a single, seven-hour deposition will suffice given the number of coordinating parties.

With respect to BasePoint, we indicated that we are willing to consider joining Google's motion to compel by submitting any additional briefing on Friday January 28th and by participating in any oral hearing on that motion.  We are awaiting approval from our client and will do our best to have an answer to you tomorrow.  That agreement is of course also subject to the Court's approval of any request that the Dell defendants join in Google's motion.

Best,

Andrew

**Andrew Blythe**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
3161 Michelson Drive, Irvine, CA 92612-4412
Tel +1 949.451.3926 • Fax +1 949.475.4630
ABlythe@gibsondunn.com • www.gibsondunn.com

---

**From:** Franzinger, Michael <mfranzinger@sidley.com>
**Sent:** Thursday, January 20, 2022 4:11 PM
**To:** Morgan Pietz <morgan@pstrials.com>; jen@warrenlex.com; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>; Schulz, Bradford <Bradford.Schulz@finnegan.com>
**Cc:** Mark Siegmund <mark@swclaw.com>; Admin <admin@pstrials.com>; CA-BrazosTrials@carterarnett.com; Hatcher, Michael D. <mhatcher@sidley.com>; Dan MacLemore <maclemore@thetexasfirm.com>; Blythe, Andrew Philip <ABlythe@gibsondunn.com>; Diego Salazar <salazar@thetexasfirm.com>; Hartman, Sarah G. <SHartman@brownrudnick.com>; Kathir, Allen <AKathir@gibsondunn.com>; IPTeam <IPTeam@etheridgelaw.com>; Jim Etheridge <jim@etheridgelaw.com>; Julie Goerlinger <julie@pstrials.com>; mikejones@potterminton.com; Rob Millimet <Rob@stantonllp.com>; Rousseau, Timothy J. <TRousseau@brownrudnick.com>; bshelton@sheltoncoburn.com; Ryan Loveless <ryan@etheridgelaw.com>; Schulz, Bradford <Bradford.Schulz@finnegan.com>; WSOU-Google@jonesday.com; Sabanoglu, Kyanna <KSabanoglu@gibsondunn.com>; Jen Kash <jen@warrenlex.com>; WSOUPOTTER GROUP <WSOUGoogle@potterminton.com>; caribou@matters.warrenlex.com; Butcher, Callie <cbutcher@sidley.com>; *** GDC-Dell_WSOU <GDC-Dell_WSOU@gibsondunn.com>; jbennett@carterarnett.com; sbreedlove@carterarnett.com; Lionel.Lavenue@finnegan.com; Lecaroz, Rebecca MacDowell <rlecaroz@brownrudnick.com>; Mian, Haroon N. <HMian@brownrudnick.com>
**Subject:** RE: WSOU Investments - Limited Purpose Consolidation as to Certain Third Party Discovery

 **[WARNING: External Email]**

Morgan,

As indicated in my email of earlier today, HPE is willing to cooperate on discovery but does not believe a formal consolidation is necessary and therefore takes no position at present on the proposed motion.  We reserve the right to take a position and file a response after seeing the motion.

It is not clear to me that your four numbered questions below really call for a response from HPE.  But, as to Google's motions, HPE believes it is entitled to the same materials for similar reasons.  As long as we can get what Google gets, we do not anticipate needing to add on to that discovery by, for example, seeking deposition time of our own with the other entities besides Aqua.  Once we hear back from you on that aspect of my earlier-today email, I think we will have a good idea of where this stands.

Best,
Mike



**MICHAEL R. FRANZINGER**


**SIDLEY AUSTIN LLP**
+1 202 736 8583
mfranzinger@sidley.com

---

**From:** Morgan Pietz <morgan@pstrials.com>
**Sent:** Thursday, January 20, 2022 6:15 PM
**To:** jen@warrenlex.com; brosenthal@gibsondunn.com; Schulz, Bradford <Bradford.Schulz@finnegan.com>
**Cc:** Franzinger, Michael <mfranzinger@sidley.com>; Mark Siegmund <mark@swclaw.com>; Admin <admin@pstrials.com>; CA-BrazosTrials@carterarnett.com; Hatcher, Michael D. <mhatcher@sidley.com>; Dan MacLemore <maclemore@thetexasfirm.com>; Blythe, Andrew Philip <ABlythe@gibsondunn.com>; Diego Salazar <salazar@thetexasfirm.com>; Hartman, Sarah G. <SHartman@brownrudnick.com>; Kathir, Allen <AKathir@gibsondunn.com>; IPTeam <IPTeam@etheridgelaw.com>; Jim Etheridge <jim@etheridgelaw.com>; Julie Goerlinger <julie@pstrials.com>; Jones, Michael E. (EXTERNAL @POTTERMINTON.COM) <mikejones@potterminton.com>; Rob Millimet <Rob@stantonllp.com>; Rousseau, Timothy J. <TRousseau@brownrudnick.com>; bshelton@sheltoncoburn.com; Ryan Loveless <ryan@etheridgelaw.com>; Schulz, Bradford <Bradford.Schulz@finnegan.com>; WSOU-Google@jonesday.com; Sabanoglu, Kyanna <KSabanoglu@gibsondunn.com>; Jen Kash <jen@warrenlex.com>; WSOUPOTTER GROUP <WSOUGoogle@potterminton.com>; caribou@matters.warrenlex.com; Butcher, Callie <cbutcher@sidley.com>; *** GDC-Dell_WSOU <GDC-Dell_WSOU@gibsondunn.com>; jbennett@carterarnett.com; sbreedlove@carterarnett.com; Lionel.Lavenue@finnegan.com; Lecaroz, Rebecca MacDowell <rlecaroz@brownrudnick.com>; Mian, Haroon N. <HMian@brownrudnick.com>
**Subject:** RE: WSOU Investments - Limited Purpose Consolidation as to Certain Third Party Discovery

Dear Jen, Brian, and Bradford,

Thank you to counsel for Google, Dell, and ZTE, respectively, for participating in today's meet and confer call.  I thought today was the day we were finally going to get counsel for all four defendants on the phone at the same time to discuss this matter, but, alas, HPE did not join so it was not to be so.

On today's call, I reiterated a request I have made several times last week and again this week that you all please provide your clients' final position on the forthcoming motion for limited consolidation, in writing, by today.  I'll again invite HPE to please do the same.  While nobody is outright agreeing to my proposed order, Google and Dell, at least, have expressed some willingness to potentially cooperate.  (In addition to Google and HPE previously agreeing they would cooperate in doing a single deposition of Aqua not to exceed seven hours).

Specifically, questions I put to Google, Dell, and ZTE today, which I would like to see addressed today (and which I would ask HPE to please respond to as well), are as follows:

(1) Will Dell and ZTE be prepared to participate, along with Google and HPE, in a single deposition of Aqua, not to exceed seven hours, to be conducted on February 22, 2022 (which is a date both Google and WSOU have cleared), assuming Aqua has completed its document production by then, which I indicated Aqua plans to do by February 4?  One thing I did not mention but should have is that I still need to run this date by my client rep, and that he would need to do it via Zoom.  But if all four defendants can agree to cooperate as to doing a single, seven-hour deposition of Aqua on that date, I am inclined to push to make it happen on that day, to accommodate Google and WSOU.

(2) Would Dell and ZTE like to file a brief in support of Google's position on the "Google Motions" related to BP Funding and Terrier, and, if so, will they be prepared to do so by Friday January 28, as proposed in the briefing schedule I circulated earlier this week, that nobody other than Google has yet responded to?

(3) I asked you all to please identify any evidence or other information suggesting that there was ever an event of default making the information sought from BP Funding or Terrier relevant to standing in the first place.  Nobody was able to do so.  Ms. Kash responded that she wanted to see the BP loan agreement that WSOU has apparently now agreed to produce in all of these four groups of cases.  Nobody else could identify anything in this regard, no hint of any default, ever, although counsel for ZTE added that it thought the information sought from BP Funding and Terrier was also relevant to damages, not just standing.  Mr. Schulz picked up the mantle from Mr. Lavenue in focusing on Delaware district court case law, which I indicated I will be more than happy to address in a response brief, should ZTE decide it wishes to be heard on these issues  by filing a brief in support of Google on the Google Motions.

(4) In response to counsel for Dell's comment that "we are doing our own thing," I asked you all to confirm that Google, Dell, ZTE, and HPE are in a joint defense agreement.  Counsel for Dell responded that was "not something we are going to discuss today".  I'm not expecting a further answer on this one, but I am noting for the record that you all refused to answer the question when it was put to you directly.

I look forward to receiving your clients' final responses today.

Best regards,
Morgan


Morgan E. Pietz
PIETZ & SHAHRIARI, LLP
6700 S. Centinela Ave., 2nd Floor
Culver City, CA 90230
morgan@pstrials.com
(310) 424-5557

*WE HAVE MOVED.  PLEASE NOTE OUR NEW OFFICE MAILING ADDRESS*

*This transmission is from a law firm and may contain information that is privileged, confidential, and protected by the attorney-client or attorney work product privileges.  If you are not the addressee, note that any disclosure, copying, distribution or use of the contents of this message is prohibited.  If you have received this transmission in error, please destroy it and notify us immediately at the telephone number above.*

**From:** Morgan Pietz
**Sent:** Wednesday, January 19, 2022 9:13 PM

**To:** Blythe, Andrew Philip <ABlythe@gibsondunn.com>; Sabanoglu, Kyanna <KSabanoglu@gibsondunn.com>; Kathir, Allen <AKathir@gibsondunn.com>; bshelton@sheltoncoburn.com
**Cc:** Franzinger, Michael <mfranzinger@sidley.com>; Mark Siegmund <mark@swclaw.com>; Admin <admin@pstrials.com>; CA-BrazosTrials@carterarnett.com; Hatcher, Michael D. <mhatcher@sidley.com>; Dan MacLemore <maclemore@thetexasfirm.com>; Diego Salazar <salazar@thetexasfirm.com>; Hartman, Sarah G. <SHartman@brownrudnick.com>; IPTeam <IPTeam@etheridgelaw.com>; Jim Etheridge <jim@etheridgelaw.com>; Julie Goerlinger <julie@pstrials.com>; mikejones@potterminton.com; Rob Millimet <Rob@stantonllp.com>; Rousseau, Timothy J. <TRousseau@brownrudnick.com>; Ryan Loveless <ryan@etheridgelaw.com>; Schulz, Bradford <Bradford.Schulz@finnegan.com>; WSOU-Google@jonesday.com; Jen Kash <jen@warrenlex.com>; WSOUPOTTER GROUP <WSOUGoogle@potterminton.com>; caribou@matters.warrenlex.com; Butcher, Callie <cbutcher@sidley.com>; *** GDC-Dell_WSOU <GDC-Dell_WSOU@gibsondunn.com>; jbennett@carterarnett.com; sbreedlove@carterarnett.com; Lionel.Lavenue@finnegan.com
**Subject:** RE: WSOU Investments - Limited Purpose Consolidation as to Certain Third Party Discovery

Mr. Blythe,

Thanks for the response from Dell.

What is the December 13 communication regarding Aqua that you are referring to?  I've never seen it and have no idea what you are talking about.  Please forward me whatever "inquiry" you have in mind.  In any event, I'll be prepared to address a timeframe for Aqua to complete document production on our call.
e
As I've previously noted, the legal basis for my clients' position is Rule 42(a)(3), Rule 26(c), and Rule 45(c)(1).  In response to your newest question you want answered before you'll agree to get on the phone, the doctrine of issue preclusion would allow Dell to be bound "ex ante" to a ruling on the same issues being raised in the Google case.  But I am not actually demanding the Dell be bound to anything ex ante.  I have proposed allowing Dell to file a brief in support of Google's position and to participate at the hearing, such that any decision would be ex post, with Dell's participation allowed, and, indeed, encouraged.

As I have asked you now several times, can you please share whether Dell wants to file a brief in support of Google on the Google Motions, and, if so, by when it can do so?  Alternatively, if Dell is going to decline to file a brief as envisioned in the proposed order, and then argue that it is being unfairly bound by the result of the hearing on the "Google Motions", that's fine too, you can just say that, and we'll get it sorted out with the Court.

I hereby confirm a call for **tomorrow (Thursday) at noon Pacific / 3:00 eastern**.  Given how long you have waited to propose a time, it may be just you and me.  But I hereby invite counsel for all of the concerned parties to participate.  Last chance.

I will circulate a dial-in shortly.

Best regards,
Morgan



Morgan E. Pietz
PIETZ & SHAHRIARI, LLP
6700 S. Centinela Ave., 2nd Floor
Culver City, CA 90230
morgan@pstrials.com

(310) 424-5557

*WE HAVE MOVED.  PLEASE NOTE OUR NEW OFFICE MAILING ADDRESS*

*This transmission is from a law firm and may contain information that is privileged, confidential, and protected by the attorney-client or attorney work product privileges.  If you are not the addressee, note that any disclosure, copying, distribution or use of the contents of this message is prohibited.  If you have received this transmission in error, please destroy it and notify us immediately at the telephone number above.*

---

**From:** Blythe, Andrew Philip <ABlythe@gibsondunn.com>
**Sent:** Wednesday, January 19, 2022 8:44 PM
**To:** Morgan Pietz <morgan@pstrials.com>; Sabanoglu, Kyanna <KSabanoglu@gibsondunn.com>; Kathir, Allen <AKathir@gibsondunn.com>; bshelton@sheltoncoburn.com
**Cc:** Franzinger, Michael <mfranzinger@sidley.com>; Mark Siegmund <mark@swclaw.com>; Admin <admin@pstrials.com>; CA-BrazosTrials@carterarnett.com; Hatcher, Michael D. <mhatcher@sidley.com>; Dan MacLemore <maclemore@thetexasfirm.com>; Diego Salazar <salazar@thetexasfirm.com>; Hartman, Sarah G. <SHartman@brownrudnick.com>; IPTeam <IPTeam@etheridgelaw.com>; Jim Etheridge <jim@etheridgelaw.com>; Julie Goerlinger <julie@pstrials.com>; mikejones@potterminton.com; Rob Millimet <Rob@stantonllp.com>; Rousseau, Timothy J. <TRousseau@brownrudnick.com>; Ryan Loveless <ryan@etheridgelaw.com>; Schulz, Bradford <Bradford.Schulz@finnegan.com>; WSOU-Google@jonesday.com; Jen Kash <jen@warrenlex.com>; WSOUPOTTER GROUP <WSOUGoogle@potterminton.com>; caribou@matters.warrenlex.com; Butcher, Callie <cbutcher@sidley.com>; *** GDC-Dell_WSOU <GDC-Dell_WSOU@gibsondunn.com>; jbennett@carterarnett.com; sbreedlove@carterarnett.com; Lionel.Lavenue@finnegan.com
**Subject:** RE: WSOU Investments - Limited Purpose Consolidation as to Certain Third Party Discovery

Counsel,

As stated previously, we are still awaiting a response to our December 13, 2021 inquiry regarding the status of Aqua's document production.  A conference will not be productive prior to receiving Aqua's response.

With respect to BasePoint, your November 11, 2021 letter does nothing more than explain why you are choosing to breach the agreement with Dell and in fact highlights—by blaming Google's alleged omissions and subsequent actions for your breach—that any dispute regarding our agreement is distinct and inappropriate for consolidation.

We are also awaiting a legal basis for your positions, including that Dell should be bound ex ante in future discovery disputes by motions filed in unrelated cases.

If you are able to fill in the above missing information, we can join a conference call tomorrow between 1:30 and 3:30 ET.  Please circulate a dial-in.

Best,

**Andrew Blythe**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
3161 Michelson Drive, Irvine, CA 92612-4412
Tel +1 949.451.3926 • Fax +1 949.475.4630
ABlythe@gibsondunn.com • www.gibsondunn.com

**From:** Morgan Pietz <morgan@pstrials.com>
**Sent:** Wednesday, January 19, 2022 5:10 PM
**To:** Blythe, Andrew Philip <ABlythe@gibsondunn.com>; Sabanoglu, Kyanna <KSabanoglu@gibsondunn.com>; Kathir, Allen <AKathir@gibsondunn.com>; bshelton@sheltoncoburn.com
**Cc:** Franzinger, Michael <mfranzinger@sidley.com>; Mark Siegmund <mark@swclaw.com>; Admin <admin@pstrials.com>; CA-BrazosTrials@carterarnett.com; Hatcher, Michael D. <mhatcher@sidley.com>; Dan MacLemore <maclemore@thetexasfirm.com>; Diego Salazar <salazar@thetexasfirm.com>; Hartman, Sarah G. <SHartman@brownrudnick.com>; IPTeam <IPTeam@etheridgelaw.com>; Jim Etheridge <jim@etheridgelaw.com>; Julie Goerlinger <julie@pstrials.com>; mikejones@potterminton.com; Rob Millimet <Rob@stantonllp.com>; Rousseau, Timothy J. <TRousseau@brownrudnick.com>; Ryan Loveless <ryan@etheridgelaw.com>; Schulz, Bradford <Bradford.Schulz@finnegan.com>; WSOU-Google@jonesday.com; Jen Kash <jen@warrenlex.com>; WSOUPOTTER GROUP <WSOUGoogle@potterminton.com>; caribou@matters.warrenlex.com; Butcher, Callie <cbutcher@sidley.com>; *** GDC-Dell_WSOU <GDC-Dell_WSOU@gibsondunn.com>; jbennett@carterarnett.com; sbreedlove@carterarnett.com; Lionel.Lavenue@finnegan.com
**Subject:** RE: WSOU Investments - Limited Purpose Consolidation as to Certain Third Party Discovery

<span style="color:red">**[WARNING: External Email]**</span>

To counsel for Dell at Gibson Dunn and Shelton Coburn, this will be my **_final request_** that you please provide your availability for someone on your team to please set a time to get on the phone tomorrow to conduct a meet and confer re: the forthcoming consolidation motion.

I'd like to be able to report to the Court in the forthcoming motion whether Dell is in the same camp as Google and HPE, or if it is going to continue to remain in the 'refuses to conduct a meet and confer call (unless unreasonable and irrelevant demands are met)' camp along with ZTE.

Finally, everyone still needs to approve—or reject—my proposed email to the Court.

Best regards,
Morgan

Morgan E. Pietz
PIETZ & SHAHRIARI, LLP
6700 S. Centinela Ave., 2nd Floor
Culver City, CA 90230
morgan@pstrials.com
(310) 424-5557

*WE HAVE MOVED.  PLEASE NOTE OUR NEW OFFICE MAILING ADDRESS*

*This transmission is from a law firm and may contain information that is privileged, confidential, and protected by the attorney-client or attorney work product privileges.  If you are not the addressee, note that any disclosure, copying, distribution or use of the contents of this message is prohibited.  If you have received this transmission in error, please destroy it and notify us immediately at the telephone number above.*

**From:** Morgan Pietz
**Sent:** Wednesday, January 19, 2022 12:26 PM
**To:** Jen Kash <jen@warrenlex.com>

**Cc:** Blythe, Andrew Philip <ABlythe@gibsondunn.com>; Franzinger, Michael <mfranzinger@sidley.com>; Mark Siegmund <mark@swclaw.com>; Admin <admin@pstrials.com>; CA-BrazosTrials@carterarnett.com; Hatcher, Michael D. <mhatcher@sidley.com>; Dan MacLemore <maclemore@thetexasfirm.com>; Diego Salazar <salazar@thetexasfirm.com>; Hartman, Sarah G. <SHartman@brownrudnick.com>; IPTeam <IPTeam@etheridgelaw.com>; Jim Etheridge <jim@etheridgelaw.com>; Julie Goerlinger <julie@pstrials.com>; mikejones@potterminton.com; Rob Millimet <Rob@stantonllp.com>; Rousseau, Timothy J. <TRousseau@brownrudnick.com>; Ryan Loveless <ryan@etheridgelaw.com>; Schulz, Bradford <Bradford.Schulz@finnegan.com>; WSOU-Google@jonesday.com; WSOUPOTTER GROUP <WSOUGoogle@potterminton.com>; bshelton@sheltoncoburn.com; caribou@matters.warrenlex.com; Butcher, Callie <cbutcher@sidley.com>; *** GDC-Dell_WSOU <GDC-Dell_WSOU@gibsondunn.com>; jbennett@carterarnett.com; sbreedlove@carterarnett.com; Sabanoglu, Kyanna <KSabanoglu@gibsondunn.com>; EXT-AKathir@gibsondunn.com <AKathir@gibsondunn.com>; Lavenue, Lionel <lionel.lavenue@finnegan.com>
**Subject:** RE: WSOU Investments - Limited Purpose Consolidation as to Certain Third Party Discovery

Thank you, Jen.  Please find it attached.  I need any proposed edits by COB tomorrow.

What about my proposed email to the court re: briefing schedule and filing mechanics – any objection to any of that from Google?

Same question for HPE.

And then I am still awaiting Dell's final answer as to both substance and procedure, and a proposed time for a meet and confer call with Dell.  It would be great if you could coordinate a time for such a call with ZTE, as I have repeatedly now requested, so that we could do one further call instead of two, but we'll have to work around Mr. Lavenue's busy schedule to achieve that.  I can also do a meet and confer call with Dell separately.  Please provide times.

The defendants' inability to even all get on the phone together at the same time is, to be frank, a pretty good reason supporting the grant of this motion.

You've all had this proposal for almost two weeks now.  I need everyone's final positions by COB tomorrow.

Best regards,
Morgan


Morgan E. Pietz
PIETZ & SHAHRIARI, LLP
6700 S. Centinela Ave., 2nd Floor
Culver City, CA 90230
morgan@pstrials.com
(310) 424-5557

*WE HAVE MOVED.  PLEASE NOTE OUR NEW OFFICE MAILING ADDRESS*


*This transmission is from a law firm and may contain information that is privileged, confidential, and protected by the attorney-client or attorney work product privileges.  If you are not the addressee, note that any disclosure, copying, distribution or use of the contents of this message is prohibited.  If you have received this transmission in error, please destroy it and notify us immediately at the telephone number above.*

**From:** Jen Kash <jen@warrenlex.com>
**Sent:** Wednesday, January 19, 2022 12:19 PM
**To:** Morgan Pietz <morgan@pstrials.com>
**Cc:** Blythe, Andrew Philip <ABlythe@gibsondunn.com>; Franzinger, Michael <mfranzinger@sidley.com>; Mark Siegmund <mark@swclaw.com>; Admin <admin@pstrials.com>; CA-BrazosTrials@carterarnett.com; Hatcher, Michael D. <mhatcher@sidley.com>; Dan MacLemore <maclemore@thetexasfirm.com>; Diego Salazar <salazar@thetexasfirm.com>; Hartman, Sarah G. <SHartman@brownrudnick.com>; IPTeam <IPTeam@etheridgelaw.com>; Jim Etheridge <jim@etheridgelaw.com>; Julie Goerlinger <julie@pstrials.com>; mikejones@potterminton.com; Rob Millimet <Rob@stantonllp.com>; Rousseau, Timothy J. <TRousseau@brownrudnick.com>; Ryan Loveless <ryan@etheridgelaw.com>; Schulz, Bradford <Bradford.Schulz@finnegan.com>; WSOU-Google@jonesday.com; WSOUPOTTER GROUP <WSOUGoogle@potterminton.com>; bshelton@sheltoncoburn.com; caribou@matters.warrenlex.com; Butcher, Callie <cbutcher@sidley.com>; *** GDC-Dell_WSOU <GDC-Dell_WSOU@gibsondunn.com>; jbennett@carterarnett.com; sbreedlove@carterarnett.com; Sabanoglu, Kyanna <KSabanoglu@gibsondunn.com>; EXT-AKathir@gibsondunn.com <AKathir@gibsondunn.com>; Lavenue, Lionel <lionel.lavenue@finnegan.com>
**Subject:** Re: WSOU Investments - Limited Purpose Consolidation as to Certain Third Party Discovery

Morgan,

Please send me a word version of the 1/6 proposed order so that we can review and provide any redlnes.   We will get back to you as soon as possible.  Thanks, Jen


**From:** Lavenue, Lionel lionel.lavenue@finnegan.com
**Sent:** Wednesday, January 19, 2022 12:57 PM
**To:** Morgan Pietz morgan@pstrials.com; Blythe, Andrew Philip ABlythe@gibsondunn.com
**Cc:** Mark Siegmund mark@swclaw.com; Admin admin@pstrials.com; CA-BrazosTrials@carterarnett.com; Hatcher, Michael D. mhatcher@sidley.com; Dan MacLemore maclemore@thetexasfirm.com; Diego Salazar salazar@thetexasfirm.com; Franzinger, Michael mfranzinger@sidley.com; Franzinger, Michael mfranzinger@sidley.com; Jen Kash jen@warrenlex.com; Hartman, Sarah G. SHartman@brownrudnick.com; IPTeam IPTeam@etheridgelaw.com; Jim Etheridge jim@etheridgelaw.com; Julie Goerlinger julie@pstrials.com; mikejones@potterminton.com; Rob Millimet Rob@stantonllp.com; Rousseau, Timothy J. TRousseau@brownrudnick.com; Ryan Loveless ryan@etheridgelaw.com; Schulz, Bradford Bradford.Schulz@finnegan.com; WSOU-Google@jonesday.com; WSOUPOTTER GROUP WSOUGoogle@potterminton.com; bshelton@sheltoncoburn.com; caribou@matters.warrenlex.com; Butcher, Callie cbutcher@sidley.com; *** GDC-Dell_WSOU GDC-Dell_WSOU@gibsondunn.com; jbennett@carterarnett.com; sbreedlove@carterarnett.com; Sabanoglu, Kyanna KSabanoglu@gibsondunn.com; EXT-AKathir@gibsondunn.com AKathir@gibsondunn.com
**Subject:** RE: WSOU Investments - Limited Purpose Consolidation as to Certain Third Party Discovery

Morgan,

Excellent. I am glad you coming around to a proper meet-and-confer.

Once you send us the legal support for your positions (as ZTE requested), then we can schedule a call. Otherwise, if you have no legal support for your positions, then please accept ZTE's proposal—to drop all objections and produce the requested discovery (as supported by our cited case law).

If time is critical, then please send the case law ASAP so we may consider it before any meet-and-confer.

Regards,

Lionel

**From:** Morgan Pietz <morgan@pstrials.com>
**Sent:** Wednesday, January 19, 2022 3:19 PM
**To:** Lavenue, Lionel <lionel.lavenue@finnegan.com>; Blythe, Andrew Philip <ABlythe@gibsondunn.com>;
**Cc:** Mark Siegmund <mark@swclaw.com>; Admin <admin@pstrials.com>; CA-BrazosTrials@carterarnett.com;
Hatcher, Michael D. <mhatcher@sidley.com>; Dan MacLemore <maclemore@thetexasfirm.com>; Diego Salazar
<salazar@thetexasfirm.com>; Franzinger, Michael <mfranzinger@sidley.com>; Franzinger, Michael
<mfranzinger@sidley.com>; Jen Kash <jen@warrenlex.com>; Hartman, Sarah G.
<SHartman@brownrudnick.com>; IPTeam <IPTeam@etheridgelaw.com>; Jim Etheridge
<jim@etheridgelaw.com>; Julie Goerlinger <julie@pstrials.com>; mikejones@potterminton.com; Rob Millimet
<Rob@stantonllp.com>; Rousseau, Timothy J. <TRousseau@brownrudnick.com>; Ryan Loveless
<ryan@etheridgelaw.com>; Schulz, Bradford <Bradford.Schulz@finnegan.com>; WSOU-Google@jonesday.com;
WSOUPOTTER GROUP <WSOUGoogle@potterminton.com>; bshelton@sheltoncoburn.com;
caribou@matters.warrenlex.com; Butcher, Callie <cbutcher@sidley.com>; *** GDC-Dell_WSOU <GDC-
Dell_WSOU@gibsondunn.com>; jbennett@carterarnett.com; sbreedlove@carterarnett.com; Sabanoglu, Kyanna
<KSabanoglu@gibsondunn.com>; EXT-AKathir@gibsondunn.com <AKathir@gibsondunn.com>;
**Subject:** RE: WSOU Investments - Limited Purpose Consolidation as to Certain Third Party Discovery

**EXTERNAL Email:**

Mr. Lavenue,

I was supposed to have a trial starting this week that got continued.  So I can make any time today or tomorrow work on my end.  But it has to be today or tomorrow, because Google has asked for a hearing as soon as possible, so this motion is being filed on Friday, whether you or anyone on your team representing ZTE deigns to get on the phone discuss it before then or not.

Perhaps we can work through some of these issues.  But I've been trying to get you on the phone to discuss this for two weeks and we are now out of time.  So pick a time, please, and make you or someone else on your team available to have a proper meet and confer call.

Best regards,
Morgan

Morgan E. Pietz
PIETZ & SHAHRIARI, LLP
6700 S. Centinela Ave., 2nd Floor
Culver City, CA 90230
morgan@pstrials.com
(310) 424-5557

*WE HAVE MOVED.  PLEASE NOTE OUR NEW OFFICE MAILING ADDRESS*

*This transmission is from a law firm and may contain information that is privileged, confidential, and protected by the attorney-client or attorney work product privileges.  If you are not the addressee, note that any disclosure, copying, distribution or use of the contents of this message is prohibited.  If you have received this transmission in error, please destroy it and notify us immediately at the telephone number above.*

**From:** Lavenue, Lionel <lionel.lavenue@finnegan.com>
**Sent:** Wednesday, January 19, 2022 12:11 PM
**To:** Morgan Pietz <morgan@pstrials.com>; Blythe, Andrew Philip <ABlythe@gibsondunn.com>
**Cc:** Mark Siegmund <mark@swclaw.com>; Admin <admin@pstrials.com>; CA-BrazosTrials@carterarnett.com; Hatcher, Michael D. <mhatcher@sidley.com>; Dan MacLemore <maclemore@thetexasfirm.com>; Diego Salazar <salazar@thetexasfirm.com>; Franzinger, Michael <mfranzinger@sidley.com>; Franzinger, Michael <mfranzinger@sidley.com>; Jen Kash <jen@warrenlex.com>; Hartman, Sarah G. <SHartman@brownrudnick.com>; IPTeam <IPTeam@etheridgelaw.com>; Jim Etheridge <jim@etheridgelaw.com>; Julie Goerlinger <julie@pstrials.com>; mikejones@potterminton.com; Rob Millimet <Rob@stantonllp.com>; Rousseau, Timothy J. <TRousseau@brownrudnick.com>; Ryan Loveless <ryan@etheridgelaw.com>; Schulz, Bradford <Bradford.Schulz@finnegan.com>; WSOU-Google@jonesday.com; WSOUPOTTER GROUP <WSOUGoogle@potterminton.com>; bshelton@sheltoncoburn.com; caribou@matters.warrenlex.com; Butcher, Callie <cbutcher@sidley.com>; *** GDC-Dell_WSOU <GDC-Dell_WSOU@gibsondunn.com>; jbennett@carterarnett.com; sbreedlove@carterarnett.com; Sabanoglu, Kyanna <KSabanoglu@gibsondunn.com>; EXT-AKathir@gibsondunn.com <AKathir@gibsondunn.com>
**Subject:** RE: WSOU Investments - Limited Purpose Consolidation as to Certain Third Party Discovery

Morgan,

As I previously stated, I am in a deposition today and unable to meet at this time. A discussion is necessary as we previously indicated.

ZTE has continuously reiterated that it does not refuse to meet-and-confer with you on this topic. We just wish to consider relevant case law first in order to have a productive meeting. Again, your refusal to provide supporting legal precedent is telling and noted.

Regards,
Lionel


**From:** Morgan Pietz <morgan@pstrials.com>
**Sent:** Wednesday, January 19, 2022 3:07 PM
**To:** Lavenue, Lionel <lionel.lavenue@finnegan.com>; Blythe, Andrew Philip <ABlythe@gibsondunn.com>
**Cc:** Mark Siegmund <mark@swclaw.com>; Admin <admin@pstrials.com>; CA-BrazosTrials@carterarnett.com; Hatcher, Michael D. <mhatcher@sidley.com>; Dan MacLemore <maclemore@thetexasfirm.com>; Diego Salazar <salazar@thetexasfirm.com>; Franzinger, Michael <mfranzinger@sidley.com>; Franzinger, Michael <mfranzinger@sidley.com>; Jen Kash <jen@warrenlex.com>; Hartman, Sarah G. <SHartman@brownrudnick.com>; IPTeam <IPTeam@etheridgelaw.com>; Jim Etheridge <jim@etheridgelaw.com>; Julie Goerlinger <julie@pstrials.com>; mikejones@potterminton.com; Rob Millimet <Rob@stantonllp.com>; Rousseau, Timothy J. <TRousseau@brownrudnick.com>; Ryan Loveless <ryan@etheridgelaw.com>; Schulz, Bradford <Bradford.Schulz@finnegan.com>; WSOU-Google@jonesday.com; WSOUPOTTER GROUP <WSOUGoogle@potterminton.com>; bshelton@sheltoncoburn.com; caribou@matters.warrenlex.com; Butcher, Callie <cbutcher@sidley.com>; *** GDC-Dell_WSOU <GDC-Dell_WSOU@gibsondunn.com>; jbennett@carterarnett.com; sbreedlove@carterarnett.com; Sabanoglu, Kyanna <KSabanoglu@gibsondunn.com>; EXT-AKathir@gibsondunn.com <AKathir@gibsondunn.com>
**Subject:** RE: WSOU Investments - Limited Purpose Consolidation as to Certain Third Party Discovery

*EXTERNAL* **Email:**

I'm not going to trade any more emails with you, Mr. Lavenue.   We're moving forward with our motion.  Your refusal to get on the phone and confer about it is noted.  I remail available all day today and tomorrow if you change your mind.

Best regards,
Morgan


Morgan E. Pietz
PIETZ & SHAHRIARI, LLP
6700 S. Centinela Ave., 2nd Floor
Culver City, CA 90230
morgan@pstrials.com
(310) 424-5557

*WE HAVE MOVED.  PLEASE NOTE OUR NEW OFFICE MAILING ADDRESS*


*This transmission is from a law firm and may contain information that is privileged, confidential, and protected by the attorney-client or attorney work product privileges.  If you are not the addressee, note that any disclosure, copying, distribution or use of the contents of this message is prohibited.  If you have received this transmission in error, please destroy it and notify us immediately at the telephone number above.*

**From:** Lavenue, Lionel <lionel.lavenue@finnegan.com>
**Sent:** Wednesday, January 19, 2022 12:04 PM
**To:** Morgan Pietz <morgan@pstrials.com>; Blythe, Andrew Philip <ABlythe@gibsondunn.com>
**Cc:** Mark Siegmund <mark@swclaw.com>; Admin <admin@pstrials.com>; CA-BrazosTrials@carterarnett.com; Hatcher, Michael D. <mhatcher@sidley.com>; Dan MacLemore <maclemore@thetexasfirm.com>; Diego Salazar <salazar@thetexasfirm.com>; Franzinger, Michael <mfranzinger@sidley.com>; Franzinger, Michael <mfranzinger@sidley.com>; Jen Kash <jen@warrenlex.com>; Hartman, Sarah G. <SHartman@brownrudnick.com>; IPTeam <IPTeam@etheridgelaw.com>; Jim Etheridge <jim@etheridgelaw.com>; Julie Goerlinger <julie@pstrials.com>; mikejones@potterminton.com; Rob Millimet <Rob@stantonllp.com>; Rousseau, Timothy J. <TRousseau@brownrudnick.com>; Ryan Loveless <ryan@etheridgelaw.com>; Schulz, Bradford <Bradford.Schulz@finnegan.com>; WSOU-Google@jonesday.com; WSOUPOTTER GROUP <WSOUGoogle@potterminton.com>; bshelton@sheltoncoburn.com; caribou@matters.warrenlex.com; Butcher, Callie <cbutcher@sidley.com>; *** GDC-Dell_WSOU <GDC-Dell_WSOU@gibsondunn.com>; jbennett@carterarnett.com; sbreedlove@carterarnett.com; Sabanoglu, Kyanna <KSabanoglu@gibsondunn.com>; EXT-AKathir@gibsondunn.com <AKathir@gibsondunn.com>
**Subject:** RE: WSOU Investments - Limited Purpose Consolidation as to Certain Third Party Discovery

Morgan,

Again, so we may better assess your proposed plan, please provide supporting law (as requested, and as you continue to dodge).

Regarding consolidation, you have provided no *law* indicating that a WDTX Court should rule on a non-existent ZTE motion to compel for subpoenas issued within the jurisdiction of Delaware. There is no common question of law before the WDTX. ZTE has not raised a motion to compel in *any* court. Thus, FRCP 42 does not apply here for the issued FRCP 45 subpoena to your Delaware entities. Again, so we may better assess your positions, please provide legal support for how FRCP 42 applies to the FRCP 45 issued subpoenas.

As to them question of law—whether the requested documents are relevant for discovery—Delaware law controls, and a Delaware court will decide the issues if ZTE elects to bring a motion to compel. You clients are Delaware entities subject to ZTE's subpoenas issued within the Delaware jurisdiction. Thus, the cited Delaware

law controls here. And you refuse to provide your basis for opposing discovery under Delaware law. Again, so we may better assess your positions, please provide legal support for your opposition to discovery.

You refuse to cite supporting legal precedent for *any* of your positions. If anything, your actions support acquisition of fees on behalf of ZTE as you refuse to provide legal support for your positions.

We reiterate that ZTE's position is not "nearly all clear" as we still await your clients positions on several key issues and the supporting law for those issues. So we may better assess your objections and positions—in order to provide ZTE's position—please provide the requested legal support.

Until then, we reiterate that ZTE is willing to consider coordinating certain activities, such as depositions, at an appropriate time. We do not, however, believe the ZTE-subpoena issues have progressed to that point (especially in view of the fact that ZTE has not moved to compel production yet, and the awaited legal support for your clients objections).

Regards,

Lionel

On Wed, Jan 19, 2022 at 3:37 PM Morgan Pietz <morgan@pstrials.com> wrote:

Ms. Kash, Mr. Franzinger, and Mr. Blythe,

Since ZTE's position on the forthcoming proceedings is now nearly all clear (apart from the final question I just put to Mr. Lavenue), I await your responses to my email of yesterday evening.

Best regards,

Morgan

Morgan E. Pietz

PIETZ & SHAHRIARI, LLP

6700 S. Centinela Ave., 2nd Floor

Culver City, CA 90230

morgan@pstrials.com

(310) 424-5557

*WE HAVE MOVED.  PLEASE NOTE OUR NEW OFFICE MAILING ADDRESS*

*This transmission is from a law firm and may contain information that is privileged, confidential, and protected by the attorney-client or attorney work product privileges.  If you are not the addressee, note that any disclosure, copying, distribution or use of the contents of this message is prohibited.  If you have received this transmission in error, please destroy it and notify us immediately at the telephone number above.*

**From:** Morgan Pietz
**Sent:** Wednesday, January 19, 2022 11:35 AM
**To:** 'Lavenue, Lionel' <lionel.lavenue@finnegan.com>; Blythe, Andrew Philip <ABlythe@gibsondunn.com>
**Cc:** Mark Siegmund <mark@swclaw.com>; Admin <admin@pstrials.com>; CA-BrazosTrials@carterarnett.com; Hatcher, Michael D. <mhatcher@sidley.com>; Dan MacLemore <maclemore@thetexasfirm.com>; Diego Salazar <salazar@thetexasfirm.com>; Franzinger, Michael <mfranzinger@sidley.com>; Franzinger, Michael <mfranzinger@sidley.com>; Jen Kash <jen@warrenlex.com>; Hartman, Sarah G. <SHartman@brownrudnick.com>; IPTeam <IPTeam@etheridgelaw.com>; Jim Etheridge <jim@etheridgelaw.com>; Julie Goerlinger <julie@pstrials.com>; mikejones@potterminton.com; Rob Millimet <Rob@stantonllp.com>; Rousseau, Timothy J. <TRousseau@brownrudnick.com>; Ryan Loveless <ryan@etheridgelaw.com>; Schulz, Bradford <Bradford.Schulz@finnegan.com>; WSOU-Google@jonesday.com; WSOUPOTTER GROUP <WSOUGoogle@potterminton.com>; bshelton@sheltoncoburn.com; caribou@matters.warrenlex.com; Butcher, Callie <cbutcher@sidley.com>; *** GDC-Dell_WSOU <GDC-Dell_WSOU@gibsondunn.com>; jbennett@carterarnett.com; sbreedlove@carterarnett.com; Sabanoglu, Kyanna <KSabanoglu@gibsondunn.com>; EXT-AKathir@gibsondunn.com <AKathir@gibsondunn.com>
**Subject:** RE: WSOU Investments - Limited Purpose Consolidation as to Certain Third Party Discovery

Mr. Lavenue,

The last time you asked me for the legal support for this motion, I referred you to my earlier email to Dell.  Here that is again (from my email to Mr. Blythe of last week):

"With respect to your request for authority for consolidation, here is the text of the Rule 42, with the relevant part bolded:

(a) Consolidation. **If actions before the court involve a common question of law or fact, the court may:**

(1) join for hearing or trial any or all matters at issue in the actions;

(2) consolidate the actions; or

(3) issue any other orders to avoid unnecessary cost or delay."

ZTE has an action before the court that involves a common question of law and fact to the Google case.  Specifically, ZTE served subpoenas on my clients that were *identical* to prior subpoenas served by Google (same typos, even).  The relevant "actions" are the cases filed by WSOU against ZTE (and the other three defendants).  The common issues of law and fact arise from the categories of information sought by the subpoenas and ZTE's and Google's (and the other defendants') efforts to enforce them.

I've already responded to you, twice, about your curious and misplaced focus on Delaware law and invited you to make those arguments in a brief in support of Google's position.

Since ZTE is going to refuse to participate in a meet and confer call as to the *substance* of the forthcoming motion, here is my final question:

Does ZTE consent to my proposed email to the court re: briefing schedule and filing logistics that I circulated yesterday – or am I going to need to potentially make than an ex parte application and explain that the exigency is created by: (a) Google insisting on a quick hearing, and (b) ZTE refusing to confer about the motion or engage about a briefing schedule or filing mechanics?

I await your response to this last question.  If you are going to force this ex parte and/or force us to file the same motion papers in multiple cases (instead of just the lead cases), then we are getting to the point where I think we are going to request attorneys' fees.  Your actions in refusing to confer or agree to basic things like a briefing schedule are not consistent with your duty under Rule 45 to minimize burdens on non parties.  Or with 28 USC 1987 for that matter.

Best regards,

Morgan

Morgan E. Pietz

PIETZ & SHAHRIARI, LLP

6700 S. Centinela Ave., 2nd Floor

Culver City, CA 90230

[morgan@pstrials.com](mailto:morgan@pstrials.com)

(310) 424-5557

*WE HAVE MOVED.  PLEASE NOTE OUR NEW OFFICE MAILING ADDRESS*

*This transmission is from a law firm and may contain information that is privileged, confidential, and protected by the attorney-client or attorney work product privileges.  If you are not the addressee, note that any disclosure, copying, distribution or use of the contents of this message is prohibited.  If you have received this transmission in error, please destroy it and notify us immediately at the telephone number above.*

---

**From:** Lavenue, Lionel <[lionel.lavenue@finnegan.com](mailto:lionel.lavenue@finnegan.com)>
**Sent:** Wednesday, January 19, 2022 11:17 AM
**To:** Morgan Pietz <[morgan@pstrials.com](mailto:morgan@pstrials.com)>; Blythe, Andrew Philip <[ABlythe@gibsondunn.com](mailto:ABlythe@gibsondunn.com)>
**Cc:** Mark Siegmund <[mark@swclaw.com](mailto:mark@swclaw.com)>; Admin <[admin@pstrials.com](mailto:admin@pstrials.com)>; [CA-BrazosTrials@carterarnett.com](mailto:CA-BrazosTrials@carterarnett.com); Hatcher, Michael D. <[mhatcher@sidley.com](mailto:mhatcher@sidley.com)>; Dan MacLemore <[maclemore@thetexasfirm.com](mailto:maclemore@thetexasfirm.com)>; Diego Salazar <[salazar@thetexasfirm.com](mailto:salazar@thetexasfirm.com)>; Franzinger, Michael <[mfranzinger@sidley.com](mailto:mfranzinger@sidley.com)>; Franzinger, Michael <[mfranzinger@sidley.com](mailto:mfranzinger@sidley.com)>; Jen Kash <[jen@warrenlex.com](mailto:jen@warrenlex.com)>; Hartman, Sarah G. <[SHartman@brownrudnick.com](mailto:SHartman@brownrudnick.com)>; IPTeam <[IPTeam@etheridgelaw.com](mailto:IPTeam@etheridgelaw.com)>; Jim Etheridge <[jim@etheridgelaw.com](mailto:jim@etheridgelaw.com)>; Julie Goerlinger <[julie@pstrials.com](mailto:julie@pstrials.com)>; [mikejones@potterminton.com](mailto:mikejones@potterminton.com); Rob Millimet <[Rob@stantonllp.com](mailto:Rob@stantonllp.com)>; Rousseau, Timothy J. <[TRousseau@brownrudnick.com](mailto:TRousseau@brownrudnick.com)>; Ryan Loveless <[ryan@etheridgelaw.com](mailto:ryan@etheridgelaw.com)>; Schulz, Bradford <[Bradford.Schulz@finnegan.com](mailto:Bradford.Schulz@finnegan.com)>; [WSOU-Google@jonesday.com](mailto:WSOU-Google@jonesday.com); WSOUPOTTER GROUP <[WSOUGoogle@potterminton.com](mailto:WSOUGoogle@potterminton.com)>; [bshelton@sheltoncoburn.com](mailto:bshelton@sheltoncoburn.com); [caribou@matters.warrenlex.com](mailto:caribou@matters.warrenlex.com); Butcher, Callie <[cbutcher@sidley.com](mailto:cbutcher@sidley.com)>; *** GDC-Dell_WSOU <[GDC-Dell_WSOU@gibsondunn.com](mailto:GDC-Dell_WSOU@gibsondunn.com)>; [jbennett@carterarnett.com](mailto:jbennett@carterarnett.com); [sbreedlove@carterarnett.com](mailto:sbreedlove@carterarnett.com); Sabanoglu, Kyanna <[KSabanoglu@gibsondunn.com](mailto:KSabanoglu@gibsondunn.com)>; [EXT-AKathir@gibsondunn.com](mailto:EXT-AKathir@gibsondunn.com) <[AKathir@gibsondunn.com](mailto:AKathir@gibsondunn.com)>
**Subject:** RE: WSOU Investments - Limited Purpose Consolidation as to Certain Third Party Discovery

Morgan,

I'm in depositions today, and I'm in Texas tomorrow for a hearing.

But, generally, as ZTE previously stated numerous times, we await your legal support.

Specifically, regarding ZTE's subpoenas, ZTE does not have a pending motion to compel. Nevertheless, ZTE still awaits positions from Aqua, BP, and Terrier regarding the District of Delaware case law permitting the ZTE-subpoenaed discovery. For example, the requested documents and testimony are relevant to the issues of valuation, damages, royalty rates, and pre-suit investigations. *Acceleration Bay LLC v. Activision Blizzard, Inc.*, No. CV 16-453-RGA, 2018 WL 798731, at *3 (D. Del. Feb. 9, 2018) (finding that discovery over third-parties, even third-parties with security interests and/or licensing agreements, is proper as discovery that "may be relevant to central issues like validity and infringement, valuation, damages, royalty rates, pre-suit investigative diligence, and whether [Plaintiff] is an operating company," and that "common sense" confirms the documents request relevancy).

Your clients are Delaware entities, they were subpoenaed in Delaware by ZTE, and they are subject to Delaware law—at least for any issues pertaining to ZTE's subpoenas. You and your clients (at least BP and Terrier) have maintained your baseless objections for several months now and you refuse to provide your legal basis for opposing *Acceleration Bay*. This is also improper. We await your legal basis for opposing ZTE's subpoenas.

Regarding consolidation, again, ZTE does not have a pending motion to compel. Thus, there is no ZTE "action" under FRCP 45 for ZTE's consolidation. And you have not cited any case law for our consideration applicable to these facts—how FRCP 45 applies to a FRCP 42 subpoena for a nonexistent motion to compel. A call with ZTE is not appropriate at this time.

So we may consider it in the future, please provide your legal support for (1) opposing ZTE's subpoenas and cited Delaware law, and (2) for consolidating a non-existent "action."

As we have explained in prior correspondence, ZTE is willing to consider coordinating certain activities, such as depositions, at an appropriate time. We do not, however, believe the ZTE-subpoena issues have progressed to that point (especially in view of the fact that ZTE has not moved to compel production yet).

Regards,


Lionel

---

**From:** Morgan Pietz <morgan@pstrials.com>
**Sent:** Wednesday, January 19, 2022 2:06 PM
**To:** Lavenue, Lionel <lionel.lavenue@finnegan.com>; Blythe, Andrew Philip <ABlythe@gibsondunn.com>
**Cc:** Mark Siegmund <mark@swclaw.com>; Admin <admin@pstrials.com>; CA-BrazosTrials@carterarnett.com; Hatcher, Michael D. <mhatcher@sidley.com>; Dan MacLemore <maclemore@thetexasfirm.com>; Diego Salazar <salazar@thetexasfirm.com>; Franzinger, Michael <mfranzinger@sidley.com>; Franzinger, Michael <mfranzinger@sidley.com>; Jen Kash <jen@warrenlex.com>; Hartman, Sarah G. <SHartman@brownrudnick.com>; IPTeam <IPTeam@etheridgelaw.com>; Jim Etheridge <jim@etheridgelaw.com>; Julie Goerlinger <julie@pstrials.com>; mikejones@potterminton.com; Rob Millimet <Rob@stantonllp.com>; Rousseau, Timothy J. <TRousseau@brownrudnick.com>; Ryan Loveless <ryan@etheridgelaw.com>; Schulz, Bradford <Bradford.Schulz@finnegan.com>; WSOU-Google@jonesday.com; WSOUPOTTER GROUP <WSOUGoogle@potterminton.com>; bshelton@sheltoncoburn.com; caribou@matters.warrenlex.com; Butcher, Callie <cbutcher@sidley.com>; *** GDC-Dell_WSOU <GDC-Dell_WSOU@gibsondunn.com>; jbennett@carterarnett.com; sbreedlove@carterarnett.com; Sabanoglu, Kyanna <KSabanoglu@gibsondunn.com>; EXT-AKathir@gibsondunn.com <AKathir@gibsondunn.com>
**Subject:** RE: WSOU Investments - Limited Purpose Consolidation as to Certain Third Party Discovery


***EXTERNAL* Email:**


Mr. Lavenue and Mr. Blythe,


Once again: are you or any of the dozens of other lawyers for Dell and ZTE who are copied onto this thread available today or tomorrow to meet and confer on the forthcoming consolidation motion?  When?


Since I have not, thus far, been successful in getting Dell or ZTE to confer about the consolidation motion, I am adding Kyanna Sabanoglu and Allen Kathir to this thread, for Dell.   I just went back and noted that they are the counsel for Dell to whom I directed my November 11 email to, as discussed in my more recent email to Mr. Blythe from last week.  I have pasted my response to Mr. Blythe from last week, wherein I quoted from what I wrote to Dell last November, below, so that this email chain is now a complete record of my eight attempts (and counting) to get Dell and ZTE to say one way or another whether they will consent to the proposed order I circulated almost two weeks ago, on 1/6, and to schedule a meet and confer call.

**Please propose some times today.**

If Dell and ZTE are going to continue to refuse to participate in a meet and confer phone call, and have nothing to add or say beyond what you have already written on this thread, then please confirm as much and I'll file the motion with a declaration detailing my efforts to try and bring Dell and ZTE to the table to confer, and you can explain your refusal to do so as you think appropriate.

Best regards,

Morgan

Morgan E. Pietz

PIETZ & SHAHRIARI, LLP

6700 S. Centinela Ave., 2nd Floor

Culver City, CA 90230

[morgan@pstrials.com](mailto:morgan@pstrials.com)

(310) 424-5557

*WE HAVE MOVED.  PLEASE NOTE OUR NEW OFFICE MAILING ADDRESS*

*This transmission is from a law firm and may contain information that is privileged, confidential, and protected by the attorney-client or attorney work product privileges.  If you are not the addressee, note that any disclosure, copying, distribution or use of the contents of this message is prohibited.  If you have received this transmission in error, please destroy it and notify us immediately at the telephone number above.*

**From:** Morgan Pietz
**Sent:** Tuesday, January 18, 2022 6:06 PM
**To:** Lavenue, Lionel <[lionel.lavenue@finnegan.com](mailto:lionel.lavenue@finnegan.com)>; Jen Kash <[jen@warrenlex.com](mailto:jen@warrenlex.com)>; Blythe, Andrew Philip <[ABlythe@gibsondunn.com](mailto:ABlythe@gibsondunn.com)>; Franzinger, Michael <[mfranzinger@sidley.com](mailto:mfranzinger@sidley.com)>

**Cc:** Mark Siegmund <mark@swclaw.com>; Admin <admin@pstrials.com>; CA-BrazosTrials@carterarnett.com; Hatcher, Michael D. <mhatcher@sidley.com>; Dan MacLemore <maclemore@thetexasfirm.com>; Diego Salazar <salazar@thetexasfirm.com>; Hartman, Sarah G. <SHartman@brownrudnick.com>; IPTeam <IPTeam@etheridgelaw.com>; Jim Etheridge <jim@etheridgelaw.com>; Julie Goerlinger <julie@pstrials.com>; mikejones@potterminton.com; Rob Millimet <Rob@stantonllp.com>; Rousseau, Timothy J. <TRousseau@brownrudnick.com>; Ryan Loveless <ryan@etheridgelaw.com>; Schulz, Bradford <Bradford.Schulz@finnegan.com>; WSOU-Google@jonesday.com; WSOUPOTTER GROUP <WSOUGoogle@potterminton.com>; bshelton@sheltoncoburn.com; caribou@matters.warrenlex.com; Butcher, Callie <cbutcher@sidley.com>; *** GDC-Dell_WSOU <GDC-Dell_WSOU@gibsondunn.com>; jbennett@carterarnett.com; sbreedlove@carterarnett.com

**Subject:** RE: WSOU Investments - Limited Purpose Consolidation as to Certain Third Party Discovery

**To: Jen Kash (for Google); Mike Franzinger (for HPE); Andrew Blythe (for Dell); and Lionel Lavenue (for ZTE)**

Counsel,

Thank you to Jen Kash and Mike Franzinger for joining last Friday's meet and confer call on behalf of Google and HPE, respectively.

This is to confirm that Google and HPE are on board with at least the general concept of the proposed limited-purpose consolidation, and also perhaps the specifics of my proposed order that I circulated on January 6th. More specifically, Google and HPE have now made a firm commitment that they are prepared to cooperate with respect to doing a single deposition of Aqua, not to exceed seven total hours, although both Google and HPE wish to reserve the right to exclude the other defendant from certain portions of the examination.

Since I have not yet received a straight answer from either Dell or ZTE as to whether they agree to any aspects of the proposed order that I circulated on 1/6, and since both of those parties declined to participate in Friday's meet and confer call (despite their being invited to do so a couple days ahead of time, and my sending about ten emails trying to get them involved), I am assuming, at this point, that my clients (joined by WSOU) are going to need to bring a motion to ask for the relief requested in my 1/6 proposed order of consolidation (which I am attaching again here).

Accordingly, I suggest the following briefing schedule be emailed to the Court early next week for its approval and for entry of a scheduling order along the following lines:

> **"Friday January 21** - (1) Requesting Non-Parties and WSOU to file their motion for limited purpose consolidation, which is partially

opposed (not opposed by Google and HPE, but is opposed by Dell and ZTE).

**Friday January 28** -        (1) Oppositions due from Dell and ZTE due to the motion for limited purpose consolidation.

(2) If HPE, Dell, or ZTE wish to be heard in relation to the "Google Motions", then their optional supplemental briefs, of five pages or less, (one for each defendant) are due on this date.

**Friday February 4** -        (1) Reply due from Requesting Non-Parties and WSOU (single brief) in support of motion for limited purpose consolidation.

(2) Responses of five pages or less due (one from Requesting Non-Parties, one from WSOU), to the optional supplemental briefs, responding to any supplemental briefs filed by HPE, Dell, and ZTE relating to the "Google Motions".

**Requested Hearing -**        Week of February 7 or week of February 14  (single hearing on both the "Google Motions" and the forthcoming motion for limited purpose consolidation)

**Consolidated e-Filing:**  Without prejudice to the Court's ultimate decision as to the denial or granting of the limited-purpose consolidation, strictly as a courtesy and to reduce duplicative filings of the same thing being e-filed in multiple cases, all papers related to the motions set out above may be e-filed ONLY in the four low-number cases for each defendant, as follows:  6:20-cv-00473-ADA (Dell); 6:20-cv-00487-ADA (ZTE); 6:20-cv-00571-ADA (Google); 6:20-cv-00725-ADA (HPE). "

*[End proposed message to the Court]*

With respect to Google's concern about timing, per Jen's request, I am writing up what we discussed on Friday's call and my suggestion in this regard.  Google contends that certain documents that might be ordered produced as a result of the Google Motions might be relevant to Google's forthcoming depositions of WSOU's witnesses Craig Etchegoyen, set for February 9, 2022, and of Stuart Shanus, set for February 24, 2022.  In response to that concern, on our call two weeks ago (and following up on earlier requests from December), I asked Google to identify the particular deposition topics to WSOU that Google thinks might be relevant to documents it hopes to obtain from my clients (or that it might get from WSOU).  Google identified a list of topics on Monday of last week from its 30b6 notice to WSOU, which I have now reviewed.  I understand from

WSOU's counsel that WSOU previously designated Stu Shanus (whose deposition is not until the end of February) as the corporate representative testifying as to MOST of the topics identified by Google in its email to me last Monday.  Mr. Etchegoyen (who has the earlier deposition, which is driving Google's timing concerns) is apparently designated as to only four of the topics identified by Google; topic numbers 7, 35, 36, and 37.  Accordingly, what I suggested on today's call is that perhaps WSOU and Google could agree that if Judge Albright orders my clients to produce additional documents at the upcoming hearing, which we are asking be conducted the week of February 7 or February 14, then WSOU would agree to either designate Mr. Shanus to answer questions about those documents, or perhaps agree to re-produce Mr. Etchegoyen and have him answer questions about any newly produced documents from my clients that are relevant to these four topics.  Jen said she would need to consider with her client, and I expect WSOU will need to do the same.  But it seems to me that if Mr. Shanus is the main witness who might have information that Google contends is relevant to my clients, then we ought to be focused on his deposition date as the real deadline here, rather than Mr. Ethegoyen, and there ought to be a way for the parties to work this out along the lines I have suggested, so that these motions can be considered on full notice and a regular briefing schedule per Local Rule 7.

Accordingly, I have the following requests to the parties.   Please get back to me ASAP.

**Google and HPE –**
While I understand that your clients are both generally on board with the concept of the proposed limited-purpose consolidation, I ask you to please advise if they consent to the entry of my 1/6 proposed order as-written, or if you have any proposed revisions.  Please also approve my proposed email to the Court re: a scheduling order.

**Dell and ZTE –**

Please provide your clients' final answer as to whether they consent to my 1/6 proposed order of limited-purpose consolidation and please provide times tomorrow or Thursday when you are both available to meet and confer as to the forthcoming motion to that effect.  Please also approve my proposed email to the Court re: a scheduling order.

**WSOU –**

Please let us know whether Microsoft has stipulated to your proposed redactions so that all parties can understand what exactly was decided at the prior hearing related to my clients in the Microsoft case.  Please advise as to my proposal for how to handle the timing issue.  And please approve my proposed email to the Court re: a scheduling order.

Thanks, again, to everyone who was on Friday's call.

Best regards,
Morgan

**From:** Morgan Pietz
**Sent:** Friday, January 14, 2022 7:44 AM
**To:** Lavenue, Lionel <lionel.lavenue@finnegan.com>; Blythe, Andrew Philip <ABlythe@gibsondunn.com>; Hatcher, Michael D. <mhatcher@sidley.com>
**Cc:** Mark Siegmund <mark@swclaw.com>; Jen Kash <jen@warrenlex.com>; Admin <admin@pstrials.com>; CA-BrazosTrials@carterarnett.com; Dan MacLemore <maclemore@thetexasfirm.com>; Diego Salazar <salazar@thetexasfirm.com>; Hartman, Sarah G. <SHartman@brownrudnick.com>; IPTeam <IPTeam@etheridgelaw.com>; Jim Etheridge <jim@etheridgelaw.com>; Julie Goerlinger <julie@pstrials.com>; mikejones@potterminton.com; Rob Millimet <Rob@stantonllp.com>; Rousseau, Timothy J. <TRousseau@brownrudnick.com>; Ryan Loveless <ryan@etheridgelaw.com>; Schulz, Bradford <Bradford.Schulz@finnegan.com>; WSOU-Google@jonesday.com; WSOUPOTTER GROUP <WSOUGoogle@potterminton.com>; bshelton@sheltoncoburn.com; caribou@matters.warrenlex.com; Butcher, Callie <cbutcher@sidley.com>; Franzinger, Michael <mfranzinger@sidley.com>; *** GDC-Dell_WSOU <GDC-Dell_WSOU@gibsondunn.com>
**Subject:** RE: WSOU Investments - Limited Purpose Consolidation as to Certain Third Party Discovery

Will ZTE be participating on today's call or not?

With respect to your request for authority for consolidation, see my email of a few minutes ago go Dell.

I don't understand ZTE's position: 'we might cooperate but believe it is to soon to do so' – is that it?

What I am going to need from all the defendants, and soon, is a final answer on whether they agree to the terms of the proposed order of consolidation I circulated more than a week ago  (or edits, if you think there is something that needs to be tweaked).  Please be prepared to address that on today's call.  If you aren't going to consent to the order, we'll make our motion and everyone can explain why they think their case is different and they should get their multiple additional bites at the same apple.

Best regards,
Morgan

**From:** Lavenue, Lionel <lionel.lavenue@finnegan.com>
**Sent:** Friday, January 14, 2022 7:34 AM
**To:** Blythe, Andrew Philip <ABlythe@gibsondunn.com>; Morgan Pietz <morgan@pstrials.com>; Hatcher,
Michael D. <mhatcher@sidley.com>
**Cc:** Mark Siegmund <mark@swclaw.com>; Jen Kash <jen@warrenlex.com>; Admin <admin@pstrials.com>; CA-
BrazosTrials@carterarnett.com; Dan MacLemore <maclemore@thetexasfirm.com>; Diego Salazar
<salazar@thetexasfirm.com>; Hartman, Sarah G. <SHartman@brownrudnick.com>; IPTeam
<IPTeam@etheridgelaw.com>; Jim Etheridge <jim@etheridgelaw.com>; Julie Goerlinger <julie@pstrials.com>;
mikejones@potterminton.com; Rob Millimet <Rob@stantonllp.com>; Rousseau, Timothy J.
<TRousseau@brownrudnick.com>; Ryan Loveless <ryan@etheridgelaw.com>; Schulz, Bradford
<Bradford.Schulz@finnegan.com>; WSOU-Google@jonesday.com; WSOUPOTTER GROUP
<WSOUGoogle@potterminton.com>; bshelton@sheltoncoburn.com; caribou@matters.warrenlex.com;
Butcher, Callie <cbutcher@sidley.com>; Franzinger, Michael <mfranzinger@sidley.com>; *** GDC-Dell_WSOU
<GDC-Dell_WSOU@gibsondunn.com>
**Subject:** WSOU Investments - Limited Purpose Consolidation as to Certain Third Party Discovery


Counsel,


ZTE echoes Dell's comments and further adds.


Regarding ZTE's subpoenas, as we previously advised, ZTE does not have a pending motion to compel
and, like Dell, we see no reason for a conference regarding ZTE's subpoenas at this time.


ZTE also still awaits positions from Aqua, BP, and Terrier regarding the District of Delaware case law
permitting the ZTE-subpoenaed discovery. For example, the requested documents and testimony are
relevant to the issues of valuation, damages, royalty rates, and pre-suit investigations. *Acceleration
Bay LLC v. Activision Blizzard, Inc.*, No. CV 16-453-RGA, 2018 WL 798731, at *3 (D. Del. Feb. 9, 2018)
(finding that discovery over third-parties, even third-parties with security interests and/or licensing
agreements, is proper as discovery that "may be relevant to central issues like validity and
infringement, valuation, damages, royalty rates, pre-suit investigative diligence, and whether
[Plaintiff] is an operating company," and that "common sense" confirms the documents request
relevancy).


Your clients are Delaware entities, they were subpoenaed in Delaware by ZTE, and they are subject to
Delaware law—at least for any issues pertaining to ZTE's subpoenas. You and your clients (at least BP
and Terrier) have maintained your baseless objections for several months now and you refuse to

provide your legal basis for opposing *Acceleration Bay*. This is also improper. We await your legal basis for opposing ZTE's subpoenas.

Regarding consolidation, again, ZTE does not have a pending motion to compel. ZTE is not a party to the Google cases nor the Google motions to compel. Additionally, ZTE was not a party to the Microsoft cases as well. Nor is ZTE a party to Dell, or HPE's cases either.

It is improper for you to include, or characterize, ZTE in these communications—and any communications to any party *including the Court*—for matters pertaining to either the Microsoft or Google proceedings. Please further explain the legal basis for your request to consolidate and any cases that you contend support such a request so we may consider them. Until then, it is improper for you to include ZTE in these matters for a motion to compel it has neither moved on nor joined.

As we have explained in prior correspondence, ZTE is willing to consider coordinating certain activities, such as depositions, at an appropriate time. We do not, however, believe the ZTE-subpoena issues have progressed to that point (especially in view of the fact that ZTE has not moved to compel production yet).

Regards,

Lionel

**From:** Morgan Pietz
**Sent:** Friday, January 14, 2022 7:38 AM
**To:** Blythe, Andrew Philip ABlythe@gibsondunn.com; Hatcher, Michael D. mhatcher@sidley.com
**Cc:** Mark Siegmund mark@swclaw.com; Jen Kash jen@warrenlex.com; Admin admin@pstrials.com; CA-BrazosTrials@carterarnett.com; Dan MacLemore maclemore@thetexasfirm.com; Diego Salazar salazar@thetexasfirm.com; Hartman, Sarah G. SHartman@brownrudnick.com; IPTeam IPTeam@etheridgelaw.com; Jim Etheridge jim@etheridgelaw.com; Julie Goerlinger julie@pstrials.com; Lionel.Lavenue@finnegan.com; mikejones@potterminton.com; Rob Millimet Rob@stantonllp.com; Rousseau, Timothy J. TRousseau@brownrudnick.com; Ryan Loveless ryan@etheridgelaw.com; Schulz, Bradford Bradford.Schulz@finnegan.com; WSOU-Google@jonesday.com; WSOUPOTTER GROUP WSOUGoogle@potterminton.com; bshelton@sheltoncoburn.com; caribou@matters.warrenlex.com; Butcher, Callie cbutcher@sidley.com; Franzinger, Michael mfranzinger@sidley.com; *** GDC-Dell_WSOU GDC-

**Subject:** RE: WSOU Investments - Limited Purpose Consolidation as to Certain Third Party Discovery

Thanks for the response from Dell.

But I think the Dell team needs to please take another look at my letter to Kyanna Sabanoglu and Allen Kathir dated November 11, 2021.  I have had no response from Dell at all since then.

In my prior letter, I discuss the Google proceedings (then pending in Delaware) at some length, clarify that there was never any agreement between Dell and BasePoint Administrative, LLC (an agreement that I assume Dell would contend was reached for BasePoint to produce the same things Google agreed to receive initially, before Google renounced that agreement and filing motions to compel seeking all documents in Delaware) .  Further, the argument as to waiver of untimeliness of objections is an argument being made by Google in its pending motions, and our response is the same: neither Google nor Dell disclosed that Judge Albright already denied this same discovery in the Microsoft case, when pressing Rob Millimet to agree to respond on behalf of the third parties, among other issues.

My November letter to Dell concluded as follows:

> "Our client's bottom line is this: Dell, Google, ZTE, and anyone else, all need to work this out directly with WSOU before Judge Albright in Texas. I understand Judge Albright expressed concerns about relevance and burden. A party propounding a subpoena on a third party has an affirmative duty to minimize burden on that third party, and should generally seek discovery from a party before burdening a third party. As far as I am aware, this has not yet been done here by Dell, and we are *not* willing to step past the requirement that Dell make a serious, good faith effort to work all this out with WSOU directly, including by going before Judge Alright, if necessary, before burdening our client, a third party who made a loan years ago that has long since been paid off, with producing documents or testimony.

> We are happy to discuss this matter with you further. But we are not going to be producing any documents or witnesses at this time for the reasons set out above and in the attached objections to the subpoena."

With respect to your request for authority for consolidation, here is the text of the Rule 42, with the relevant part bolded:

(a) CONSOLIDATION. If actions before the court involve a common question of law or fact, the court may:

(1) join for hearing or trial any or all matters at issue in the actions;

(2) consolidate the actions; or

(3) issue any other orders to avoid unnecessary cost or delay.

The "agreement" that Dell is apparently still contending exists was for BasePoint to produce exactly what was initially agreed to be produced in the Google cases (before Google renounced its agreement and proceeded with motions arguing all objections had been waived).  So, what exactly are parts of the Dell subpoenas that "seek discovery that is at least in-part unique to the Dell cases."  I am aware of none.

All of these subpoenas are at least 95% identical as to substance.  It is not consistent with the Rule 45 duty to minimize burdens on non-parties, and it is a big waste of everyone's time for 4 different defendants to be seeking parallel proceedings before different courts on the same issues.

There are about 20 lawyers representing Dell at Gibson Dunn, plus local counsel who has been involved on this issue for months.  Surely someone can spare some time to participate in today's meet and confer call at 1 Central / 11 Pacific.

Best regards,
Morgan

**From:** Blythe, Andrew Philip <ABlythe@gibsondunn.com>
**Sent:** Friday, January 14, 2022 9:58 AM
**To:** Morgan Pietz <morgan@pstrials.com>; Hatcher, Michael D. <mhatcher@sidley.com>
**Cc:** Mark Siegmund <mark@swclaw.com>; Jen Kash <jen@warrenlex.com>; Admin <admin@pstrials.com>; CA-BrazosTrials@carterarnett.com; Dan MacLemore <maclemore@thetexasfirm.com>; Diego Salazar <salazar@thetexasfirm.com>; Hartman, Sarah G. <SHartman@brownrudnick.com>; IPTeam <IPTeam@etheridgelaw.com>; Jim Etheridge <jim@etheridgelaw.com>; Julie Goerlinger <julie@pstrials.com>; Lavenue, Lionel <lionel.lavenue@finnegan.com>; mikejones@potterminton.com; Rob Millimet <Rob@stantonllp.com>; Rousseau, Timothy J. <TRousseau@brownrudnick.com>; Ryan Loveless <ryan@etheridgelaw.com>; Schulz, Bradford <Bradford.Schulz@finnegan.com>; WSOU-Google@jonesday.com; WSOUPOTTER GROUP <WSOUGoogle@potterminton.com>; bshelton@sheltoncoburn.com; caribou@matters.warrenlex.com; Butcher, Callie <cbutcher@sidley.com>; Franzinger, Michael <mfranzinger@sidley.com>; *** GDC-Dell_WSOU <GDC-Dell_WSOU@gibsondunn.com>
**Subject:** RE: WSOU Investments - Limited Purpose Consolidation as to Certain Third Party Discovery

*EXTERNAL* **Email:**

Counsel,

Lead counsel is just back from trial and cannot participate in a conference tomorrow.  Please copy GDC-Dell_WSOU@gibsondunn.com on future correspondence regarding the Dell cases.  As you noted below, you did not copy our complete team, which has delayed our ability to respond.

Regardless, we do not have a pending motion to compel and see no reason for a conference regarding our subpoenas at this time.  We are still awaiting document productions and a response to our inquiry about when those productions will be completed.  No objections were timely served in response to our subpoenas, and any objections are thus waived.  Please confirm when the productions will be completed as already agreed.

Regarding consolidation with Google and others, we had not previously reviewed Google subpoenas or motions and note that Google's motion to compel documents from Aqua Licensing, LLC contain substantial portions that are redacted and to which we are not privy.  Our cases are also at substantially different points in discovery, and our subpoenas seek discovery that is at least in-part unique to the Dell cases.  Please further explain the legal basis for your request to consolidate and any cases that you contend support such a request so we may consider them.

We are willing to consider coordinating certain activities such as depositions at an appropriate time but do not believe our cases have progressed to that point.

Best,

**Andrew Blythe**

GIBSON DUNN

Gibson, Dunn & Crutcher LLP
3161 Michelson Drive, Irvine, CA 92612-4412
Tel +1 949.451.3926 • Fax +1 949.475.4630
ABlythe@gibsondunn.com • www.gibsondunn.com

---

**From:** Morgan Pietz <morgan@pstrials.com>
**Sent:** Thursday, January 13, 2022 12:36 PM
**To:** Hatcher, Michael D. <mhatcher@sidley.com>
**Cc:** Mark Siegmund <mark@swclaw.com>; Jen Kash <jen@warrenlex.com>; Admin <admin@pstrials.com>; CA-BrazosTrials@carterarnett.com; Dan MacLemore <maclemore@thetexasfirm.com>; Diego Salazar

<salazar@thetexasfirm.com>; Hartman, Sarah G. <SHartman@brownrudnick.com>; IPTeam
<IPTeam@etheridgelaw.com>; Jim Etheridge <jim@etheridgelaw.com>; Julie Goerlinger <julie@pstrials.com>;
Lionel.Lavenue@finnegan.com; mikejones@potterminton.com; Rob Millimet <Rob@stantonllp.com>;
Rousseau, Timothy J. <TRousseau@brownrudnick.com>; Ryan Loveless <ryan@etheridgelaw.com>; Schulz,
Bradford <Bradford.Schulz@finnegan.com>; WSOU-Google@jonesday.com>; WSOUPOTTER GROUP
<WSOUGoogle@potterminton.com>; Blythe, Andrew Philip <ABlythe@gibsondunn.com>;
bshelton@sheltoncoburn.com; caribou@matters.warrenlex.com; Butcher, Callie <cbutcher@sidley.com>;
Franzinger, Michael <mfranzinger@sidley.com>
**Subject:** Re: WSOU Investments - Limited Purpose Consolidation as to Certain Third Party Discovery

[WARNING: External Email]

Great, thanks.

Sent from my iPhone

> On Jan 13, 2022, at 12:15 PM, Hatcher, Michael D. <mhatcher@sidley.com> wrote:

Morgan –

We did not realize your later set of emails, including this one, did not include Mike
Franzinger.  Please include him on all future correspondence for HPE.  He is available to join on
behalf of HPE at 1 pm CT tomorrow.

Best,

Mike

**MICHAEL D. HATCHER**

**SIDLEY AUSTIN LLP**
+1 214 981 3428
mhatcher@sidley.com

---

**From:** Morgan Pietz <morgan@pstrials.com>
**Sent:** Thursday, January 13, 2022 1:49 PM
**To:** Mark Siegmund <mark@swclaw.com>

**Cc:** Jen Kash <jen@warrenlex.com>; Admin <admin@pstrials.com>; CA-BrazosTrials@carterarnett.com; Dan MacLemore <maclemore@thetexasfirm.com>; Diego Salazar <salazar@thetexasfirm.com>; Hartman, Sarah G. <SHartman@brownrudnick.com>; IPTeam <IPTeam@etheridgelaw.com>; Jim Etheridge <jim@etheridgelaw.com>; Julie Goerlinger <julie@pstrials.com>; Lavenue, Lionel <lionel.lavenue@finnegan.com>; Jones, Michael E. (EXTERNAL @POTTERMINTON.COM) <mikejones@potterminton.com>; Rob Millimet <Rob@stantonllp.com>; Rousseau, Timothy J. <TRousseau@brownrudnick.com>; Ryan Loveless <ryan@etheridgelaw.com>; Schulz, Bradford <Bradford.Schulz@finnegan.com>; WSOU-Google@jonesday.com; WSOUPOTTER GROUP <WSOUGoogle@potterminton.com>; ablythe@gibsondunn.com; bshelton@sheltoncoburn.com; caribou@matters.warrenlex.com; Butcher, Callie <cbutcher@sidley.com>; Hatcher, Michael D. <mhatcher@sidley.com>
**Subject:** RE: WSOU Investments - Limited Purpose Consolidation as to Certain Third Party Discovery

To Counsel for ZTE, Dell, and HPE,

WSOU and my office have been discussing coordination of this discovery with several of you since November or December.  I circulated a detailed proposal a week ago.  And I have now sent quite a number of emails over the last week asking Dell, HPE, and ZTE to respond to the proposal.

So far, total radio silence (except from Google).  Not even the courtesy of confirming, yay or nay, a time for a call to discuss on the phone, since it seems like you cannot be bothered to respond in writing, as I have now repeatedly requested that you do.

If I don't hear back from you today, either confirming the time to discuss tomorrow, or else stating your clients' position for the record, then I am going likely to proceed with a motion and file a declaration with the court attaching this email thread and noting that ZTE, Dell, and HPE all refused to confer on this issue.  To my mind, your refusal to cooperate in basic scheduling matters only underscores the need for the requested consolidation.

Please get back to me.

Best regards,

Morgan

Morgan E. Pietz

PIETZ & SHAHRIARI, LLP

6700 S. Centinela Ave., 2nd Floor

Culver City, CA 90230

morgan@pstrials.com

(310) 424-5557


*WE HAVE MOVED.  PLEASE NOTE OUR NEW OFFICE MAILING ADDRESS*


*This transmission is from a law firm and may contain information that is privileged, confidential, and protected by the attorney-client or attorney work product privileges.  If you are not the addressee, note that any disclosure, copying, distribution or use of the contents of this message is prohibited.  If you have received this transmission in error, please destroy it and notify us immediately at the telephone number above.*

---

**From:** Morgan Pietz
**Sent:** Thursday, January 13, 2022 8:30 AM
**To:** Mark Siegmund <mark@swclaw.com>
**Cc:** Jen Kash <jen@warrenlex.com>; Admin <admin@pstrials.com>; CA-BrazosTrials@carterarnett.com; Dan MacLemore <maclemore@thetexasfirm.com>; Diego Salazar <salazar@thetexasfirm.com>; Hartman, Sarah G. <SHartman@brownrudnick.com>; IPTeam <IPTeam@etheridgelaw.com>; Jim Etheridge <jim@etheridgelaw.com>; Julie Goerlinger <julie@pstrials.com>; Lavenue, Lionel <lionel.lavenue@finnegan.com>; Mike Jones <mikejones@potterminton.com>; Rob Millimet <Rob@stantonllp.com>; Rousseau, Timothy J. <TRousseau@brownrudnick.com>; Ryan Loveless <ryan@etheridgelaw.com>; Schulz, Bradford <Bradford.Schulz@finnegan.com>; WSOU-Google@jonesday.com; WSOUPOTTER GROUP <WSOUGoogle@potterminton.com>; ablythe@gibsondunn.com; bshelton@sheltoncoburn.com; caribou@matters.warrenlex.com; cbutcher@sidley.com; mhatcher@sidley.com

**Subject:** RE: WSOU Investments - Limited Purpose Consolidation as to Certain Third Party Discovery

Thanks, Mark.

Counsel for ZTE, Dell, and HPE: can you do 11 am Pacific / 1 pm Central tomorrow (Friday)?

Best regards,

Morgan

Morgan E. Pietz

PIETZ & SHAHRIARI, LLP

6700 S. Centinela Ave., 2nd Floor

Culver City, CA 90230

morgan@pstrials.com

(310) 424-5557

*WE HAVE MOVED.  PLEASE NOTE OUR NEW OFFICE MAILING ADDRESS*

*This transmission is from a law firm and may contain information that is privileged, confidential, and protected by the attorney-client or attorney work product privileges.  If you are not the addressee, note that any disclosure, copying, distribution or use of the contents of this message is prohibited.  If you have received this transmission in error, please destroy it and notify us immediately at the telephone number above.*

**From:** Mark Siegmund <mark@swclaw.com>
**Sent:** Thursday, January 13, 2022 8:00 AM
**To:** Morgan Pietz <morgan@pstrials.com>
**Cc:** Jen Kash <jen@warrenlex.com>; Admin <admin@pstrials.com>; CA-BrazosTrials@carterarnett.com; Dan MacLemore <maclemore@thetexasfirm.com>; Diego Salazar <salazar@thetexasfirm.com>; Hartman, Sarah G. <SHartman@brownrudnick.com>; IPTeam <IPTeam@etheridgelaw.com>; Jim Etheridge <jim@etheridgelaw.com>; Julie Goerlinger <julie@pstrials.com>; Lavenue, Lionel <lionel.lavenue@finnegan.com>; Mike Jones <mikejones@potterminton.com>; Rob Millimet <Rob@stantonllp.com>; Rousseau, Timothy J. <TRousseau@brownrudnick.com>; Ryan Loveless <ryan@etheridgelaw.com>; Schulz, Bradford <Bradford.Schulz@finnegan.com>; WSOU-Google@jonesday.com; WSOUPOTTER GROUP <WSOUGoogle@potterminton.com>; ablythe@gibsondunn.com; bshelton@sheltoncoburn.com; caribou@matters.warrenlex.com; cbutcher@sidley.com; mhatcher@sidley.com
**Subject:** Re: WSOU Investments - Limited Purpose Consolidation as to Certain Third Party Discovery

Morgan,

For WSOU counsel (at least for ZTE and Dell), Friday works better for our schedule.

Thanks,

Mark

> On Jan 13, 2022, at 9:31 AM, Morgan Pietz <morgan@pstrials.com> wrote:
>
> Counsel for Dell, HPE, ZTE, and WSOU, what do you say about those times?
>
> Sent from my iPhone
>
>> On Jan 13, 2022, at 7:27 AM, Jen Kash <jen@warrenlex.com> wrote:

Morgan,

Google is available at 1 pm pacific today.  We are potentially available tomorrow at 11 am pacific as well.

Thanks, Jen

On Wed, Jan 12, 2022 at 7:10 PM Morgan Pietz <morgan@pstrials.com> wrote:

Counsel,

Following up on this topic again.  My co-counsel Rob Millimet, Dan MacLemore and I are all available to meet and confer as to the proposed consolidation tomorrow and on Friday at the following times:

All times *Pacific:*

Thursday (tomorrow): 12-3 pm

Friday: 11 am, or 2:30-4 pm

Could I ask that counsel for the defendants other than Google please get back to me with your clients' preliminary response to my proposal, and that counsel for all concerned parties (including WSOU and Google) advise as to whether you are available to join a meet and confer call during the above times?

As I noted previously, Google would like its motions heard as soon as possible, and I'd like to get some clarity as to whether my consolidation proposal from a week ago is something we are going to have to make a motion to accomplish, or if everyone is going to agree to the concept?

Best regards,
Morgan

Morgan E. Pietz

PIETZ & SHAHRIARI, LLP

6700 S. Centinela Ave., 2nd Floor

Culver City, CA 90230

morgan@pstrials.com

(310) 424-5557

*WE HAVE MOVED.  PLEASE NOTE OUR NEW OFFICE MAILING ADDRESS*

*This transmission is from a law firm and may contain information that is privileged, confidential, and protected by the attorney-client or attorney work product privileges.  If you are not the addressee, note that any disclosure, copying, distribution or use of the contents of this message is prohibited.  If you have received this transmission in error, please destroy it and notify us immediately at the telephone number above.*

**From:** Morgan Pietz
**Sent:** Tuesday, January 11, 2022 8:56 AM
**To:** Mike Jones <mikejones@potterminton.com>; Dan MacLemore <maclemore@thetexasfirm.com>; WSOUPOTTER GROUP <WSOUGoogle@potterminton.com>; IPTeam <IPTeam@etheridgelaw.com>; CA-BrazosTrials@carterarnett.com; Rob Millimet

<Rob@stantonllp.com>; Julie Goerlinger
<julie@pstrials.com>; Admin <admin@pstrials.com>;
Diego Salazar <salazar@thetexasfirm.com>;
caribou@matters.warrenlex.com; WSOU-
Google@jonesday.com; mark@swclaw.com; Jim
Etheridge <jim@etheridgelaw.com>; Ryan Loveless
<ryan@etheridgelaw.com>
**Cc:** mhatcher@sidley.com; cbutcher@sidley.com;
Lavenue, Lionel <lionel.lavenue@finnegan.com>;
Schulz, Bradford <Bradford.Schulz@finnegan.com>;
bshelton@sheltoncoburn.com;
ablythe@gibsondunn.com; Hartman, Sarah G.
<SHartman@brownrudnick.com>; Rousseau, Timothy
J. <TRousseau@brownrudnick.com>
**Subject:** RE: WSOU Investments - Limited Purpose
Consolidation as to Certain Third Party Discovery

Counsel,

I am following up on my email below, wherein I
circulated a proposed order of limited-purpose
consolidation related to my clients.

I have now heard back from Google that it "would not
oppose appropriate consolidation as long as it would
not delay Google's right to obtain this important
discovery." Please see the attached email thread,
which, among other things, summarizes a meet and
confer call that my office conducted with Google and
WSOU last Friday.

So far, I have not yet received any response to my
proposal circulated below from Dell, HPE, or ZTE,
although I have heard from ZTE on other topics.

Could you all please get back to me with your clients'
positions as to whether they will agree to the
proposed consolidation, and/or whether you have
any comments on the proposed order itself?

Further, if any of your clients do contemplate wanting to file a supplemental brief in support of Google's position (or whatever you want it to say) at the hearing on the "Google Motions", as envisioned in the proposed order, could you please advise me of the time by which you would be ready to file such a brief?

Note that, as set out in the attached email thread, Google would like a hearing this month.  I'm not yet sure if that is feasible or not, but I think a hearing in February is definitely doable.  Understanding whether the consolidation issue is going to need to be a contested motion, or if it can be done by stipulation, and how much time your clients would want to put a supplemental brief together on the "Google Motions", should help pin that down.

Best regards,

Morgan

**From:** Morgan Pietz
**Sent:** Thursday, January 6, 2022 12:26 PM
**To:** Mike Jones <mikejones@potterminton.com>; Dan MacLemore <maclemore@thetexasfirm.com>; WSOUPOTTER GROUP <WSOUGoogle@potterminton.com>; IPTeam <IPTeam@etheridgelaw.com>; CA-BrazosTrials@carterarnett.com; Rob Millimet <Rob@stantonllp.com>; Julie Goerlinger <julie@pstrials.com>; Admin <admin@pstrials.com>; Diego Salazar <salazar@thetexasfirm.com>; Suzanne Miles <Suzanne_Miles@txwd.uscourts.gov>; caribou@matters.warrenlex.com; WSOU-Google@jonesday.com; Kristie Davis <Kristie_Davis@txwd.uscourts.gov>; mark@swclaw.com; Jim Etheridge <jim@etheridgelaw.com>; Ryan Loveless <ryan@etheridgelaw.com>

**Cc:** mhatcher@sidley.com; cbutcher@sidley.com;
Lavenue, Lionel <lionel.lavenue@finnegan.com>;
Schulz, Bradford <Bradford.Schulz@finnegan.com>;
bshelton@sheltoncoburn.com;
ablythe@gibsondunn.com; Hartman, Sarah G.
<SHartman@brownrudnick.com>; Rousseau, Timothy
J. <TRousseau@brownrudnick.com>
**Subject:** RE: WSOU Investments - Limited Purpose
Consolidation as to Certain Third Party Discovery

To Counsel in the WSOU patent infringement cases
pending against Google, ZTE, Dell, and HPE in the
Western District of Texas:

As you know, my office represents certain third
parties that have been subpoenaed in connection
with the above-mentioned cases.  Please review the
attached proposed order and advise as to whether
your client will stipulate to it being entered.  If not,
then my clients, with support from WSOU, will be
moving forward with a motion asking that the Court
enter an order to this effect, which we will ask be
heard at the same time as Google's pending motions
to compel and WSOU's motion for a protective order,
which are mentioned in the body of the attached.

In addition to the proposed order itself, I am also
attaching a letter to the Court from our local counsel,
relating to the setting of Google's motions, in case
you other defendants have not seen that exchange
yet.

Please advise as to your clients' positions.  I am
available to meet and confer with each of you this
week.

Best regards,

Morgan

38

P.S. In addition to copying all recipients on the email chain from the Google case below, I have copied at least one lawyer from each firm that is counsel of record in each of the low number cases for ZTE, Dell, and HPE, per PACER.  But I would ask anyone receiving this to please forward it on to other people on your team as may be appropriate.

---

**From:** Mike Jones <mikejones@potterminton.com>
**Sent:** Wednesday, January 5, 2022 8:30 AM
**To:** Morgan Pietz <morgan@pstrials.com>; Mike Jones <mikejones@potterminton.com>
**Cc:** Dan MacLemore <maclemore@thetexasfirm.com>; caribou@matters.warrenlex.com; WSOU-Google@jonesday.com; WSOUPOTTER GROUP <WSOUGoogle@potterminton.com>; IPTeam <IPTeam@etheridgelaw.com>; CA-BrazosTrials@carterarnett.com; Rob Millimet <Rob@stantonllp.com>; Julie Goerlinger <julie@pstrials.com>; Admin <admin@pstrials.com>; Diego Salazar <salazar@thetexasfirm.com>; Suzanne Miles <Suzanne_Miles@txwd.uscourts.gov>; Kristie Davis <Kristie_Davis@txwd.uscourts.gov>; mark@swclaw.com; Jim Etheridge <jim@etheridgelaw.com>; Ryan Loveless <ryan@etheridgelaw.com>
**Subject:** RE: WSOU Investments, LLC d/b/a Brazos Licensing and Development v. Google LLC, Cause Nos. 6:20-cv-571, 6:20-cv-572, 6:20-cv-573, 6:20-cv-575, 6:20-cv-576, 6:20-cv-579, 6:20-cv-580, 6:20-cv-583, 6:20-cv-584, and 6:20-cv-585

Morgan –

This will confirm Friday at 1:00 pm CT.  I will send a calendar invite and dial in shortly.

Michael E. Jones

**P O T T E R** M I N T O N

----------------------------A Professional Corporation

110 North College, Suite 500; Tyler TX  75702
telephone:  903.597.8311 ext. 239

Direct dial:  903.525.2239
facsimile:  903.593.0846
mikejones@potterminton.com

---

**From:** Morgan Pietz <morgan@pstrials.com>
**Sent:** Wednesday, January 5, 2022 10:17 AM
**To:** Mike Jones <mikejones@potterminton.com>
**Cc:** Dan MacLemore
<maclemore@thetexasfirm.com>;
caribou@matters.warrenlex.com; WSOU-
Google@jonesday.com; WSOUPOTTER GROUP
<WSOUGoogle@potterminton.com>; IPTeam
<IPTeam@etheridgelaw.com>; CA-
BrazosTrials@carterarnett.com; Rob Millimet
<Rob@stantonllp.com>; Julie Goerlinger
<julie@pstrials.com>; Admin <admin@pstrials.com>;
Diego Salazar <salazar@thetexasfirm.com>; Suzanne
Miles <Suzanne_Miles@txwd.uscourts.gov>; Kristie
Davis <Kristie_Davis@txwd.uscourts.gov>;
mark@swclaw.com; Jim Etheridge
<jim@etheridgelaw.com>; Ryan Loveless
<ryan@etheridgelaw.com>
**Subject:** Re: WSOU Investments, LLC d/b/a Brazos
Licensing and Development v. Google LLC, Cause Nos.
6:20-cv-571, 6:20-cv-572, 6:20-cv-573, 6:20-cv-575,
6:20-cv-576, 6:20-cv-579, 6:20-cv-580, 6:20-cv-583,
6:20-cv-584, and 6:20-cv-585

Mike,

Friday at 11 am Pacific / 1 pm Central should work.  If
anyone has a conflict please advise now.  I'm out of
the office and on my phone right now, so would you
please be so kind as to circulate a calendar appt / dial
in?

Best regards,

Morgan

Sent from my iPhone

> On Jan 5, 2022, at 7:41 AM, Mike Jones <[mikejones@potterminton.com](mailto:mikejones@potterminton.com)> wrote:
>
> Morgan,
>
> It is important we conduct this meet and confer this week.   We are available from 9 am central until 3 pm central time on Friday to conduct the meet and confer.   Please confirm today what works in this window for you and the others on your side who intend to participate.
>
> **Michael E. Jones**
>
> **P O T T E R** M I N T O N
>
> ---------------------------A Professional Corporation
>
> Address:  110 North College, Suite 500; Tyler TX  75702
> direct dial: 903-525-2239
>
> direct fax: 903-531-3939
>
> office:  903-597-8311
> [mikejones@potterminton.com](mailto:mikejones@potterminton.com)

**From:** Morgan Pietz
<morgan@pstrials.com>
**Sent:** Tuesday, January 4, 2022 6:53
PM
**To:** Mike Jones
<mikejones@potterminton.com>;
Dan MacLemore
<maclemore@thetexasfirm.com>
**Cc:** caribou@matters.warrenlex.com;
WSOU-Google@jonesday.com;
WSOUPOTTER GROUP
<WSOUGoogle@potterminton.com>;
IPTeam
<IPTeam@etheridgelaw.com>; CA-
BrazosTrials@carterarnett.com; Rob
Millimet <Rob@stantonllp.com>;
Julie Goerlinger <julie@pstrials.com>;
Admin <admin@pstrials.com>; Diego
Salazar <salazar@thetexasfirm.com>;
Suzanne Miles
<Suzanne_Miles@txwd.uscourts.gov>
; Kristie Davis
<Kristie_Davis@txwd.uscourts.gov>;
mark@swclaw.com; Jim Etheridge
<jim@etheridgelaw.com>; Ryan
Loveless <ryan@etheridgelaw.com>
**Subject:** RE: WSOU Investments, LLC
d/b/a Brazos Licensing and
Development v. Google LLC, Cause
Nos. 6:20-cv-571, 6:20-cv-572, 6:20-
cv-573, 6:20-cv-575, 6:20-cv-576,
6:20-cv-579, 6:20-cv-580, 6:20-cv-
583, 6:20-cv-584, and 6:20-cv-585

Hi Mike,

I had hoped to have you a draft of a
consolidation proposal by
tomorrow.  With the holidays, it is
taking just a little longer than I had
hoped, but I do anticipate having the
proposal ready to circulate to you by
end of the day tomorrow, Thursday
morning at the very latest.

Re: an M&C call, I will work on clearing some times that work for me, my co-counsel, my local counsel, and with counsel for WSOU in the Google case and I'll propose a few times tomorrow for Thursday afternoon or on Friday.  If there are any good windows either day that work for your team, please let me know and I'll start by clearing those times.

Best regards,

Morgan

Morgan E. Pietz

PIETZ & SHAHRIARI, LLP

6700 S. Centinela Ave., 2nd Floor

Culver City, CA 90230

morgan@pstrials.com

(310) 424-5557

*WE HAVE MOVED.  PLEASE NOTE OUR NEW OFFICE MAILING ADDRESS*

*This transmission is from a law firm and may contain information that is privileged, confidential, and protected by the attorney-client or attorney work product privileges.  If you are not the addressee, note that any disclosure, copying, distribution or use of the*

*contents of this message is prohibited. If you have received this transmission in error, please destroy it and notify us immediately at the telephone number above.*

---

**From:** Mike Jones
<mikejones@potterminton.com>
**Sent:** Tuesday, January 4, 2022 4:00 PM
**To:** Morgan Pietz
<morgan@pstrials.com>; Dan MacLemore
<maclemore@thetexasfirm.com>
**Cc:** caribou@matters.warrenlex.com;
WSOU-Google@jonesday.com;
WSOUPOTTER GROUP
<WSOUGoogle@potterminton.com>;
IPTeam
<IPTeam@etheridgelaw.com>; CA-BrazosTrials@carterarnett.com; Rob Millimet <Rob@stantonllp.com>;
Julie Goerlinger <julie@pstrials.com>;
Mike Jones
<mikejones@potterminton.com>;
Admin <admin@pstrials.com>; Diego Salazar <salazar@thetexasfirm.com>;
Suzanne Miles
<Suzanne_Miles@txwd.uscourts.gov>
; Kristie Davis
<Kristie_Davis@txwd.uscourts.gov>;
mark@swclaw.com; Jim Etheridge
<jim@etheridgelaw.com>; Ryan Loveless <ryan@etheridgelaw.com>
**Subject:** RE: WSOU Investments, LLC d/b/a Brazos Licensing and Development v. Google LLC, Cause Nos. 6:20-cv-571, 6:20-cv-572, 6:20-cv-573, 6:20-cv-575, 6:20-cv-576, 6:20-cv-579, 6:20-cv-580, 6:20-cv-583, 6:20-cv-584, and 6:20-cv-585

Morgan and Dan –

I am confirming our meet and confer telephonic conference tomorrow at 11:00 a.m. CT as discussed in the email below.  Please confirm your attendance and I will send dial in information first thing in the morning.


Thanks so much.


Michael E. Jones


**P O T T E R** M I N T O N

--------------------------A Professional Corporation

110 North College, Suite 500; Tyler TX  75702
telephone:  903.597.8311 ext. 239

Direct dial:  903.525.2239
facsimile:  903.593.0846
mikejones@potterminton.com


---

**From:** Mike Jones
**Sent:** Thursday, December 23, 2021 12:07 PM
**To:** Morgan Pietz <morgan@pstrials.com>; Dan MacLemore <maclemore@thetexasfirm.com>
**Cc:** caribou@matters.warrenlex.com; WSOU-Google@jonesday.com; WSOUPOTTER GROUP <WSOUGoogle@potterminton.com>; IPTeam <IPTeam@etheridgelaw.com>; CA-BrazosTrials@carterarnett.com; Rob Millimet <Rob@stantonllp.com>; Julie Goerlinger <julie@pstrials.com>; Admin <admin@pstrials.com>; Diego Salazar <salazar@thetexasfirm.com>; Suzanne Miles

<Suzanne_Miles@txwd.uscourts.gov>
; Kristie Davis
<Kristie_Davis@txwd.uscourts.gov>;
mark@swclaw.com; Jim Etheridge
<jim@etheridgelaw.com>; Ryan
Loveless <ryan@etheridgelaw.com>
**Subject:** RE: WSOU Investments, LLC
d/b/a Brazos Licensing and
Development v. Google LLC, Cause
Nos. 6:20-cv-571, 6:20-cv-572, 6:20-cv-573, 6:20-cv-575, 6:20-cv-576,
6:20-cv-579, 6:20-cv-580, 6:20-cv-583, 6:20-cv-584, and 6:20-cv-585

Morgan and Dan,

Thanks for your quick
response.  Google is available to
meet and confer on January 5, 2022
at 11:00 am central time, please
confirm that this works for your
team.   At this time, we do not see
the need to include other third
parties in a meet and confer on
motions filed by Google, or by WSOU
based on subpoenas served by
Google.  We will take a look at the
consolidation proposal once provided
to us and can reassess at that time if
it makes sense to invite others into
our discussion.  As to the request
concerning unsealing of the hearing
transcript in the Microsoft matter,
Google does not oppose any such
request but does not agree that doing
so is necessary for the Court to hear
argument and resolve the three
pending motions at hand.

Happy Holidays.

Michael E. Jones

**P O T T E R** M I N T O N

----------------------------A Professional Corporation

110 North College, Suite 500; Tyler TX  75702
telephone:  903.597.8311 ext. 239

Direct dial:  903.525.2239
facsimile:  903.593.0846
mikejones@potterminton.com

---

**From:** Morgan Pietz
<morgan@pstrials.com>
**Sent:** Wednesday, December 22,
2021 6:07 PM
**To:** Mike Jones
<mikejones@potterminton.com>;
Dan MacLemore
<maclemore@thetexasfirm.com>
**Cc:** caribou@matters.warrenlex.com;
WSOU-Google@jonesday.com;
WSOUPOTTER GROUP
<WSOUGoogle@potterminton.com>;
IPTeam
<IPTeam@etheridgelaw.com>; CA-
BrazosTrials@carterarnett.com; Rob
Millimet <Rob@stantonllp.com>;
Julie Goerlinger <julie@pstrials.com>;
Admin <admin@pstrials.com>; Diego
Salazar <salazar@thetexasfirm.com>;
Suzanne Miles
<Suzanne_Miles@txwd.uscourts.gov>
; Kristie Davis
<Kristie_Davis@txwd.uscourts.gov>;
mark@swclaw.com; Jim Etheridge
<jim@etheridgelaw.com>; Ryan
Loveless <ryan@etheridgelaw.com>
**Subject:** RE: WSOU Investments, LLC
d/b/a Brazos Licensing and
Development v. Google LLC, Cause
Nos. 6:20-cv-571, 6:20-cv-572, 6:20-
cv-573, 6:20-cv-575, 6:20-cv-576,
6:20-cv-579, 6:20-cv-580, 6:20-cv-
583, 6:20-cv-584, and 6:20-cv-585

Hi Mike,

We are available to meet and confer with you on this anytime January 5th or later.

Between now and then, I plan to circulate a proposal as to consolidation of certain WSOU cases for the limited purpose of third party discovery.  Which, as Dan indicated in his letter, is something we'd like to see resolved at the same time as Google's three motions to compel (all recently transferred in from Delaware) and WSOU's motion for a protective order (filed in W.D. Tex. originally).  I'd like for you to have a chance to review the particulars of our proposal, which I will be working on next week, and for us to confer about that on the same call.

Query whether you'd like counsel for ZTE, Dell, and HPE to also participate in the call, since they have also all subpoenaed my clients, and some of them are writing meet and confer letters threatening still further motions related to my clients (beyond the six or seven already-filed motions I can count so far)?  They'll need to be a part of the consolidation discussion, in any event, but I'm happy to have a separate call with only Google first, if you so desire.

Further, can I assume that Google will join in our request that WSOU and Microsoft un-seal the relevant discovery tables and excerpts of the transcript from the sealed hearing at

48

which Microsoft's motion to compel discovery related to BP Funding and Terrier was denied?  When Ms. Kash and I argued the motions to compel in Delaware, we did so without being able to explain to Judge Burke exactly what was at issue and what was decided in the Microsoft proceedings.  I don't believe it makes sense for us to have another hearing on these issues without knowing exactly what was decided in Microsoft and it being clear for all to see and discuss.  I presume Google agrees?

Please stay tuned for a proposal from me as to consolidation.  Let me know whether Google joins in our request as to unsealing the Microsoft proceedings related to my clients.  And I look forward to speaking with you in the new year.

Best regards,
Morgan

Morgan E. Pietz

PIETZ & SHAHRIARI, LLP

6700 S. Centinela Ave., 2nd Floor

Culver City, CA 90230

morgan@pstrials.com

(310) 424-5557

*WE HAVE MOVED.  PLEASE
NOTE OUR NEW OFFICE
MAILING ADDRESS*

*This transmission is from a law
firm and may contain
information that is privileged,
confidential, and protected by
the attorney-client or attorney
work product privileges.  If you
are not the addressee, note
that any disclosure, copying,
distribution or use of the
contents of this message is
prohibited.  If you have
received this transmission in
error, please destroy it and
notify us immediately at the
telephone number above.*

---

**From:** Mike Jones
<mikejones@potterminton.com>
**Sent:** Wednesday, December 22,
2021 1:51 PM
**To:** Dan MacLemore
<maclemore@thetexasfirm.com>
**Cc:** Mike Jones
<mikejones@potterminton.com>;
caribou@matters.warrenlex.com;
WSOU-Google@jonesday.com;
WSOUPOTTER GROUP
<WSOUGoogle@potterminton.com>;
IPTeam
<IPTeam@etheridgelaw.com>; CA-
BrazosTrials@carterarnett.com;
Morgan Pietz
<morgan@pstrials.com>; Rob
Millimet <Rob@stantonllp.com>;
Julie Goerlinger <julie@pstrials.com>;
Admin <admin@pstrials.com>; Diego
Salazar <salazar@thetexasfirm.com>;
Suzanne Miles
<Suzanne_Miles@txwd.uscourts.gov>
; Kristie Davis
<Kristie_Davis@txwd.uscourts.gov>;
mark@swclaw.com; Jim Etheridge

50

<[jim@etheridgelaw.com](mailto:jim@etheridgelaw.com)>; Ryan
Loveless <[ryan@etheridgelaw.com](mailto:ryan@etheridgelaw.com)>
**Subject:** WSOU Investments, LLC
d/b/a Brazos Licensing and
Development v. Google LLC, Cause
Nos. 6:20-cv-571, 6:20-cv-572, 6:[20-
cv-573](), 6:[20-cv-575](), 6:20-cv-576,
6:20-cv-579, 6:20-cv-580, 6:20-cv-
583, 6:20-cv-584, and 6:20-cv-585

Mr. MacLemore:

Good afternoon.  I am sending this
email to all recipients of Jeffrey
Gunnell's email of December 21,
2021 at 3:30 p.m., as well as to Jim
Etheridge and Ryan Loveless.  If any
recipient feels it should be forward to
someone else, please let me know
and I will be happy to do so.

As you know, in Mr. Gunnell's email,
the Court instructed us to meet and
confer regarding:  (1) Google's
motions to compel BP Funding Trust
and Terrier SSC, LLC; and (2) WSOU's
motion for protective order.  We are
available on December 28 between
9:00 a.m. and noon CST, December
29 between 11:00 a.m. and 2:00 p.m.
CST, and December 30 between 9:00
a.m. and 2:00 p.m. CST.

Please let us know when you are
available during this time.

Thank you.

Michael E. Jones

51

**P O T T E R** M I N T O N

--------------------------A Professional Corporation

110 North College, Suite 500; Tyler TX  75702
telephone:  903.597.8311 ext. 239

Direct dial:  903.525.2239
facsimile:  903.593.0846
mikejones@potterminton.com

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
This e-mail is sent by a law firm and may contain information that is privileged or confidential.
If you are not the intended recipient, please delete the e-mail and any attachments and notify us
immediately.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

This e-mail message is intended only for individual(s) to whom it is addressed and may contain information that is privileged, confidential, proprietary, or otherwise exempt from disclosure under applicable law. If you believe you have received this message in error, please advise the sender by return e-mail and delete it from your mailbox. Thank you.

This e-mail message is intended only for individual(s) to whom it is addressed and may contain information that is privileged, confidential, proprietary, or otherwise exempt from disclosure under applicable law. If you believe you have received this message in error, please advise the sender by return e-mail and delete it from your mailbox. Thank you.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

# EXHIBIT 12

**Morgan Pietz**

| | |
|---|---|
| **From:** | Morgan Pietz |
| **Sent:** | Tuesday, January 11, 2022 8:38 AM |
| **To:** | Jen Kash |
| **Cc:** | Dan MacLemore; caribou@matters.warrenlex.com; WSOU-Google@jonesday.com; Mike Jones; WSOUPOTTER GROUP; IPTeam; CA-BrazosTrials@carterarnett.com; Rob Millimet; Julie Goerlinger; Admin; Diego Salazar; mark@swclaw.com; Jim Etheridge; Ryan Loveless |
| **Subject:** | RE: WSOU Investments, LLC d/b/a Brazos Licensing and Development v. Google LLC, Cause Nos. 6:20-cv-571, 6:20-cv-572, 6:20-cv-573, 6:20-cv-575, 6:20-cv-576, 6:20-cv-579, 6:20-cv-580, 6:20-cv-583, 6:20-cv-584, and 6:20-cv-585 |

Jen,

Thanks for this response noting that Google "would not oppose appropriate consolidation as long as it would not delay Google's right to obtain this important discovery" and for sending me earlier yesterday the 30(b)(6) deposition notice to WSOU and identifying the topics on it that Google believes may be relevant to my clients, further to my several requests for that information.

With respect to timing, I will get back to you soon.

As I've noted previously, the main cause of any delay here is that Google insisted on burdening my clients with motions before multiple courts, rather than seeking to obtain the information directly from WSOU as it should have done last fall. Below, you point out that my clients have known about the Microsoft ruling at least since October 21, 2021. But, as described by Mr. Richins in his declaration submitted as part of the opposition to the motions to compel, *Google* has known the *result* of the Microsoft ruling related to my clients least since Mr. Richins' letter to Google dated September 15, 2021 (which was before Google filed all of its motions in Delaware). In other words, Google saw the handwriting on the wall with respect to pursuing party discovery as part of the underlying case in Texas, and opted to take a detour to Delaware hoping that it might get a different result from a different court in moving to enforce third party subpoenas (rather than compelling party discovery). Google then opposed the motion to transfer filed by two of my clients together with WSOU in Delaware. And it took Google several weeks to provide me with the list of relevant deposition topics I requested in mid-December, which you finally provided yesterday morning. So my clients are not that sympathetic to Google's claims of urgency.

I am going to forward this thread to counsel for the other defendants (including Google). Thanks for confirming that I have your permission to do so.

Best regards,
Morgan

---

**From:** Jen Kash <jen@warrenlex.com>
**Sent:** Monday, January 10, 2022 5:40 PM
**To:** Morgan Pietz <morgan@pstrials.com>
**Cc:** Dan MacLemore <maclemore@thetexasfirm.com>; caribou@matters.warrenlex.com; WSOU-Google@jonesday.com; Mike Jones <mikejones@potterminton.com>; WSOUPOTTER GROUP <WSOUGoogle@potterminton.com>; IPTeam <IPTeam@etheridgelaw.com>; CA-BrazosTrials@carterarnett.com; Rob Millimet <Rob@stantonllp.com>; Julie Goerlinger <julie@pstrials.com>; Admin <admin@pstrials.com>; Diego Salazar <salazar@thetexasfirm.com>; mark@swclaw.com; Jim Etheridge <jim@etheridgelaw.com>; Ryan Loveless

<ryan@etheridgelaw.com>
**Subject:** Re: WSOU Investments, LLC d/b/a Brazos Licensing and Development v. Google LLC, Cause Nos. 6:20-cv-571, 6:20-cv-572, 6:20-cv-573, 6:20-cv-575, 6:20-cv-576, 6:20-cv-579, 6:20-cv-580, 6:20-cv-583, 6:20-cv-584, and 6:20-cv-585

Morgan,

I have addressed the salient points from your email in turn below.

**Discussion re: BP Funding & Terrier**

You are correct that Google still intends to move forward with its motions to compel BP Funding and Terrier, and we request that the hearing be set to occur within the month of January.  Although we do not believe consolidation of any matters is necessary or useful, we would not oppose appropriate consolidation as long as it would not delay Google's right to obtain this important discovery.  Toward that end, we expect any motions regarding consolidation to be filed this week; there is no reason to wait longer.

You stated in your email of January 7 that, before any hearing, you would "like to get the relevant transcript and briefing unsealed from the Microsoft case."  As you know, Google has not seen that transcript, and has no way to know if it is relevant.  We do know, as you also know, that our subpoenas raise issues that "the Microsoft case" could not address, including documents within BP and Terrier's possession not held by WSOU, waiver of their objections to Google's subpoena, and their agreement that production in response to Google's subpoena would not be burdensome.   If your clients believe that you should "get the relevant transcript and briefing unsealed from the Microsoft case," you are free to do that; you don't need Google's consent, as we are not a party in that case.  That said, BP and Terrier have been aware of "the Microsoft case" since at least October 21, 2021, when they referenced the hearing in opposition to Google's motions to compel and their own motion to transfer.  Yet, it appears that, nearly three months later, there has been no progress toward getting "the relevant transcript and briefing unsealed from the Microsoft case."  We are unaware of any reason for this delay other than delay for its own sake; if we are wrong, we welcome correction.

We look forward to hearing from you promptly on this matter.

**Discussion re: Aqua**

We agreed that with respect to the Aqua motion to compel, we first need confirmation from Aqua as to whether or not it has completed its production of documents, and then we will assess whether we will move forward with our motion based on Aqua's  failure to produce negotiations with Google and/or WSOU concerning the patents-in-suit.  The most pressing issue, however, is confirming a deposition date for Aqua within the remaining discovery period in the *WSOU v. Google* litigations, as fact discovery closes on February 25, 2022.  I will discuss your "conditions" with the other three defendants you listed and get back to you by the end of this week.  Please note that it remains Google's position that Aqua waived its objections to the deposition subpoena, and Google reserves its rights to continue to assert such waiver regardless of our efforts to reach an accommodation or compromise here.

Google does not object to you sharing this thread with counsel for the other three defendants.  We are available for a follow-up call this week, with one or more defendants if necessary.

Best regards, Jen

On Fri, Jan 7, 2022 at 9:44 PM Morgan Pietz <morgan@pstrials.com> wrote:

> [*Bcc'ing Court Staff, Ms. Miles and Ms. Davis, off this thread, who I did not realize were copied previously*]

> Jen,

Nice speaking with you and everyone else today.  I am not going to attempt to recap everything we discussed and all the points made, but here are the highlights.  Please let me know if I've summarized anything incorrectly, or if I have omitted anything you think important.

**Discussion re: BP Funding & Terrier**

I expressed my view that I think the appropriate thing to happen with respect to Google's attempt to seek discovery related to BP Funding and Terrier is that Google should take its pending motions to compel against BP Funding and Terrier (which have now been transferred in from Delaware) off calendar and that Google should instead begin the process of seeking the documents it wants directly from WSOU, including by filing a motion to compel directed to WSOU, if necessary.

You responded that from Google's perspective the issues are different, documents from BP Funding and Terrier are key to issues of standing, Google believes objections were waived, and there might be different documents at stake, so, in any event, you were quite clear that Google would be moving forward on its motions as to BP Funding and Terrier and that Google would like those two motions heard as soon as possible; your initial comment was that you'd like a hearing "this month."

I indicated that before we have another hearing on discovery related to BP Funding and Terrier, I'd like to get the relevant transcript and briefing unsealed from the Microsoft case, at which Judge Albright previously addressed party discovery related to BP Funding and Terrier.  At a minimum, I'd like to get an answer from WSOU and Microsoft as to whether they will stipulate to the unsealing of the relevant portions of the record and on what timeframe, before we agree on a hearing date for your motions.  You reiterated that Google does not oppose the unsealing of those transcript portions, but that Google does not think anything should be delayed on that account.

As to my consolidation proposal, your initial position was that, at least with respect to inviting the other defendants to participate at the hearing on the Google Motions, Google does "not object" to the general idea; again, as long as it does not delay things.  When I at one point explained that my proposal included a round of supplemental briefing, with the dates for when the briefs would be due left blank, whereby any of the other defendants could add in their own two cents about why they think Judge Albright got it wrong in Microsoft and Google should win this time around (or whatever they want to say), with my clients and WSOU then afforded a chance to respond, you said that you would have to take another look at my proposal as you had not initially noticed the supplemental briefing part of it.

When I asked why Google felt it needed a hearing "this month," you mentioned that the documents might be relevant to upcoming depositions set for February 9 (Craig Etchegoyen)  and February 24 (Stu Shanus), because the documents are purportedly relevant to the threshold issue of whether WSOU had standing to sue.  At that point, I reiterated a request I've made twice before, by email back before the December holidays, that Google please provide me with copies of the relevant deposition notices, and direct me to the particular topics on those notices that Google contends

are relevant to the documents it is seeking from my clients.  You promised you would do so, and provide me both with the notices and also identify the particular noticed topics that Google contends are relevant to my clients, sometime next week.

I said that before I would commit to hearing timing, I want to hear what the other defendants involved in the consolidation proposal have to say, and whether they all agree to my proposed order.  One reason for that, I explained, is that I would like the consolidation issue decided at the same time as the other "Google Motions".  I asked you to take another look at my proposed consolidation order and indicate whether Google will agree to it as written, assuming the other defendants are on board with it, which you said you did not want to do until the other defendants stake out their own positions first.  So, I promised that I will report back when I have obtained the other defendants' positions about the proposed consolidation order.

Finally, we agreed to touch base again next week with respect to timing, once you've sent me your deposition topics, after we hopefully have some kind of answer from WSOU and Microsoft re: un-sealing, and the other defendants have weighed in about my consolidation proposal.

**Discussion re: Aqua**

You initially indicated that you though the Aqua motion should be on a different track from the BP Funding and Terrier motions.  Unlike with BP Funding and Terrier, the motion in Aqua is *not* fully briefed, because the parties had notified the Judge in Delaware that they were cooperating and that a motion might not be necessary after all, prior the transfers to W.D. Tex.  You further indicated that you remained hopeful that perhaps motion practice could be avoided on Aqua altogether, provided Aqua agrees to produce a witness to be deposed prior to the fact discovery cutoff, and that Google would take up with WSOU any disputes it might have about the propriety of producing documentation about "negotiations", and look to WSOU to produce such documentation, rather than Aqua.  I was a little bit unclear about the part where you said you might reserve your right to refile a new motion as to Aqua, if Google does not like how things shake out in conferring with WSOU.

In any event, to try and move things along, I made the following proposal as to Aqua, which I promised to write up and asked you to please consider with your client and get back to me about:

Subject to me confirming as much with my client rep, and to the following conditions, Aqua will agree to give a single deposition in the proposed consolidated cases:

   a. The four defendants need to coordinate a single date and time for the deposition that works for everyone;
   b. The four defendants need to coordinate and serve a single list of topics and cooperate as to their questioning;

   c.  The "main" part of the deposition will not go longer than seven hours;

   d.  Since Google claims it has some special circumstances relating to Aqua's communications with Google, which are subject to an NDA, concerning potential licensing of patents in suit, Aqua would agree to do one additional hour with Google, as to those specific topics, at which the other defendants could be excluded (if that is what the parties want);

   e.  Finally, I would want the four defendants' assurance that this one deposition of Aqua is going to be it, and that Aqua is not going to be dragged in a second time if Google or another defendant later prevails on some kind of motion (either the one Google already filed in Delaware, or on a new motion against Aqua or WSOU) if a defendant convinces Judge Albright that Google should receive "negotiation" documents related to Aqua in any of these cases.

The foregoing largely mirrors what I already wrote out in my proposed consolidation order, except as to that last point, which is a concern I added after listening to your explanation of how Google intends to potentially proceed.

**Question: May I Share this Thread with ZTE, Dell, and HPE?**

On today's call, you indicated that Google did not want to wait around for any of the other defendants, none of whom were invited to join today's call. I had proposed adding them and doing a single call, but Mike Jones indicated to me last week that he would prefer to proceed on a separate call with just us to begin with.

To move things along with the other defendants subject to the consolidation proposal, do I have your permission to share this recap and thread (including your response) with the counsel for the other defendants to whom I emailed the consolidation proposal yesterday?

Bottom line is let's see where all the defendants stand with respect to consolidation and then touch base again next week. If we do another call, I think it probably makes sense for a next one to include counsel for all four defendants.

Have a nice weekend, everyone.

Best regards,
Morgan

**From:** Mike Jones <mikejones@potterminton.com>
**Sent:** Wednesday, January 5, 2022 8:30 AM
**To:** Morgan Pietz <morgan@pstrials.com>; Mike Jones <mikejones@potterminton.com>
**Cc:** Dan MacLemore <maclemore@thetexasfirm.com>; caribou@matters.warrenlex.com; WSOU-Google@jonesday.com; WSOUPOTTER GROUP <WSOUGoogle@potterminton.com>; IPTeam <IPTeam@etheridgelaw.com>; CA-BrazosTrials@carterarnett.com; Rob Millimet <Rob@stantonllp.com>; Julie Goerlinger <julie@pstrials.com>; Admin <admin@pstrials.com>; Diego Salazar <salazar@thetexasfirm.com>; Suzanne Miles <Suzanne_Miles@txwd.uscourts.gov>; Kristie Davis <Kristie_Davis@txwd.uscourts.gov>; mark@swclaw.com; Jim Etheridge <jim@etheridgelaw.com>; Ryan Loveless <ryan@etheridgelaw.com>
**Subject:** RE: WSOU Investments, LLC d/b/a Brazos Licensing and Development v. Google LLC, Cause Nos. 6:20-cv-571, 6:20-cv-572, 6:20-cv-573, 6:20-cv-575, 6:20-cv-576, 6:20-cv-579, 6:20-cv-580, 6:20-cv-583, 6:20-cv-584, and 6:20-cv-585

Morgan –

This will confirm Friday at 1:00 pm CT.  I will send a calendar invite and dial in shortly.

Michael E. Jones

**POTTER** MINTON

----------------------------A Professional Corporation

110 North College, Suite 500; Tyler TX  75702
telephone:  903.597.8311 ext. 239

Direct dial:  903.525.2239
facsimile:  903.593.0846
mikejones@potterminton.com

---

**From:** Morgan Pietz <morgan@pstrials.com>
**Sent:** Wednesday, January 5, 2022 10:17 AM
**To:** Mike Jones <mikejones@potterminton.com>
**Cc:** Dan MacLemore <maclemore@thetexasfirm.com>; caribou@matters.warrenlex.com; WSOU-Google@jonesday.com; WSOUPOTTER GROUP <WSOUGoogle@potterminton.com>; IPTeam <IPTeam@etheridgelaw.com>; CA-BrazosTrials@carterarnett.com; Rob Millimet <Rob@stantonllp.com>; Julie

Goerlinger <julie@pstrials.com>; Admin <admin@pstrials.com>; Diego Salazar <salazar@thetexasfirm.com>; Suzanne
Miles <Suzanne_Miles@txwd.uscourts.gov>; Kristie Davis <Kristie_Davis@txwd.uscourts.gov>; mark@swclaw.com>; Jim
Etheridge <jim@etheridgelaw.com>; Ryan Loveless <ryan@etheridgelaw.com>
**Subject:** Re: WSOU Investments, LLC d/b/a Brazos Licensing and Development v. Google LLC, Cause Nos. 6:20-cv-571,
6:20-cv-572, 6:20-cv-573, 6:20-cv-575, 6:20-cv-576, 6:20-cv-579, 6:20-cv-580, 6:20-cv-583, 6:20-cv-584, and 6:20-cv-585

Mike,

Friday at 11 am Pacific / 1 pm Central should work.  If anyone has a conflict please advise now.  I'm out of the office and
on my phone right now, so would you please be so kind as to circulate a calendar appt / dial in?

Best regards,

Morgan

Sent from my iPhone

> On Jan 5, 2022, at 7:41 AM, Mike Jones <mikejones@potterminton.com> wrote:

> Morgan,

> It is important we conduct this meet and confer this week.   We are available from 9 am central until 3
pm central time on Friday to conduct the meet and confer.   Please confirm today what works in this
window for you and the others on your side who intend to participate.

**Michael E. Jones**

**P O T T E R** M I N T O N

---------------------------A Professional Corporation

Address:  110 North College, Suite 500; Tyler TX  75702
direct dial: 903-525-2239

direct fax: 903-531-3939

office: 903-597-8311
mikejones@potterminton.com

---

**From:** Morgan Pietz <morgan@pstrials.com>
**Sent:** Tuesday, January 4, 2022 6:53 PM
**To:** Mike Jones <mikejones@potterminton.com>; Dan MacLemore <maclemore@thetexasfirm.com>
**Cc:** caribou@matters.warrenlex.com; WSOU-Google@jonesday.com; WSOUPOTTER GROUP
<WSOUGoogle@potterminton.com>; IPTeam <IPTeam@etheridgelaw.com>; CA-
BrazosTrials@carterarnett.com; Rob Millimet <Rob@stantonllp.com>; Julie Goerlinger
<julie@pstrials.com>; Admin <admin@pstrials.com>; Diego Salazar <salazar@thetexasfirm.com>;
Suzanne Miles <Suzanne_Miles@txwd.uscourts.gov>; Kristie Davis <Kristie_Davis@txwd.uscourts.gov>;
mark@swclaw.com; Jim Etheridge <jim@etheridgelaw.com>; Ryan Loveless <ryan@etheridgelaw.com>
**Subject:** RE: WSOU Investments, LLC d/b/a Brazos Licensing and Development v. Google LLC, Cause
Nos. 6:20-cv-571, 6:20-cv-572, 6:20-cv-573, 6:20-cv-575, 6:20-cv-576, 6:20-cv-579, 6:20-cv-580, 6:20-
cv-583, 6:20-cv-584, and 6:20-cv-585

Hi Mike,

I had hoped to have you a draft of a consolidation proposal by tomorrow.  With the holidays, it is taking
just a little longer than I had hoped, but I do anticipate having the proposal ready to circulate to you by
end of the day tomorrow, Thursday morning at the very latest.

Re: an M&C call, I will work on clearing some times that work for me, my co-counsel, my local counsel,
and with counsel for WSOU in the Google case and I'll propose a few times tomorrow for Thursday
afternoon or on Friday.  If there are any good windows either day that work for your team, please let
me know and I'll start by clearing those times.

Best regards,

Morgan

Morgan E. Pietz

PIETZ & SHAHRIARI, LLP

6700 S. Centinela Ave., 2nd Floor

Culver City, CA 90230

morgan@pstrials.com

(310) 424-5557

*WE HAVE MOVED.  PLEASE NOTE OUR NEW OFFICE MAILING ADDRESS*

*This transmission is from a law firm and may contain information that is privileged, confidential, and protected by the attorney-client or attorney work product privileges.  If you are not the addressee, note that any disclosure, copying, distribution or use of the contents of this message is prohibited.  If you have received this transmission in error, please destroy it and notify us immediately at the telephone number above.*

**From:** Mike Jones <mikejones@potterminton.com>
**Sent:** Tuesday, January 4, 2022 4:00 PM
**To:** Morgan Pietz <morgan@pstrials.com>; Dan MacLemore <maclemore@thetexasfirm.com>
**Cc:** caribou@matters.warrenlex.com; WSOU-Google@jonesday.com; WSOUPOTTER GROUP <WSOUGoogle@potterminton.com>; IPTeam <IPTeam@etheridgelaw.com>; CA-BrazosTrials@carterarnett.com; Rob Millimet <Rob@stantonllp.com>; Julie Goerlinger <julie@pstrials.com>; Mike Jones <mikejones@potterminton.com>; Admin <admin@pstrials.com>; Diego Salazar <salazar@thetexasfirm.com>; Suzanne Miles <Suzanne_Miles@txwd.uscourts.gov>; Kristie Davis <Kristie_Davis@txwd.uscourts.gov>; mark@swclaw.com; Jim Etheridge <jim@etheridgelaw.com>; Ryan Loveless <ryan@etheridgelaw.com>
**Subject:** RE: WSOU Investments, LLC d/b/a Brazos Licensing and Development v. Google LLC, Cause Nos. 6:20-cv-571, 6:20-cv-572, 6:20-cv-573, 6:20-cv-575, 6:20-cv-576, 6:20-cv-579, 6:20-cv-580, 6:20-cv-583, 6:20-cv-584, and 6:20-cv-585

Morgan and Dan –

I am confirming our meet and confer telephonic conference tomorrow at 11:00 a.m. CT as discussed in the email below.  Please confirm your attendance and I will send dial in information first thing in the morning.

Thanks so much.

9

Michael E. Jones

**P O T T E R** M I N T O N

----------------------------A Professional Corporation

110 North College, Suite 500; Tyler TX  75702
telephone:  903.597.8311 ext. 239

Direct dial:  903.525.2239
facsimile:  903.593.0846
mikejones@potterminton.com

---

**From:** Mike Jones
**Sent:** Thursday, December 23, 2021 12:07 PM
**To:** Morgan Pietz <morgan@pstrials.com>; Dan MacLemore <maclemore@thetexasfirm.com>;
**Cc:** caribou@matters.warrenlex.com; WSOU-Google@jonesday.com; WSOUPOTTER GROUP
<WSOUGoogle@potterminton.com>; IPTeam <IPTeam@etheridgelaw.com>; CA-
BrazosTrials@carterarnett.com; Rob Millimet <Rob@stanonllp.com>; Julie Goerlinger
<julie@pstrials.com>; Admin <admin@pstrials.com>; Diego Salazar <salazar@thetexasfirm.com>;
Suzanne Miles <Suzanne_Miles@txwd.uscourts.gov>; Kristie Davis <Kristie_Davis@txwd.uscourts.gov>;
mark@swclaw.com; Jim Etheridge <jim@etheridgelaw.com>; Ryan Loveless <ryan@etheridgelaw.com>
**Subject:** RE: WSOU Investments, LLC d/b/a Brazos Licensing and Development v. Google LLC, Cause
Nos. 6:20-cv-571, 6:20-cv-572, 6:20-cv-573, 6:20-cv-575, 6:20-cv-576, 6:20-cv-579, 6:20-cv-580, 6:20-
cv-583, 6:20-cv-584, and 6:20-cv-585

Morgan and Dan,

Thanks for your quick response.   Google is available to meet and confer on January 5, 2022 at 11:00
am central time, please confirm that this works for your team.   At this time, we do not see the need to
include other third parties in a meet and confer on motions filed by Google, or by WSOU based on
subpoenas served by Google.  We will take a look at the consolidation proposal once provided to us
and can reassess at that time if it makes sense to invite others into our discussion.  As to the request
concerning unsealing of the hearing transcript in the Microsoft matter, Google does not oppose any
such request but does not agree that doing so is necessary for the Court to hear argument and resolve
the three pending motions at hand.

Happy Holidays.

Michael E. Jones

**P O T T E R** M I N T O N

--------------------------A Professional Corporation

110 North College, Suite 500; Tyler TX  75702
telephone:  903.597.8311 ext. 239

Direct dial:  903.525.2239
facsimile:  903.593.0846
mikejones@potterminton.com

---

**From:** Morgan Pietz <morgan@pstrials.com>
**Sent:** Wednesday, December 22, 2021 6:07 PM
**To:** Mike Jones <mikejones@potterminton.com>; Dan MacLemore <maclemore@thetexasfirm.com>
**Cc:** caribou@matters.warrenlex.com; WSOU-Google@jonesday.com; WSOUPOTTER GROUP
<WSOUGoogle@potterminton.com>; IPTeam <IPTeam@etheridgelaw.com>; CA-
BrazosTrials@carterarnett.com; Rob Millimet <Rob@stantonllp.com>; Julie Goerlinger
<julie@pstrials.com>; Admin <admin@pstrials.com>; Diego Salazar <salazar@thetexasfirm.com>;
Suzanne Miles <Suzanne_Miles@txwd.uscourts.gov>; Kristie Davis <Kristie_Davis@txwd.uscourts.gov>;
mark@swclaw.com; Jim Etheridge <jim@etheridgelaw.com>; Ryan Loveless <ryan@etheridgelaw.com>
**Subject:** RE: WSOU Investments, LLC d/b/a Brazos Licensing and Development v. Google LLC, Cause
Nos. 6:20-cv-571, 6:20-cv-572, 6:20-cv-573, 6:20-cv-575, 6:20-cv-576, 6:20-cv-579, 6:20-cv-580, 6:20-
cv-583, 6:20-cv-584, and 6:20-cv-585

Hi Mike,

We are available to meet and confer with you on this anytime January 5th or later.

Between now and then, I plan to circulate a proposal as to consolidation of certain WSOU cases for the
limited purpose of third party discovery.  Which, as Dan indicated in his letter, is something we'd like to

see resolved at the same time as Google's three motions to compel (all recently transferred in from Delaware) and WSOU's motion for a protective order (filed in W.D. Tex. originally).  I'd like for you to have a chance to review the particulars of our proposal, which I will be working on next week, and for us to confer about that on the same call.

Query whether you'd like counsel for ZTE, Dell, and HPE to also participate in the call, since they have also all subpoenaed my clients, and some of them are writing meet and confer letters threatening still further motions related to my clients (beyond the six or seven already-filed motions I can count so far)?  They'll need to be a part of the consolidation discussion, in any event, but I'm happy to have a separate call with only Google first, if you so desire.

Further, can I assume that Google will join in our request that WSOU and Microsoft un-seal the relevant discovery tables and excerpts of the transcript from the sealed hearing at which Microsoft's motion to compel discovery related to BP Funding and Terrier was denied?  When Ms. Kash and I argued the motions to compel in Delaware, we did so without being able to explain to Judge Burke exactly what was at issue and what was decided in the Microsoft proceedings.  I don't believe it makes sense for us to have another hearing on these issues without knowing exactly what was decided in Microsoft and it being clear for all to see and discuss.  I presume Google agrees?

Please stay tuned for a proposal from me as to consolidation.  Let me know whether Google joins in our request as to unsealing the Microsoft proceedings related to my clients.  And I look forward to speaking with you in the new year.

Best regards,
Morgan

Morgan E. Pietz

PIETZ & SHAHRIARI, LLP

6700 S. Centinela Ave., 2nd Floor

Culver City, CA 90230

[morgan@pstrials.com](morgan@pstrials.com)

(310) 424-5557

*WE HAVE MOVED.  PLEASE NOTE OUR NEW OFFICE MAILING ADDRESS*

*This transmission is from a law firm and may contain information that is privileged, confidential, and protected by the attorney-client or attorney work product privileges.  If you are not the addressee, note that any disclosure, copying, distribution or use of the contents of this message is prohibited.  If you have received this transmission in error, please destroy it and notify us immediately at the telephone number above.*

**From:** Mike Jones <mikejones@potterminton.com>
**Sent:** Wednesday, December 22, 2021 1:51 PM
**To:** Dan MacLemore <maclemore@thetexasfirm.com>
**Cc:** Mike Jones <mikejones@potterminton.com>; caribou@matters.warrenlex.com; WSOU-Google@jonesday.com; WSOUPOTTER GROUP <WSOUGoogle@potterminton.com>; IPTeam <IPTeam@etheridgelaw.com>; CA-BrazosTrials@carterarnett.com; Morgan Pietz <morgan@pstrials.com>; Rob Millimet <Rob@stantonllp.com>; Julie Goerlinger <julie@pstrials.com>; Admin <admin@pstrials.com>; Diego Salazar <salazar@thetexasfirm.com>; Suzanne Miles <Suzanne_Miles@txwd.uscourts.gov>; Kristie Davis <Kristie_Davis@txwd.uscourts.gov>; mark@swclaw.com; Jim Etheridge <jim@etheridgelaw.com>; Ryan Loveless <ryan@etheridgelaw.com>
**Subject:** WSOU Investments, LLC d/b/a Brazos Licensing and Development v. Google LLC, Cause Nos. 6:20-cv-571, 6:20-cv-572, 6:20-cv-573, 6:20-cv-575, 6:20-cv-576, 6:20-cv-579, 6:20-cv-580, 6:20-cv-583, 6:20-cv-584, and 6:20-cv-585

Mr. MacLemore:

Good afternoon.  I am sending this email to all recipients of Jeffrey Gunnell's email of December 21, 2021 at 3:30 p.m., as well as to Jim Etheridge and Ryan Loveless.  If any recipient feels it should be forward to someone else, please let me know and I will be happy to do so.

As you know, in Mr. Gunnell's email, the Court instructed us to meet and confer regarding:  (1) Google's motions to compel BP Funding Trust and Terrier SSC, LLC; and (2) WSOU's motion for protective order.  We are available on December 28 between 9:00 a.m. and noon CST, December 29 between 11:00 a.m. and 2:00 p.m. CST, and December 30 between 9:00 a.m. and 2:00 p.m. CST.

Please let us know when you are available during this time.

Thank you.


Michael E. Jones


**P O T T E R** M I N T O N

----------------------------A Professional Corporation

110 North College, Suite 500; Tyler TX  75702
telephone:  903.597.8311 ext. 239

Direct dial:  903.525.2239
facsimile:  903.593.0846
mikejones@potterminton.com

# EXHIBIT 13

**Morgan Pietz**

| | |
|---|---|
| **From:** | Jen Kash <jen@warrenlex.com> |
| **Sent:** | Thursday, January 20, 2022 7:56 AM |
| **To:** | Joshua Bennett |
| **Cc:** | Ellie Silberhorn; Morgan Pietz; Travis Richins; Michael Franzinger; Mark Siegmund; Brazos Trials; Greg Lanier; Mike Jones; WSOU Investments LLC v. Google LLC; WSOU Investments LLC v. Google LLC; WSOU Investments LLC v. Google LLC; WSOU Investments LLC v. Google LLC; WSOU-Google; SidleyHPEWSOUTeam@sidley.com; Hatcher, Michael D. |
| **Subject:** | Re: WSOU Investments LLC v. Google LLC, Nos. 20-571, 20-572, 20-573, 20-575, 20-576, 20-579, 20-580, 20-583, 20-584, 20-585 (W.D. Texas); Google LLC v. Aqua Licensing, LLC 21-1309 (W.D. Texas) |

Joshua,

While WSOU has not subpoenaed Aqua Licensing, Inc for deposition, we are willing to work with WSOU regarding the scheduling of the deposition.  However, as a result of the scheduling conflicts presented by WSOU's calendar, and those of counsel for Google and what will likely be the complications of Mr. McMillian's calendar and Aqua's counsel, we are not certain we can also continue to accommodate Mr. Pietz's request that the deposition of Aqua be coordinated with counsel for HPE (let alone that of defendants in other WSOU litigations which Mr. Pietz has indicated he will also seek to join).   We are unaware of whether HPE is available on any of the dates requested by WSOU.

That said, Google is available to conduct the deposition of Aqua on February 22, 2022.

Thanks, Jen

On Wed, Jan 19, 2022 at 11:09 PM Joshua Bennett <jbennett@carterarnett.com> wrote:

Ms. Kash,

We oppose and will move to quash (or initiate procedures under the OGP to oppose) any effort to obtain Aqua's deposition on the three dates you provided. Brazos will want a seat at the deposition. Those dates don't work for our team for reasons already on your calendar.

The discovery cut off is February 25. There are plenty of other days available in the month of February. We propose February 14, 17, 22, or 25.



**Joshua J. Bennett | Partner**
jbennett@carterarnett.com
D: 214.550.2112
F: 214.550.8185
www.carterarnett.com

8150 N. Central Expressway, Suite 500, Dallas, Texas 75206

This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege. If you have received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.

---

**From:** Ellie Silberhorn <ellie@warrenlex.com>
**Date:** Wednesday, January 19, 2022 at 3:39 PM
**To:** Morgan Pietz <morgan@pstrials.com>
**Cc:** Travis Richins <travis@etheridgelaw.com>, Michael Franzinger <mfranzinger@sidley.com>, Mark Siegmund <mark@waltfairpllc.com>, Brazos Trials <CA-BrazosTrials@carterarnett.com>, Greg Lanier <tglanier@jonesday.com>, Mike Jones <mikejones@potterminton.com>, WSOU Investments LLC v. Google LLC <20-571@cases.warrenlex.com>, WSOU Investments LLC v. Google LLC <20-580@cases.warrenlex.com>, WSOU Investments LLC v. Google LLC <20-583@cases.warrenlex.com>, WSOU Investments LLC v. Google LLC <20-585@cases.warrenlex.com>, WSOU-Google <WSOU-Google@jonesday.com>
**Subject:** WSOU Investments LLC v. Google LLC, Nos. 20-571, 20-572, 20-573, 20-575, 20-576, 20-579, 20-580, 20-583, 20-584, 20-585 (W.D. Texas); Google LLC v. Aqua Licensing, LLC 21-1309 (W.D. Texas)

Counsel:

Attached please find a letter from Jennifer A. Kash.  Please let me know if you do not receive this attachment in good order.

Thank you,

Ellie Silberhorn

--

Ellie Silberhorn      ellie@warrenlex.com      +1 (415) 895-2950

# EXHIBIT 14

**Morgan Pietz**

| | |
|---|---|
| **From:** | Franzinger, Michael <mfranzinger@sidley.com> |
| **Sent:** | Thursday, January 20, 2022 1:37 PM |
| **To:** | Morgan Pietz; Blythe, Andrew Philip; Sabanoglu, Kyanna; Kathir, Allen; bshelton@sheltoncoburn.com |
| **Cc:** | Mark Siegmund; Admin; CA-BrazosTrials@carterarnett.com; Hatcher, Michael D.; Dan MacLemore; Diego Salazar; Hartman, Sarah G.; IPTeam; Jim Etheridge; Julie Goerlinger; Jones, Michael E. (EXTERNAL @POTTERMINTON.COM); Rob Millimet; Rousseau, Timothy J.; Ryan Loveless; Schulz, Bradford; WSOU-Google@jonesday.com; Jen Kash; WSOUPOTTER GROUP; caribou@matters.warrenlex.com; Butcher, Callie; *** GDC-Dell_WSOU; jbennett@carterarnett.com; sbreedlove@carterarnett.com; Lionel.Lavenue@finnegan.com |
| **Subject:** | RE: WSOU Investments - Limited Purpose Consolidation as to Certain Third Party Discovery |

Morgan,

As previously discussed, HPE does not object to coordinating its discovery of your clients with Google.  We are not sure a formal consolidation is needed and have no position at present on the proposed order.  Please confirm, though, that HPE will receive a copy of all documents they produce to Google and the transcript of any deposition taken of them in this matter, without regard to whether HPE has subpoenaed them or not.  We do not think it is a good use of anyone's time to prepare what will essentially be duplicate subpoenas to get duplicate responses (but we will do so if necessary).

As to Aqua, we are available to participate in a February 22 deposition.

Best regards,
Mike


**MICHAEL R. FRANZINGER**

**SIDLEY AUSTIN LLP**
+1 202 736 8583
mfranzinger@sidley.com

---

**From:** Morgan Pietz <morgan@pstrials.com>
**Sent:** Thursday, January 20, 2022 12:13 AM
**To:** Blythe, Andrew Philip <ABlythe@gibsondunn.com>; Sabanoglu, Kyanna <KSabanoglu@gibsondunn.com>; Kathir, Allen <AKathir@gibsondunn.com>; bshelton@sheltoncoburn.com
**Cc:** Franzinger, Michael <mfranzinger@sidley.com>; Mark Siegmund <mark@swclaw.com>; Admin <admin@pstrials.com>; CA-BrazosTrials@carterarnett.com; Hatcher, Michael D. <mhatcher@sidley.com>; Dan MacLemore <maclemore@thetexasfirm.com>; Diego Salazar <salazar@thetexasfirm.com>; Hartman, Sarah G. <SHartman@brownrudnick.com>; IPTeam <IPTeam@etheridgelaw.com>; Jim Etheridge <jim@etheridgelaw.com>; Julie Goerlinger <julie@pstrials.com>; Jones, Michael E. (EXTERNAL @POTTERMINTON.COM) <mikejones@potterminton.com>; Rob Millimet <Rob@stantonllp.com>; Rousseau, Timothy J. <TRousseau@brownrudnick.com>; Ryan Loveless <ryan@etheridgelaw.com>; Schulz, Bradford <Bradford.Schulz@finnegan.com>; WSOU-Google@jonesday.com; Jen Kash <jen@warrenlex.com>; WSOUPOTTER GROUP <WSOUGoogle@potterminton.com>; caribou@matters.warrenlex.com; Butcher, Callie <cbutcher@sidley.com>; *** GDC-Dell_WSOU <GDC-Dell_WSOU@gibsondunn.com>; jbennett@carterarnett.com; sbreedlove@carterarnett.com; Lionel.Lavenue@finnegan.com
**Subject:** RE: WSOU Investments - Limited Purpose Consolidation as to Certain Third Party Discovery

# EXHIBIT 15



## Subpoenas Served on BP Funding Trust

**Jen Kash** <jen@warrenlex.com>                                                    Tue, Oct 5, 2021 at 5:38 PM
To: Rob Millimet <Rob@stantonllp.com>
Cc: Warren Lex Project Caribou <caribou@matters.warrenlex.com>, "Egan, Brian P." <began@morrisnichols.com>, "Blumenfeld, Jack" <JBlumenfeld@morrisnichols.com>

Mr. Millimet,

Thank you for your time today and for participating in what was a productive meet and confer regarding BP Funding Trust's ("BP") response to the two subpoenas served by Google on September 8, 2021.

As discussed on our call, Google is willing to postpone filing any motion to compel on either the subpoena for documents or deposition in light of BP's agreement to provide the documents it believes it has in its possession by October 15, 2021.  The categories of documents that we discussed, and you agreed to produce on behalf of BP, are as follows:

1. Any documents or communications (including email) leading up to and including the loan or security agreement entered into by and between BP and WSOU Investments, LLC, or its affiliates (collectively "WSOU") in or around May of 2019.
2. The security or loan agreement itself between BP and WSOU.
3. Any documents (including forwarded communication) provided to BP by WSOU at any time regarding the assets securing the loan, inclusive of any documents provided to BP by counsel for WSOU.  This would include any valuations or opinions regarding any of the assets/patents inclusive of things like market analysis, licensing forecasts or strength of one or more patents in the portfolio.  We agreed that BP would not have to provide a privilege log, at this time, reflecting communications it had with its own outside counsel regarding these assets.
4. Any documents or communications (including email) leading up to and including the transfer or sale of the security interest or loan with WSOU to a third party in or around January of 2020.  These would include communications with WSOU and/or with a third party.
5. The official agreement or instrument executed in conveying the WSOU loan or security agreement to the third party.

While not discussed during the call, we would also like to request that BP produce any documents or communications with WSOU after January 2020, in the unlikely event any such communications exist.

We further agreed to postpone the question of whether or not Google would proceed with a deposition of BP until after the documents had been produced on October 15, 2021 and Google had an opportunity to assess whether a deposition was necessary at that time.

I have attached a copy of the protective order entered in the underlying actions so that BP can designate its documents with its desired level of confidentiality.   Please confirm in writing that I have accurately reflected the agreement between BP and Google as it applies to BP's response to the subpoenas.

I am available to discuss further at your convenience, or to answer any questions, during this process.

Very truly yours, Jen

--
Jen Kash
Partner, Warren Lex LLP
2261 Market Street, No. 606
San Francisco, CA, 94114
1-415-895-2923
jen@warrenlex.com

 **Protective Order.pdf**
334K

# EXHIBIT 16

**Morgan Pietz**

| | |
|---|---|
| **From:** | Morgan Pietz |
| **Sent:** | Thursday, November 11, 2021 2:58 PM |
| **To:** | Kathir, Allen; Sabanoglu, Kyanna |
| **Cc:** | Barry Shelton; Travis Richins; Rob Millimet; Julie Goerlinger; Admin; bhershkowitz@gibsondunn.com; brosenthal@gibsondunn.com; ptrochia@gibsondunn.com; vallahyarzadeh@gibsondunn.com; ablythe@gibsondunn.com; ewhitcher@gibsondunn.com; jschung@gibsondunn.com; ehsin@gibsondunn.com; riwahashi@gibsondunn.com; BBarnes@gibsondunn.com |
| **Subject:** | RE: BasePoint/WSOU Investments v. Dell Technologies, Inc., et al. |
| **Attachments:** | 2021.11.11 - Ltr re Dell Subpoena to BasePoint Administrative LLC.pdf; 2021.11.11 - Basepoint Administrative LLC Objection to Dell EMC Subpoena.pdf; Docket Report and ECF No. 92 in W.D. Tex. No. 6-20-460-ADA.pdf |

Counsel,

In response to the below email thread, please see the attached letter, objections being served by this email, and a copy of the docket report and proposed order referenced in the letter.

Best regards,
Morgan

Morgan E. Pietz
PIETZ & SHAHRIARI, LLP
9454 Wilshire Blvd., Ste. 310
Beverly Hills, CA 90212
morgan@pstrials.com
(310) 424-5557

*This transmission is from a law firm and may contain information that is privileged, confidential, and protected by the attorney-client or attorney work product privileges. If you are not the addressee, note that any disclosure, copying, distribution or use of the contents of this message is prohibited. If you have received this transmission in error, please destroy it and notify us immediately at the telephone number above.*

**From:** Morgan Pietz
**Sent:** Thursday, November 11, 2021 7:34 AM
**To:** Kathir, Allen <AKathir@gibsondunn.com>; Sabanoglu, Kyanna <KSabanoglu@gibsondunn.com>; Rob Millimet <Rob@stantonllp.com>; Barry Shelton <bshelton@sheltoncoburn.com>
**Subject:** RE: BasePoint/WSOU Investments v. Dell Technologies, Inc., et al.

Hi Allen,

We'll be in touch with a substantive update later today.

Best regards,
Morgan

**From:** Kathir, Allen <AKathir@gibsondunn.com>
**Sent:** Thursday, November 11, 2021 6:17 AM

**To:** Sabanoglu, Kyanna <KSabanoglu@gibsondunn.com>; Rob Millimet <Rob@stantonllp.com>; Barry Shelton <bshelton@sheltoncoburn.com>
**Cc:** Morgan Pietz <morgan@pstrials.com>
**Subject:** RE: BasePoint/WSOU Investments v. Dell Technologies, Inc., et al.

Hi Rob and Morgan,

Nice to meet both of you.  I'm following up on the below.

Thanks,
Allen

**Allen Kathir**

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193
Tel +1 212.351.6282 • Fax +1 212.817.9382
AKathir@gibsondunn.com • www.gibsondunn.com

---

**From:** Sabanoglu, Kyanna
**Sent:** Friday, November 5, 2021 5:25 PM
**To:** Rob Millimet <Rob@stantonllp.com>; Barry Shelton <bshelton@sheltoncoburn.com>
**Cc:** Kathir, Allen <AKathir@gibsondunn.com>; Morgan Pietz <morgan@pstrials.com>
**Subject:** RE: BasePoint/WSOU Investments v. Dell Technologies, Inc., et al.

Hello Rob,

Nice to meet you through email.  We look forward to speaking with you and your team early next week.

Warmest Regards,

**Kyanna Sabanoglu**

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193
Tel +1 212.351.3880 • Fax +1 212.716.0880
KSabanoglu@gibsondunn.com • www.gibsondunn.com

---

**From:** Rob Millimet <Rob@stantonllp.com>
**Sent:** Thursday, November 4, 2021 4:21 PM
**To:** Barry Shelton <bshelton@sheltoncoburn.com>
**Cc:** Sabanoglu, Kyanna <KSabanoglu@gibsondunn.com>; Kathir, Allen <AKathir@gibsondunn.com>; Morgan Pietz <morgan@pstrials.com>
**Subject:** RE: BasePoint/WSOU Investments v. Dell Technologies, Inc., et al.

**[WARNING: External Email]**

In the month or so since I sent you the email below, circumstances have changed and new facts have come to light. I presume you are aware of this, because I understand that Google and Dell are claiming to be in a joint defense with each other in connection with the WSOU litigation. So, I'm sure you are aware of the subpoena proceedings that Google initiated in Delaware.

My co-counsel in those proceedings Morgan Pietz (cc'd) and I will be in touch with your team early next week. We can address at that time whether and to what extent any deal can still be reached.

Thank you.

ROBERT M. MILLIMET
Attorney

STANTON LLP
D  214 996 0218
O  972 233 2300
stantonllp.com

---

**From:** Barry Shelton <bshelton@sheltoncoburn.com>
**Sent:** Wednesday, November 3, 2021 10:49 PM
**To:** Rob Millimet <Rob@stantonllp.com>
**Cc:** Sabanoglu, Kyanna <KSabanoglu@gibsondunn.com>; Kathir, Allen <AKathir@gibsondunn.com>
**Subject:** RE: BasePoint/WSOU Investments v. Dell Technologies, Inc., et al.

Rob,

We have an agreement. I've copied Kyanna Sabanoglu and Allen Kathir of Gibson Dunn, who will be your primary contacts going forward. Thanks,

Barry

---

**From:** Rob Millimet <Rob@stantonllp.com>
**Sent:** Friday, October 8, 2021 10:59 AM
**To:** Barry Shelton <bshelton@sheltoncoburn.com>
**Subject:** RE: BasePoint/WSOU Investments v. Dell Technologies, Inc., et al.

Hi Barry. I have now been retained in connection with your subpoena in the above-referenced matter. As previously discussed, the subpoena was not served on the correct party. Nonetheless, I write in an attempt to try to reach an agreement on an efficient and not unduly burdensome response to your third-party subpoena. I have reached the following agreement for responding to a similar subpoena issued by Google LLC in its litigation with WSOU. Please let me know if we can have a similar agreement for your subpoena.

The lender to WSOU ("BasePoint") and WSOU executed their lending relationship in May 2019. In January 2020, BasePoint assigned the loan to a third party. As a result, BasePoint lacks responsive documents following the assignment except as to its requests for indemnification and to be held harmless for its costs in responding to subpoenas. In light of the foregoing, BasePoint will agree to produce the following categories of documents:

1. Any documents or communications (including email) leading up to and including the loan or security agreement entered into by and between BasePoint and WSOU in May of 2019.
2. The security or loan agreement itself between BasePoint and WSOU.
3. Any documents (including forwarded communication) provided to BasePoint by WSOU at any time regarding the assets securing the loan, inclusive of any documents provided to BasePoint by counsel for WSOU. This would

include any valuations or opinions regarding any of the assets/patents, inclusive of things like market analysis, licensing forecasts or strength of one or more patents in the portfolio.  BasePoint does not have to provide a privilege log, at this time, reflecting communications it had with its own outside counsel regarding these assets.

4.  Any documents or communications (including email) leading up to and including the transfer or sale of the security interest or loan with WSOU to a third party in January of 2020. These would include communications with WSOU and/or with a third party.

5.  The official agreement or instrument executed in conveying the WSOU loan or security agreement to the third party.

6.  Any documents or communications between BasePoint and WSOU concerning the loan or the patents after January 2020, but not any documents or communications related to the subpoenas themselves or BasePoint's requests for indemnification or to be held harmless.

As to your request for a deposition, BasePoint will agree to revisit the need for one after you receive and assess the above documents.

Finally, this agreement seeks to avoid the need to present any arguments to the Court, but should that need arise, neither your clients nor BasePoint have waived or released any arguments through our discussions and agreements.

Please let me know if we have an agreement. Thank you.

ROBERT M. MILLIMET
Attorney

**STANTON LLP**
D  214 996 0218
O  972 233 2300
stantonllp.com

**From:** Barry Shelton <bshelton@sheltoncoburn.com>
**Sent:** Friday, October 1, 2021 2:25 PM
**To:** Rob Millimet <Rob@stantonllp.com>
**Subject:** RE: BasePoint/WSOU Investments v. Dell Technologies, Inc., et al.

Thanks, Rob, most of my morning is free Monday but a few people have asked for availability. Can you call around 8:30-9 CT at 512-517-9998? What do you mean by a new subpoena?

Barry

**From:** Rob Millimet <Rob@stantonllp.com>
**Sent:** Friday, October 1, 2021 2:03 PM
**To:** Barry Shelton <bshelton@sheltoncoburn.com>
**Subject:** BasePoint/WSOU Investments v. Dell Technologies, Inc., et al.

Hi Barry. I am writing to you from my work account in connection with the above-referenced matter. Please let me know when you have a few minutes early next week to discuss a new subpoena. I have spoken, and will be further speaking, with BasePoint and should be in a position at that time to discuss moving forward on the discovery sought by the prior subpoena.

Thank you for your patience.

ROBERT M. MILLIMET
Attorney

**STANTON LLP**
D  214 996 0218
O  972 233 2300
stantonllp.com

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

# EXHIBIT 17

# Pietz & Shahriari, LLP

6700 S. Centinela Ave., Second Floor, Playa Vista, CA 90230
www.pstrials.com     t: (310) 424-5557     f: (310) 597-4626

Morgan E. Pietz
morgan@pstrials.com
November 11, 2021

*VIA ELECTRONIC MAIL*

Kyanna Sabanoglu   KSabanoglu@gibsondunn.com
Allen Kathir          AKathir@gibsondunn.com

**Re:**

**BasePoint Administrative, LLC's Objections to Third Party Subpoena**
*WSOU Investments, LLC v. Dell Tech., Inc., et al.,* **W.D. Tex. No. 6:20-cv-475,** *etc.*

Dear Kyanna and Allen,

Please find attached written objections and responses to the subpoena that Defendants Dell Technologies, Inc., Dell, Inc., and EMC Corporation ("Dell") served on BasePoint Administrative, LLC, in connection with its litigation against WSOU in the Western District of Texas.

As my co-counsel Mr. Millimet noted in his email of 10/8, referencing an earlier conversation between him and Mr. Shelton, Dell's subpoena was not served on the correct entity.   The proper entity for service was the lender, BP Funding Trust.

Of more concern than the 'wrong entity' issue, is the fact that our clients have now become aware of—indeed, unhappily embroiled in—disputes between WSOU and certain defendants it has sued for patent infringement in the Western District of Texas, including Microsoft and Google, about the same documents that Dell has also now requested through the instant subpoena.

As you are probably aware, the "agreement for responding to a similar subpoena issued by Google LLC in its litigation with WSOU," which Mr. Millimet mentioned in his 10/8 email, has been set aside.  The reason why, was because WSOU informed us that Microsoft recently sought these very same documents set out in Mr. Millimet's 10/8 email, in party discovery it propounded on WSOU, and that Microsoft filed a motion to compel production, which we understand was then denied by Judge Albright.  WSOU notified us that it was filing a motion for a protective order concerning these documents in the Western District of Texas.

Google knew that Judge Albright had denied the motion to obtain the very same discovery from WSOU in party discovery in the Microsoft case, because WSOU informed Google of this in a letter.  When Mr. Millimet initially reached a deal with Google, he was unaware of all this, and Google failed to mention it.

After WSOU informed us of the ruling in the Microsoft case, and further indicated it would be seeking a protective order in Texas, and explained that the effort to obtain documents from BP Funding Trust was really an attempted end run around Judge

CONFIDENTIAL                                                            Page 1 of 3

BasePoint Administrative, LLC's Objections to Third Party Subpoena
November 11, 2021

Albright's prior ruling about these documents in the Microsoft case, Mr. Millimet indicated he would need to talk all this over with our client.

Google responded to Mr. Millimet's hesitation (which was more than appropriate under the change in circumstances) by declaring an emergency, rushing into court in Delaware (the place for compliance with the subpoena) to file a motion to compel, in which Google renounced the prior agreement Mr. Millimet mentioned in his 10/8 email below, and sought to compel BP Funding Trust to produce all of the documents requested in Google's plainly overbroad subpoena.  Google moved to compel depositions while ignoring the prior agreement to discuss the need for deposition(s) after receipt of the documents.

We opposed Google's motion to compel, setting out all the above, and asked the Delaware court to transfer all the subpoena-related proceedings back to Judge Albright in Texas per Rule 45(f).  WSOU's motion for a protective order concerning these documents in Texas, Google's motion to compel production of them in Delaware, and a joint motion to transfer Google's motion to compel back to Texas under Rule 45(f) are all still pending.

We understand from WSOU's counsel, that Google and Dell claim to be in a joint defense agreement.  So, I assume you are aware of all of this.  Further, Mr. Shelton, your co-counsel who signed the instant subpoena on BasePoint Administrative for Dell, is also local counsel for Microsoft.  We understand that Mr. Shelton was present at the hearing at which Judge Albright denied this same discovery in the Microsoft cases.  Please see the attached docket report and ECF notice, indicating that Mr. Shelton was the person tasked with writing up a proposed order memorializing Judge Albright's discovery ruling denying Microsoft's motion to compel as to the BP Funding documents.

BP Funding has also now been subpoenaed by yet another defendant, called ZTE, which served an identical subpoena to the one previously served by Google.

Our client's bottom line is this: Dell, Google,  ZTE, and anyone else, all need to work this out directly with WSOU before Judge Albright in Texas.  I understand Judge Albright expressed concerns about relevance and burden.  A party propounding a subpoena on a third party has an affirmative duty to minimize burden on that third party, and should generally seek discovery from a party before burdening a third party.  As far as I am aware, this has not yet been done here by Dell, and we are **not** willing to step past the requirement that Dell make a serious, good faith effort to work all this out with WSOU directly, including by going before Judge Alright, if necessary, before burdening our client, a third party who made a loan years ago that has long since been paid off, with producing documents or testimony.

We are happy to discuss this matter with you further.  But we are not going to be producing any documents or witnesses at this time for the reasons set out above and in the attached objections to the subpoena.

CONFIDENTIAL                                                                                          Page 2 of 3

BasePoint Administrative, LLC's Objections to Third Party Subpoena
November 11, 2021

Best regards,

Morgan E. Pietz
PIETZ & SHAHRIARI, LLP

Cc(s):        Barry Shelton         bshelton@sheltoncoburn.com
              Travis Richins        travis@etheridgelaw.com
              Rob Millimet          Rob@stantonllp.com
              Julie Goerlinger      Julie@PSTrials.com

              Additional attorneys at Gibson Dunn on the service list:

                                    bhershkowitz@gibsondunn.com
                                    brosenthal@gibsondunn.com
                                    ptrochia@gibsondunn.com
                                    vallahyarzadeh@gibsondunn.com
                                    ablythe@gibsondunn.com
                                    ewhitcher@gibsondunn.com
                                    jschung@gibsondunn.com
                                    ehsin@gibsondunn.com
                                    riwahashi@gibsondunn.com
                                    BBarnes@gibsondunn.com

Enclosure(s):

2021.11.11 - Basepoint Administrative LLC Objection to Dell EMC Subpoena

Docket Report and ECF No. 92 in W.D. Tex. No. 6-20-460-ADA